# EXHIBIT A

## Flynn, Michael J.

| | |
|---|---|
| **From:** | Foster Jr., William S. <William.Foster@dbr.com> |
| **Sent:** | Tuesday, December 4, 2018 5:09 PM |
| **To:** | Chambers, Guy W.; Flynn, Michael J.; Rahmeier, Thatcher; DiGiovanni, Francis; Silverstein, Brianna L. |
| **Cc:** | Smith, Rodger |
| **Subject:** | RE: Reduced Number of Asserted f'real Claims |

Guy,

For the '662 Patent, we are asserting that we are not estopped from arguing the non-instituted IPR ground and combinations that include the Sato Japanese Utility Model.  Thus, we will assert the following combinations:

The non-instituted IPR ground based on Admitted Prior Art in view of Kelly and Miller
Admitted Prior Art in view of Sato and Miller
Admitted Prior Art in view of Sato, Miller, and Supervielle
Admitted Prior Art in view of Sato and Supervielle
Nielson in view of Sato and Miller
Nielson in view of Sato, Miller, and Supervielle
Nielson in view of Sato and Supervielle

Regards,
Bill

---

**From:** Foster Jr., William S.
**Sent:** Monday, December 3, 2018 11:18 AM
**To:** 'Chambers, Guy W.' <gchambers@sideman.com>; Flynn, Michael J. <michael.flynn@MNAT.com>; Rahmeier, Thatcher <Thatcher.Rahmeier@dbr.com>; DiGiovanni, Francis <Francis.DiGiovanni@dbr.com>; Silverstein, Brianna L. <Brianna.Silverstein@dbr.com>
**Cc:** Smith, Rodger <RSmith@MNAT.com>
**Subject:** RE: Reduced Number of Asserted f'real Claims

Guy,

Based on my understanding of the briefing you plan to file regarding estoppel, we will identify the prior art combinations that we plan to go forward with for the '662 Patent in view of the IPR decision by December 4.  However, we have finally just received Plaintiffs' asserted claims after they had more than 4 years to consider these issues and narrow their case.  Moreover, the prior art combinations for the other patents would not be relevant to your summary judgment tied to the '662 patent, the '150 patent, or inequitable conduct.  Accordingly, we will identify the remaining combinations by December 7, as Defendants should have at least a week to decide the remaining prior art combinations and we are also in the middle of drafting summary judgment briefing.

Regards,
Bill

---

**From:** Chambers, Guy W. <gchambers@sideman.com>
**Sent:** Thursday, November 29, 2018 5:24 PM

1

**To:** Foster Jr., William S. <William.Foster@dbr.com>; Flynn, Michael J. <michael.flynn@MNAT.com>; Rahmeier, Thatcher <Thatcher.Rahmeier@dbr.com>; DiGiovanni, Francis <Francis.DiGiovanni@dbr.com>; Silverstein, Brianna L. <Brianna.Silverstein@dbr.com>
**Cc:** Smith, Rodger <RSmith@MNAT.com>
**Subject:** Reduced Number of Asserted f'real Claims

Bill,

As promised during the telephone conference on Tuesday with Judge Connolly, f'real is reducing the number of patent claims being asserted for trial to the following 16 claims:

Claims 15, 20 and 22 of U.S. Patent No. 7,144,150;
Claim 21 of U.S. Patent No. 7,520,662;
Claims 1, 5, 6, 8, 9, 10 and 11 of U.S. Patent No. 7,520,658; and,
Claims 1, 11, 18, 19 and 27 of U.S. Patent No. 5,803,377.

In view of the rapidly approaching summary judgment and estoppel motion deadline, we expect to be apprised of your reduction to 48 prior art arguments no later than Tuesday December 4, 2018, including which specific prior art arguments apply to which of the remaining 16 asserted f'real claims.

Best regards,

Guy



**Guy W. Chambers**
Partner

**Sideman & Bancroft LLP**
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111
Main:  415.392.1960
Direct:415.733.3950
Fax:   415.392.0827
gchambers@sideman.com
Visit us at www.sideman.com

Please consider the environment before you print this email.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY
This e-mail may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply e-mail [or at (415) 392-1960] and delete all copies of this message. It is the recipient's responsibility to scan this e-mail and any attachments for viruses.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Drinker Biddle & Reath LLP is a Delaware limited liability partnership. The partner responsible for the firm's

# EXHIBIT B

Trials@uspto.gov                                                                    Paper 7
Tel: 571-272-7822                                                       Entered: July 31, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

HAMILTON BEACH BRANDS, INC.,
Petitioner,

v.

F'REAL FOODS, LLC,
Patent Owner.
_____

Case IPR2017-00765
Patent 7,520,658 B2
_____

Before LORA M. GREEN, BRIAN P. MURPHY, and
ELIZABETH M. ROESEL, *Administrative Patent Judges.*

MURPHY, *Administrative Patent Judge.*

DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. §§ 314(a), 325(d); 37 C.F.R. § 42.108*

IPR2017-00765
Patent 7,520,658 B2

# I.   INTRODUCTION

Hamilton Beach Brands, Inc. ("Petitioner") filed a Petition requesting an *inter partes* review of claims 1 and 5–11 of U.S. Patent No. 7,520,658 B2 (Ex. 1001, "the '658 patent").  Paper 2 ("Petition" or "Pet.").  F'real Foods, LLC ("Patent Owner") filed a Preliminary Response to the Petition.  Paper 6 ("Prelim. Resp.").  We have statutory authority under 35 U.S.C. § 314(a), which provides that an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

Petitioner challenges claims 1 and 6–9 of the '658 patent as unpatentable under 35 U.S.C. § 102(b) and claims 1 and 5–11 as unpatentable under § 103.  Pet. 8–9.  Based on the arguments and evidence presented in the Petition and Preliminary Response, we exercise our discretion and do not institute *inter partes* review.  35 U.S.C. §§ 314(a), 325(d).

## A. *Real Parties in Interest and Related Proceedings*

Petitioner identifies Hamilton Beach Brands, Inc. as a real party in interest.  Pet. 2.

Patent Owner identifies f'real Foods LLC and Rich Products Corporation as real parties in interest.  Paper 4, 1.

Petitioner and Patent Owner identify the following as related district court proceedings in the District of Delaware regarding the '658 patent:

*f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, Case No. 16-cv-00041-GMS (D. Del.); and

*f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, Case No. 14-cv-01270-GMS (D. Del.).  Pet. 2; Paper 4, 2.

2

IPR2017-00765
Patent 7,520,658 B2

Petitioner and Patent Owner further identify IPR2017-00756, filed on January 23, 2017, which seeks review of related U.S. Patent No. 7,144,150 ("the '150 Patent"). Pet. 2; Paper 4, 1. Petitioner and Patent Owner also identify IPR2016-01107, filed on May 27, 2016, as a related *inter partes* review proceeding regarding U.S. Patent No. 7,520,662, a case in which we instituted *inter partes* review on November 30, 2016. *Id.*

Patent Owner identifies IPR2016-01105, filed on May 27, 2016, as a related *inter partes* review proceeding regarding the '658 patent, a case in which we denied institution of *inter partes* review on November 30, 2016. Paper 4, 1; *see* Ex. 1008. Petitioner does not identify IPR2016-01105 as a "Related Matter," although Petitioner does identify IPR2016-01105 in its argument that the Board should not exercise its discretion to deny institution pursuant to 35 U.S.C. § 325(d). Pet. 5–8.

Petitioner also states that the U.S. Patent and Trademark Office has ordered *ex parte* reexamination of U.S. Patent No. 5,803,377 (Reexamination Control No. 90/013,850). Pet. 2.

B. *Proposed Grounds of Unpatentability*

Petitioner advances five grounds of unpatentability under 35 U.S.C. §§ 102(b) and 103 in relation to the challenged claims in the '658 patent:

| Reference[s] | Statutory Basis | Challenged Claims |
|---|---|---|
| Sato (Exs. 1002/1003)[1] | § 102(b) | 1 and 6–9 |

---

[1] Japanese Utility Model No. H04-136787 U1, published December 18, 1992, to Sato et al., Ex. 1002 (Japanese language original), and certified English language translation, Ex. 1003 ("Sato").

3

IPR2017-00765
Patent 7,520,658 B2

| Reference[s] | Statutory Basis | Challenged Claims |
|---|---|---|
| Sato and Karkos (Ex. 1004)[2] | § 103 | 1 and 5–9 |
| Sato and Oberg (Ex. 1005)[3] | § 103 | 10 and 11 |
| Sato, Karkos, and Oberg | § 103 | 10 and 11 |
| Neilson (Ex. 1006)[4] and Karkos | § 103 | 1 and 5–11 |

Pet. 8–9.  Petitioner supports its challenge with a Declaration by Alexander H. Slocum, Ph.D.  Ex. 1013.  Patent Owner supports its Preliminary Response with a Declaration by Daniel Maynes, Ph. D.  Ex. 2023.

   *C. The '658 Patent*

   The '658 patent, titled "Rinseable Splash Shield and Method of Use," issued April 21, 2009, from an application filed November 22, 2005.  The '658 patent is directed to a machine for mixing liquids and devices for preventing splashing of liquids during mixing, in particular for mixing and blending drinks such as frozen milkshakes, coffee drinks, or smoothies.  Ex. 1001, 1:12–15, 2:38–49.  The '658 patent describes that "blending, whipping, stirring, etc. the food or beverage" can "be done using a rotary blade or mixer which is lowered into a container holding the food or beverage, or which is held in place as the container is advanced towards the

---

[2] U.S. Patent No. 6,164,575, issued December 26, 2000, to Karkos ("Karkos").  Ex. 1004.
[3] U.S. Patent No. 2,995,158, issued August 8, 1961, to Oberg ("Oberg").  Ex. 1005.
[4] U.S. Patent No. 5,439,289, issued August 8, 1995, to Neilson ("Neilson").  Ex. 1006.

IPR2017-00765
Patent 7,520,658 B2

rotary blade/mixer." *Id.* at 1:18–24.  The '658 patent describes the problem that "material can splash from the cup onto the drink machine and surrounding area." *Id.* at 1:48–49.  The '658 patent addresses the problem by providing a drink mixer having a splash shield located on top of the cup to avoid splashing during mixing.  *Id.* at 1:64–67.

Figure 1 of the '658 patent, reproduced below, depicts a preferred embodiment:



FIG. 1

Figure 1, above, depicts mixing machine 100 having cup holder 16 that supports cup 14.  *Id.* at 2:54–57.  The cup holder is mounted to carriage 18 that is moveable along motorized vertical rail 20 to lift the cup (arrow $A_1$) through hinged doors 36 into a blending chamber (enclosure 40).  *Id.* at 2:57–64, 3:41–42, Fig. 5.  As the top of the cup enters the blending chamber, it contacts the underside of splash shield 22, which is preferably comprised

5

IPR2017-00765
Patent 7,520,658 B2

of a lid proportioned to seat along the upper edge of cup 14.  *Id.* at 3:12–14, 3:51–54.  The splash shield includes upper opening 24 and larger lower opening 26, and shaft 12 extends through the openings such that mixing blade 10 is positioned beneath the splash shield, as depicted in Figure 3 below.  *Id.* at 3:14–17.



**FIG. 3**

As depicted in Figure 3, above, when the splash shield is raised relative to the shaft, the ribs of the splash shield separate from the tapered portion at the lower end of the shaft.  *Id.* at 3:25–27, 3:54–58.  When the splash shield is lowered relative to the shaft, the splash shield contacts the tapered portion of the shaft (Figure 1).  *Id.* at 3:22–25.  During mixing, holder 16 (Figure 1) reciprocates along motorized vertical rail 20 to move the cup up and down, thereby allowing mixing blade 10 to pass through the full contents of the cup more than once.  *Id.* at 2:57–64, 3:5–8, 3:58–64.

6

IPR2017-00765
Patent 7,520,658 B2

Alternatively, shaft 12 and rotating blade 10 may be lowered while the cup and cup holder remain in place, and the mixing blade reciprocates through the contents of the cup.  *Id.* at 3:8–11, 3:61–64.

### D. Challenged Claims

Petitioner challenges claims 1 and 5–11 of the '658 patent.

