# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| F'REAL FOODS, LLC and RICH PRODUCTS CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON BEACH BRANDS, INC. and HERSHEY CREAMERY COMPANY, <br><br> Defendants. | C.A. No. 16-41-CFC CONSOLIDATED <br><br> ██████████ |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. MICHAEL P. AKEMANN AND DANIEL MAYNES, Ph.D (D.I. 174)

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Of Counsel:*

William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800
william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

Dated: January 25, 2019

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ....................................................................................1

II.    ARGUMENT............................................................................................2

      A.    Plaintiffs Have Not Met Their Burden of Demonstrating That Dr. Akemann's Testimony Is Admissible ..................................................2

            1.    Plaintiffs have not rebutted Defendants' showing that Dr. Akemann's lost profits opinion is unreliable.............................2

            2.    Plaintiffs have not met their burden of showing that Dr. Akemann's reasonable royalty opinion is admissible. ...............9

      B.    Plaintiffs' Have Not Shown That Dr. Maynes' Testimony Is Admissible................................................................................................11

            1.    Dr. Maynes should be precluded from testifying regarding non-technical documents...............................................................11

            2.    Dr. Maynes' testimony equating infringement with copying should be excluded..................................................................12

III.    CONCLUSION.....................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
　135 F. Supp. 2d 1031 (N.D. Cal. 2001)................................................................6

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
　No. 15-152-RGA, 2018 WL 4691047 (D. Del. Sept. 28, 2018) ........................9

*BMC Software, Inc. v. ServiceNow, Inc.*,
　Case No. 2:14-cv-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1,
　2016) ..................................................................................................................11

*Daubert v. Merrell Dow Pharm., Inc.*,
　509 U.S. 579 (1993).........................................................................................1, 4

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
　185 F.3d 1341 (Fed. Cir. 1999) .......................................................................3, 8

*Herbert v. Lisle Corp.*,
　99 F.3d 1109 (Fed. Cir. 1996) .......................................................................12, 13

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
　392 F.3d 1317 (Fed. Cir. 2004) .........................................................................12

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
　694 F.3d 51 (Fed. Cir. 2012) .............................................................................10

*Merck Sharp & Dohme Corp. v. Hospira Inc.*,
　221 F. Supp. 3d 497 (D. Del. 2016)...................................................................12

*Metaswitch Networks Ltd. v. Genband US LLC*,
　No. 2:14-cv-744-JRG-RSP, 2016 WL 874734 (E.D. Tex. Mar. 7,
　2016) ..................................................................................................................12

*Pall Corp. v. Micron Separations, Inc.*,
　66 F.3d 1211 (Fed. Cir. 1995) .........................................................................4, 5

*Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*,
　No. 16-284-LPS, D.I. 424 (Jan.2, 2019)..............................................................3

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ..............................................................11

*In re Zyprexa Prods., Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) ..................................................7

**STATUTES, RULES & REGULATIONS**

35 U.S.C. § 284 ..............................................................................................5

Federal Rule of Evidence 702..........................................................................1

Federal Rule of Civil Procedure 26 ................................................................4

Defendants Hamilton Beach Brands, Inc. ("Hamilton Beach") and Hershey Creamery Company ("Hershey") (collectively, "Defendants") respectfully submit this reply brief in support of their Motion to Exclude Testimony of Dr. Michael P. Akemann and Daniel Maynes, Ph.D. (D.I. 174).

## I.    INTRODUCTION

Plaintiffs f'real Foods, LLC ("f'real") and Rich Products Corporation ("Rich") (collectively, "Plaintiffs"), as the proponents of Dr. Akemann's and Dr. Maynes' testimony, have the burden of demonstrating that it is admissible under Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 & n.10 (1993). Plaintiffs have not met this burden.

Plaintiffs simply re-state Dr. Akemann's lost profits analysis without addressing any of Defendants' case law, and misconstrue Defendants' arguments as merely pertaining to the "facts" upon which Dr. Akemann relies. Dr. Akemann's lost profits analysis is based upon improper *methodology* and *assumptions*, thus it requires exclusion. Similarly, Plaintiffs do not contest the case law that compels exclusion of Dr. Akemann's royalty rate for failure to apportion for the value between the patented and unpatented features of the Accused Products.

