IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| F'REAL FOODS, LLC and | ) | |
| RICH PRODUCTS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-41 (CFC) |
| | ) | CONSOLIDATED |
| HAMILTON BEACH BRANDS, INC., | ) | |
| HERSHEY CREAMERY COMPANY and | ) | |
| PAUL MILLS d/b/a MILLS BROTHERS | ) | |
| MARKETS | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS[1]**

---

[1] The parties reserve the right to amend their proposed jury instructions based on the Court's forthcoming rulings and the evidence that is actually presented and admitted at trial.

## TABLE OF CONTENTS

**1.**     **GENERAL INSTRUCTIONS** ................................................................ **1**

1.1     INTRODUCTION ................................................................1

1.2     JUROR'S DUTIES ................................................................1

1.3     THE PARTIES................................................................2

1.4     SUMMARY OF CONTENTIONS AND PATENT ISSUES ................................2

1.5     BURDENS OF PROOF ................................................................4

1.6     EVIDENCE DEFINED ................................................................5

1.7     DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................6

1.8     CONSIDERATION OF EVIDENCE ................................................7

1.9     STATEMENTS OF COUNSEL ................................................................7

1.10    CREDIBILITY OF WITNESSES ................................................7

1.11    NUMBER OF WITNESSES ................................................................8

1.12    EXPERT WITNESSES ................................................................9

1.13    DEPOSITION TESTIMONY ................................................................9

1.14    DEMONSTRATIVE EXHIBITS ................................................9

1.15    USE OF NOTES ................................................................10

1.16    CONFIDENTIAL LABELS AND REDACTIONS ................................10

1.17    ADMISSIONS ................................................................11

**2.**     **ISSUES PRESENTED** ................................................................ **11**

**3.**     **PATENT CLAIMS** ................................................................ **12**

3.1     THE ROLE OF THE CLAIMS IN A PATENT ................................12

3.2     INDEPENDENT AND DEPENDENT CLAIMS ................................12

3.3     CONSTRUCTION OF CLAIM TERMS ................................13

**4.**     **INFRINGEMENT** ................................................................ **14**

4.1     INFRINGEMENT GENERALLY................................................14

4.2     DIRECT INFRINGEMENT ................................................................16

        4.2.1   LITERAL INFRINGEMENT ................................................18

        4.2.2   INFRINGEMENT OF "COMPRISING" CLAIMS ................................18

        4.2.3   INFRINGEMENT OF METHOD CLAIMS AND ACTS OF
                MULTIPLE PARTIES................................................................19

        4.2.4   INFRINGEMENT BY THE DOCTRINE OF EQUIVALENTS .............22

        4.2.5   LIMITATION ON EQUIVALENTS· ................................24

        4.2.6    INFRINGEMENT OF MEANS-PLUS-FUNCTION TERM....................25

4.3     INDIRECT INFRINGEMENT ................................................................26

     4.3.1   ACTIVE INDUCEMENT .........................................................27

     4.3.2   CONTRIBUTORY INFRINGEMENT .....................................28

4.4     WILLFUL INFRINGEMENT ...............................................................30

**5.**     **INVALIDITY** ............................................................................................ **32**

5.1     PERSON OF ORDINARY SKILL IN THE ART................................33

5.2     PRIOR ART..........................................................................................33

5.3     PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO .........34

5.4     OBVIOUSNESS ...................................................................................35

5.5     INVENTORSHIP .................................................................................40

**6.**     **DAMAGES** ............................................................................................... **42**

6.1     DAMAGES GENERALLY...................................................................42

6.2     LOST PROFITS—"BUT FOR" TEST................................................44

6.3     LOST PROFITS—DEMAND...............................................................44

6.4     LOST PROFITS—NONINFRINGING SUBSTITUTES ....................44

6.5     LOST PROFITS—CAPACITY............................................................45

6.6     LOST PROFITS—AMOUNT OF PROFIT .........................................45

6.7     LOST PROFITS—MARKET SHARE..................................................46

6.8     REASONABLE ROYALTY—ENTITLEMENT .................................46

6.9     REASONABLE ROYALTY AS A MEASURE OF DAMAGES.......................46

6.10    FACTORS FOR DETERMINING A REASONABLE ROYALTY...................48

**7.**     **DELIBERATIONS AND VERDICT** ..................................................... **50**

7.1     INTRODUCTION ................................................................................50

7.2     UNANIMOUS VERDICT....................................................................51

7.3     DUTY TO DELIBERATE ...................................................................52

7.4     SOCIAL MEDIA .................................................................................52

7.5     COURT HAS NO OPINION................................................................53

## 1.    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case.

And last I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2    JUROR'S DUTIES

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the claims and defenses presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and

these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3     THE PARTIES

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict. This is a civil case concerning allegations of patent infringement.

The plaintiffs in this case are f'real Foods, LLC and Rich Products Corporation.  I will refer to f'real Foods, LLC and Rich Products Corporation together as "Plaintiffs" or "f'real." The defendants in this case are Hamilton Beach Brands, Inc. and Hershey Creamery Company.  I will refer to Hamilton Beach Brands, Inc., as "Hamilton Beach," and to Hershey Creamery Company as "Hershey Creamery."  I will refer to both Hamilton Beach and Hershey Creamery together as "Defendants."

### 1.4     SUMMARY OF CONTENTIONS AND PATENT ISSUES

There are four patents for your consideration in this case: U.S. Patent No. 5,803,377; U.S. Patent No. 7,144,150; U.S. Patent No. 7,520,658; and U.S. Patent No. 7,520,662.  I will refer to these patents individually as the "'377 patent," the "'150 patent," the "'658 patent," and the "'662 patent," respectively.  I will refer to these patents collectively as the "Asserted Patents."

Plaintiffs allege that Hamilton Beach infringes the Asserted Patents in this case by making, using, selling, offering for sale, or importing in the United States four blenders: the MIC2000; BIC2000; IMI2000; and BIC3000-DQ.  These four blenders will be referred to together as the "Accused Products."  Plaintiffs allege that Hershey Creamery infringes the

Asserted Patents by using, selling, or offering for sale, the MIC2000 blender.  Plaintiffs further allege that Defendants' infringement was willful.

Specifically, Plaintiffs have alleged that the Accused Products infringe:

Claims 1 and 11 of the '377 patent;

Claims 15, 20 and 22 of the '150 patent;

Claims 1, 5, 6, 10 and 11 of the '658 patent; and

Claim 21 of the '662 patent.

I will refer to these claims together as the Asserted Claims.

With respect to the '150 patent, it has been determined before trial that Defendant Hamilton Beach directly infringes Claim 15 by importing, using, or selling three of the Accused Products – the MIC2000, BIC2000, and BIC3000-DQ blenders.  It has also been determined that Defendant Hershey directly infringes Claim 15 of the '150 patent by selling or using the MIC2000 blender, and by demonstrating the MIC2000 to customers.

With respect to the '662 patent, it has been determined before trial that Defendant Hamilton Beach directly infringes Claim 21 by Hamilton Beach's own use and demonstrations of all four Accused Products – the  MIC2000, BIC2000, IMI2000, and BIC3000-DQ blenders.  It has also been determined that Defendant Hershey directly infringes Claim 21 by Hershey's own use and demonstrations of the MIC2000 blender.  The issue of infringement of claim 21 of the '662 patent by use by consumers and retailers, however, still requires determination.

Plaintiffs also allege that the Defendants indirectly infringe the Asserted method Claims of the '658 and '662 patents.

Defendants deny any direct or indirect infringement of the Asserted Claims.  Defendants further deny that any infringement was willful.

Further, Defendants allege that the Asserted Claims are invalid because they are rendered obvious by prior art.  The Defendants also allege the '150, '658, and '662 patents are invalid for failing to properly name all of the inventors.

Plaintiffs deny invalidity.

I will explain further each of these contentions.

## 1.5    BURDENS OF PROOF

For each issue in this case, either the Plaintiffs or the Defendants bear the burden of proof.  This means that the party who bears the burden of proof on an issue bears the burden of persuading you to find in their favor.  In a patent case such as this, there are two different burdens of proof.  The first is called "preponderance of the evidence."  The second is called "clear and convincing evidence."

Plaintiffs have the burden of proving by a preponderance of the evidence that the Defendants infringed the Asserted Claims of the Asserted Patents and the amount of damages, if any, that Plaintiffs should receive to compensate them for any infringement. That means Plaintiffs have to produce evidence which, when considered in light of all of the facts, leads you to believe that what Plaintiffs' claim is more likely true than not.  To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Plaintiffs' claims would make the scales tip slightly on Plaintiffs' side.

