IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F'REAL FOODS, LLC and RICH PRODUCTS CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON BEACH BRANDS, INC., HERSHEY CREAMERY COMPANY and PAUL MILLS d/b/a MILLS BROTHERS MARKETS, <br><br> Defendants. | C.A. No. 16-41 (CFC) <br> CONSOLIDATED <br><br> REDACTED - PUBLIC VERSION |

**PLAINTIFF F'REAL'S OPENING BRIEF
IN SUPPORT OF ITS MOTION FOR A
<u>PERMANENT INJUNCTION AND RECALL</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Taylor Haga (#6549)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
thaga@mnat.com

*Attorneys for Plaintiffs f'real Foods, LLC
and Rich Products Corporation*

OF COUNSEL:

Guy W. Chambers
Ellen P. Liu
Peter Colosi
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111
(415) 392-1960

Original filing date: September 10, 2019
Redacted filing date: September 19, 2019

# **TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ................................................ 1

II. SUMMARY OF ARGUMENT ....................................................................... 1

III. ARGUMENT .................................................................................................. 2

    A. Legal Authority ................................................................................... 2

    B. As Direct Competitors, Defendants' Ongoing Infringement Irreparably Harms f'real ...................................................................... 4

        1. There is a Strong Causal Nexus Between f'real's Patented Inventions and Defendants' Sales ...................... 7

    C. Remedies At Law Cannot Compensate f'real ..................................... 8

    D. The Balance of Hardships Tips Strongly In f'real's Favor .................. 9

    E. The Public Interest Weighs Strongly In f'real's Favor ...................... 10

IV. Defendants Should Be Ordered To Recall Infringing Blenders .................. 11

V. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accumed LLC v. Stryker Corp.*,
   551 F.3d 1323 (Fed. Cir. 2008) ..........................................................................10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   809 F.3d 633 (Fed. Cir. 2015) ......................................................................*passim*

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
   106 F. Supp. 2d 696 (D.N.J. 2000) ................................................................11, 13

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) ............................................................................10

*Douglas Dynamics, LLC v. Buyers Products Co.*,
   717 F.3d 1336 (Fed. Cir. 2013) ............................................................................4

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ..............................................................................................3

*Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*,
   646 F.2d 800 (2d Cir. 1981) ...............................................................................11

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012) ....................................................................4, 6, 9

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) .........................................................................8, 9

*Rohm and Hass Co. v. Cumberland Chem. Corp.*,
   1983 WL 52378 (S.D. Tex. 1983) ......................................................................12

*Sanofi-Synthelabo v. Apotex, Inc.*,
   470 F.3d 1368 (Fed. Cir. 2006) ..........................................................................11

*Tinnus Enter., LLC v. Telebrands Corp.*,
   2016 WL 9131960 (E.D. Tex. 2016) ..................................................................12

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   750 F.2d 1552 (Fed. Cir. 1984) ..........................................................................11

*Windsurfing Int'l Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) ..............................................................................10

**Rules and Statutes**

35 U.S.C. § 154(a)(1)................................................................................................2

35 U.S.C. § 283 ........................................................................................................2

I.     **NATURE AND STAGE OF PROCEEDINGS**

On October 3, 2014, Plaintiff f'real Foods, LLC ("f'real") filed a complaint against Defendants Hamilton Beach Brands, Inc. ("Hamilton Beach") and Hershey Creamery Company ("Hershey") (collectively "Defendants") alleging, among other things, infringement of f'real's three self-cleaning blender patents, U.S. Patent Nos. 7,144,150 ("'150 patent"), 7,520,662 ("'662 patent") and 7,520,658 ("'658 patent") (collectively, f'real's "self-cleaning blender patents"). On May 3, 2019, the jury returned a verdict finding all three of f'real's self-cleaning blender patents infringed by Defendants (D.I. 264). The jury awarded f'real over $3.2 million in compensatory damages, of which nearly $3.0 million was lost profits damages. *Id.* Based upon the jury's verdict and the Court's pre- and post-trial rulings, judgment was entered in favor of Plaintiffs and against Defendants on infringement and validity for all three of f'real's self-cleaning blender patents on August 26, 2019 (D.I. 286). f'real now seeks a permanent injunction and a recall order to prevent continued infringement.

II.    **SUMMARY OF ARGUMENT**

Both Defendants continue to prominently advertise, promote, and offer for sale the infringing products (Exs. 1-3[1]). Despite years of adverse rulings from the Patent Office, the Federal Circuit, the jury, and this Court, Defendants refuse –

---

[1] Exhibits are attached to the Declaration of Michael Flynn, filed herewith.

absent an injunction – to take any measures to cease their infringement (Ex. 4). Given the irreparable damage Defendants have already inflicted and continue to inflict upon f'real's business, the equities weigh heavily in favor of a permanent injunction of all infringing blenders and recall of Defendants' infringing MIC2000 and BIC3000-DQ blenders.