Independent claim 1 is illustrative and reproduced below:

> 1. A mixing machine for mixing a liquid contained in a vessel having an opening, the mixing machine comprising:
> a holder coupled to the mixing machine, the holder proportioned to receive a vessel;
> a rotatable mixing element extendable through the opening into the vessel positioned in the holder, for mixing the contents of the vessel;
> a motor operatively coupled to at least one of the holder and the mixing element to effect axial translation of the mixing element between first and second positions within the vessel, the mixing element positioned further from the opening when in the first position than when in the second position;
> a shaft; and
> a splash shield slidable on the shaft between first and second positions, the splash shield in the second position positionable covering the opening of the vessel and being unrestrained against sliding movement on the shaft in a direction away from the opening, the splash shield having sufficient mass to retain the vessel within the holder during relative axial movement of the mixing element and vessel from the first position to the second position when liquid is present in the vessel.

## II.    ANALYSIS

### A.  Principles of Law

The Board has discretion not to institute an *inter partes* review.  35 U.S.C. § 314(a); *Harmonic Inc. v. Avid Tech, Inc.*, 815 F.3d 1356, 1367

IPR2017-00765
Patent 7,520,658 B2

(Fed. Cir. 2016) ("the PTO is permitted, but never compelled, to institute an IPR proceeding"); *see also* 37 C.F.R. § 42.108(a) ("When instituting inter partes review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim.").  When exercising that discretion, the Board may take into account whether "the same or substantially the same prior art or arguments previously were presented to the Office."  35 U.S.C. § 325(d); *see Conopco, Inc. v. The Proctor & Gamble Co.*, Case IPR2014-00628, slip op. 5–10 (PTAB October 20, 2014) (Paper 21) (declining to institute because substantially the same arguments previously were presented to the Board). The issue of whether substantially the same arguments were raised previously in IPR2016-01105 arises in the present case.

In addition, when determining whether to exercise our discretion not to institute a trial proceeding under 35 U.S.C. § 314(a), we seek to balance the equities between the parties, i.e., Petitioner's desire to be heard against Patent Owner's interest in avoiding harassment through repeated challenges. *See* H.R. Rep. No. 112-98, pt.1, at 48 (2011) (post-grant proceedings conducted under the AIA "are not to be used as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent.  Doing so would frustrate the purpose of the section as providing quick and cost effective alternatives to litigation."). In circumstances such as the present case, the Board considers the potential inequity of a petitioner filing serial attacks against the same claims of a patent, while benefiting from patent owner's arguments and/or the Board's decision in prior cases.  *See, e.g.*, *Nautilus Hyosung Inc. v. Diebold, Inc.*, Case IPR2017-00426 slip op. at 12–16 (PTAB June 22, 2017) (Paper 17)

8

IPR2017-00765
Patent 7,520,658 B2

(citing *Xactware Sols.*, *Inc. v. Eagle View Techs., Inc.*, Case IPR2017-00034, slip op. at 6–11 (PTAB April 13, 2017) (Paper 9); *Baker Hughes Inc. v. LiquidPower Specialty Prods., Inc.*, Case IPR2016-01896, slip op. at 9–11 (PTAB March 31, 2017) (Paper 10); *Duk San Neolux Co., Ltd. v. Idemitsu Kosan Co., Ltd.*, Case IPR2017-00197, slip op. at 4–11 (PTAB March 31, 2017) (Paper 10); *NVIDIA Corp. v. Samsung Elec. Co.*, Case IPR2016-00134, slip op. at 8 (PTAB May 4, 2016) (Paper 9); *Toyota Motor Corp. v. Cellport Sys., Inc.*, Case IPR2015-01423, slip op. at 8 (PTAB Oct. 28, 2015) (Paper 7)); *see also Conopco*, Case IPR2014-00628, slip op. at 11–12. Therefore, we must balance the parties' competing interests when determining whether to exercise our discretion and decline to institute. *Id.*

   *B. IPR2016-01105*

   Petitioner seeks *inter partes* review of claims 1 and 5–11 of the '658 patent for a second time.  Pet. 1; *see* Ex. 1008 (Decision denying institution in IPR2016-01105, Paper 10, at 2).  On November 30, 2016, in IPR2016-1105, we denied institution of *inter partes* review of challenged claims 1 and 5–11 of the '658 patent.  Ex. 1008 ("Decision").  Our Decision resolved Patent Owner's statutory bar defense to the petition (raised again in the present case (Prelim. Resp. 50–59)), construed disputed claim language (addressed again here (Pet.18–20; Prelim. Resp. 12–17)), and decided not to institute review based on three substantive grounds of challenge raised by Petitioner that were supported by a declaration of Mr. Slocum[5]:

---

[5] Mr. Slocum's declaration is Exhibit 1008 in IPR2016-01105.

IPR2017-00765
Patent 7,520,658 B2

| Reference[s] | Statutory Basis | Challenged Claims |
|---|---|---|
| Neilson[6] | § 102(b) | 1 and 6–11 |
| Neilson and Brown[7] | § 103 | 1 and 5–11 |
| Neilson, Barnard,[8] and Kelly[9] | § 103 | 1 and 5–11 |

Ex. 1008. The Decision hinged on the rejection of Petitioner's assertion that Neilson, Brown, Barnard, and/or Kelly inherently disclosed the claimed splash shield having a "sufficient mass" and being configured for "unrestrained" upward sliding movement along the shaft of the mixer, in accordance with our construction of those claim terms. *Id.* at 13–23, 26–35.

   *C. Discussion*

   Petitioner expressly acknowledges that it has responded to the Board's claim construction and Decision in IPR2016-01105 by presenting "new art and arguments" challenging the same claims of the '658 patent in the present Petition. Pet. 6. Petitioner's arguments, however, are not new. This is precisely the type of serial challenge we have consistently rejected in the past. Petitioner has presented five more substantive challenges, leveraging Patent Owner's earlier arguments and the Board's Decision in IPR2016-

---

[6] Exhibit 1002 in IPR2016-01105.
[7] U.S. Patent Publication No. 2002/0189460 A1, filed April 11, 2002, published December 19, 2002, to Brown et al. ("Brown"). Exhibit 1003 in IPR2016-01105.
[8] U.S. Patent No. 4,822,175, issued April 18, 1989, to Barnard et al. ("Barnard"). Exhibit 1004 in IPR2016-01105.
[9] U.S. Patent No. 4,740,088, issued April 26, 1988, to Kelly ("Kelly"). Exhibit 1007 in IPR2016-01105.

IPR2017-00765
Patent 7,520,658 B2

01105, while attempting to excuse its failure to present the Sato, Karkos, and Oberg references in an earlier petition.  *Id.* at 6–7.  We are not persuaded.

Sato, which replaces Neilson as an alleged anticipatory reference under § 102(b) in the instant Petition, was published nearly 30 years ago. Ex. 1003, 2 (43).  Karkos and Oberg are U.S. patents that issued on December 26, 2000 (Ex. 1004) and August 8, 1961 (Ex. 1005), respectively. Petitioner asserts that Sato, Karkos, and Oberg were not revealed in two prior art searches commissioned by Petitioner.  Pet. 6.  Petitioner has not shown, however, that those references were not available when Petitioner filed the petition in IPR2016-01105.  *Id.*  We decline Petitioner's invitation to provide a second chance merely because Petitioner had retained "highly experienced searchers" the first time around.  *Id.*  Petitioner's explanations of how Sato, Karkos, and Oberg were recently "discovered" by Petitioner (Pet. 6–7) do not convince us to deviate from established policy and practice.

Petitioner's next argument, that it recently sought reexamination for the '377 patent – when it apparently recognized the import of Oberg regarding the '658 patent claims – but did not seek *inter partes* review of the '377 patent because of "concerns" regarding Patent Owner's Section 315(b) statutory bar contentions (Pet. 6–7), makes little sense.  Petitioner's earlier petitions evidenced no such concerns.  We also fail to see why Patent Owner should be made to share a burden created exclusively by Petitioner's tactical decisions.

Petitioner's reliance in the Petition on additional references, beyond those relied upon in IPR2016-01105, does not necessarily mean Petitioner has presented "new" prior art or "new" arguments.  We have compared the

IPR2017-00765
Patent 7,520,658 B2

prior art and arguments raised in the instant Petition to those raised in the
IPR2016-01105 petition.  For the reasons that follow, we determine
Petitioner presents substantially the same arguments that it presented
previously, which we resolved in our Decision.

First, our Decision in IPR2016-01105 resolved a seminal dispute
between the parties by construing the "sufficient mass" and "unrestrained"
sliding movement limitations, a decision Petitioner attempts to leverage in
its follow-on Petition.  Ex. 1008, 13–23.  Second, in IPR2016-01105 we
determined Petitioner had not provided sufficient evidence that Neilson
inherently anticipated those limitations, substantially the same argument
Petitioner raises again in its follow-on Petition.  *Id.* at 24–29.  Petitioner
argues that Sato inherently anticipates claim 1 because one of skill in the art
"would have understood" Sato to satisfy those limitations of claim 1.  Pet. 24
(citing Ex. 1013 ¶¶ 43–46).  Petitioner makes the same inherency argument
in an obviousness context with respect to the combination of Sato and
Karkos, where neither reference expressly discloses the "sufficient mass" or
"unrestrained" sliding movement limitations.  Pet. 30–31 (citing Ex. 1013 ¶¶
60–62).  We resolved those arguments in IPR2016-01105.  Ex. 1008, 29–31.
As we stated in our Decision with respect to the asserted combination of
Nielson and Brown, "[r]elying on selected inferences drawn from such
nondisclosure, however, is not sufficient to satisfy the inherency standard
when other equally plausible inferences are not ruled out."  *Id.* at 30.

Based on the information presented, we are persuaded that the instant
Petition raises "substantially the same . . . arguments" that "previously were
presented to the Office" in the earlier IPR2016-01105 petition.  35 U.S.C.
§ 325(d).

12

IPR2017-00765
Patent 7,520,658 B2

We also are troubled by the implications of Petitioner's overarching premise – that it is cost-effective and appropriate to wait for a claim construction and institution decision by the Board, and then launch a follow-on patent challenge in reliance on additional references that challenge the same patent claims already addressed by the Board.  Pet. 7–8.  Such tactics increase the costs to Patent Owner and impose unnecessary demands on the finite resources of the Board.  Petitioner argues, for example, that the pendency of the trial proceeding instituted in IPR2017-01107 regarding a related patent, and the prospect that "Patent Owner will be before the Board anyway if IPR2017-00756 is instituted [regarding the '150 patent]," should outweigh our concern over the repetitive nature of Petitioner's challenges to the '658 patent.[10]  Pet.  7–8.  To the contrary, *inter partes* review proceedings were designed to provide a "quick and cost effective" litigation alternative, and the Office was advised to avoid patent owner harassment through repetitive administrative challenges.  *See* H.R. Rep. No. 112-98, pt.1, at 48 (2011) (quoted above).  A final decision in IPR2016-01107, moreover, will issue not later than the statutory due date of November 30, 2017, eight months earlier than a final decision here if we were to institute in the present case.  Such a delay, particularly after the Board has denied review of the challenged '658 patent claims in IPR2016-01105, would not be consistent with a prompt resolution of the parties' dispute, a point

---

[10] We denied institution in IPR2017-00756 on July 21, 2017.  IPR2017-00756, Paper 7.

13

IPR2017-00765
Patent 7,520,658 B2

recognized by the District Court in denying Petitioner's motion for a stay of the litigation between these two direct competitors.  Ex. 2002.[11]

Congress made clear that we have a responsibility to be vigilant in preventing a petitioner from frustrating the purpose of post-grant review proceedings.  H.R. Rep. No. 112-98, pt.1, at 48 (2011).  We fulfilled our responsibility by timely providing a thorough Decision of the relevant issues and arguments raised by Petitioner's multiple challenges to claims 1 and 5–11 of the '658 patent in IPR2016-01105.  Petitioner did not request rehearing of that Decision.  We will not rehash substantially the same issues and arguments presented in the guise of "new art and arguments."

On this record, therefore, we exercise our discretion and do not institute *inter partes* review.  35 U.S.C. §§ 314(a), 325(d).