Plaintiffs' rebuttal of Defendants' arguments regarding exclusion of Dr. Maynes' opinions fairs no better. Plaintiffs rely on case law that allows a technical expert to interpret technical documents. However, Dr. Maynes does not refer to any

1

technical documents in the paragraphs that Defendants seek to exclude.  Further, the Federal Circuit has condemned Dr. Maynes' approach of equating infringement to copying, thus requiring exclusion of such testimony as unreliable and unhelpful. Therefore, Defendants' Motion should be granted.

## II.    ARGUMENT

### A.    Plaintiffs Have Not Met Their Burden of Demonstrating That Dr. Akemann's Testimony Is Admissible

#### 1.    Plaintiffs have not rebutted Defendants' showing that Dr. Akemann's lost profits opinion is unreliable.

Instead of addressing each of Defendants' three specific criticisms of Dr. Akemann's lost profits opinion separately, Plaintiffs address them all in one section in an attempt to convince the Court that Dr. Akemann's opinions are fully supported by evidence.  However, when parsing through the disorganization and examining each of the criticisms towards his speculative assertions regarding the alternative business models, additional cup sales, and market share, there is no doubt Plaintiffs failed to meet their burden of demonstrating that Dr. Akemann's lost profits testimony is admissible as to each of those points separately, and certainly not when taken as whole.  Thus, Dr. Akemann's lost profits opinions should be excluded.

> **a.**    **Dr. Akemann's assumption that f'real would have adopted either a ▮▮▮ upcharge or ▮▮▮ monthly rental model is speculative.**

The use of substantially different business models by Hershey and f'real is much more than a "complicating factor." *See* D.I. 196 at 11.  Instead it is a reality for which Dr. Akemann failed to account and thus his lost profits opinions are not based on "sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *see also Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-284-LPS, D.I. 424, at 3 (D. Del. Jan. 2, 2019) (attached as **Exhibit 18**).

Plaintiffs apparently do not contest the fatal issue with Dr. Akemann's speculation—there is no record evidence showing that f'real ever implemented either a ▮▮ upcharge or ▮▮ monthly rental program in the real world, and there is ample evidence that f'real affirmatively rejected those models even with competitive pressure from Hershey.  D.I. 175 at 10-14.  Plaintiffs respond by citing generally to Dr. Akemann's report without showing how it supports the alternative business model that he speculated f'real would have adopted in the but-for world.  *See* D.I. 196 at 12 (citing Akemann Report at ¶¶ 122-129, which nowhere indicates that f'real implemented a ▮▮ upcharge or ▮▮ monthly rental program).

3

Plaintiffs also attempt to use testimony from Defendants' antitrust expert, Dr. Lawrence Wu, to meet their burden.  D.I. 196 at 12.  However, Dr. Wu's testimony on this point is neither relevant nor helpful to Plaintiffs.  Dr. Akemann did not and cannot rely upon Dr. Wu's testimony to support his speculative analysis.[1] Nothing in Dr. Wu's testimony supports Dr. Akemann's assumption that in a but-for world f'real would have offered a ███ upcharge or ███ monthly rental program. Plaintiffs' citation to Dr. Wu's answer to a leading question from counsel, unsupported by documentary evidence, reinforces the lack of evidence to support Dr. Akemann's speculation that f'real would have changed business models in a but-for world.  To the contrary, record evidence shows that f'real considered and rejected such models in the real world.  D.I. 175 at 12-13.

Plaintiffs also fail to address the case law cited by Defendants holding that an expert's speculative testimony that a plaintiff would have changed business models should be excluded.  *See* D.I. 175 at 11-12.  Plaintiffs' citation to *Pall Corp. v. Micron Separations, Inc.*, is unpersuasive because it is not a ruling on a *Daubert* motion, and merely discusses the price differential between the patentee and alleged infringer.  66 F.3d 1211, 1223 (Fed. Cir. 1995).  *Pall* does not discuss a difference in business models and it certainly does not address a situation where the patentee

---

[1] Because the Court granted Plaintiffs' request to bifurcate the antitrust case, Dr. Wu will not testify in the patent case.  In any event, Dr. Akemann did not cite to Dr. Wu's testimony in his expert report, thus he cannot rely on it under Rule 26.

has rejected the expert's proposed but-for business model.  Thus, *Pall* does not support the admission of Dr. Akemann's speculative testimony.