The other burden of proof is "clear and convincing evidence."  [**PLAINTIFF'S PROPOSAL:** Patents are presumed valid, and [2]] Defendants have the burden of proving by clear

---

[2] Plaintiff's footnote: *See* 35 U.S.C. § 282; *and see* Final Jury Instruction at 2, *St. Jude Medical, Cardiology Division, Inc., St. Jude Medical Systems AB, and St. Jude Medical S.C., Inc. v. Volcano Corp.*, C.A. No. 10-631-RGA (D. Del.) (D.I. 431) ("A patent, however, is presumed to

and convincing evidence that the Asserted Claims of the Asserted Patents are invalid. Clear and convincing evidence means that it is highly probable that a fact is true. Put differently, clear and convincing evidence means that you are left with a clear conviction that the fact is true.  Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

## 1.6   EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

---

be valid.  Accordingly, [Defendant] has the burden of proving that the patents-in-suit are invalid by clear and convincing evidence.").

Defendants' position: Instructing the jury on the presumption of validity is not necessary because the legal presumption is taken into account the clear and convincing standard that Defendants must meet for invalidity challenges, and instructions on the presumption is confusing and unduly prejudicial.  *See Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (affirming district court decision not to instruct jury on the presumption of validity because the jury had applied the clear and convincing evidence standard); *see also Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.,* C.A. No. 15-1202, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017) (Bryson, J., sitting by designation) ("[T]he use of the phrase 'presumption of validity' would add little to the jury's understanding of the burden of proof on the validity issues. Moreover, the phrase might be confusing to the jury, to the extent that the jury is required to consider both that phrase and the Court's instructions on the burden of proof. At minimum, the use of the term 'presumption' would require a further definitional instruction by the Court, without leading to any greater insight on the jury's part as to the nature of the burden of proof on the validity issues. Accordingly, the Court will exclude the use of the phrase "presumption of validity" and instead will address the burden of proof in its instructions to the jury."); *Callaway Golf Co. v. Acushnet Co.,* 778 F. Supp. 2d 487, 496 (D. Del. 2011) (concluding on post-trial motions that the court did not commit legal error in excluding the presumption of validity from its jury instructions) (citing *Chiron*).

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been presented to you), the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed. Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things.

Do not speculate about what a witness might have said or what an exhibit might have shown. Speculation is not evidence, and you are bound by your oath not to let speculation influence your decision in any way.

You must not conduct any independent research, investigation, or experiments about the case or its subject matter on your own. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.7    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: "direct evidence" and "circumstantial evidence."  Direct evidence is simply evidence like the testimony of an eyewitness that, if you believe the testimony, directly proves a fact. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of facts from which you may infer or conclude that other facts exist. If someone walked into the courtroom wearing a raincoat covered with drops of

water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between the weight that you should give to direct or circumstantial evidence, but simply requires that you find facts from all the evidence in the case. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 1.8     CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.9     STATEMENTS OF COUNSEL

The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

### 1.10    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You should consider: each witness's means of knowledge, strength of memory, and opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial. You have the right to distrust such a witness's testimony in other particulars and you may reject some or all of the testimony of that witness or give it such weight and credit as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses and witnesses who provided testimony by deposition.

### 1.11   NUMBER OF WITNESSES

Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

### 1.12    EXPERT WITNESSES

During the trial, you heard testimony from expert witnesses. Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. However, you are not required to accept any expert's opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony by any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject some or all of the testimony of experts, just as with any other witness.

### 1.13    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through excerpts of a deposition. A deposition is the sworn testimony of a witness taken before trial. You should not attribute any significance to the fact that the testimony is not live at trial.  The deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition excerpts may appear to have been edited. Deposition testimony is entitled to the same consideration you would give if the witness had appeared personally in court.

### 1.14    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your

deliberations. The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

### 1.15    USE OF NOTES

You may use notes taken during trial to assist your memory. However, you should use caution in consulting your notes. There is a tendency to attach undue importance to matters that you have written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later on in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

### 1.16    CONFIDENTIAL LABELS AND REDACTIONS

In the course of this case, the parties entered into an agreement that would protect each respective party's confidential and sensitive business information from disclosure to the public or third parties. Under that agreement, the parties have added confidentiality labels to their documents, and have redacted, which means that they have obscured or removed information, from documents to protect the confidential nature of the information. You may have seen

10

documents with confidentiality labels or redactions during the course of the trial. The use of confidentiality labels and redactions has no bearing on the evidence, and should not be construed in any way against any party.

### 1.17   ADMISSIONS

The parties have stipulated that certain facts are true.  To the extent that stipulated or admitted facts have been read to you during this trial, you must treat these facts as having been proven for the purposes of this case.

## 2.   ISSUES PRESENTED

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

- Whether Plaintiffs have proven by a preponderance of the evidence that Defendants are liable for infringement of one or more of the Asserted Claims;

- Whether Defendants have proven by clear and convincing evidence that one or more of the Asserted Claims are invalid;

- If any Asserted Claims are infringed and not invalid, whether Plaintiffs have proven by a preponderance of the evidence that Defendants' infringement is willful; and

- If any Asserted Claim has been infringed and is not invalid, whether Plaintiffs have proven by a preponderance of the evidence the amount of damages, if any, that is adequate to compensate for the infringement.

3.      **PATENT CLAIMS**

At the beginning of the trial, I gave you some general information about patents and the

patent system and a brief overview of the patent laws relevant to this case. I will now give you

more detailed instructions about the patent laws that specifically relate to this case.

### 3.1     THE ROLE OF THE CLAIMS IN A PATENT

Before you can decide many of the issues in this case, you will need to understand the

role of patent "claims." The patent claims are the numbered sentences at the end of each patent.

The claims are important because it is the words of the claims that define what a patent covers.

Only the claims of a patent can be infringed. Neither the text preceding the claims, nor the

figures in a patent can be infringed. Only the claims define the extent of the patent's coverage;

therefore, what a patent covers depends, in turn, on what its claims cover. Each of the claims

must be considered individually.

### 3.2     INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent.  The first way a patent claim can

be stated is in the form of an "independent" claim.  An "independent" claim does not refer to any

other claim of the patent and sets forth all of the requirements that must be met in order for an

accused product to be covered by that claim, and thus infringe that claim.  An independent claim

is read alone to determine its scope.

The second way a claim can be stated is in the form of a "dependent" claim.  A

dependent claim does not itself recite all of the requirements of the claim but instead refers to

and incorporates the requirements of another claim and adds its own additional requirements.  In

this way, the claim "depends" on another claim. To determine what a dependent claim covers, it

is necessary to look at both the dependent claim and any other claim from which it depends.  For

example, claim 5 of the '658 patent is a dependent claim because it incorporates the requirements of claim 1 and, as a result, claim 5 includes all the requirements of claim 1 and claim 5.

An accused product is only covered by, and therefore infringes, a dependent claim if the accused product meets all of the requirements of both the dependent claim and any other claims from which the dependent claim depends. Because a dependent claim incorporates all of the features of the independent claim from which it ultimately depends, if you find that an independent claim is not infringed, then the dependent claims that depend on that independent claim are not infringed either.

Likewise, each claim must be separately assessed for validity.  For an independent claim, all its requirements must be considered in deciding its validity.  For a dependent claim, all its requirements plus the requirements of any claim from which it depends must be considered for that dependent claim's validity.

With respect to the '150 patent, it was determined before trial that the accused products infringe independent Claim 15.  As such, in determining whether the accused products also infringe dependent Claims 20 and 22 of the '150 patent, both of which depend from Independent Claim 15, you will only need to determine whether the accused products meet the additional limitations in Claims 20 and 22.  You can accept as fact that the accused products meet the limitations in Claim 15.

### 3.3    CONSTRUCTION OF CLAIM TERMS

It is my job as the judge to provide to you the meaning of any claim language that must be interpreted.  It is not the job of any witness to provide you with the meaning of the claim language.  I have already defined the meaning of some of the words of the Asserted Claims in this case.  These definitions have been provided to you on a chart in your juror notebooks.

You must accept the definitions I give you and use them when you decide whether any claim has been infringed and whether any claim is valid. You must use the same claim meaning for both your decision on infringement and your decision on validity.  You should not take my definition of the language of the patent claims as an indication that I have a view regarding how you should decide the infringement or invalidity issues that you are being asked to decide.  These issues are yours to decide.

Although I have only construed some of the claim terms, it is important to understand that a patent claim is infringed only if an accused product includes each and every element in that patent claim.  For any other claim term that I have not provided a definition, you should use its ordinary meaning within the context of the patent in which the claim term is used.

## 4.    INFRINGEMENT

### 4.1    INFRINGEMENT GENERALLY

Patent law gives the owner of a valid patent the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets each and every requirement of a claim, the claim is said to "cover" that product, and that product is said to "fall within the scope" of that claim.