## III. ARGUMENT[2]

### A. Legal Authority

"The Patent Act provides a patentee with the 'right to exclude others from making, using, offering for sale, or selling the [patented] invention.'" *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 638-39 (Fed. Cir. 2015), *citing* 35 U.S.C. § 154(a)(1). "This right has its root in the U.S. Constitution's Intellectual Property Clause, which refers to the inventor's 'exclusive Right to their respective . . . Discoveries.'" *Id.* "In furtherance of this right to exclude, district courts 'may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.'" *Id., citing* 35 U.S.C. § 283.

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such

---

[2] To avoid repetition, f'real will forgo a Statement of Facts and address relevant facts in the Argument section.

relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

In patent infringement cases between direct competitors, such as this one, injunctions are granted far more often than they are denied. As Chief Justice Roberts pointed out in his concurring *eBay* opinion (joined by Justices Scalia and Ginsburg), injunctive relief was historically granted in the vast majority of patent cases "given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes – a difficulty that often implicates the first two factors of the traditional four-factor test." *Id.* at 395. The Chief Justice also noted that district courts should take counsel from decades of precedent: "a page of history is worth a volume of logic." *Id.* Similarly, Justice Kennedy's concurrence (joined by Justices Stevens, Souter and Breyer) agreed that this lengthy historical precedent should inform the proper outcome of traditional patent cases, cautioning against its use only when deciding whether to grant injunctions in cases involving patent assertion entities. *Id.* at 396-97.

A recent empirical study demonstrates that post-*eBay*, courts have heeded the Supreme Court's advice. While permanent injunctions were granted in an estimated 95% of cases pre-*eBay*, that number has declined only slightly where competitors are involved to 84% post-*eBay*. *See* Seaman, C., *Permanent Injunctions in Patent Litigation After eBay: An Empirical Study*, 101 Iowa L. Rev. 1949, 1969, and 1990 (2016) (Ex. 5).

### B.   As Direct Competitors, Defendants' Ongoing Infringement Irreparably Harms f'real

"Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012); *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm – often irreparable – of being forced to compete against products that incorporate and infringe its own patented inventions.").

Here, there is abundant evidence that f'real and Defendants are direct competitors. As Mr. Farrell testified at trial, the pre-prepared, self-serve milkshake market did not exist until he came up with the idea for such a product and began working in his garage on a blender that would make this possible (Tr. 202:2-

204:11, 205:12-206:20, 208:17-209:10, 611:5-9).³  When, years later, Mr. Farrell invented and sold the first commercial self-cleaning blenders, f'real's sales took off. Tr. 239:19-240:12.  For nearly ten years afterward, f'real was able to steadily grow its business without infringing competition. Tr. 262:25-263:22.

According to Hamilton Beach, it was unable to develop its own self-cleaning blender technology without using f'real's patented technology because the "method by which the machine cleans itself between cycles became a challenge during the development phase" (Ex. 7 at HBBF0171458).  At Hamilton Beach's request, f'real was willing to license its self-cleaning blender patents on the strict condition that Hamilton Beach not sell blenders using f'real's technology in direct competition with f'real.  Tr. 258:19-259:6, 684:22-685:3.  After teaming up with Hershey several months later, Hamilton Beach decided it no longer wanted to abide by the non-competition restriction and unilaterally terminated the f'real patent license (Exs. 8, 9). Tr. 262:8-24.

No longer constrained by its license obligations, Defendants went full bore after f'real, its market, and its customers.  Tr. 597:20-598:8, 604:2-8.  ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 11 at HBBF0157409), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

³ Cited excerpts to the Trial Transcript ("Tr.") can be found in Ex. 19 to the Flynn Declaration.



(Ex. 12).

(Ex. 13).

(Ex. 14). Hamilton Beach also alleged repeatedly in its counterclaims that it is in competition with f'real. *See, e.g.*, D.I. 10, ¶ 102 (referring to Hamilton Beach as f'real's "primary competition in the relevant marketplace").

In awarding f'real nearly $3 million in lost profit damages, the jury necessarily found that the infringing "Shake Shop Express" MIC2000 blender and accompanying Hershey cup sales caused f'real to lose sales (Tr. 401:16-402:3; D.I. 264). *See Presidio Components*, 702 F.3d at 1363-64 (award of lost profit damages "squarely supports a finding of irreparable harm"). Moreover, f'real's firm and unwavering refusal to license anyone to compete with f'real in the self-serve convenience store market is further evidence favoring a finding of irreparable injury (Tr. 258:19-259:6; Guzdar Decl., ¶ 11[4]).