III.    ORDER

Accordingly, it is

ORDERED that the Petition is denied.

---

[11] Petitioner also cites to Exhibit 1031, page 21 in support of the argument that efficiency will be served by the estoppel effect of 35 U.S.C. § 315(e), if we were to institute a trial proceeding in the present case.  Pet. 8.  Petitioner does not analyze the import of Exhibit 1031, a non-precedential Board decision, or explain why it was not properly cited and discussed in the Petition.  In the absence of any analysis, we give little or no weight to the argument.

IPR2017-00765
Patent 7,520,658 B2


FOR PETITIONER:

William S. Foster, Jr.
Christopher P. Bruenjes
John G. Smith
DRINKER BIDDLE & REATH LLP
william.foster@dbr.com
christopher.bruenjes@dbr.com
john.smith@dbr.com


FOR PATENT OWNER:

Guy W. Chambers
SIDEMAN & BANCCROFT LLP
gchambers@sideman.com

Timothy E. Bianchi
SCHWEGMAN LUNDBERG & WOESSNER, P.A.
tbianchi@slwip.com

# EXHIBIT C

Trials@uspto.gov
571-272-7822

Paper No. 9
Entered: April 25, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

HAMILTON BEACH BRANDS, INC.,
Petitioner,

v.

F'REAL FOOD, LLC,
Patent Owner.
_____

Case IPR2017-00765
Patent 7,520,658 B2
_____

Before LORA M. GREEN, JON B. TORNQUIST, and
ELIZABETH M. ROESEL, *Administrative Patent Judges.*

GREEN, *Administrative Patent Judge*.

DECISION
Denying Petitioner's Request for Rehearing
*37 C.F.R. § 42.71*

IPR2017-00765
Patent 7,520,658 B2

Petitioner filed a Request for Rehearing (Paper 8, "Reh'g Req.") of our Decision denying institution of *inter partes* review (Paper 7, "Decision" or "Dec.") of claims 1 and 5–11 of U.S. Patent No. 7,520,658 B2 (Ex. 1001, "the '658 patent"). We deny Petitioner's Request for Rehearing for the reasons set forth below.

## STANDARD OF REVIEW

When reconsidering a decision on institution, the Board reviews the decision for an abuse of discretion. *See* 37 C.F.R § 42.71(c). "The burden of showing that a decision should be modified lies with the party challenging the decision." Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012). In its request for rehearing, the dissatisfied party must, in relevant part, "specifically identify all matters the party believes the Board misapprehended or overlooked." 37 C.F.R. § 42.71(d); Office Patent Trial Practice Guide, 77 Fed. Reg. at 48,768. We address Petitioner's arguments with those principles in mind.

## ANALYSIS

Independent claim 1 is directed to a mixing machine for mixing a liquid, such as a beverage, wherein the machine has a vessel with an opening and comprises a holder for receiving the vessel; a rotatable mixing element; a motor operatively coupled to at least one of the holder and the mixing element; a shaft; and "a splash shield slidable on the shaft between first and second positions, the splash shield in the second position positionable covering the opening of the vessel and being unrestrained against sliding movement on the shaft in a direction away from the opening, the splash shield having sufficient mass to retain the vessel within the holder during relative axial movement of the mixing element and vessel from the first

2

IPR2017-00765
Patent 7,520,658 B2

position to the second position when liquid is present in the vessel." *See* Ex. 1001, 4:45–67.

Independent claim 6 is drawn to a method for retaining a vessel in a holder while mixing the contents of the vessel, the method comprising the steps of providing the vessel containing the contents to be mixed wherein the vessel includes an opening; providing a mixing machine having a holder for receiving the vessel and a shield; positioning the vessel in the holder; positioning the shield to cover the vessel such that "the shield when contacting the vessel being unrestrained against upward movement away from the opening"; and "with the vessel positioned in the holder, using a motor to translate at least one of the mixing element and the holder such that the mixing element passes through the contents of the vessel, the mass of the splash shield preventing separation of the holder and the vessel during translation." *See id.* at 5:16–6:10.

Petitioner challenged the claims as follows (Pet. 8–9):

| Reference[s] | Statutory Basis | Challenged Claims |
|---|---|---|
| Sato[1] | § 102(b) | 1 and 6–9 |
| Sato and Karkos[2] | § 103 | 1 and 5–9 |

---

[1] Japanese Utility Model No. H04-136787 U1, published December 18, 1992, to Sato et al., Ex. 1002 (Japanese language original), and certified English language translation, Ex. 1003 ("Sato").

[2] U.S. Patent No. 6,164,575, issued December 26, 2000, to Karkos ("Karkos").  Ex. 1004.

IPR2017-00765
Patent 7,520,658 B2

| Reference[s] | Statutory Basis | Challenged Claims |
|---|---|---|
| Sato and Oberg[3] | § 103 | 10 and 11 |
| Sato, Karkos, and Oberg | § 103 | 10 and 11 |
| Neilson[4] and Karkos | § 103 | 1 and 5–11 |

In our Decision denying institution, we exercised our discretion and declined to institute *inter partes* review under 35 U.S.C. § 314(a) and 35 U.S.C. § 325(d).  Dec. 14.  Petitioner contends in its Request for Rehearing, however, that we erred in determining "that the new prior art and arguments presented in the Petition were not new compared to the different art and arguments presented in IPR2016-01105."  Reh'g Req. 1.

Specifically, Petitioner contends that the "whole basis for the decision not to institute [*inter partes* review] is based on the erroneous assumption that Petitioner relied on the same arguments in [the] Petition as in IPR2016-01105."  *Id.* at 4.  Petitioner argues that in the Decision denying institution we misinterpreted Karkos, arguing that contrary to the characterization of that reference in the Decision, and unlike the references that were asserted in IPR2016-01105, "Karkos <u>explicitly</u> discloses a cover having a 'sufficient mass' and 'unrestrained' sliding movement,"  *Id.* at 1; *see also id.* at 6–9.

---

[3] U.S. Patent No. 2,995,158, issued August 8, 1961, to Oberg ("Oberg"). Ex. 1005.

[4] U.S. Patent No. 5,439,289, issued August 8, 1995, to Neilson ("Neilson"). Ex. 1006.

4

IPR2017-00765
Patent 7,520,658 B2

As to Sato, Petitioner argues again, unlike Neilson[5] and Brown[6] that were relied upon in IPR2016-01105, Sato teaches that "cup cover 5 does not include any restraint other than the weight of cup cover 5 and cover support frame 53 sliding along shaft 31." *Id.* at 1–2; *see also id.* at 10–13.

We have considered Petitioner's arguments in its Rehearing Request, and conclude that we did not abuse our discretion in declining to institute *inter partes* review in the instant proceeding. As we stated in the Decision denying institution:

> The Board has discretion not to institute an *inter partes* review. 35 U.S.C. § 314(a); *Harmonic Inc. v. Avid Tech, Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("the PTO is permitted, but never compelled, to institute an IPR proceeding"); *see also* 37 C.F.R. § 42.108(a) ("When instituting inter partes review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim."). When exercising that discretion, the Board may take into account whether "the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d); *see Conopco, Inc. v. The Proctor & Gamble Co.*, Case IPR2014-00628, slip op. 5–10 (PTAB October 20, 2014) (Paper 21) (declining to institute because substantially the same arguments previously were presented to the Board). The issue of whether substantially the same arguments were raised previously in IPR2016-01105 arises in the present case.
>
> In addition, when determining whether to exercise our discretion not to institute a trial proceeding under 35 U.S.C. § 314(a), we seek to balance the equities between the parties, i.e., Petitioner's desire to be heard against Patent Owner's interest in avoiding harassment through repeated challenges.

---

[5] Exhibit 1002 in IPR2016-01105.

[6] U.S. Patent Publication No. 2002/0189460 A1, filed April 11, 2002, published December 19, 2002, to Brown et al. ("Brown"). Exhibit 1003 in IPR2016-01105.

IPR2017-00765
Patent 7,520,658 B2

> *See* H.R. Rep. No. 112-98, pt.1, at 48 (2011) (post-grant
> proceedings conducted under the AIA "are not to be used as
> tools for harassment or a means to prevent market entry through
> repeated litigation and administrative attacks on the validity of
> a patent. Doing so would frustrate the purpose of the section as
> providing quick and cost effective alternatives to litigation.").
> In circumstances such as the present case, the Board considers
> the potential inequity of a petitioner filing serial attacks against
> the same claims of a patent, while benefiting from patent
> owner's arguments and/or the Board's decision in prior cases.
> *See, e.g.*, *Nautilus Hyosung Inc. v. Diebold, Inc.*, Case
> IPR2017-00426 slip op. at 12–16 (PTAB June 22, 2017) (Paper
> 17) (citing *Xactware Sols.*, *Inc. v. Eagle View Techs., Inc.*, Case
> IPR2017-00034, slip op. at 6–11 (PTAB April 13, 2017) (Paper
> 9); *Baker Hughes Inc. v. LiquidPower Specialty Prods., Inc.*,
> Case IPR2016-01896, slip op. at 9–11 (PTAB March 31, 2017)
> (Paper 10); *Duk San Neolux Co., Ltd. v. Idemitsu Kosan Co.,
> Ltd.*, Case IPR2017-00197, slip op. at 4–11 (PTAB March 31,
> 2017) (Paper 10); *NVIDIA Corp. v. Samsung Elec. Co.*, Case
> IPR2016-00134, slip op. at 8 (PTAB May 4, 2016) (Paper 9);
> *Toyota Motor Corp. v. Cellport Sys., Inc.*, Case IPR2015-
> 01423, slip op. at 8 (PTAB Oct. 28, 2015) (Paper 7)); *see also
> Conopco*, Case IPR2014-00628, slip op. at 11–12. Therefore,
> we must balance the parties' competing interests when
> determining whether to exercise our discretion and decline to
> institute. *Id.*

Dec. 7–9.

According to Petitioner, institution was denied "solely under 35
U.S.C. § 325(d) on the basis 'that the instant Petition raises 'substantially the
same . . . arguments' that 'previously were presented to the Office' in the
earlier IPR2016-01105.'" Reh'g Req. 3 (quoting Dec. 12). In the Decision
denying institution, however, that was only one of the factors that was
considered and discussed in determining that we should exercise our
discretion and decline to institute *inter partes* review.

6

IPR2017-00765
Patent 7,520,658 B2

In particular, the Decision noted that Petitioner "leverage[ed] Patent
Owner's earlier arguments and the Board's Decision in IPR2016-01105,
while attempting to excuse its failure to present the Sato, Karkos, and Oberg
references in an earlier petition." Dec. 10–11 (citing Pet. 6–7). The
Decision noted further that the decision denying institution in IPR2016-
01105 "resolved a seminal dispute between the parties by construing the
'sufficient mass' and 'unrestrained' sliding movement limitations." *Id.* at
12.

An important reason for denying institution in the instant proceeding
was that Petitioner had the advantage of Patent Owner's preliminary
response in IPR2016-01105, as well as the claim construction and analysis
set forth in the decision denying institution in that proceeding. That is,
Petitioner had the benefit of that information in crafting the challenges set
forth in the instant proceeding, and, thus, was able to address Patent Owner's
arguments made in its preliminary response in IPR2016-01105, as well as
address the concerns of the Board set forth in the decision denying
institution in IPR2016-01105. Consideration of these factors is consistent
with the principles set forth in *General Plastic Indus. Co. v. Canon
Kabushiki Kaisha*, Case IPR2016-01357, 15−19 (PTAB Sept. 6, 2017)
(Paper 19) ("*General Plastics*") (designated precedential Oct. 18, 2017)
(setting forth a non-exhaustive list of factors to be considered in determining
whether to institute a follow-on petition, including whether the same
petitioner previously filed a petition directed to the same claims of the same
patent, and whether, at the time of filing of the second petition, the petitioner
already received the patent owner's preliminary response to the first petition

IPR2017-00765
Patent 7,520,658 B2

or received the Board's decision on whether to institute review in the first petition).