Finally, Plaintiffs apparently concede that Dr. Akemann's analysis fails to account for the effect that using the alternative business models for Hershey's customers would have had on the profits that f'real generated from its existing customers.  *See* D.I. 175 at 14.  Some of f'real's existing customers would have certainly demanded the lower alternative pricing, reducing f'real's profits from such customers.  Plaintiffs acknowledge that they are entitled to damages "adequate to compensate for the infringement," and nothing more.  *See* D.I. 196 at 6 (quoting 35 U.S.C. § 284).  Accordingly, Dr. Akemann's lost profits opinions must be excluded.

> **b.     Dr. Akemann's methodology in opining that f'real should be compensated for lost profits on sales that were never made by Hershey is unreliable.**

Contrary to Plaintiffs' assertions, Defendants' criticisms of Dr. Akemann's cup multiplier to compensate f'real for ▮▮▮▮ cups that were never actually sold is not merely a disagreement of fact.  Defendants have shown, and Plaintiffs have failed to rebut, that Dr. Akemann used an unreliable methodology by extrapolating the average number of cups that f'real and Hershey sold in the real world to assume that each f'real blender would have sold ▮▮ times more cups daily in the but-for world than the Hershey blender did in the real world.

Defendants cite to many factors that both Dr. Akemann and Jens Voges, the former COO of f'real, have stated are unique to a location and can determine cup sales.  D.I. 175 at 15-16.  Plaintiffs' claim that Dr. Akemann took these factors into account by using the real world Hershey sales ignores Dr. Akemann's admitted failure to take these unique factors into account when determining the multiplier he applied to each store.  *See, e.g.,* 176-5 214:12-18, 215:6-9.  Therefore, the multiplier that he used for a mom-and-pop store in a Northeastern rural area inherently includes the increased cup volume that f'real sold at its extremely successful Hawaiian locations.    This  methodology  "contains  entirely  too  many  assumptions  and simplifications that are not supported by real-world evidence," and is too unreliable to be heard by a jury.  *See Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041 (N.D. Cal. 2001).

Plaintiffs' reliance on a single email showing cup sales decreased from 2013-2015 in a single location that switched from a f'real machine to a Hershey machine is a red herring.  *See* D.I. 196 at 14 (citing HCC_022804[2]).  Dr. Akemann admits that during this time frame, f'real daily cup sales per store were falling about ███ annually.  Akemann Dep. 154:15-24 (Oct. 16, 2018) (excerpts attached as **Exhibit 17**).  Thus, a decrease in cup sales cannot be fully attributable to the blender type.

---

[2] Plaintiffs did not submit this document as an exhibit.  It is submitted with this Reply as **Exhibit 16**.

Further, the relevant question for the but-for world is what would happen if a f'real blender replaced a Hershey blender.  Dr. Akemann cites no evidence of any increase in cup sales when a f'real blender replaced a Hershey blender.  *Id.* 222:4-22.  Finally, a single email from a single store is anecdotal evidence that cannot be used to extrapolate the same trend across all ▉ blender placements that Dr. Akemann speculates would have doubled cup sales in the but-for world simply by replacing the blender.  *See In re Zyprexa Prods., Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y.  2007)  ("Anecdotal  evidence  and  'generalized  assumptions'  are inadequate bases for an expert report.") (citation omitted).

Plaintiffs do not address Dr. Akemann's failure to provide any explanation for where the demand for the ▉▉▉ extra cups would come from in the but-for world. As Defendants explained, it is unclear at best whether these 3 million cups are truly "lost profits" or are merely sales that were actually made in the real world by other f'real retailers.  D.I. 175 at 18.  Again, Plaintiffs are only entitled to damages to adequately compensate them for the infringement.  Accordingly, Dr. Akemann's lost profits opinions must be excluded.

### c.      Dr. Akemann's calculation of the percentage of customers that would have chosen f'real in the but-for world remains speculative.

Plaintiffs completely fail to address any of Defendants' critiques of Dr. Akemann's market share calculation.[3]   *See* D.I. 175 at 19-21.   By implicitly conceding that the evidence Dr. Akemann used to determine his market share is speculative and unreliable, Plaintiffs acknowledge that Dr. Akemann's lost profits opinions and underlying market share analysis are not based on "sound economic proof" and must be excluded.  *See Grain Processing Corp.*, 185 F.3d at 1350.