Infringement must be assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

A patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused product is covered by at least one claim of

the patent and a Defendant has committed certain infringing acts.  This is explained further in

Section 4.2.  Indirect infringement results if a Defendant induces someone else to infringe a

patent or contributes to someone else's infringement of a patent.  This is explained further in

Section 4.3.

Ownership and/or licensing of another patent is not a defense to patent infringement, nor

is it a defense to patent infringement if the accused product meets the claims of a patent other

than the one asserted here.

**[DEFENDANTS' PROPOSAL:** A competitor's efforts to "design around" known

patents is not prohibited by law.  Rather, these efforts are encouraged because they generally

promote innovation, a goal consistent with the policies of the U.S. patent system.[3]]

In order to prove infringement, Plaintiffs must do so by a preponderance of the evidence.

---

[3] Defendants' footnote: *TiVo Inc. v. EchoStar Corp.,* 646 F.3d 869, 883 (Fed. Cir. 2011)
("[L]egitimate design-around efforts should always be encouraged as a path to spur further
innovation.") (citation omitted); *MeadWestvaco Corp. v. Rexam PLC,* 2012 WL 2153165, at *3
(E.D. Va. June 12, 2012) ("Thus, a competitor's ordinary design-around efforts are not prohibited
by law. Rather, they generally promote innovation, a goal consistent with the policies of our
patent system."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 762 F. Supp. 2d
710, 721 (D. Del. 2011) ("design around . . . which would have been legitimate competitive
behavior"), vacated on other grounds, 711 F.3d 1348 (Fed. Cir. 2013); *Rehrig Pac. Co. v.
Norseman Plastics Ltd. Inc.,* 2003 WL 25667625, at *29 (C.D. Cal. Sept. 30, 2003) ("[I]t is
perfectly legitimate to design around a patent, and indeed one of the purposes of the patent
disclosure system is to encourage this valuable form of competition."); *State Industries, Inc. v.
A.O. Smith Corp.,* 75 F.2d 1226, 1335 (Fed. Cir. 1985) ("Conduct such as Smith's, involving
keeping track of competitor's products and designing new and possibly better or cheaper
functional equivalents is the stuff of which competition is made and is supposed to benefit the
consumer.").

Plaintiff's position: Plaintiff's object to this instruction as prejudicial, unnecessary, and
confusing to the jury.  Neither the Federal Circuit Bar Association's ("FCBA") nor the American
Intellectual Property Law Association's ("AIPLA") Model Patent Jury Instructions include such
an instruction and Defendants fail to cite any examples of such an instruction being used in this
Court or any other.  *See* FCBA Model Instructions (2016), § 3.1; *and see* AIPLA Model
Instructions (2018), § 3.0.

## 4.2      DIRECT INFRINGEMENT

In regard to the '377 patent, Plaintiffs allege that Hamilton Beach and Hershey Creamery directly infringed, literally or under the doctrine of equivalents, claims 1 and 11 of the '377 patent by making, using, selling, offering to sell, and importing into the United States the accused MIC2000 blender.

In regard to the '150 patent, Plaintiffs allege that Hamilton Beach directly infringed, and continues to infringe, literally or under the doctrine of equivalents, claims 15, 20, and 22 of the '150 patent by making, using, selling, offering to sell, and importing into the United States the accused MIC2000, BIC2000, and BIC3000-DQ blenders.  Plaintiffs also allege that Hershey Creamery directly infringed, and continues to infringe, literally or under the doctrine of equivalents, claims 15, 20, and 22 of the '150 patent by making, using, selling, and offering to sell the accused MIC2000 blenders.  As I mentioned before, direct infringement of claim 15 by Defendants has been determined before trial, leaving infringement of claims 20 and 22 of the '150 patent for your determination.

In regard to the '658 patent, Plaintiffs allege that Hamilton Beach directly infringed, and continues to infringe, literally or under the doctrine of equivalents, claims 1, 5, 6, 10, and 11 of the '658 patent by making, using, selling, offering to sell, or importing into the United States the accused MIC2000, IMI2000, BIC2000, and BIC3000-DQ blenders.  Plaintiffs also allege that Hershey Creamery directly infringed, and continues to infringe, literally or under the doctrine of equivalents,  claims 1, 5, 6, 10, and 11 of the '658 patent by making, using, selling, or offering to sell the accused MIC2000 blenders.

[**PLAINTIFF'S PROPOSAL**: In regard to the '662 patent, Plaintiffs allege that Hamilton Beach has directly infringed, and continues to infringe, claim 21 of the '662 patent by

16

making, using, selling, offering to sell, or importing into the United States the accused MIC2000, IMI2000, BIC2000, and BIC3000-DQ blenders.  Plaintiffs also allege that Hershey Creamery directly infringed, and continues to infringe, claim 21 of the '662 patent by making, using, selling, or offering to sell the accused MIC2000 blenders.

As I mentioned before, it has already been determined that Defendant Hamilton Beach directly infringes Claim 21 by Hamilton Beach's own use and demonstrations of all four Accused Products – the  MIC2000, BIC2000, IMI2000, and BIC3000-DQ blenders.  It has also already been determined that Defendant Hershey directly infringes Claim 21 by Hershey's own use and demonstrations of the MIC2000 blender.][4]

To prove direct infringement of an asserted claim, Plaintiffs must prove by a preponderance of the evidence that (1) the accused product meets each and every element of an asserted claim in the asserted patents, and (2) Defendants have made, used, imported, offered to sell, or sold said accused product in the United States.  For purposes of the "offer to sell" or "sell" requirement, leasing or renting the accused product to another is sufficient.

A party can directly infringe a patent without knowing of the patent or without knowing that what it was doing is patent infringement. A party may also directly infringe a patent even though it believes in good faith that the patent is invalid.  Thus, Defendants' knowledge of the

---

[4] <u>Defendants' footnote:</u>  Defendants object to direct infringement claims of claim 21 the '662 patent.  The Court has already determined that Defendants' use of the accused products directly infringes claim 21.  The only remaining allegations against Defendants regarding claim 21 is Plaintiffs' allegations of indirect infringement by the combined actions consumers and retailers such that there is direct infringement underlying Plaintiffs indirect infringement claims.  Plaintiffs have never pled, contended, or supported, until these instructions, that the combined actions of *Defendants* and customers and/or retailers directly infringe any method claim of the '662 (and '658) patents (*see* fn. 7).

asserted patents and Defendants' intent are irrelevant to your determination of direct infringement.

Direct infringement may be literal or by equivalents, as explained in the following instructions.

### 4.2.1   LITERAL INFRINGEMENT

Plaintiffs assert that Defendants literally infringe claims 1 and 11 of the '377 patent, claims 15, 20, and 22 of the '150 patent, claims 1, 5, 6, 10 and 11 of the '658 patent, and claim 21 of the '662 patent.  To determine literal infringement, you must compare the accused product with each of the asserted claims, using where appropriate my instructions as to the definition of certain of the patent claim terms.  A patent claim can only be literally infringed if the accused product meets each and every limitation in that patent claim.  The same component of an accused product may satisfy more than one limitation of the claim.  If an accused product does not meet one or more of the limitations recited in the claim, it does not literally infringe that claim.

You must determine literal infringement with respect to each patent claim individually. As I mentioned earlier, if you find that an independent claim is not infringed, then every dependent claim that depends on that independent claim is not infringed either.  On the other hand, if you find that an accused product infringes an independent claim, you must still decide, separately, whether the accused product meets the additional requirements of any asserted dependent claims, and thus, whether those dependent claims have also been infringed.

### 4.2.2   INFRINGEMENT OF "COMPRISING" CLAIMS

Some of the Asserted Claims use the word "comprising." For example, claim 1 of the '377 patent recites "An apparatus for making frozen drinks from a frozen substance frozen into a cup, comprising . . .".

The word "comprising" means "including the following but not excluding others."

If you find that an accused product includes all of the elements in any asserted claim, the fact that it may also include additional elements is irrelevant.  The presence of additional elements does not mean that Defendants do not infringe that claim.

### 4.2.3   INFRINGEMENT OF METHOD CLAIMS AND ACTS OF MULTIPLE PARTIES[5]

Infringement of a method claim occurs where all steps of the claimed method are performed by or are attributable to a single party. Where more than one party is involved in performing the claimed steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement.

**[PLAINTIFF'S PROPOSAL**: In this case, if you find that Defendants themselves do not perform all of the claimed steps of the asserted method claims of the '658 and '662 patents, Defendants may still be liable for infringement of those patent claims if any steps performed by others, such as consumers or retailers, are attributable to Defendants.

For infringement through combined acts of multiple parties to be proved, Plaintiffs must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that the acts of third parties are attributable to Defendants either because Defendants and the third parties have formed a joint enterprise or because Defendants "direct or control" the acts of the third parties.