The infringing BIC2000, IMI2000, and BIC3000-DQ also compete directly with f'real's own blenders sales. As Mr. Guzdar testified at trial, f'real has been

---

[4] The Declaration of Dinsh Guzdar is filed herewith.

actively working to expand its behind-the-counter business, which is where these infringing blenders are used. *See* Tr. 383:4-384:8; Guzdar Decl., ¶ 8. f'real's LT blender is priced competitively to the infringing BIC3000-DQ or BIC2000, with the same blending capabilities. *Id.*

### 1. There is a Strong Causal Nexus Between f'real's Patented Inventions and Defendants' Sales

To establish irreparable injury, the patentee must show some causal nexus between the patented feature (self-cleaning) and demand for Defendants' products. *See Apple,* 735 F.3d at 1364. Evidence of a causal nexus is abundant here.

Hamilton Beach internal documents repeatedly emphasized how important the self-cleaning capability was for customers. *See* Ex. 6 at HBBF0013113; Ex. 7 at HBBF0171458-60; Ex. 10 at HBBF0019714; Ex. 15 at HBBF0013052. Hamilton Beach touted "Automatic Rinse" as an important feature of the infringing blenders (*e.g.*, Ex. 16 at FREAL_005876-77), and continues to do so today:



**BIC2000** (Ex 1 at p. 4)



**MIC2000** (Ex. 1 at p. 7)

Similarly, Hershey prominently featured the self-cleaning technology of the infringing MIC2000 blender in promotional videos (Tr. 504:1-25, PTX-97 "A quick rinse gets the machine ready for the next customer.").

### C. Remedies At Law Cannot Compensate f'real

Mr. Farrell obtained f'real's three self-cleaning blender patents justifiably expecting that those patents would give f'real the legal right to protect his fledgling company from infringing competition. Tr. 257:2-7, 263:17-22.

When Hamilton Beach reneged on its promise to stay out of competition with f'real in convenience stores, f'real suffered irreparable harm due to lost market share, lost business opportunities, and price erosion (Guzdar Decl., ¶¶ 4-6, 9-10). This is harm that cannot be fully compensated by money damages. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011).

Absent an injunction, "there is no reason to believe that [Defendants and their customers] will stop infringing, or that the irreparable harms resulting from its

infringement will otherwise cease." *Id.* Despite the jury verdict, both Hamilton Beach and Hershey continue to prominently advertise the infringing products (Exs. 1-2). When asked to confirm that they would discontinue their infringement, Defendants responded that they plan to continue litigating the alleged "erroneous" actions by this Court and the jury so, therefore, they have no plan to stop infringement absent an injunction. *See* Ex. 4.

Given their refusal to accept any of a long line of adverse rulings from the PTAB, the Federal Circuit, the jury, and this Court, it is apparent that Defendants have made a calculated decision to profit from their own infringement by prolonging litigation. *See Presidio Components,* 702 F.3d at 1362-63 ("a calculating infringer may thus decide to risk a delayed payment to obtain use of valuable property without prior negotiation or the owner's permission"). A permanent injunction is the only way to effectively address such behavior.

### D.     The Balance of Hardships Tips Strongly In f'real's Favor

The law appropriately recognizes that forcing f'real to compete against its own patented self-cleaning blender inventions places a substantial and unfair hardship on f'real. *See Apple*, 809 F.3d at 646; *Robert Bosch*, 659 F.3d at 1156. This has led to the further unfair hardships of lost market share, lost business opportunities and price erosion (Guzdar Decl., ¶¶ 4-6, 9-10).

Defendants, on the other hand, cannot claim hardship that results from their infringing behavior. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008), citing *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Accumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008).

In addition, while the entirety of f'real's business is built on the sale of its patented blenders and frozen beverages, revenue to Hamilton Beach and Hershey resulting from the infringing products is a tiny percentage of their overall revenue. Hamilton Beach sold $5.6 million worth of infringing products from 2013-2017, as compared with total revenues of $2.9 billion. Ex. 17 at DTX366-047, -57. Hershey's revenue from its milkshake program from 2013-2017 was $5.6 million, compared to total sales of $602 million – with a net loss on its milkshake program during that period. *Id.* at DTX366-0061, -63.

### E. The Public Interest Weighs Strongly In f'real's Favor

Where, as here, there are no lifesaving technologies at issue, "the public interest nearly always weights in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple*, 809 F.3d at 647. "The encouragement of investment-based risk is the

fundamental purpose of the patent grant, and is based directly on the right to exclude." *Id.*, citing *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).