We noted further that Sato "was published nearly 30 years ago," and Karkos issued on December 26, 2000.  Dec. 11.  We determined that Petitioner had not established that those references were not available to Petitioner when it filed the petition in IPR2016-01105.  *Id.*  We declined to provide a second chance merely because Petitioner's "highly experienced searchers" did not find those references before the filing of the petition in IPR2015-01105.  *Id.* (citing Pet. 6).  That determination was another factor that informed our decision to exercise our discretion and decline to institute *inter partes* review in the instant proceeding.  *See, e.g.*, *General Plastics* at 16 (noting that other factors to be considered in granting a follow-on petition are whether at the time of filing of the first petition petitioner knew of the prior art asserted in the second petition or should have known of it, and whether the petitioner provides adequate explanation for the time elapsed between the filings of multiple petitions directed to the same claims of the same patent).

Finally, we noted that we were "troubled by the implications of Petitioner's overarching premise – that it is cost-effective and appropriate to wait for a claim construction and institution decision by the Board, and then launch a follow-on patent challenge in reliance on additional references that challenge the same patent claims already addressed by the Board."  Dec. 13 (citing Pet. 7–8).  As noted in the Decision denying institution, however, "[s]uch tactics increase the costs to Patent Owner and impose unnecessary demands on the finite resources of the Board."  *Id.*; *see, e.g.*, *General*

IPR2017-00765
Patent 7,520,658 B2

*Plastics* at 16 (noting another factor to be considered is the finite resources of the Board).

Thus, even if we were to accept, *arguendo*, Petitioner's argument that we erred in determining that the instant Petition presents substantially the same arguments as the petition in IPR2016-01105, as discussed above, that was only one factor of the analysis. *See General Plastics* at 19 ("§ 325(d) is not intended to be the sole factor in the exercise of discretion under § 314(a)"). For the additional reasons set forth in the Decision denying institution in this proceeding, which Petitioner did not address in its Request for Rehearing, we conclude that we did not abuse our discretion under 35 U.S.C. § 314(a) and 35 U.S.C. § 325(d) in declining to institute *inter partes* review in the instant proceeding.

ORDER

It is

ORDERED that Petitioner's request for rehearing of the Decision instituting an *inter partes* review of claim 1 and 5–11 of U.S. Patent No. 7,520,658 B2 is *denied*.

9

IPR2017-00765
Patent 7,520,658 B2

FOR PETITIONER:

William S. Foster, Jr.
Christopher P. Bruenjes
John G. Smith
DRINKER BIDDLE & REATH LLP
william.foster@dbr.com
christopher.bruenjes@dbr.com
john.smith@dbr.com


FOR PATENT OWNER:

Guy W. Chambers
SIDEMAN & BANCCROFT LLP
gchambers@sideman.com

Timothy E. Bianchi
SCHWEGMAN LUNDBERG & WOESSNER, P.A.
tbianchi@slwip.com

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| F'REAL FOODS, LLC , and<br>RICH PRODUCTS CORPORATION<br><br>          Plaintiffs,<br><br>     v.<br><br>HAMILTON BEACH BRANDS, INC.<br>HERSHEY CREAMERY COMPANY and<br>PAUL MILLS D/B/A MILLS BROTHERS<br>MARKETS,<br><br>         Defendants. | C.A. No. 16-41-GMS |

**DEFENDANT HAMILTON BEACH BRANDS, INC.'S**
**FINAL PATENT INVALIDITY CONTENTIONS**

## I.  INTRODUCTION

Pursuant to the Scheduling Order (D.I. 53), and the Stipulation and Order Amending the Scheduling Order (D.I. 82), Defendant Hamilton Beach Brands, Inc. ("Hamilton Beach") submits its Final Patent Invalidity Contentions with respect to the Patents-in-Suit and claims that Plaintiffs f'real Foods, L.L.C. ("f'real") and Rich Products Corporation ("Rich") (collectively "Plaintiffs") asserted against Hamilton Beach in their Final Infringement Contentions ("Infringement Contentions").  Specifically, Plaintiffs' Infringement Contentions allege that Hamilton Beach's MIC2000, BIC2000, MIC/BIC3000-DQ, and IMI2000 commercial blenders practice various combinations of claims 1-4, 6, 9, 11-14, 18-22, 25, and 27 of U.S. Patent No. 5,803,377 ("the '377 Patent"); claims 15, 20, and 22 of U.S. Patent No. 7,144,150 ("the '150 Patent"); claims 1 and 5-11 of U.S. Patent No. 7,520,658 ("the '658 Patent"); and claim 21 of U.S. Patent No. 7,520,662 ("the '662 Patent") (collectively "the Asserted Claims").

another and diligently reduced to practice before the alleged conception and reduction to practice of the Asserted Claims of the Patents-in-Suit, Hamilton Beach alleges that such prior art inventions invalidate the Plaintiffs' Patents-in-Suit under 35 U.S.C. § 102(g).

**F.      Invalidity Charts**

Each Asserted Claim is anticipated and/or rendered obvious by prior art.  Hamilton Beach has provided the accompanying exemplary charts for the Patents-in-Suit as listed in the table below.   Individual claim charts illustrate where each element of each Asserted Claim can be found in each item of the listed prior art.  To the extent that a claim chart was not provided for any of the references identified above, such references render certain limitations of the Asserted Claims obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references for which a claim chart has been provided, for the reasons explained in detail in Section III.G.  As stated above and herein, Hamilton Beach reserves the right to supplement the charts, and the table below, as appropriate.

To the extent that the Court finds that a reference does not expressly disclose certain limitations in the Asserted Claims, such limitations would have been inherent and/or obvious. By mapping the claim language of the Patents-in-Suit to the references, Hamilton Beach does not imply or admit that the claim language satisfies Section 112 of the Patent Act or that the claim language has patentable weight.

Citations from the listed references are not a ratification or acceptance of the manner in which Plaintiffs apply particular claim elements to the features and functions of the accused instrumentalities.   The citations are instead intended to demonstrate that, if certain claim elements are applied against the prior art in the same manner as Plaintiffs apply them in their Final Infringement Contentions, then certain prior art discloses those claim elements to the same

extent.  The prior art may also disclose these same claim elements if the claim elements are applied differently than in the Final Infringement Contentions.

The table below identifies each Exhibits with the corresponding claim chart for each prior art reference identified above with respect to the Asserted Claims of a particular patent.

| Exhibit | Claim Chart |
|---------|-------------|
| A | '662 Patent Claims Invalid in View of Admitted Prior Art ("APA") |
| B | '662 Patent Claims Invalid in View of U.S. Pat. No. 5,439,289 ("Neilson") |
| C | '150 Patent Claims Invalid in View of U.S. Pat. No. 5,439,289 ("Neilson") |
| D | '150 Patent Claims Invalid in View of JP Pat. Pub No. 1992-136787 A ("Sato") |
| E | '658 Patent Claims Invalid in View of U.S. Pat. No. 5,439,289 ("Neilson") |
| F | '658 Patent Claims Invalid in View of JP Pat. Pub No. 1992-136787 A ("Sato") |
| G | '658 Patent Claims Invalid in View of U.S. Pat. No. 2,995,158 ("Oberg") |
| H | '377 Patent Claims Invalid in View of U.S. Pat. No. 2,995,158  ("Oberg") |
| I | '377 Patent Claims Invalid in View of U.S. Pat. No. 3,295,997 ("Tomlinson") |

### G.    Obvious Combinations and Reasons to Modify, Extend, or Combine

The prior art identified in these Final Invalidity Contentions, including the exemplary charts attached as Exhibits A to I, demonstrate that the concepts of the Asserted Claims were known to persons of ordinary skill in the art prior to the alleged invention of the Patents-in-Suit, and Hamilton Beach believes that no showing of a specific motivation to combine prior art is required to combine the references disclosed above and in the attached claim charts.  There were reasons to make each combination; each combination of art would not have produced unexpected results; and each combination at most would simply represent a known alternative to one of ordinary skill in the art.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 415-18 (2007).  Indeed, the Supreme Court held that a person of ordinary skill is "a person of creativity, not an

## V.    ACCOMPANYING DOCUMENT PRODUCTION

Hamilton Beach has produced invalidating prior art references, at least as part of the production bearing Bates ranges HBBF0001337-1698 and will be supplemented in view of these Invalidity Contentions.   These prior art references and other evidence are being produced in support of the accompanying invalidity claim charts.   Hamilton Beach's search for prior art references, additional documentation, and/or corroborating evidence is ongoing.   Accordingly, Hamilton Beach reserves the right to continue to supplement its production as Hamilton Beach obtains additional prior art references, documentation, and/or corroborating evidence concerning invalidity during the course of discovery.

Dated:  February 12, 2018                    Respectfully submitted,

                                            */s/ Thatcher A. Rahmeier*
                                            Francis DiGiovanni (#3189)
                                            Thatcher A. Rahmeier (#5222)
                                            DRINKER BIDDLE & REATH LLP
                                            222 Delaware Avenue, Suite 1410
                                            Wilmington, DE 19801
                                            (302) 467-4200
                                            francis.digiovanni@dbr.com
                                            thatcher.rahmeier@dbr.com

                                            *OF COUNSEL:*
                                            William S. Foster, Jr.
                                            Brianna L. Silverstein
                                            DRINKER BIDDLE & REATH LLP
                                            1500 K Street, N.W.
                                            Washington, DC 20005-1209
                                            (202) 842-8800
                                            william.foster@dbr.com
                                            brianna.silverstein@dbr.com

                                            *Attorneys for Defendant Hamilton Beach
                                            Brands, Inc.*

**EXHIBIT A**

**Invalidity of U.S. Patent No. 7,520,662 ("'662 Patent"):**
**Admitted Prior Art (APA)**

Admitted Prior Art (<u>APA</u>) is prior art to the '662 patent at least under 35 U.S.C. §§ 102(a), (b), and (e).

To the extent it is found that <u>APA</u> does not expressly disclose certain limitations, those limitations are inherent.  Moreover, to the extent it is found that <u>APA</u> does not anticipate any asserted claim, <u>APA</u> renders it obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references identified in the cover pleading or herein.

This chart is subject to all reservations, objections, and disclaimers in Defendants' Invalidity Contentions, and any amendment, supplement, or modification thereof, which are incorporated herein by reference in their entirety.

| '662 Patent Claims | <u>APA</u> |
|---|---|
| **[21a]** A method for rinsing a splash shield on a mixing machine, the method comprising the steps of: | To the extent Plaintiffs contends that the preamble is limiting, and that the accused functionality meets this limitation, <u>APA</u> discloses it.  *See, e.g.*:<br><br><u>'662 Patent</u>, 1:48-63:  The "Background of the Invention" section of the '662 Patent discloses numerous prior art splash shields that engage a cup to minimize splashing when the contents of the cup are being mixed on mixing machines (*e.g.*, the "lids" of Neilson, U.S. Patent No. 5,328,263 by Jim L. Neilson ("Neilson II"), and U.S. Patent No. 5,145,250 by Heinrich Planck *et al.* ("Planck")). |

| '662 Patent Claims | APA |
|---|---|
| [21b] providing a vessel containing material to be mixed, the vessel including an opening: | To the extent Plaintiffs contends that the accused functionality meets this limitation, APA discloses it. *See, e.g.*:<br><br>Original claim 10 of the parent '150 Patent is a Jepson claim with a preamble that recites "On a mixing machine for mixing a liquid contained in a vessel having an opening."<br><br>'662 Patent, 1:49-53:  The "Background of the Invention" section of the '662 Patent discloses prior art references that "each describe a separate, dedicated lid placement mechanism that positions a lid onto a cup so as to minimize such splashing when the contents of the cup are being mixed." |
| [21c-1] further providing a mixing machine having a holder for receiving the vessel, | To the extent Plaintiffs contends that the accused functionality meets this limitation, APA discloses it. *See, e.g.*:<br><br>Original claim 10 of the parent '150 Patent is a Jepson claim with a preamble that recites "the mixing machine of a type including a holder for receiving the vessel."<br><br>'662 Patent, 1:35-38:  The "Background of the Invention" section of the '662 Patent recites "According to the [prior art] patents, when a milkshake or other frozen drink is to be made a serving cup containing the frozen block is positioned in a cup holder which forms a part of the frozen drink machine." |
| [21c-2] a rotatable mixing element extendable into the vessel for mixing the material, | To the extent Plaintiffs contends that the accused functionality meets this limitation, APA discloses it. *See, e.g.*:<br><br>Original claim 10 of the parent '150 Patent is a Jepson claim with a preamble that recites "a rotatable mixing element extendable into the vessel for mixing the contents of the vessel."<br><br>'662 Patent, 1:35-40:  The "Background of the Invention" section of the '662 Patent recites "According to the [prior art] patents, when a milkshake or other frozen drink is to be made . . . A rotating blade is lowered into the cup and bores through the frozen substance in the cup, grinding it into small frozen particles." |