Plaintiffs do not substantively address Dr. Akemann's failure to adjust his market share percentages to account for price elasticity of demand.  D.I. 175 at 21-22.  Plaintiffs' only retort to this criticism is to repeat Dr. Akemann's reasoning.  D.I. 196 at 10.   However, as detailed by Defendants, Dr. Akemann's explanation is unsupported by the record because it is based both on the faulty assumption that a Hershey retailer would sell twice as many cups with a f'real machine and a profitability analysis that Dr. Akemann admits is not applicable in the but-for world. D.I. 175 at 21-22.  Because Dr. Akemann provided no reliable evidence to show why he disregarded price elasticity of demand, his lost profits opinion must be excluded.

---

[3] Plaintiffs now argue that the market in this case is a two-supplier market.  D.I. 196 at 9.  However, Dr. Akemann concedes that the relevant market for lost profits is not a two-supplier market.  D.I. 175 at 19 (citing D.I. 198-1 ¶ 233, Ex. 10a).  Dr. Wu's cited testimony discussing which suppliers sell certain products does not confirm otherwise. D.I. 196 at 9 n.4.

8

> **2.      Plaintiffs have not met their burden of showing that Dr. Akemann's reasonable royalty opinion is admissible.**

An expert opinion relying on the royalty rate of a comparable license without providing a separate apportionment analysis is only admissible "where there is a logical basis for doing so." *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2018 WL 4691047, at *7 (D. Del. Sept. 28, 2018).  Plaintiffs do not contest that the f'real-Hamilton Beach license—which Dr. Akemann relies upon as providing inherent apportionment—includes a license for non-asserted claims.  *See* D.I. 175 at 23 (citing D.I. 176-1 ¶ 250).[4]  Further, while Plaintiffs contend that Hamilton Beach sought out the license while developing one of the Accused Products, it is undisputed that no Accused Product was fully developed until well after the license was signed in May 2010.  D.I. 176-1 ¶¶ 65, 69, 74, 260.  Even if Plaintiffs are correct and the patented features of all of the Accused Products are the same, it does not follow that the apportionment between the patented features and the various unpatented features would be the same across the different Hamilton Beach models.  Thus, Plaintiffs have not shown that there is a logical basis for Dr. Akemann to "circumvent the apportionment requirement." *See Bio-Rad Labs.*, 2018 WL 4691047, at *8.

---

[4] Plaintiffs' erroneously state that Defendants' expert did not provide an apportionment analysis. D.I. 196 at 3. Mr. Peterson's report includes multiple pages regarding apportionment, including three pages that Plaintiffs submitted with their brief. *See* D.I. 198-1 Ex. 3 at 45-47.

Plaintiffs' new argument, which was not made by Dr. Akemann, that apportionment is not necessary because the patented functionality motivates consumers to buy the accused blenders, is misguided. The only evidence to support this contention is testimony that indicates that customers may not have purchased Accused Products without automatic rinsing. D.I. 196 at 20. First, Plaintiffs have not equated the automatic rinsing discussed by the deponents with the claims of the patents, and thus have not shown that the testimony relates to the patented functionalities. Second, even if testimony shows that Defendants' customers "would be unlikely to purchase the accused blenders without the patented self-rinsing feature," such testimony is insufficient to prove that the feature motivates customers to buy the Accused Products. D.I. 196 at 20. "[P]roof that consumers would not want [an accused product] without [the patented] features is not tantamount to proof that any one of those features alone drives the market for [the accused product]." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012). Instead, the Federal Circuit requires "market studies or consumer surveys to ascertain whether the demand for [the accused product] is driven by the patented technology." *Id.* at 69. Plaintiffs have not met this burden.

Finally, Plaintiffs' suggestion that Dr. Akemann's failure to apportion goes to the weight of his testimony rather than its admissibility is unsupported by case law. The Federal Circuit has held that expert opinions failing to apportion the value

10

between the patented features and the non-patented features are not admissible and must be excluded. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014); *see also* D.I. 176-15 at 5-7; *BMC Software, Inc. v. ServiceNow, Inc.*, Case No. 2:14-cv-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016).  Therefore, Dr. Akemann's reasonable royalty opinion must be excluded.