To prove that Defendants and a third party have formed a joint enterprise, Plaintiff must prove four elements:

(1) there was an agreement, either express or implied, between Defendants and the third party;

---

[5] <u>Plaintiff's footnote:</u> FCBA Model Instruction 3.7, citing 35 U.S.C. § 271(a); *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 797 F.3d 1020, 1022-24 (Fed. Cir. 2015) (en banc).

(2)  they shared a common purpose;

(3)  each had a financial interest in that purpose[6]; and

(4)  each had an equal right of control in the enterprise.[7]

To prove that Defendants "directed or controlled" the acts of third parties, Plaintiffs must prove that the third party performed the claim step(s) in order to receive a benefit from Defendants and that Defendants established how or when the claim step(s) were performed.][8]

---

[6] Defendants' footnote: Even if such an instruction was permissible in this case (it is not), this prong is wrongly stated.  Prong three concerns "a community of pecuniary interest" in the common purpose, among the members. *IOENGINE, LLC v. PayPal Holdings, Inc.,* 2019 WL 330515, at *1 (D. Del. Jan. 25, 2019) (Bryson, J.) (citing *Akamai*).

[7] Defendants' footnote: Plaintiffs have made no allegation or contention in this case that combined action of Defendants with any third party were performed as part of direct "joint enterprise" or that Defendants "directed or controlled" the acts of third parties such that Defendants are liable for *direct* infringement.  Plaintiffs' infringement contentions did not raise a theory of direct joint infringement of the Defendants, and the report of their expert, Dr. Maynes, supported only the contention that *customers* are the direct infringers.  *See* Dfts' MIL 2, Ex. A at ¶ 90 ("By preparing Hershey milkshakes in the manner taught by Hamilton Beach and Hershey, the 'Shake Shop Express' consumers are performing every step of claim 21 of the '662 patent and, thus, *directly infringing* claim 21 of the '662 patent.") (emphasis added) and ¶¶ 95-96 ("Hamilton Beach and Hershey also induced the consumers of Hershey's milkshakes to infringe method claims 6-11 of the '658 patent and contributorily infringed each time the consumer prepares a Hershey 'Shake Shop Express' milkshake.").  Indeed, in denying Defendants' motion for summary judgment of noninfringement when consumers use the MIC2000 milkshake blender (D.I. 248) the Court recognized that "the parties dispute whether consumers' performance of some of the patented method steps was directed or controlled *by retailers* who provided the consumers with MIC2000 blenders," *id.* at 3 (emphasis added).  Defendants' therefore object to the inclusion of this instruction as not relevant to this case and unnecessary because it injects a new theory of liability against defendants at this late stage that has not been raised (or vetted) previously in the litigation.  It is unfairly prejudicial and against the Rules to allow such a new theory of liability at trial.  Fed. R. Civ. P. 37(c)(1) & 37(b)(2)(A)(ii).  *See also Lyda v. CBS Corp.,* 838 F.3d 1331, 1338-40 (explaining what joint infringement pleadings require).

[8] Plaintiff's footnote: FCBA Model Instructions, § 3.7.

Defendants' footnote: Defendants object for the reasons stated in the previous footnote.

[**DEFENDANTS' PROPOSAL:** In this case, for the asserted method claims of the '658 and '662 patents, Plaintiffs contend that Defendants may be liable for infringement of those patent claims by the combined action of consumers and retailers in using the MIC2000.

For infringement through combined acts of multiple parties to be proved, Plaintiffs must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that the acts of the multiple parties are attributable to the one party that "directs or controls" the acts of the other party.

To prove that one party "directed or controlled" the acts of another, third party, Plaintiffs must prove that (1) the party conditions participation in an activity or receipt of a benefit upon performance of a claim step or steps by the third party and (2) the party established how and when the claim step or steps were performed by the third party. Merely guiding or instructing a third party how to use an accused product does not rise to the requisite level of direction or control.][9]

---

[9] <u>Defendant's footnote</u>: Defendants' proposal for this instruction is legally accurate, while Plaintiffs' proposal is not.  Plaintiffs' proposal eliminates the requirement that a party "condition participation in an activity or receipt of a benefit upon performance of a claim step or steps." That would not be an accurate instruction of the law. *See Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.,* 323 F. Supp. 3d 566, 581 (D. Del. 2018) ("Direction or control can be shown where an actor crosses the line from merely guiding or instructing to conditioning, even if the conditioning is not categorical in nature"); *Perdiemco, LLC v. Industrack LLC,* No. 2016 WL 8135379, at *3 (E.D. Tex. Nov. 8, 2016) (granting summary judgment of no direction or control where patent holder contended that "a customer's use of the system is conditioned on the customer performing the defining steps because 'Geotab does not provide the full benefit of the accused fleet-tracking services unless customers enter the requisite data.'; stating that if "that was sufficient to establish divided infringement under § 271(a), then the Supreme Court's *Limelight* decision would have little meaning" and it "will always be true that a user's benefit from using software will increase as the user explores additional functionality. That is not what the Federal Circuit meant by 'conditions participation.' *See Akamai,* 797 F.3d at 1023. PerDiem's theory stands in stark contrast to the circumstances considered by the Federal Circuit in *Akamai*, in which the accused infringer required customers to sign a standard form contract that delineated which claimed steps the customers "must perform." *See id.* at 1024.); *IOENGINE,*

## 4.2.4   INFRINGEMENT BY THE DOCTRINE OF EQUIVALENTS[10]

If you decide that an accused product does not literally infringe a particular claim element, you must then decide whether it is more probable than not that the accused product infringes that element under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, an accused product can infringe the asserted patent if it includes component parts that are equivalent to those elements of the claim that are not literally present in the accused product.  Here, Plaintiffs assert that the Accused Products include equivalents of various elements in the Asserted Claims.  If an accused product is missing an equivalent part to a certain element of the asserted patent claim, it cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at a particular element of the asserted patent claim and decide whether the accused product has an equivalent part that is not literally present in the accused product.  In deciding whether a component part of an accused product is equivalent to a particular element, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the accused component part with the particular element.[11]  However, the known interchangeability between the particular

---

*LLC v. PayPal Holdings, Inc.,* 2019 WL 330515, at *1-3 (D. Del. Jan. 25, 2019) (Bryson, J.) ("Proof that a defendant engaged in joint infringement by directing and controlling another party's infringing conduct can be shown where the defendant '(1) 'conditions participation in an activity or receipt of a benefit' upon others' performance of one or more steps of a patented method, and (2) 'establishes the manner or timing of that performance.''") (citations omitted).

Plaintiff's position: Plaintiff's proposal is not "legally [in]accurate," as contended by Defendants.  Rather, Plaintiff's proposed instruction avoids unnecessary verbiage and confusion, and mirrors that of the FCBA Model Instructions.  *See* FCBA Model Instructions (2016), § 3.7.

[10] *See, e.g.,* Final Jury Instructions at 35 in *Greatbatch Ltd. v. AVX Corp.,* C.A. No. 13-723-LPS.

[11] Plaintiff's footnote: *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 36 (1997) ("The known interchangeability of substitutes for an element of a patent is one of the express

element and the component part of the accused product is not necessary to find infringement under the doctrine of equivalents.][12]

To show infringement under the doctrine of equivalents, Plaintiffs must show that the differences between the claim element and a corresponding aspect of the accused product are insubstantial. One way to determine this is to look at whether or not the corresponding aspect of the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.[13]

You may not determine that an alternative aspect of a product is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that for a product to infringe an asserted claim under the doctrine of equivalents, the element of the asserted claim which is not literally found in the accused product contains an equivalent for

---

objective factors noted by Graver Tank as bearing upon whether the accused device is substantially the same as the patented invention.").

[12] Plaintiff's footnote: Official Transcript of Trial Day VI at 1450:23 – 1451:23, *Bayer Healthcare LLC v. Baxalta Inc. et al.*, C.A. No. 16-1122-RGA (D. Del. Feb. 4, 2019) (Final Jury Instructions, as read in open court).

Defendants' position: Defendants object to this portion of the instruction as being unnecessary in view of the rest of the instruction proposed.  Moreover, the instruction is confusing and unfairly prejudicial in its reference to infringement of the "patent" and reference to "parts" and "component parts" being equivalent and the use of "equivalent parts" further being confusing and misleading.

[13] *See, e.g., London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, n.2 (Fed. Cir. 1991) (recognizing that "[t]he implementation of this doctrine is through the *Graver Tank* function-way-result test.") (citing *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1531-32 (Fed. Cir. 1987)); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 338 U.S. 605, 608 (1950).

each element of the claim that is not literally present in the accused product. The question is not whether the accused product as a whole is equivalent to the claimed invention as a whole.