This is especially true here where f'real is capable of meeting the demand of retail customers with its own products (Guzdar Decl., ¶¶ 7-9). f'real has developed a program to allow current Hershey Shake Shop Express retailers to return infringing blenders and purchase f'real blenders at discounted prices (Guzdar Decl., ¶ 7). f'real can also immediately meet the demand for Hamilton Beach's infringing BIC2000 or BIC3000-DQ blenders with a f'real blender at a comparable price (Guzdar Decl., ¶¶ 8-9).

### IV. Defendants Should Be Ordered To Recall Infringing Blenders

In addition to permanently enjoining any future sale of the infringing blenders, Defendants should be ordered to recall MIC2000 and BIC3000-DQ blenders currently in the market that are used daily to infringe f'real's patents.[5]

"The scope of an injunction is left to the sound discretion of the court and may include an appropriate recall of infringing goods." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 106 F. Supp. 2d 696, 709-10 (D.N.J. 2000); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1564-65

---

[5] f'real is not seeking a recall of the infringing BIC2000 or IMI2000 blenders because of the relatively small number sold since 2015.

(Fed. Cir. 1984); *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 807 (2d Cir. 1981); *Rohm and Hass Co. v. Cumberland Chem. Corp.*, 1983 WL 52378, at *5-6 (S.D. Tex. 1983); *Tinnus Enter., LLC v. Telebrands Corp.*, 2016 WL 9131960, at *4 (E.D. Tex. 2016).

The irreparable harm to f'real cannot be remedied merely by enjoining future *sales* of infringing blenders. Every time a MIC2000 or BIC3000-DQ is used to blend a frozen beverage, the method claims of f'real's '658 and '662 patents are infringed and f'real loses another sale for which the jury's damages award provided no compensation (*see* Guzdar Decl., ¶¶ 5, 10). The only way to prevent further harm to f'real is to recall the infringing blenders from the market.

In this case, f'real's business is based upon the proverbial "razor/razor blade" model (Guzdar Decl., ¶ 5). Typically, f'real sells its blenders to retailers and then supplies frozen milkshakes/smoothies to use with the blenders. *Id.* Most of f'real's revenue comes from the sale of frozen milkshakes/smoothies. *Id.*

As the jury determined, Defendants infringed f'real's patent rights both by selling infringing blenders (apparatus claims of the '150 and '658 patents) and by directing retailers/consumers to use Defendants' blenders in an infringing manner (method claims of the '662 and '658 patents). D.I. 264. The vast majority of f'real's damages for *past* infringement (i.e. the lost profits) arose from *use* of Defendants' blenders in an infringing manner. Tr. 615:1-7. A recall is the only

way to stop Defendants' blenders from continuing to be used in the *future* in an infringing manner. The damages awarded to f'real for *past* infringement do not, and cannot, compensate for these *future* infringing uses.

In the case of the infringing Shake Shop Express MIC2000 blenders, a recall is relatively simple because Hershey retained ownership of the blenders (Tr. 610:12-18), and thus has the right to terminate its retailer agreements and repossess its blenders. *See Boehringer*, 106 F. Supp. 2d at 709 (mandatory recall ordered where manufacturer still owns infringing goods but has given possession of them to distributors). Hershey should be ordered to recall its infringing blenders.

The infringing BIC3000-DQ blenders are being used by Dairy Queen stores to infringe hundreds of times every day to make milkshakes that compete against f'real products (Guzdar Decl., ¶¶ 9-10). Because Hamilton Beach stated it has no way to know how many times this occurs, a lost profits calculation is virtually impossible.

Therefore, to minimize future infringement, Hamilton Beach should be ordered to request voluntary recall of the infringing BIC3000-DQ blenders from Dairy Queen franchisees, with all costs borne by Hamilton Beach. *See Boehringer*, 106 F. Supp. 2d at 709. Absent a recall order, f'real's only recourse would be to sue each of Defendants' customers, which is impractical and a waste of the parties' as well as the Court's resources.

## V. CONCLUSION

For the foregoing reasons, the Court should permanently enjoin Defendants from making, using, or selling any infringing blender and order a recall of the infringing MIC2000 and BIC3000-DQ blenders from the marketplace.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Taylor Haga (#6549)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
thaga@mnat.com

OF COUNSEL:

Guy W. Chambers
Ellen P. Liu
Peter M. Colosi
Nicholas A. Shen
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Flr.
San Francisco, CA 94111
(415) 392-1960

*Attorneys for Plaintiffs f'real Foods, LLC and Rich Products Corporation*

September 10, 2019

# **CERTIFICATION**

This brief complies with the type and word limitation set forth in the Order on Post-Trial Briefing (D.I. 270) because it contains 2,799 words as determined by the Word Count feature of Microsoft Word.

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)