| **'662 Patent Claims** | <u>**APA**</u> |
|---|---|
| [21c-3] a splash shield positionable to shield the opening of the vessel, | To the extent Plaintiffs contends that the accused functionality meets this limitation, <u>APA</u> discloses it.  *See, e.g.*: <br><br> <u>'662 Patent</u>, 1:48-59:  The "Background of the Invention" section of the '662 Patent discloses that material can splash from the cup onto the drink machine and surrounding area during mixing. Neilson II describes a separate, dedicated lid placement mechanism that positions a lid onto a cup so as to minimize such splashing when the contents of the cup are being mixed.  For example, "U.S. Pat. No. 5,145,250 (Planck) describes a mixing device wherein the lid and mixing device move axially together until the lid makes contact with the receptacle, at which time springs keep the lid in contact with the receptacle as the mixing head travels further into the receptacle." |

| '662 Patent Claims | APA |
|---|---|
| [21c-4] and a nozzle oriented towards the splash shield: | To the extent it is found that APA does not expressly disclose this limitation, this limitation is inherent.  Moreover, to the extent it is found that APA does not anticipate this claim, APA renders it obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references identified in the cover pleading or herein.<br><br>An example of such prior art is Kelly (US 4,740,088).  Kelly, 4:13-20:  "To complete the sanitary equipment, at least one spray device 56 is provided inside or about the enclosure 12. Such a spray device 56 may be rotatable and tiltable and is, for example, adjustable in such a manner so as to clean the interior of the auger, the mixing cone and the entire interior. Such a spray device 56 may have a valve . . . operable by a handle 60 and a hose, or collar connection 62 to the local water supply line."  Kelly, Fig. 1:  While spray device 56 is adjustable, spray device 56 is pre-positioned to be oriented toward a splash shield 30.<br><br>Another example of such prior art is Miller (US 2002/0048626A1).  Miller, [0055]:  "a water supply or sterilizing solution is dispensed through the valve 127 for delivery of the sterilizing solution or fresh water through a dedicated nozzle 129 for flushing and cleaning, . . . sterilizer nozzle 129 [has] an angle [that] permits the spindle 114 and spindle blades 116 to be hit directly with water or sterilizing solution."<br><br>Yet another example of such prior art is Hansen (WO 00/36925). Hansen, 2:18-19:  "at least one spray nozzle for pointing a water spray at the auger for washing purposes."  Hansen, 7:29-32:  "More than one nozzle is however conceivable, to improve the washing efficiency. The illustrated nozzle 10 is located besides the auger 3. Alternatively or additionally one or more nozzles may be located above the auger 3, to point a water spray down." |

| '662 Patent Claims | APA |
|---|---|
| [21d] after mixing the material in the vessel using the mixing element and with the splash shield shielding the vessel opening, unshielding the vessel opening and directing rinsing fluid onto the splash shield using the nozzle while isolating the vessel from the rinsing fluid. | To the extent it is found that APA does not expressly disclose this limitation, this limitation is inherent.  Moreover, to the extent it is found that APA does not anticipate this claim, APA renders it obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references identified in the cover pleading or herein.

An example of such prior art is Kelly (US 4,740,088).  Kelly, 4:13-20:  "To complete the sanitary equipment, at least one spray device 56 is provided inside or about the enclosure 12. Such a spray device 56 may be rotatable and tiltable and is, for example, adjustable in such a manner so as to clean the interior of the auger, the mixing cone and the entire interior. Such a spray device 56 may have a valve . . . operable by a handle 60 and a hose, or collar connection 62 to the local water supply line."

Another example of such prior art is Miller (US 2002/0048626A1).  Miller, [0055]:  "a water supply or sterilizing solution is dispensed through the valve 127 for delivery of the sterilizing solution or fresh water through a dedicated nozzle 129 for flushing and cleaning, . . . sterilizer nozzle 129 [has] an angle [that] permits the spindle 114 and spindle blades 116 to be hit directly with water or sterilizing solution."  Miller, [0038] and [0055]:  The container 16 is removed after mixing and before rinsing the spindle 114 and spindle blades 116 after each use.

Another Example of such prior art is Supervielle (US 1,592,788), which discloses removing the container from below the agitator before pressing a button to open the water valve and causing the water to spray on the agitator.  Supervielle, 2:31-40.

Yet another example of such prior art is Hansen (WO 00/36925). Hansen, 2:18-19:  "at least one spray nozzle for pointing a water spray at the auger for washing purposes."  Hansen, 7:29-32:  "More than one nozzle is however conceivable, to improve the washing efficiency. The illustrated nozzle 10 is located besides the auger 3. Alternatively or additionally one or more nozzles may be located above the auger 3, to point a water spray down." |

**EXHIBIT B**

**Invalidity of U.S. Patent No. 7,520,662 ("'662 Patent"):**
**Neilson, "Apparatus for Mixing Ingredients in a Receptacle," U.S. Patent No. 5,439,289 (August 8, 1995)**

U.S. Patent No. 5,439,289 issued on August 8, 1995 ("Neilson"), and is prior art to the '662 patent at least under 35 U.S.C. §§ 102(a), (b), and (e).

To the extent it is found that Neilson does not expressly disclose certain limitations, those limitations are inherent.  Moreover, to the extent it is found that Neilson does not anticipate any asserted claim, Neilson renders it obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references identified in the cover pleading or herein.

This chart is subject to all reservations, objections, and disclaimers in Defendants' Invalidity Contentions, and any amendment, supplement, or modification thereof, which are incorporated herein by reference in their entirety.

| '662 Patent Claims | Neilson |
|---|---|
| **[21a]** A method for rinsing a splash shield on a mixing machine, the method comprising the steps of: | To the extent Plaintiffs contends that the preamble is limiting, and that the accused functionality meets this limitation, Neilson discloses it.  *See, e.g.*: <br><br> Neilson, 3:1-9:  "Receptacle 14 . . . is disposed under a lid 16 having a top wall 18 . . . [and] tapered wall 20 [having] a lower rim 22 which is of a size and configuration corresponding to the top of the receptacle 14. That is, the rim 22 of lid 16 will engage the receptacle side wall when the lid and receptacle are axially aligned and brought into engagement." |

| '662 Patent Claims | Neilson |
|---|---|
| [21b] providing a vessel containing material to be mixed, the vessel including an opening: | To the extent Plaintiffs contends that the accused functionality meets this limitation, Neilson discloses it.  *See, e.g.*: <br><br> Neilson, 1:10-11: "mixing ingredients in a receptacle." <br><br> Neilson, 3:30-31: "Lid top wall 18 defines an aperture 40 therein which communicates with the lid recess 24." |
| [21c-1] further providing a mixing machine having a holder for receiving the vessel, a rotatable mixing element extendable into the vessel for mixing the material, | To the extent Plaintiffs contends that the accused functionality meets this limitation, Neilson discloses it.  *See, e.g.*: <br><br> Neilson, 2:62-64: "a platform 12 for supporting a receptacle in the form of a cup or container 14." <br><br> Neilson, 2:9-11: "Rotating means is provided for rotating the mixer shaft and mixer head within the receptacle." |
| [21c-2] a splash shield positionable to shield the opening of the vessel, | To the extent Plaintiffs contends that the accused functionality meets this limitation, Neilson discloses it.  *See, e.g.*: <br><br> Neilson, 3:1-9: "Receptacle 14 . . . is disposed under a lid 16 having a top wall 18 . . . [and] tapered wall 20 [having] a lower rim 22 which is of a size and configuration corresponding to the top of the receptacle 14. That is, the rim 22 of lid 16 will engage the receptacle side wall when the lid and receptacle are axially aligned and brought into engagement." |

| '662 Patent Claims | Neilson |
|---|---|
| [21c-3] and a nozzle oriented towards the splash shield: | To the extent it is found that Neilson does not expressly disclose this limitation, this limitation is inherent.  Moreover, to the extent it is found that Neilson does not anticipate this claim, Neilson renders it obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references identified in the cover pleading or herein.<br><br>An example of such prior art is Kelly (US 4,740,088).  Kelly, 4:13-20:  "To complete the sanitary equipment, at least one spray device 56 is provided inside or about the enclosure 12. Such a spray device 56 may be rotatable and tiltable and is, for example, adjustable in such a manner so as to clean the interior of the auger, the mixing cone and the entire interior. Such a spray device 56 may have a valve . . . operable by a handle 60 and a hose, or collar connection 62 to the local water supply line."  Kelly, Fig. 1:  While spray device 56 is adjustable, spray device 56 is pre-positioned to be oriented toward a splash shield 30.<br><br>Another example of such prior art is Miller (US 2002/0048626A1).  Miller, [0055]:  "a water supply or sterilizing solution is dispensed through the valve 127 for delivery of the sterilizing solution or fresh water through a dedicated nozzle 129 for flushing and cleaning, . . . sterilizer nozzle 129 [has] an angle [that] permits the spindle 114 and spindle blades 116 to be hit directly with water or sterilizing solution."<br><br>Yet another example of such prior art is Hansen (WO 00/36925). Hansen, 2:18-19: "at least one spray nozzle for pointing a water spray at the auger for washing purposes."  Hansen, 7:29-32: "More than one nozzle is however conceivable, to improve the washing efficiency. The illustrated nozzle 10 is located besides the auger 3. Alternatively or additionally one or more nozzles may be located above the auger 3, to point a water spray down." |

3

| '662 Patent Claims | Neilson |
|---|---|
| [21d] after mixing the material in the vessel using the mixing element and with the splash shield shielding the vessel opening, unshielding the vessel opening and directing rinsing fluid onto the splash shield using the nozzle while isolating the vessel from the rinsing fluid. | To the extent it is found that Neilson does not expressly disclose this limitation, this limitation is inherent.  Moreover, to the extent it is found that Neilson does not anticipate this claim, Neilson renders it obvious, either alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with other prior art references identified in the cover pleading or herein.

An example of such prior art is Kelly (US 4,740,088).  Kelly, 4:13-20:  "To complete the sanitary equipment, at least one spray device 56 is provided inside or about the enclosure 12. Such a spray device 56 may be rotatable and tiltable and is, for example, adjustable in such a manner so as to clean the interior of the auger, the mixing cone and the entire interior. Such a spray device 56 may have a valve . . . operable by a handle 60 and a hose, or collar connection 62 to the local water supply line."

Another example of such prior art is Miller (US 2002/0048626A1).  Miller, [0055]:  "a water supply or sterilizing solution is dispensed through the valve 127 for delivery of the sterilizing solution or fresh water through a dedicated nozzle 129 for flushing and cleaning, . . . sterilizer nozzle 129 [has] an angle [that] permits the spindle 114 and spindle blades 116 to be hit directly with water or sterilizing solution."  Miller, [0038] and [0055]:  The container 16 is removed after mixing and before rinsing the spindle 114 and spindle blades 116 after each use.

Another Example of such prior art is Supervielle (US 1,592,788), which discloses removing the container from below the agitator before pressing a button to open the water valve and causing the water to spray on the agitator.  Supervielle, 2:31-40.

Yet another example of such prior art is Hansen (WO 00/36925). Hansen, 2:18-19:  "at least one spray nozzle for pointing a water spray at the auger for washing purposes."  Hansen, 7:29-32:  "More than one nozzle is however conceivable, to improve the washing efficiency. The illustrated nozzle 10 is located besides the auger 3. Alternatively or additionally one or more nozzles may be located above the auger 3, to point a water spray down." |

# EXHIBIT E

**HIGHLY CONFIDENTIAL**

**Opening Expert Report of Alexander H. Slocum, Ph.D.**

f'real  Foods, LLC v. Hamilton Beach Brands, Inc., No. 16-41 (GMS) Consolidated (D. Del.)