**B.    Plaintiffs' Have Not Shown That Dr. Maynes' Testimony Is Admissible**

**1.    Dr. Maynes should be precluded from testifying regarding non-technical documents.**

The crux of Plaintiffs' arguments in defense of Dr. Maynes' testimony is that he should be allowed to testify regarding how one of ordinary skill in the art would understand technical information and documents.  D.I. 196 at 22-23.  However, the proposed testimony that Defendants seek to exclude consists of instances where Dr. Maynes goes beyond his technical expertise and is either opining on areas in which he is not an expert or merely repeating non-technical fact evidence.  D.I. 175 at 24-26.  This is evidenced by Plaintiffs' failure to cite a single technical document that Dr. Maynes is interpreting.[5]  Thus, Plaintiffs have not met their burden of showing

---

[5] Plaintiffs argue specifically that Dr. Maynes' discussion of commercial success evidence "are predicate facts to his opinions . . . regarding the nexus between the f'real patents and the embodiments of the inventions in the f'real products."  D.I. 196 at 23.  However, Dr. Maynes admitted he did not provide a technical nexus opinion.  D.I. 175 at 26 n.10.

11

that Dr. Maynes' testimony on these non-technical aspects is admissible, and such testimony must be excluded.

>    **2.    Dr. Maynes' testimony equating infringement with copying should be excluded.**

Plaintiffs do not dispute that Dr. Maynes compares the Accused Products to the asserted claims, and not to a f'real product, in order to show copying.[6]  D.I. 196 at 24.  The Federal Circuit has held that this approach is improper because "copying requires the replication of a specific product."  *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

Plaintiffs cite a case where a magistrate judge in the Eastern District of Texas found, in defiance of the Federal Circuit, that copying must only be tied to the claimed invention.  D.I. 196 at 24 (citing *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 874734, at *2-3 (E.D. Tex. Mar. 7, 2016)).  As discussed above, that is not the law of the Federal Circuit and is not the law that has been applied by this Court.  *See, e.g., Merck Sharp & Dohme Corp. v. Hospira Inc.*, 221 F. Supp. 3d 497, 513 (D. Del. 2016).  Dr. Maynes cannot disseminate opinions based on improper law to the jury.  *Herbert v. Lisle Corp.*, 99

---

[6] Plaintiffs cite to paragraphs 76, 78, and 79 of Dr. Maynes' report as purported "copying" testimony.  D.I. 196 at 24.  However, as evidenced by Plaintiffs' description, this is another example of Dr. Maynes improperly providing testimony on non-technical documents, and should be excluded on that basis.  D.I. 175 at 24-26.  Further, none of this testimony shows that Dr. Maynes compared any f'real product with the Accused Products, as required by law.

F.3d 1109, 1117 (Fed. Cir. 1996).  Thus, Dr. Maynes' copying opinions must be excluded.

## III.    CONCLUSION

For the foregoing reasons, as well as those in Defendants' Opening Brief, Defendants respectfully request that the Court grant their Motion.

Dated:  January 25, 2019

*/s/ Francis DiGiovanni*

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Of Counsel:*

William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800
william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

## **CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION**

The undersigned hereby certifies that this brief complies with the type-volume limitation of the Court's Supplemental and Amended Scheduling Order (D.I. 168). The brief contains 2,916 words, excluding the Cover Page, Table of Contents, Table of Authorities, Signature Block, Certification of Compliance with Word Limitation, and Certificate of Service.  The brief has been prepared in 14-point Times New roman or similar typeface.  As permitted by the Court's Supplemental and Amended Scheduling Order, the undersigned has relied upon the word count feature of the word processing system used to prepare the brief.


Dated:  January 25, 2019

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:  (302) 467-4200
Fax:  (302) 467-4201
francis.digiovanni@dbr.com

## CERTIFICATE OF SERVICE

I certify that on January 25, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF prior to 6:00 p.m. ET, which will send notification of such filing to all registered participants.  In addition, the foregoing will be served upon counsel of record via electronic mail.

Dated:  January 25, 2019

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:  (302) 467-4200
Fax:  (302) 467-4201
francis.digiovanni@dbr.com