[DEFENDANTS PROPOSAL:

### 4.2.5   LIMITATION ON EQUIVALENTS[14, 15]

Because a fundamental tenet of patent policy is that a patent is a teaching tool that others may use as a foundation for developing newer products that benefit the public,[16] a fundamental purpose of a patent claim is to precisely demarcate what is or is not covered by a patent claim. Therefore, the patent law places certain limits on the doctrine of equivalents.

---

[14] Defendants' footnote: AIPLA Model Patent Jury Instructions (2018) (available at: file://dbr.com/Users$/WMUsers/rahmeit/Documents/Hamilton%20Beach/Jury%20Instructions/model%20instructions%202018.pdf); *see also* the parties' SJ and MIL briefing on these matters.

[15] Plaintiff's footnote: Plaintiff objects to Defendants' proposed instruction because the specific limitations cited are issues for the Court to decide.  Further, said limitations are the subject of pending Motions in Limine.

[16] Defendants' footnote: *See, e.g., Haworth, Inc. v. Steelcase, Inc.,* 685 F. Supp. 1422, 1441 (W.D. Mich. 1988) ("A fundamental tenet of patent policy is that a patent is a teaching tool which others may use as a foundation for developing newer and better products, beneficial to the public. Indeed, a fundamental purpose of the claims is to precisely demarcate where others may or may not endeavor. *General Electric Co. v. Wabash Appliance Corp.,* 304 U.S. 364, 369, 58 S.Ct. 899, 901, 82 L.Ed. 1402 (1938). Therefore, as the Federal Circuit has recently restated, the doctrine of equivalents cannot be utilized to block progress. "We caution that the incentive to innovation that flows from 'inventing around' an adversely held patent must be preserved." *Texas Instruments,* 805 F.2d at 1572; *State Industries, Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1235–36 (Fed. Cir. 1985). ("One of the benefits of a patent system is so-called 'negative incentive' to design around a competitor's products ...")."); *see also State Indus.,* 751 F.2d at 1235-36 ("Conduct such as Smith's, involving keeping track of a competitor's products and designing new and possibly better or cheaper functional equivalents is the stuff of which competition is made and is supposed to benefit the consumer. One of the benefits of a patent system is its so-called "negative incentive" to "design around" a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace."); *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1355 (Fed. Cir. 1999) (noting that "the patent law encourages competitors to design or invent around existing patents").

The doctrine of prosecution history estoppel prevents a patent owner from covering products under the doctrine of equivalents that he or she gave up in order to obtain the patent. In this case, prosecution history estoppel applies as follows:

The prosecution history of the patents prohibit Plaintiffs from using the doctrine of equivalents to meet the following limitations:

(1) the "aeration means" limitation of claim 1 of the '377 patent.

(2) the "grinding means" limitation of claim 1 of the '377 patent.

(3) the "rotatable blade assembly" including "shaving elements" and "aeration elements" limitations of claim 11 of the '377 patent.

Each of these limitations, if met, may only be met literally and may not be met under the doctrine of equivalents.] [**Plaintiffs:** Plaintiffs do not believe this instruction is necessary for the jury's determination.]

### 4.2.6   INFRINGEMENT OF MEANS-PLUS-FUNCTION TERM

The '377 patent includes terms that I have defined as "means-plus-function" terms. A product meets a means-plus-function requirement of a claim if you find by a preponderance of the evidence that: (1) it has a structure that performs the identical function recited in the claim; and (2) that structure is either identical or "equivalent" to the defined structure. If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not infringe the asserted claim. Alternatively, even if the product has a structure that performs the specific function recited in the claim, but the structure that performs the function is not identical or "equivalent" to the structure that I defined to you as performing the specific function, the product does not infringe the asserted claim.

[**PLAINTIFF'S PROPOSAL**: If you determine that there is no "literal infringement" because there is no structure in the accused product that performs the specific function of the

25

means-plus-function requirement, you may decide that the structure nonetheless corresponds to the requirements of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" structure or action.[17, 18]] [**DEFENDANTS' PROPOSAL**: On the other hand, if you find that the accused product has no corresponding structure to the structure that I defined as performing that function, then you must find that there is no infringement under the doctrine of equivalents. This is the case even if you find that the accused product has some other structure that performs the specific function of the means-plus-function requirement. In other words, for a means-plus-function requirement, a determination that there is no "equivalent" structure for purposes of "literal infringement" precludes you from finding infringement under the "doctrine of equivalents."][19]


## 4.3    INDIRECT INFRINGEMENT

I will now instruct you on the rules you must follow for indirect infringement.  There are two types of indirect infringement: (1) active inducement; and (2) contributory infringement. There cannot be indirect infringement without someone else engaging in direct infringement.  To

---

[17] <u>Plaintiff's footnote</u>: FCBA Model Instructions (2016), § 3.1c.

[18] <u>Defendant's footnote</u>: Defendants object to Plaintiffs' instruction as a misstatement of law. The means-plus-function statute in the Patent Act delineates the proper scope of equivalents. *See* 35 U.S.C. § 112(6).  The foregoing instruction included instructing the jury on potentially "equivalent" structure. Thus, Plaintiffs' proposed additional instruction is unnecessary and confusing. *See also* Defendants' proposal for "4.2.5 LIMITATION ON EQUIVALENTS" with respect to the implicated means-plus-function limitations of the '377 patent.

[19] <u>Defendant's footnote</u>: Defendants conditionally propose the following language, which includes the rest of the instruction from the model instructions on which Plaintiffs rely.  *See* FCBA Model Instructions (2016), § 3.1c.  To the extent the Court is inclined to use Plaintiffs' proposed disputed instruction, the complete instruction, as provided here, should be used. *See also* prior footnote from Defendants.

prove indirect infringement, Plaintiffs must also prove that Defendants' actions caused direct infringement.

### 4.3.1   ACTIVE INDUCEMENT

Plaintiffs assert that Defendants are liable for indirect infringement of the '658 patent and the '662 patent by actively inducing consumers or retailers of the Shake Shop Express program to directly infringe said patents by using the MIC2000.  Plaintiffs also assert that Hamilton Beach is liable for indirect infringement of the '658 patent and the '662 patent by actively inducing others, such as convenience store retailers, restaurants, or customers, to directly infringe those patents by using the BIC2000, BIC3000-DQ, and IMI2000.

Plaintiffs must prove active inducement by a preponderance of evidence. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To find that Defendants actively induced infringement, it is not necessary to show that Defendants themselves directly infringed, provided: (1) someone, specifically, a convenience store retailer or retail customer, engaged in direct infringement, namely, practicing all of the elements of the claim by making and selling the accused product; and (2) Defendants actively induced these acts of infringement by the other person.

**[DEFENDANTS PROPOSE:** If you do not find that there is direct infringement by others, specifically convenience store retailers, restaurants, or retail customers, or if you do not find that Defendants actively induce others to infringe, you must find that Defendants did not induce infringement.][20]

---

[20] <u>Plaintiff's footnote</u>: Plaintiffs objet to Defendant's proposed instruction as unnecessary in light of Plaintiff's burden and the above instructions on the Burdens of Proof.

To prove active inducement by Defendants for each of the '658 patent and the '662 patent, Plaintiffs must establish that it is more likely than not that:

1.  Defendants affirmatively aided, instructed, or otherwise acted intentionally to cause another to directly infringe an asserted claim of the patent;

2.  Defendants knew of the patent, or showed willful blindness to the existence of the patent;

3.  Defendants knew or showed willful blindness to the fact that others would infringe at least one claim of the patent; and

4.  The other person infringed an asserted patent claim.

### 4.3.2   CONTRIBUTORY INFRINGEMENT

Plaintiffs assert that Defendants are liable for contributory infringement of the '658 patent and the '662 patent by contributing to the direct infringement of those patents by consumers or retailers of the Shake Shop Express program using the MIC2000.  Plaintiffs also assert that Hamilton Beach is liable for indirect infringement of the '658 patent and the '662 patent by contributing to the direct infringement of said patents by others using the BIC2000, BIC3000-DQ, and IMI2000.

Plaintiffs must prove contributory infringement by a preponderance of evidence. As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

[**DEFENDANTS PROPOSAL:** If you do not find that there is direct infringement by others or if you do not find that Defendants contributed to the direct infringement by others, you must find that Defendants did not commit contributory infringement.][21]

To establish Defendants' contributory infringement of each of the '658 patent and the '662 patent, Plaintiffs must prove that each of the following is more likely than not:

1.      Defendants made, sold, offered for sale, or imported within the United States a component of the accused product for use in the infringing method;

2.      The component is not a staple article or commodity of commerce capable of substantial non-infringing use;

3.      The component constitutes a material part of the patented invention; and

4.      Defendants knew about the Asserted Patents and that the component was especially made or adapted for use in an infringing method; and

5.      Someone, other than Defendants, using the Accused Products has directly infringed the method claims.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Defendants' knowledge that the component was especially made or adapted for use in an infringing method may be shown with evidence of willful blindness where Defendants consciously ignored the existence of both the patent and the direct infringement of that patent by others.