Signed:                                                    Dated: August 24, 2018

HIGHLY CONFIDENTIAL

- Neilson in view of Barnard (claims 1 and 5-11)

- Neilson in view of Oberg (claims 1 and 5-11)

**F.    '662 Patent**

86.    As noted above, it is my opinion that the plain and ordinary meaning of the term "while" means "at the same time as" and if the scope of claim 21 is expanded such that "while isolating" includes directing rinsing fluid after separating the vessel from the mixing machine, then the term is indefinite.  Accordingly, it is my opinion that a POSITA would not have interpreted the plain and ordinary meaning of the "while isolating" method step as covering directing rinsing fluid after separating the vessel from the mixing machine.

87.    However, if it is determined that the "while isolating" term of claim 21 covers directing rinsing fluid after separating, the prior art clearly discloses directing rinsing fluid towards components of a mixing machine after separating the vessel in which the ingredients are mixed from the mixing machine. Accordingly, my opinion that claim 21 is invalidated by prior art is based on Plaintiffs' assertion in their infringement contentions that the isolating step would include separating the cup from the machine before rinsing occurs, an interpretation that is not consistent with the plain meaning of claim 21.

88.    In view of the foregoing assumptions, it is my opinion that claim 21 of the '662 patent is invalid over APA in combination with one or more of Kelly, Levine, Miller, Hansen, Sato, and Supervielle, as set forth in Exhibit 15.

**HIGHLY CONFIDENTIAL**

89.     It is also my opinion that claim 21 of the '662 patent is invalid over Neilson in combination with one or more of Kelly, Levine, Miller, Hansen, Sato, and Supervielle, as set forth in Exhibit 16.

90.     Specific combinations of prior art that render the asserted claim of the '662 patent obvious are identified below.  These illustrative examples of such invalidating combinations are without limitation, and I will identify other invalidating combinations as appropriate.  Such other combinations may include prior art identified in Exhibits 15 and 16, but not included in any of the illustrative combinations below.

- APA in view of Kelly (claim 21)

- APA in view of Miller (claim 21)

- APA in view of Kelly and Levine (claim 21)

- APA in view of Kelly and Miller (claim 21)

- APA in view of Levine and Miller (claim 21)

- APA in view of Miller and Sato (claim 21)

- Neilson in view of Kelly (claim 21)

- Neilson in view of Miller (claim 21)

- Neilson in view of Kelly and Levine (claim 21)

- Neilson in view of Kelly and Miller (claim 21)

- Neilson in view of Levine and Miller (claim 21)

- Neilson in view of Miller and Sato (claim 21)

# EXHIBIT F

Trials@uspto.gov                                              Paper:  10
571-272-7822                                  Entered:  Nov. 30, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

HAMILTON BEACH BRANDS, INC.,
Petitioner,

v.

F'REAL FOODS, LLC
Patent Owner.

————————

Case IPR2016-01107
Patent 7,520,662 B2

————————

Before LORA M. GREEN, BRIAN P. MURPHY, and
ELIZABETH M. ROESEL, *Administrative Patent Judges*.

ROESEL, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2016-01107
Patent 7,520,662 B2

This case concerns U.S. Patent No. 6,265,662 (Ex. 1001, "the '662 patent"). Petitioner, Hamilton Beach Brands, Inc., filed a Petition seeking *inter partes* review of claim 21 of the '662 patent (Paper 1, "Pet."), along with a Declaration of Alexander H. Slocum (Ex. 1010). Patent Owner, f'real Foods, LLC, filed a Preliminary Response (Paper 9, "Prelim. Resp."), along with a Declaration of Daniel Maynes (Ex. 2023).

We have jurisdiction under 35 U.S.C. § 314(a), which provides that an *inter partes* review may be authorized only if the information presented in the Petition and the Preliminary Response shows that there is a reasonable likelihood that Petitioner would prevail with respect to at least one claim challenged in the Petition. Applying that standard, we institute an *inter partes* review of claim 21 of the '662 patent for the reasons and on the ground set forth below.

Our determination is based on the record developed thus far, before the filing of Patent Owner's Response. This is not a final decision as to the patentability of any challenged claim. Any final decision will be based on the full record developed during the trial.

## I. BACKGROUND

### A. *Related Matters*

The parties identify the following patent infringement cases involving the '662 patent:

> *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, No. 1:14-cv-01270-GMS (D. Del., filed Oct. 3, 2014) (the "2014 Action"); and

> *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, No. 1-16-cv-00041-GMS (D. Del., filed Jan. 26, 2016) (the "2016 Action").

IPR2016-01107
Patent 7,520,662 B2

The parties further identify IPR2016-01105 as a related *inter partes* review proceeding regarding U.S. Patent No. 7,520,658.  Pet. 3; Paper 6 (Patent Owner Updated Mandatory Notices—37 C.F.R. § 42.8).

### B.  Petitioner's References

Petitioner's patentability challenges are primarily based on the following references:

| Reference | Patent/Pub. No. | Date | Exhibit |
|-----------|-----------------|------|---------|
| Kelly | US 4,740,088 | issued Apr. 26, 1988 | 1002 |
| Neilson | US 5,439,289 | issued Aug. 8, 1995 | 1003 |
| Miller '626 | US 2002/0048626 A1 | published Apr. 25, 2002 | 1004 |
| Miller '665 | US 5,766,665 | issued June 16, 1998 | 1005 |

In addition, Petitioner relies upon information asserted to be Applicant Admitted Prior Art ("AAPA"), including the preamble of original claim 10 filed in the parent application[1] and statements in the background section of the '662 patent.  Pet. 13–16 (citing and quoting Ex. 1001, 1:29–67 and Ex. 1007,[2] 18).

---

[1] The '662 patent was issued from U.S. Application No. 11/116,497, which is a continuation-in-part of U.S. Application No. 10/715,171, which issued as U.S. Patent No. 7,144,150 ("the '150 patent").  *See* Ex. 1001 (bibliographic information).

[2] Prosecution History of the '150 Patent.

3

IPR2016-01107
Patent 7,520,662 B2

*C.  Asserted Grounds of Unpatentability*

| Reference(s) | Basis | Claim |
|---|---|---|
| Neilson, Kelly, and Miller '626 | § 103(a) | 21 |
| AAPA, Kelly, and Miller '626 | § 103(a) | 21 |

*D.  The '662 Patent (Ex. 1001)*

The '662 patent relates to a method for rinsing a splash shield of a mixing machine used for mixing liquids, such as frozen milkshakes, coffee drinks, or smoothies.  Ex. 1001, Abstract, 1:13–15, 2:3–4, 2:51–56. According to the disclosed method, a vessel containing contents to be mixed is positioned in a mixing machine, and a splash shield is positioned to shield the opening of the vessel during mixing.  After the material within the vessel is mixed by a mixing element, the splash shield is separated from the vessel by the mixing machine and rinsed by a nozzle(s) on the mixing machine.  *Id.* at 2:4–10.

An embodiment of a mixing machine is shown in Figures 1A and 1B, which are reproduced below:

IPR2016-01107
Patent 7,520,662 B2



Figures 1A and 1B, above, show mixing/blending machine 100, including cup holder 16 for holding cup 14, rotatable mixing blade 10, rinseable splash shield 22, and nozzles 34a, 34b for directing rinsing fluid towards splash shield 22.  *Id.* at 2:25–30, 2:48–51, 2:60–63, 2:67–3:2, 3:23–24, 3:63–65.  The operation of mixing/blending machine 100 is illustrated in Figures 4–7, which are reproduced below:

IPR2016-01107
Patent 7,520,662 B2



Figures 4–7 are a sequence of drawings illustrating operation of rinseable splash shield 22. *Id.* at 2:42–44, 4:29–32. First, as shown in Figure 4, cup 14 is positioned in cup holder 16. Next, as shown in Figure 5, holder 16 and cup 14 are moved upwardly so that cup 14 engages the bottom of shield 22. Next, as shown in Figure 6, cup 14 is moved further upward around mixing blade 10, raising shield 22 on shaft 12, and mixing blade 10

IPR2016-01107
Patent 7,520,662 B2

is activated.  *Id.* at 4:32–43.  After mixing is complete, cup holder 16 is lowered, and cup 14 separates from shield 22, returning cup 14 to the position shown in Figure 4, at which point it can be removed from the machine.  As shown in Figure 7, rinse fluid is then directed onto shield 22 using nozzles 34a, 34b (see Figs. 1A, 1B).  *Id.* at 5:9–22.

### E.  Illustrative Claim

The '662 patent includes 22 claims.  Independent claim 21 is the only claim challenged in the Petition.  Claim 21 is reproduced below:

> 21.  A method for rinsing a splash shield on a mixing machine, the method comprising the steps of:
>
> providing a vessel containing material to be mixed, the vessel including an opening;
>
> further providing a mixing machine having a holder for receiving the vessel, a rotatable mixing element extendable into the vessel for mixing the material, a splash shield positionable to shield the opening of the vessel, and a nozzle oriented towards the splash shield;
>
> after mixing the material in the vessel using the mixing element and with the splash shield shielding the vessel opening, unshielding the vessel opening and directing rinsing fluid onto the splash shield using the nozzle while isolating the vessel from the rinsing fluid.

Ex. 1001, 6:64–8:3.

## II.  DISCUSSION

### A.  Statutory Bar — 35 U.S.C. § 315(b)

Petitioner certifies that it is not barred under 35 U.S.C. § 315(b) from petitioning the Board for an *inter partes* review of the '658 patent claims. Pet. 4–9.  Patent Owner opposes Petitioner's certification and argues that the Petition was filed more than one year after Petitioner was served with a

IPR2016-01107
Patent 7,520,662 B2

complaint in the 2014 Action alleging infringement of the '662 patent.
Prelim. Resp. 6–18.  For the reasons that follow, we determine the Petition is
not barred under 35 U.S.C. § 315(b).

### The 2014 Action and 2016 Action

The complaint in the 2014 Action asserted infringement of the '662
patent, along with other patent and non-patent causes of action.  Ex. 2001
("2014 Complaint").  The 2014 Complaint was served on Petitioner on
October 6, 2014.  Ex. 2002 (Summons and Proof of Service); Ex. 2016
(Civil Docket).

During the course of the 2014 Action, it was discovered that Patent
Owner did not own the '662 patent at the time the 2014 Complaint was filed
and served.  Pet. 4–5; Prelim. Resp. 8; Ex. 1011 ¶¶ 5–7 (plaintiff's motion
for voluntary dismissal).  As a consequence, on February 26, 2016, the
patent infringement counts of the 2014 Complaint were voluntarily
dismissed from the 2014 Action.  Pet. 4–5; Prelim. Resp. 10–11; Ex. 1011;
Ex. 1012 (order granting plaintiff's motion for voluntary dismissal).

On January 26, 2016, Patent Owner filed and served on Petitioner the
complaint in the 2016 Action, re-asserting the same patent infringement
causes of action as had been voluntarily dismissed from the 2014 Action.
Prelim. Resp. 10; Ex. 2015 (2016 Complaint).  On April 11, 2016, the 2014
Action and the 2016 Action were consolidated for all purposes, by an order
requiring that all subsequent filings be made in the 2016 Action.  Ex. 1013
(stipulation and order for consolidation).

### Analysis

A threshold issue for determination is whether Petitioner is barred
from pursuing *inter partes* review under 35 U.S.C. § 315(b), which provides:

IPR2016-01107
Patent 7,520,662 B2

> An inter partes review may not be instituted if the petition
> requesting the proceeding is filed more than 1 year after the date
> on which the petitioner, real party in interest or privy of the
> petitioner is served with a complaint alleging infringement of the
> patent.

In this proceeding, Petitioner filed its Petition on May 27, 2016 (Paper 1),
which was less than one year after January 26, 2016—the date Petitioner
was served with the 2016 Complaint alleging infringement of the '662
patent.  Pet. 4.