---

[21] Plaintiff's footnote: Plaintiffs object to Defendant's proposed instruction as unnecessary in light of Plaintiff's burden and the above instructions on the Burdens of Proof.

To find contributory infringement, it is not necessary to show that Defendants directly infringed as long as you find that the Defendant contributed to the direct infringement by another.

### 4.4   WILLFUL INFRINGEMENT

In this case, Plaintiffs allege both that Defendants infringed and, further, that Defendants infringed willfully the '377, '150, '658, and '662 patents.  For any claim that is both infringed and not invalid, you must go on and address the additional issue of whether or not the infringement was willful.

To show that Defendants' infringement was willful, Plaintiffs must prove by a preponderance of the evidence that Defendants knew of Plaintiffs' patents and intentionally infringed at least one asserted claim of the patent.

You may not determine that the infringement was willful just because Defendants knew of the Asserted Patents and infringed them.  **[DEFENDANTS' PROPOSAL:** Instead, willful infringement is reserved for the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith.] [22]  **[PLAINTIFF'S PROPOSAL:** Instead, willful infringement requires Defendants to have acted despite a risk of

---

[22] <u>Defendants' footnote</u>: *SRI Int'l, Inc. v. Cisco Systems, Inc.,* 918 F.3d 1368, 1380-82 (Fed. Cir. 2019) (reversing denial of JMOL and holding willful infringement was not supported by substantial evidence where "the record is insufficient to establish that Cisco's conduct rose to the level of wanton, malicious, and bad-faith behavior ***required for willful infringement***"; "the [district] court should bear in mind the standard for willful infringement") (emphasis added); *see also Alarm.com*, Final Jury Instructions at § 4.6; *Orexo*, Final Jury Instructions, § 3.8; *see also* Federal Circuit Bar Association's Model Jury Instruction § 3.10 (July 2016) (stating that "willful infringement is reserved only for the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith."). Defendants object to Plaintiffs formulation of this instruction on the basis that it does not include considerations of validity and is not proper under the current law for willfulness that, for subjective intent, more is required than "act[ing] despite a [mere] risk of infringement."

infringement that was either known or so obvious that it should have been known to Defendants.][23]

To determine whether Defendants acted willfully, consider all facts.  These include, but are not limited to:

(1) Whether or not Defendants acted consistently with the standards of behavior for their industry;

(2) Whether or not Defendants intentionally copied a product of Plaintiffs that is covered by the Asserted Claims;

(3) Whether or not Defendants reasonably believed they did not infringe or that the Asserted Claims were invalid;

(4) Whether or not Defendants made a good-faith effort to avoid infringing the Asserted Claims, for example, whether Defendants attempted to design-around the patents; and

(5) Whether or not Defendants tried to cover up their infringement.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

**[DEFENDANTS' PROPOSAL:** In considering the totality of the circumstances as to whether Defendants acted willfully, you may consider whether Defendants reasonably relied on a competent legal opinion relating to non-infringement or invalidity of the Asserted Claims.[24] On the other hand, the patent laws establish a clear rule that if an accused infringer does not present

---

[23]    *See Orexo AB et al. v. Actavis Elizabeth LLC, et al*., C.A. No. 17-205-CFC, Proposed Joint Final Jury Instructions at § 3.8 (D.I. 270) (as substantially read in open Court).

[24] AIPLA Model Instructions (2018), § 11.1; *Spectralytics, Inc. v. Cordis Corp.,* 649 F.3d 1336, 1347-48 (Fed. Cir. 2011); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,* 605 F.3d 1305, 1313 (Fed. Cir. 2010); *In re Seagate Tech., LLC,* 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*).

evidence at trial of advice of counsel with respect to alleged infringement of a patent claim, that fact may not be used to prove that the accused infringer willfully infringed or that the infringer intended to induce infringement.][25]

## 5.    INVALIDITY

I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that any of the Asserted Claims are invalid. As I noted before, [**PLAINTIFF'S PROPOSAL**: patents issued by the United States Patent & Trademark Office are presumed to be valid, and][26] Defendants have the burden of proving by clear and convincing evidence that a patent claim is invalid. [**PLAINTIFF'S PROPOSAL**: Clear and convincing evidence means that it is highly probable that a fact is true.][27] This is a higher standard than the "preponderance of the evidence" standard that is used for infringement.

---

[25] Defendants' footnote: 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent."); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1935 (2016) (stating that Section 298 provides that "'[t]he failure of an infringer to obtain the advice of counsel' or 'the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed.'") (quoting 35 U.S.C. § 298).  The legislative history of Section 298 demonstrates that Congress intended "to protect attorney-client privilege and to reduce pressure on accused infringers to obtain opinions of counsel for litigation purposes."  H.R. Rep. No. 112-98(I), pt. 1, at 53 (2011).

[26] Plaintiff's footnote: *See* 35 U.S.C. § 282; *and see Greatbatch*, Final Jury Instructions, § 4.1.

Defendants' position: *See* fn. 2 (Defendants' position).

[27] Plaintiff's footnote: *See Greatbatch*, Final Jury Instructions, § 4.1.

Defendants' position: Defendants object to inclusion of this further instruction as to the clear and convincing standard, which is explained in previous instructions and does not need to be repeated here.

Invalidity must be assessed on a claim-by-claim basis.  In other words, you can find that one claim is invalid, but that other claims are valid, even in the same patent.  Terms of the patent claims must be interpreted in the same way for both infringement and invalidity.

### 5.1     PERSON OF ORDINARY SKILL IN THE ART

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made. In this case, the parties agree that a person of ordinary skill would be an engineer with at least an undergraduate degree in mechanical engineering or related discipline and at least three years of professional or research experience in the design of consumer or medical products that utilize fluid systems. The person of ordinary skill is a hypothetical person who is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems in this field.

### 5.2     PRIOR ART

Under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before.  That which came before is referred to as the "prior art."   Prior art includes any of the following that was received into evidence during trial:  Items that were publicly known or used or offered for sale in the United States, as well as reference publications, such as published articles, patents, or patent applications, from anywhere in the world, that were made, known, used, published, or patented [**PLAINTIFF'S PROPOSAL**: before the invention was made or more than one year before the effective filing

date of the patent application.][28]  [**DEFENDANTS' PROPOSAL**: before the effective filing

date of the Asserted Patent.][29]

Statements in the patent, or made by the applicant during prosecution of the patent, that

identifies work of another as prior art is an admission that can be relied upon as prior art.  In

addition, claim 15 of the '150 patent is written in what is called "improvement claim" format.

Improvement claims are to be taken as an admission that the subject matter recited before "the

improvement comprising" term is admitted prior art.

Defendants must prove, by clear and convincing evidence, that the asserted prior art

references qualify as prior art to the claim against which it is asserted.

### 5.3     PRIOR ART CONSIDERED OR NOT CONSIDERED BY THE USPTO

Regardless whether particular prior art references were considered by the United States

Patent and Trademark Office (or "USPTO") during the prosecution of the application which

matured into the Asserted Patents, Defendants must prove that the challenged Asserted Claims

are invalid.  Defendants must do so by clear and convincing evidence.  This burden of proof on

Defendants never changes regardless whether or not the USPTO considered the reference.

Although Defendants' burden of proof never changes, if the USPTO did consider a prior

art reference or the same combination of references that are now asserted in an invalidity

---

[28] <u>Plaintiff's footnote</u>: Plaintiff's instruction is legally correct and avoids unnecessary confusion with respect to the term "priority date."

[29] <u>Defendants' footnote</u>: 35 U.S.C. § 102(a). Defendants also object to Plaintiffs' proposal because it is confusing and misleading to the jury. None of the remaining references to be used at trial for Defendants' invalidity challenges are even alleged to not qualify as prior art, so Plaintiff's reference to "before the invention date" or "one year before the effective filing date of the patent application" may mislead the jury to conclude that undisputed prior art is somehow not prior art for purposes of Defendants invalidity challenges. There is no reason to include such language in this case.

defense, it may be more difficult for Defendants to meet its burden of proof. [**PLAINTIFF'S PROPOSAL:** Deference is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the prior art references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.  When a patent challenger simply goes over the same ground travelled by the USPTO examiner, part of Defendants' burden is to show that the USPTO examiner was wrong in the decision to grant the patent. [30]] When a party challenging the validity of a patent presents evidence that was not considered by the USPTO during prosecution of the application which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy the clear and convincing burden.