Patent Owner argues that the applicable date under § 315(b) is
October 6, 2014—the date the 2014 Complaint alleging infringement of the
'662 patent was served on Petitioner.  Prelim. Resp. 6.  It is undisputed,
however, that Patent Owner did not own the '662 patent at the time the 2014
Complaint was filed and served.  Pet. 4–5; Prelim. Resp. 8; Ex. 1011 ¶¶ 5–7.
Title to the '662 patent was transferred to Patent Owner by an assignment
executed January 25, 2016.  Pet. 5; Prelim. Resp. 10; Ex. 1011 ¶ 7, Ex. C
(patent assignment).  Accordingly, Patent Owner lacked standing to sue for
infringement of the '662 patent at the time the 2014 Complaint was filed and
served.  *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309
(Fed. Cir. 2003) ("[I]n order to assert standing for patent infringement, the
plaintiff must demonstrate that it held enforceable title to the patent *at the
inception of the lawsuit*.").

The patent counts of the 2014 Complaint were jurisdictionally
defective, and the defect could not be cured after the filing date of the
complaint, e.g., by a subsequent assignment or by joining the patent title
holder to the lawsuit.  *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d
1379, 1385 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 897 (2016) ("The party
asserting patent infringement is 'required to have legal title to the patents on

IPR2016-01107
Patent 7,520,662 B2

the day it filed the complaint and that requirement can not be met retroactively.'") (quoting *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010)).

The Delaware district court was required to—and actually did— dismiss the patent infringement counts of the 2014 Complaint for lack of Article III standing.  Ex. 1012 n.1 (Delaware district court order granting motion for voluntary dismissal:  "the court lacks jurisdiction to make a judgment on the merits"); *see also Abraxis*, 625 F.3d at 1367 ("the action must be dismissed because [plaintiff] lacked standing on the day it filed the action"); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, . . . nor by the subsequent purchase of an interest in the patent in suit") (citing *Paradise*, 315 F.3d at 1309).

Thus, the allegation of infringement of the '662 patent in the 2014 Complaint was not a proper federal pleading and did not trigger the one-year time period under 35 U.S.C. § 315(b).  Petitioner was not served with a complaint properly alleging infringement of the '662 patent until January 2016.  The instant petition was filed in May 2016.  Accordingly, the Petition is not time-barred under § 315(b).

Patent Owner argues that the one-year bar applies as of the filing date of an original complaint, where the asserted cause of action "after being dismissed, is immediately continued in another lawsuit."  Prelim. Resp. 13. On this record, however, the 2016 Action is not shown to be a mere continuation of the 2014 Action.  There is a fundamental difference between

the allegation of patent infringement in the 2014 Action and the allegation of patent infringement in the 2016 Action: Only the latter was supported by facts necessary for Article III standing, i.e., title to the '662 patent held by plaintiff. Furthermore, Patent Owner does not dispute Petitioner's additional factual assertions supporting that the 2016 Action is not merely a continuation of the 2014 Action. Pet. 8 (asserting that, as compared with the 2014 Action, the 2016 Action: "names different parties; has different claims at issue; will proceed under different briefing, discovery, and conferencing schedules; will have new Markman and trial dates; and require new initial disclosures and pre-discovery formalities").

As support for its § 315(b) argument, Patent Owner cites the following decisions: *Histologics, LLC v. CDx Diagnostics, Inc.*, Case IPR2014-00779, Paper 6 (PTAB Sept. 12, 2014); *eBay, Inc. v. Advanced Auctions LLC*, Case IPR2014-00806, Paper 14 at 3, 7 (PTAB Sept. 25, 2014); and *Apple Inc. v Rensselaer Polytechnic Institute*, Case IPR2014-00319, Paper 12 at 6–7 (PTAB June 12, 2014). Prelim. Resp. 13–17. None of those decisions changes our analysis because none involved an assertion of a § 315(b) bar based on a complaint that had been dismissed for lack of Article III standing.

In contrast to this case, the defect in the original complaint in *Histologics* was curable. The original complaint was filed by one co-owner of the patent, who had Article III standing to sue, but who needed to add the other co-owner to "cure the lack of prudential standing" to maintain the suit. *Histologics*, slip op. at 2–3; *see also Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264–65 (Fed. Cir. 2007) ("Absent the voluntary joinder of all co-owners of a patent, a co-owner acting alone will lack

IPR2016-01107
Patent 7,520,662 B2

standing.").  In further contrast to the present case, the Board found that both Petitioner and the district court treated the originally-filed patent infringement action as having been stayed, rather than dismissed, until the bankrupt co-owner could be joined.  *Histologics*, slip. op. at 6.

In *eBay*, Patent Owner agreed to dismiss an earlier-filed complaint and proceed under a second-filed action, which was filed "to avoid any concerns, confusions, or delay," in the event a standing issue arose in the earlier-filed action.  *eBay*, slip op. at 3.  The Board, however, reviewed the patent assignment documents, found no obvious defects in Patent Owner's chain of title, and determined that Patent Owner did not lack standing to file the earlier-filed complaint.  *Id.* at 6.  Here, in contrast, it is undisputed that Patent Owner lacked title to the '662 patent at the time the 2014 Complaint was filed.

In *Apple*, an earlier filed complaint was dismissed without prejudice pursuant to a consolidation order in which the earlier complaint was consolidated into another existing complaint.  The Board found that the earlier lawsuit, "although dismissed, was continued immediately" into the consolidated action.  *Apple*, slip op. at 6.  The *Apple* case is distinguishable because the earlier, first-filed lawsuit against Apple was not jurisdictionally defective for lack of standing.

Accordingly, on the record before us, we are not persuaded that Petitioner is barred under § 315(b).

### B.  Claim Construction

In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable interpretation in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b); *Cuozzo Speed Tech.,*

IPR2016-01107
Patent 7,520,662 B2

*LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016).  Under that standard, we give claim terms their ordinary and customary meaning, as understood by a person of ordinary skill in the art in the context of the entire patent disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  We construe claim terms only to the extent necessary to resolve the controversy.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

We determine that no claim term requires express construction for purposes of this decision.

### C.  Level of Ordinary Skill in the Art

For purposes of this decision, we accept Dr. Slocum's definition of a person of ordinary skill in the art as an engineer with at least an undergraduate degree in mechanical engineering or related discipline and at least three years of professional or research experience in the design of consumer or medical products that utilize fluid systems.  Ex. 1010 ¶ 20. Dr. Maynes states that he does not necessarily agree with Dr. Slocum's definition, but provides no persuasive reasoning or alternative definition. Ex. 2023 ¶ 6.

We also rely on Petitioner's references as reflecting the level of ordinary skill in the art at the time of the invention.  *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).

IPR2016-01107
Patent 7,520,662 B2

### D.  Obviousness Based On Neilson, Kelly, and Miller

### Neilson (Ex. 1003)

Neilson discloses an apparatus for mixing ingredients in a receptacle, such as a machine for blending ice cream into milk shakes.  Ex. 1003, 1:10–13.  An embodiment is shown in Figure 1, which is reproduced below:

IPR2016-01107
Patent 7,520,662 B2



**FIG._1**

Neilson Figure 1 shows a milk shake mixing machine, including receptacle 14 in the form of a cup or container, a platform 12 for supporting receptacle 14, mixer shaft 42, mixer head 44 (not labeled in Figure 1), and lid 16.  Ex. 1003, 2:17–19, 2:57–3:9, 3:30–35.

15

IPR2016-01107
Patent 7,520,662 B2

The operation of Neilson's milk shake machine is illustrated in Figures 6A–6F, which are reproduced below:



Figures 6A–6F illustrate the sequential stages of operation of the mixing apparatus.

16

IPR2016-01107
Patent 7,520,662 B2

First, as shown in Figure 6A, receptacle 14 is placed under the lid 16, which is in a raised position.  Next, as shown in Figure 6B, lid 16 is lowered and brought into engagement with receptacle 14.  Next, as shown in Figure 6C, the mixer shaft and mixer head are moved downwardly to bring the mixer head close to the bottom of receptacle 14.  Next, as shown in Figure 6D, the mixer head is rotated to mix the contents of receptacle 14.  Next, as shown in Figure 6E, the mixer shaft and mixer head are moved upwardly, and rotation of the mixer shaft and mixer head is stopped.  Ex. 1003, 4:15–42.  Lastly, as shown in Figure 6F, lid 16 is pulled to its elevated position.  *Id.* at 4:53–55.  According to Neilson, the foregoing sequence of operations is carried out automatically after the machine is actuated.  *Id.* at 4:56–60.  Neilson discloses an alternative embodiment wherein lid 16 is in a fixed position, and receptacle 14 is raised and lowered into and out of engagement with lid 16.  *Id.* at 5:33–65, Figs. 9A–10A.

### *Kelly (Ex. 1002)*

Kelly discloses a frozen confections blending machine having features allowing for "rapid, frequent and sanitary cleaning operations between product changes."  Ex. 1002, Abstract.  Such features include:  "a sink positioned underneath the mixing area to accept and collect splash and product over-run and . . . allow[] for easy and continuous sanitary cleanup," *id.* at 1:37–43, and "[m]eans for delivering water to the auger, the cone and all inside surfaces of the enclosure for cleaning, including hoses, spray devices valves . . . facilitating the expeditions [sic] cleaning, especially, between changes of additives and flavors from one product batch to another," *id.* at 1:61–67.

17

IPR2016-01107
Patent 7,520,662 B2

An embodiment of Kelly's blending machine is shown in Figure 1, which is reproduced below:



*Fig. 1.*

Kelly Figure 1, above, shows blending machine 10, including enclosure 12, mixing cone 18 for containing a product to be mixed, splash shield 30, rotatable cone-shaped auger 40, and splash guard 44. Ex. 1002, 2:15–17, 2:39–46, 2:55–59, 3:11–24, 3:38–41, 3:51–57.

To comply with sanitary requirements, the blending machine includes sink 46 under and adjacent the mixing area and spray device 56 positioned inside or about enclosure 12. *Id.* at 3:62–68, 4:13–15. According to Kelly, spray device 56 is "rotatable and tiltable" and "adjustable in such a manner

18

IPR2016-01107
Patent 7,520,662 B2

so as to clean the interior of the auger, the mixing cone and the entire interior." *Id.* at 4:15–18. Spray device 56 has a valve operable by handle 60 and is connected to a water supply line. *Id.* at 4:18–20. Kelly discloses that, due to its position under and adjacent the mixing area, sink 46 "can be used for the cleaning of all interior parts in their mounted positions." *Id.* at 4:21–25.

### *Miller '626 (Ex. 1004) and Miller '665 (Ex. 1005)*

Miller '626 relates to the dispensing and mixing of multi-flavored foods such as milk shakes, frozen custards, and slushes. Ex. 1004 ¶ 2. Miller '626 discloses an apparatus for dispensing a selected flavored syrup and blending it with a neutral-flavored mix held in a disposable serving container. *Id.* ¶¶ 13, 16, 36–40, 47–49, Figs. 1–3, 12–16 (flavored syrups 26/210, neutral mix-filled containers 20/300, and blending apparatus 36/100). Miller '626 discloses attaching an open-ended tubular sleeve to the mix-filled container to shield the blender spindle and limit splashing of the mix during blending. *Id.* at Abstract, ¶¶ 14, 42–46, 50; Figs. 6–11, 15, 16 (alternative sleeve embodiments 54, 55, and 316). After blending is completed, the sleeve is removed from the container before the shake is served to the customer. *Id.* ¶¶ 45, 57. According to Miller '626, the sleeve can be washed for reuse. *Id.* ¶ 45. Miller '626 discloses cleaning the blender spindle after each use by delivering sterilizing solution or water through a dedicated nozzle directed at the spindle and spindle blades and operating the spindle and blades in an empty container to which sterilizing solution has been added. *Id.* ¶ 55, Figs. 17, 18 (nozzle 129).

Miller '626 incorporates Miller '665 by reference. Ex. 1004 ¶¶ 1, 41. Like Miller '626, Miller '665 relates to the dispensing and mixing of multi-

19

IPR2016-01107
Patent 7,520,662 B2

flavored drinks such as milk shakes, frozen custards, and slushes.  Ex. 1005, 1:7–9.  Miller '665 discloses inserting a protective sleeve into a mix-filled container to prevent the contents of the container from splashing out during blending of the mix.  *Id.* at Abstract, 2:27–36, 4:1–4, 4:17–36, Figs. 5, 7, 8 (sleeve 34).  According to Miller '665, the sleeve is removed from the container before the shake is served to the customer, and the sleeve is washed for reuse.  *Id.* at 2:38–40, 5:4–10.