### 5.4     OBVIOUSNESS

Defendants contend that the asserted claims of the '377, '150, and '658 patents, [**PLAINTIFF'S PROPOSAL:** but not the '662 patent,][31] are invalid for obviousness based on certain combinations of prior art. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. Obviousness may be proven by considering one or more items of prior art.

Defendants must prove that a patent claim is invalid by showing, by clear and convincing evidence, that the inventions claimed would have been obvious to a person of ordinary skill in

---

[30] Defendants' position: Defendants object to inclusion of this instruction as unnecessary, argumentative, and unfairly prejudicial.  *See also* fn. 2.

[31] Defendants' footnote: The verdict form will make clear what claims are challenged under what basis for the jury's determination; this is unnecessary here.

the art as of each claim's date of invention.  The issue is not whether the claimed invention would have been obvious to you as a layman, to me as the judge, or to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.  Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most inventions rely on building blocks of prior art.

In determining whether a claimed invention would have been obvious, you should not [**PLAINTIFF'S PROPOSAL:** consider what is known today or what was learned from the teachings of the asserted patent. You should not[32]] use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of the date of invention.

In determining whether a claimed invention would have been obvious, you must consider:

1.      the scope and content of the prior art,

2.      the level of ordinary skill in the pertinent art;

3.      the differences between the claimed invention and the prior art; and

4.      additional considerations, which are referred to as "objective indicia" of non-obviousness as I will explain shortly.

---

[32] Plaintiff's footnote: *E.I. DuPont de Nemours and Co. v. Unifrax I LLC,* C.A. No. 14-1250-RGA, Final Jury Instructions at § 5.5 ("[Y]ou should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map[.]").

Defendants' position: Defendants object to this part of the instruction as unnecessarily duplicative and therefore unfairly prejudicial.  The thrust of this language is adequately provided in the rest of the instructions.  For example, this sentence is included almost verbatim below right before the discussion of the "objective indicia." *See infra* ("Do not use hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patent.  You must consider only what was known at the time of the invention.").

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform this separate analysis for each of the claims.  I will now explain each of these factors.

To determine the scope and content of the prior art, you must determine whether the prior art that Defendants identified is reasonably pertinent to the particular problems the inventor of the claimed invention faced.  The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.

I have already instructed you on how you are to determine the level of ordinary skill in the art. Once you have made that determination, you are to apply it in your determination whether the asserted claims would have been obvious.

The next factor that you must consider is the differences, if any, between the prior art and the claimed invention.  Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known. In considering whether a claimed invention is obvious, you may, but are not required to find obviousness if you find that at the time of the claimed invention a reason existed that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the same way the claimed invention does. The motivation to modify the prior art to arrive at the claimed invention need not be explicitly stated in the prior art to be combined nor be the same motivation that the inventor actually had. [**DEFENDANTS PROPOSE:** Motivation to modify or combine the prior art may be found explicitly or implicitly in: market forces; design incentives; the interrelated teachings of multiple patents; any need or problem known in the field of endeavor at the time of invention and

addressed by the patent; or the background knowledge, creativity, and common sense of the person of ordinary skill.[33]]

In deciding the issue of obviousness, you may take into account such factors as: whether the prior art teaches away from combining elements in the claimed invention; whether the claimed invention was the predictable result of using prior art elements according to their known functions; whether the claimed invention provides an obvious solution to a known problem in the relevant field; whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; and  whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patent.  You must consider only what was known at the time of the invention.

In arriving at your decision on whether the claimed inventions would have been obvious to a person of ordinary skill in the art, you should also take into account "objective indicia" — sometimes called "secondary considerations"—that may have existed at the time of the invention and suggest that the claimed invention was not obvious. Such objective evidence may include:

---

[33] Defendants' footnote: *Plantronics, Inc. v. Aliph, Inc.,* 724 F.3d 1343, 1354 (Fed. Cir. 2013) ("[M]otivation to combine  may be found explicitly or implicitly in market forces; design incentives; the 'interrelated  teachings of multiple patents'; 'any need or problem known in the field of endeavor at the time of  invention and addressed by the patent'; and the background knowledge, creativity, and common  sense of the person of ordinary skill." (quoting *Perfect Web Techs., Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1328 (Fed. Cir. 2009).

Plaintiff's position: Plaintiff objects to Defendants' proposed instruction as confusing and unnecessary in light of the remainder of the instructions.

1.   Whether products covered by the claimed invention were commercially successful due to the merits of the claimed invention rather than due to unclaimed features or other reasons;

2.   Whether there was a long-felt need for a solution to the problem, which was satisfied by the claimed invention;

3.   Whether others had tried and failed to solve the problem solved by the claimed invention;

4.   Whether anyone copied Plaintiffs' commercial embodiment of the invention due to the merits of the claimed invention rather than due to unclaimed features or other reasons. Copying requires the replication of a specific product;

5.   Whether the claimed invention achieved unexpected results over the closest prior art;

6.   Whether others sought or obtained rights to the patent from the patent holder due to the merits of the claimed invention; or

7.   Whether others in the field praised the claimed invention.

These factors, if present, should be considered along with all the other evidence in the case in determining whether the claimed invention would have been obvious. However, there must be a connection, or nexus, between the secondary consideration and the claimed invention if the "objective indicia" is to be given weight by you in arriving at your conclusion on the obviousness issue.

[**DEFENDANTS PROPOSE:** For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those claimed in the patents, then any commercial success may have no relation to the issue of obviousness.[34]

Other considerations support a determination that a claim is obvious. For example, evidence that someone else nearly simultaneously made or developed the same invention is an objective indication of obviousness.[35]

Even if you conclude that some of the above "objective indicia" have been established, such factors should be considered along with all the other evidence in the case in determining whether Defendants have proven, by clear and convincing evidence, that an Asserted Claim would have been obvious at the time of the invention.[36]]

### 5.5    INVENTORSHIP

Defendants also contend that the '150, '658, and '662 patents are invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent.  This is known as the "inventorship" requirement. [**PLAINTIFF'S PROPOSAL:** As with any other aspect of a

---

[34] <u>Defendants' footnote</u>: *Alarm.com, Inc. v. Securenet Techs. LLC,* C.A. No. 15-807-RGA, Final Jury Instructions at § 5.2.

<u>Plaintiff's position</u>: Plaintiff objects to Defendants' proposed instruction as unnecessary and subsumed in Factor 1, above ("due to the merits of the claimed invention rather than due to unclaimed features or other reasons").

[35] <u>Defendants' footnote</u>: *E.I. DuPont de Nemours and Co. v. Unifrax I LLC,* C.A. No. 14-1250-RGA, Final Jury Instructions at § 5.5.

<u>Plaintiff's position</u>: Plaintiff objects to Defendants' proposed instruction as irrelevant and not an issue here.

[36] <u>Defendants' footnote</u>: AIPLA's Model Jury Instructions at § 7.4.

<u>Plaintiff's position</u>: Plaintiff objects to Defendants' proposed instruction as unnecessary and confusing in light of the remainder of the instructions.

patent, the inventors named on an issued patent are presumed to be correct, and [37] ] Defendants must prove improper inventorship by clear and convincing evidence.

To be an inventor, one must make a significant contribution to the conception of at least one of the claims of the patent even if that claim has not been alleged to be infringed.[38]   Whether the contribution to conception is "significant" is measured against the scope of the full invention.[39]

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor(s) of a definite and permanent idea of the complete and operative invention. Conception of an invention is complete when the idea is so clearly defined in the inventors' mind(s) that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation.  Conception also requires that the inventor appreciate that which he or she has invented.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.[40]   Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor.[41]  One does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention.

---

[37] Plaintiff's footnote: *See* 35 U.S.C. § 282; *and see Greatbatch*, Final Jury Instructions, § 4.12. Defendants' position: *See* fn. 2.

[38] *See, e.g., Ioengine, LLC v. Imation, Corp.,* C.A. No. 14-1572-GMS, Final Jury Instructions at § 4.6; *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.,* C.A. No. 11-515-LPS-CJB, Final Jury Instructions at § 5.6.

[39] FCBA Model Instructions, § 4.3d

[40] FCBA Model Instructions, § 4.3d.

[41] *Id.*; *see also Greatbatch*, Final Jury Instructions, § 4.12.

An inventor may use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent.  What is required for inventorship is some significant contribution to the conception of at least one or more of the claims of the patents.[42] Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

[**PLAINTIFF'S PROPOSAL**: Named inventors on a patent are presumed to be correct.[43, 44]]

## 6.     DAMAGES

### 6.1     DAMAGES GENERALLY

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.

Any damages you award must be adequate to compensate Plaintiffs for any infringement you determine to have occurred. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put Plaintiffs in approximately the same financial position that they would have been in had the infringement not occurred.