*Claim 21*

Petitioner contends that claim 21 is unpatentable as obvious in view of Neilson, Kelly, and Miller.[3]  Pet. 20–35.  Petitioner provides a claim chart identifying one or more disclosures in Neilson, Kelly, and Miller for each claim element, Pet. 31–35, and cites the Slocum Declaration regarding a motivation to combine the identified teachings of these references, Pet. 27–31 (citing Ex. 1010 ¶¶ 67–88).[4]

Patent Owner contends that Neilson, Kelly, and Miller each fails to disclose various claim elements, that each of these references teaches away from the claimed invention, and that the Petition relies on hindsight and a mixing and matching of Neilson, Kelly, and Miller to recreate the invention. Prelim. Resp. 35–48.

At this stage of the proceeding and based on the current record, Petitioner's information shows sufficiently that Neilson discloses all elements of claim 21, except for "a nozzle oriented towards the splash

---

[3] Like Petitioner, we refer to Miller '626 and Miller '665 collectively as "Miller."

[4] The Petition erroneously cites the Slocum Declaration as Exhibit 1009, rather than Exhibit 1010.  *See, e.g.*, Pet. 27.

IPR2016-01107
Patent 7,520,662 B2

shield" and "directing rinsing fluid onto the splash shield using the nozzle while isolating the vessel from the rinsing fluid."  *See, e.g.*, Pet. 31–35 (claim chart); Ex. 1010 ¶ 75.  More specifically, Neilson discloses a vessel (receptacle 14) containing material to be mixed, the vessel including an opening.  Ex. 1003, 2:62–68, Fig. 1.  Neilson discloses a milk shake mixing machine having a holder (platform 12) for receiving the vessel.  *Id.* at 2:57–65, Figs. 1, 3A, 3B; *see also id.* at 5:1–10 (indents 90 on the bottom of receptacle 14 receive projections 92 on platform 12 to prevent rotation of receptacle 14 during mixing).  Neilson discloses a rotatable mixing element (mixer shaft 42 and mixer head 44) extendable into the vessel for mixing the material.  *Id.* at 3:30–35, 4:30–35, 5:54–57, Figs. 1, 3A, 3B, 6A–F, 9A–F.  Neilson discloses a splash shield (lid 16) positionable to shield the opening of the vessel.  *Id.* at 3:1–9, 4:19–22, 5:52–54, Figs. 1, 3A, 3B, 6A–F, 9A–F.  Neilson discloses mixing the material in the vessel using the mixing element and with the splash shield shielding the vessel opening and thereafter unshielding the vessel opening.  *Id.* at 3:7–9, 4:19–42, 4:53–55, 5:35–61, Figs. 1, 3A, 3B, 6A–F, 9A–F.

At this stage of the proceeding and based on the current record, Petitioner's information also shows sufficiently that Neilson in view of Kelly teaches the claim limitations, "a nozzle oriented towards the splash shield" and "directing rinsing fluid onto the splash shield using the nozzle." *See, e.g.*, Pet. 34–35 (claim chart); Ex. 1010 ¶¶ 76, 78.  More specifically, Kelly discloses a frozen confections blending machine, including a nozzle (spray device 56) oriented toward Kelly's splash shield 30.  Ex. 1002, 1:61–68, 3:11–17, 4:12–20, Fig. 1.  Kelly discloses using the nozzle to direct rinsing fluid onto "the auger, the mixing cone and the entire interior" of the

21

blending machine. *Id.* at 4:12–18, Fig. 1. Petitioner shows sufficiently that, a combination of a blending machine and method, as taught by Neilson, with a rinsing nozzle and method, as taught by Kelly, yields the above-quoted limitations of claim 21. Pet. 28, 34–35; Ex. 1010 ¶¶ 69, 78.

At this stage of the proceeding and based on the current record, Petitioner's information also shows sufficiently that Miller teaches the claim limitation, "while isolating the vessel from the rinsing fluid." *See, e.g.*, Pet. 35 (claim chart); Ex. 1010 ¶ 63, 77, 79.[5] More specifically, Miller discloses a milk shake blending machine. Ex. 1004 ¶ 2. Miller discloses that once blending is complete, a vessel (cup) containing the blended shake is served to the customer. *Id.* ¶¶ 45, 57; Ex. 1005 5:4–8. Miller also discloses using a nozzle to direct rinsing fluid (sterilizing solution or water) onto the blender spindle after each use and operating the spindle and blades in an empty container to which sterilizing solution has been added. Ex. 1004 ¶ 55. Thus, Miller teaches isolating the vessel (shake-containing cup) from the rinsing fluid by serving the shake to the customer before the rinsing step and using an empty cup to conduct the rinsing step. There is also evidence that the need to isolate the vessel from the rinsing fluid was known in the art and would have been understood by a person of ordinary skill in the art. Ex. 1010 ¶¶ 34, 70; *see also* Ex. 2023 ¶ 41 ("Plainly, one would not want to

------

[5] At this stage, we do not credit Dr. Slocum's testimony to the extent it can be read as averring that Miller discloses using a nozzle oriented toward a splash shield to direct rinsing fluid onto the splash shield. Ex. 1010 ¶ 77. Instead, consistent with Dr. Maynes' testimony, Ex. 2023 ¶ 36, we read Miller as disclosing that the cup and splash shield (sleeve) are removed from the machine prior to activating a nozzle to clean the spindle. Ex. 1005 ¶¶ 45, 55, 57, Fig. 18; Ex. 1005, 5:4–10.

IPR2016-01107
Patent 7,520,662 B2

be hosing down Neilson's milkshake at the same time as hosing down
Neilson's motorized lid.").

On this record, we are persuaded that Petitioner's information is
sufficient to support its argument that claim 21 recites a combination of prior
art elements with no change in their respective functions and yielding no
more than predictable results. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398,
415–16 (2007). More specifically, we are persuaded that Petitioner has
provided sufficient evidence and argument to support its assertion that claim
21 is no more than the predictable combination of Neilson's method of
operating a blending machine using a splash shield for the mixing vessel,
Kelly's method of using a built-in nozzle to rinse the soiled parts of a
blending machine, and Miller's teaching of isolating the mixing vessel from
the rinsing fluid of a rinse nozzle. Pet. 27–31; Ex. 1010 ¶¶ 78, 79, 82–85.

We are also persuaded that Petitioner provides sufficient articulated
reasoning with a rational underpinning to support the combination of
Neilson, Kelly, and Miller in the manner recited in claim 21. Pet. 27–31;
Ex. 1010 ¶¶ 67–71, 80, 84–88. Citing disclosures in Kelly and Miller and
the Slocum Declaration, Petitioner contends that a person of ordinary skill in
the art would have modified the method and machine of Neilson by
providing the improvements disclosed in Kelly and Miller in order to
improve the machine of Neilson by providing a means to clean the splash
shield of Neilson between product batches or uses. Pet. 27–28, 30–31
(citing Ex. 1010 ¶¶ 78, 84, 85). Petitioner additionally contends that
"consumer-driven design incentives like general cleanliness for equipment
used to prepare food products would have motivated a PHOSITA to use the
teachings of Kelly and Miller in the device of Neilson." *Id.* at 31 (citing Ex.

23

1010 ¶ 86).  Petitioner's contentions provide a sufficient basis on which to institute review.

Patent Owner argues that Neilson and Miller teach away from the claimed invention by disclosing that the lid or sleeve should be manually removed from the blender for cleaning.  Prelim. Resp. 39, 45.  At this stage, we are persuaded that Petitioner's information is sufficient to support its argument that claim 21's splash shield rinsing step is taught or suggested by the combination of Neilson and Kelly, *see, e.g.*, Pet. 35, and we are not persuaded on the present record that Neilson and Miller teach away from that step.  *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 738 (Fed. Cir. 2013) ("A reference does not teach away, . . . if it merely expresses a general preference for an alternative invention but does not criticize, discredit, or otherwise discourage investigation into the invention claimed.")

Patent Owner argues that Kelly teaches the "exact opposite" of the claimed method by disclosing that the vessel (mixing cone) is cleaned with a spray device, rather than isolating the vessel from the rinsing fluid.  Prelim. Resp. 42, 46.  At this stage, we are persuaded that Petitioner's information is sufficient to support its argument the "isolating" limitation is taught or suggested by Miller, *see, e.g.*, Pet. 35, and we are not persuaded on the present record that Kelly teaches away from that limitation.  *Galderma*, 737 F.3d at 738.

Patent Owner argues that neither Kelly nor Miller discloses a "splash shield shielding the vessel opening," as recited in claim 21.  Prelim Resp. 40–41, 43–44, 46.  Patent Owner's argument does not persuade us to deny review.  As discussed above, there is no dispute at this stage that Neilson discloses a splash shield shielding the vessel opening.  *See, e.g.*, Ex. 1003,

IPR2016-01107
Patent 7,520,662 B2

3:1–9, Fig. 1 (lid 16).  Petitioner's information is sufficient to support its
argument that it would have been obvious to combine Neilson's splash
shield with Kelly's spray device, such that rinse fluid is directed onto
Neilson's splash shield.  Pet. 28; Ex. 1010 ¶¶ 68, 69, 78.

We have considered the totality of Patent Owner's Preliminary
Response, including the Maynes Declaration.  To the extent that the Maynes
Declaration creates a genuine issue of material fact, e.g., regarding whether
the prior art teaches the "exact opposite" of claim 21 and whether Neilson,
Kelly and Miller can be combined while remaining true to their teachings,
Ex. 2023 ¶¶ 38, 39, 41, we view the disputed facts in a light most favorable
to Petitioner at this stage.  37 C.F.R. § 42.108(c).

After considering the evidence and arguments presented by both sides,
we are persuaded that Petitioner demonstrates a reasonable likelihood of
prevailing on the assertion that the subject matter of claim 21 is unpatentable
as obvious over Neilson, Kelly, and Miller.

### E.  Obviousness Based On AAPA, Kelly, and Miller

Petitioner contends that the subject matter of claim 21 is unpatentable
as obvious in view of Applicant's Admitted Prior Art ("AAPA"), Kelly, and
Miller.  Pet. 9, 35–41.  Petitioner does not, however, explain whether or how
the obviousness ground based on AAPA, Kelly, and Miller differs from the
obviousness ground based on Neilson, Kelly, and Miller.  Although
Petitioner provides a separate claim chart for each asserted ground, there
appears to be extensive overlap between the charts.  *Compare* Pet. 31–35,
*with* Pet. 38–41.  With respect to the last step of claim 21, for example, the
charts appear to be identical.  *Compare* Pet. 35, *with* Pet. 41.

25

IPR2016-01107
Patent 7,520,662 B2

We, therefore, decline to institute review based on Petitioner's second asserted obviousness ground separate from the ground based on Neilson, Kelly, and Miller.

## III.  CONCLUSION

For the reasons stated above, we institute an *inter partes* review as set forth in the Order.  At this stage of the proceeding, the Board has not made a final determination with respect to the patentability of the challenged claim or any underlying factual or legal issues.

## IV.  ORDER

It is

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review of the '662 patent is instituted on the following ground of unpatentability asserted in the Petition:

Claim 21 under 35 U.S.C. § 103(a) as obvious over Neilson, Kelly, and Miller.

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '662 patent is hereby instituted commencing on the entry date of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of trial; and

FURTHER ORDERED that the trial is limited to the ground identified above and no other ground of unpatentability is authorized.

IPR2016-01107
Patent 7,520,662 B2

PETITIONER:
William Foster
DRINKER BIDDLE & REATH LLP
william.foster@dbr.com

Eileen Hyde
Andrew Wilson
BAKER BOTTS LLP
eileen.hyde@bakerbotts.com
andrew.wilson@bakerbotts.com

PATENT OWNER:
Guy Chambers
SIDEMAN & BANCROFT LLP
gchambers@sideman.com

Timothy Bianchi
SHWEGMAN, LUNDBERG & WOESSNER, P.A.
tbianchi@slwip.com