Plaintiffs have the burden to establish the amount of its damages by a preponderance of the evidence.  While Plaintiffs are not required to prove the amount of their damages with

---

[42] *See, e.g., Ioengine,* at § 4.6.

[43] Plaintiff's footnote: *Greatbatch*, Final Jury Instructions, § 4.12.

[44] Defendants' position: *See* fn. 2.  This portion of the proposed instruction is also objectionable as duplicative as previously proposed language earlier in the instruction.  It is thus unnecessary and unfairly prejudicial.

mathematical precision, they must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.  In other words, you should award only those damages that Plaintiffs established that they more likely than not suffered. However, mere difficulty in ascertaining damages is not fatal to Plaintiffs.

There are different types of damages that Plaintiffs may be entitled to recover.  In this case, Plaintiffs seek lost profits and a reasonable royalty.  Lost profits consist of any actual reduction in business profits Plaintiffs suffered as a result of Defendants' alleged infringement. A reasonable royalty is defined as the amount of money that Plaintiffs, on the one side, and Defendants, on the other side, would have agreed upon as a fee for the use of the invention before the infringement began.  [**PLAINTIFF'S PROPOSAL:** A reasonable royalty is intended to compensate the Plaintiff for any infringement that cannot be compensated by lost profits damages.[45]] I will give you more detailed instructions regarding damages shortly.  If you find that any of the Asserted Claims is both valid and infringed, then Plaintiffs are entitled to damages and you must determine the damages to which Plaintiffs are entitled for Defendants' infringement.  As I said before, it has already been determined, and therefore you must accept as true, that Claim 15 of the '150 patent is directly infringed and method Claim 21 of the '662 patent is directly infringed by Defendants' own use and demonstrations, but validity of those claims and infringement of claim 21 of the '662 patent by use by consumers and retailers is still for you to determine.

---

[45] <u>Defendants' position</u>: Defendants object to this as a misstatement of law and unnecessary.

### 6.2     LOST PROFITS—"BUT FOR" TEST

In this case, Plaintiffs seek to recover lost profits for Defendants' sales of the Accused Products and, where lost profit damages are not available, a reasonable royalty.  To recover lost profits (as opposed to reasonable royalties) Plaintiffs must show a causal relationship between the infringement and Plaintiffs' loss of profit.  In other words, Plaintiffs must show that, but for the infringement, there is a reasonable probability that Plaintiffs would have earned higher profits.  To show this, Plaintiffs must prove that, if there had been no infringement, Plaintiffs would have made at least some portion of the sales that Defendants made of its products.

Plaintiffs are entitled to lost profits if they establish each of the following:

(1) There was a demand for the patented product.

(2) There were no acceptable non-infringing alternatives to the patented inventions that were available to Defendants or their customers.

(3) Plaintiffs had the manufacturing and marketing capacity to make any infringing sales actually made by Defendants and for which Plaintiffs seek an award of lost profits—in other words, that Plaintiffs were capable of satisfying the demand.

(4) The amount of profit that Plaintiffs would have made if Defendants had not infringed.

### 6.3     LOST PROFITS—DEMAND

Demand for the patented product can be proven by significant sales of a patented product or significant sales of an infringing product containing the patented features.

### 6.4     LOST PROFITS—NONINFRINGING SUBSTITUTES

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product, but also must not infringe the Asserted Patents.  If purchasers of an alleged infringer's

product were motivated to buy that product because of features covered by the Asserted Patents, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products. **[DEFENDANTS PROPOSE:** On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured some or all of the sales made by the infringer, then Plaintiffs are not entitled to lost profits on those sales.[46]] An alternative product must be non-infringing as I just described but also must be available at the time of the infringement. Defendants bear the burden of showing that an acceptable, non-infringing alternative was available.

### 6.5    LOST PROFITS—CAPACITY

This factor asks whether Plaintiffs had the manufacturing and marketing capacity to make the sales they said they lost. This means Plaintiffs must prove it is more probable than not that they could have made and sold, or could have had someone else make and sell for them, the additional products they say they could have sold but for the infringement.

### 6.6    LOST PROFITS—AMOUNT OF PROFIT

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

---

[46] Defendants' footnote: *Alarm.com,* Final Jury Instructions at § 6.1.4.

Plaintiff's position: Plaintiff objects to Defendants' proposed instruction as unnecessary and redundant.

### 6.7    LOST PROFITS—MARKET SHARE

If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available.  In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other.  Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

### 6.8    REASONABLE ROYALTY—ENTITLEMENT

If you find that Plaintiffs have established infringement, Plaintiffs are entitled to at least a reasonable royalty to compensate them for that infringement.  If you find that Plaintiffs have not proved their claim for lost profits, or have proved their claim for lost profits for only a portion of the infringing sales, then you must award Plaintiffs a reasonable royalty for all infringing sales for which they have not been awarded lost profits damages.

### 6.9    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, or import the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of Plaintiffs, on the one side, and Defendants, on the other side, would have been had they entered into an agreement at that time

and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed, and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from the hypothetical negotiation.

[**DEFENDANTS' PROPOSAL**: The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. If you find that the only infringement is the use of the Accused Products by Defendants during demonstrations or testing, then the reasonable royalty should be calculated based on the amount of that Defendants would have paid for the right to use the Accused Products and should not be based on the sales of the Accused Products.][47]

---

[47] Defendants' footnote: *Embrex, Inc. v. Serv. Eng'g Corp.,* 216 F.3d 1343, 1350 (Fed. Cir. 2000); *see also Oak Indus., Inc. v. Zenith Elecs. Corp.,* 726 F. Supp. 1525, 1543 (N.D. Ill. 1989) (in a case of infringing "use," a reasonable royalty should not be calculated based on all units capable of infringing because doing so "would impose liability on [defendant] for non-infringing use").  Defendants further state that their agreement to remove a separate instruction directed to this concept that was present in previous iterations of these instructions was premised on inclusion of the concept elsewhere.  Thus, Defendants submit that it is appropriate to include this language in this portion of the instructions.

Plaintiffs' position: Plaintiff objects to this instruction because it is subsumed in at least *Georgia-Pacific* factors 9, 10, 11, and 13.

### 6.10   FACTORS FOR DETERMINING A REASONABLE ROYALTY

In determining the reasonable royalty, you should consider all of the facts known and available to the parties at the time that the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1.    The royalties, if any, received by Plaintiffs for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2.    The royalties, if any, Defendants paid to license other patents comparable to the Asserted Patents.

3.    The nature and scope of the license, such as whether the license is exclusive or non-exclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

5.    Whether Plaintiffs had an established policy and marketing program to enforce its patent rights or license its patent under special conditions to preserve its monopoly.

6.    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, the business risks, or significant features or improvements added by the infringer.

7.    The commercial relationship between Plaintiffs, on the one hand, and Defendants, on the other hand, such as whether they are competitors in the same line of business, or whether they are inventor and promoter.

8.    The duration of the Asserted Patents and the term of the hypothetical license.

9.    The established profitability of the product made under the patent, its commercial

success, and its current popularity.

10.   The nature of the patented invention; the character of any commercial

embodiment of it as owned and produced by Plaintiffs, and the benefits to those

who have used the invention.

11.   The extent to which Defendants have made use of the invention and any evidence

probative of the value of that use.

12.   The effect of selling the patented product in promoting the sales of other products

by Defendants; the existing value of the invention to Plaintiffs as a generator of

sales of its own non-patented items; and the extent of such collateral sales.

13.   The portion of the profit or of the selling price that may be customary in the

particular business or in comparable businesses to allow for the use of the

invention or analogous inventions.

14.   The opinion testimony of qualified experts.

15.   The existence of any licenses that are technically and economically comparable to

the license to be negotiated at the hypothetical negotiation.

16.   The amount that a licensor (such as Plaintiffs) and a licensee (such as Defendants)

would have agreed upon (at the time the infringement began) if both sides had

been reasonably and voluntarily trying to reach an agreement; that is, the amount

which a prudent licensee—who desired, as a business proposition, to obtain a

license to manufacture and sell a particular article embodying the patented

invention—would have been willing to pay as a royalty and yet be able to make a

reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty Defendants would have been willing to pay and Plaintiffs would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty.

## 7.    DELIBERATIONS AND VERDICT

### 7.1    INTRODUCTION

That concludes the part of my instructions on the law. I will end by explaining some things about how you will conduct your deliberations in the jury room and about your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

### 7.2     UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinions, if convinced they are erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review it with you in a moment. You will take the form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict. Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. Determining what the verdict shall be is your sole and exclusive duty and responsibility.

### 7.3   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4   SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cellphone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chatroom, blog, website, or app such as Facebook, LinkedIn, Snapchat, YouTube, Twitter, or Instagram to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5     COURT HAS NO OPINION

Let me finish by repeating something I have said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented.