## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

F'REAL FOODS, LLC and RICH
PRODUCTS CORPORATION,

               Plaintiffs,

      v.

HAMILTON BEACH BRANDS, INC. and
HERSHEY CREAMERY COMPANY,

            Defendants.

C.A. No. 16-41-CFC
CONSOLIDATED

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF
## LAW OR, IN THE ALTERNATIVE, MOTIONS FOR A NEW TRIAL OR
## AMENDED JUDGMENT

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Of Counsel:*

William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800
william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

Dated:  September 23, 2019

# TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDINGS ....................................1

II.     SUMMARY OF ARGUMENT....................................................................2

III.    STATEMENT OF FACTS ..........................................................................4

IV.     ARGUMENT...............................................................................................4

    A.      Legal Standards ...............................................................................4

        1.      Judgment as a Matter of Law.................................................4

        2.      New Trial ...............................................................................4

    B.      JMOL of, or Alternatively a New Trial on, Noninfringement for
            Use by Defendants, Consumers, and/or Retailers of Claim 21 of
            the '662 Patent Is Appropriate ........................................................5

        1.      Providing Instructions By Itself Is Not Sufficient for
                Establishing Control or Direction For Attribution...................7

        2.      No Evidence of "Direction or Control" by Hamilton
                Beach........................................................................................8

        3.      No Evidence That Hershey "Directs or Controls"
                Hamilton Beach........................................................................9

        4.      No Evidence to Support Jury's Infringement Verdict of
                Method Claim 21 of the BIC2000, BIC3000-DQ, and
                IMI-2000 ................................................................................10

    C.      JMOL of or, in the Alternative, to a New Trial on,
            Infringement, of Claims 1, 5-6, and 10-11 of the '658 Patent
            and Claim 22 of the '150 Patent Is Appropriate ...............................12

        1.      JMOL of No Literal Infringement of Claims 6, and 10-11
                of the '658 Patent ....................................................................12

        2.      JMOL of Noninfringement Under the DOE for Claims 1
                and 5 of the '658 Patent and Claim 22 of the '150 Patent.......15

            a.      Insufficient Evidence of Infringement Under the
                    DOE for the Sufficient Mass Limitations.....................16

            b.      Insufficient Evidence of Infringement Under the
                    DOE of the "Unrestrained" Limitation..........................18

i

# TABLE OF CONTENTS
## (continued)

**Page**

        c.     Insufficient Evidence of Mass of Approximately 5 Lbs. ...................................................................18

        d.     The "Unrestrained" and "Sufficient Mass" Limitations Are Not Met, and Cannot Be Met, Under the DOE ............................................................19

             i.     Prosecution History Estoppel Precludes Reliance on DOE...................................20

             ii.     The Disclosure-Dedication Doctrine Also Bars Application of DOE ....................................22

             iii.     The Rule Against Claim Vitiation Compels JMOL of No DOE Infringement .........................23

     3.     Alternatively, a New Trial on Infringement ............................24

  D.     JMOL of No Lost Profits, or, in the Alternative, a New Trial on Lost Profits Is Appropriate ..................................................................25

     1.     No Reasonable Jury Could Have Found that Plaintiffs Met Their Burden of Proving Lost Profits...............................25

        a.     Plaintiffs Did Not Provide Sufficient Evidence of Market Share to Enable a Reasonable Jury to Award Lost Profits........................................................27

        b.     Plaintiffs Did Not Provide Sufficient Evidence of But-For Pricing to Enable a Reasonable Jury to Award Lost Profits........................................................29

     2.     A New Trial on Lost Profits Is Appropriate Because the Court Erred in Admitting Akemann's Lost Profits Testimony................................................................32

     3.     Remittitur of Lost Profits .........................................................34

  E.     New Trial Should Be Granted On Invalidity ....................................35

V.    CONCLUSION.............................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*,
No. CIV.A. 03-1095-KAJ, 2005 WL 3454283 (D. Del. Dec. 16,
2005) ................................................................................................................5

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) .....................................................................5, 8

*AquaTex Indus., Inc. v. Techniche Sols.*,
479 F.3d 1320 (Fed. Cir. 2007) ......................................................................15

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
310 F. Supp. 2d 638 (D. Del. 2004)................................................................33

*Becker v. Arco Chem. Co.*,
207 F.3d 176 (3d Cir. 2000) .............................................................................5

*Bose Corp. v. JBL, Inc.*,
112 F. Supp. 2d 138 (D. Mass. 2000)..............................................................29

*Calico Brand, Inc. v. Ameritek Imports, Inc.*,
527 F.App'x 987 (Fed. Cir. 2013) ............................................................26, 29

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)........................................................................................33

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
697 F.3d 1342 (Fed. Cir. 2012) ......................................................................21

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ......................................................................10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir. 2003) (*en banc*) (*Festo III*) .......................................20

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) (*Festo II*) ........................................................................20

iii

*Formax, Inc. v. Alkar-Rapidpak-MP Equip., Inc.*,
No. 11-C-298, 2014 WL 3057116 (E.D. Wisc. July 7, 2014)............................29

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
249 F. Supp. 2d 434 (D.N.J. 2003).......................................................................26

*Fultz v. Dunn*,
165 F.3d 215 (3d Cir. 1998) ..................................................................................4

*Gemalto S.A. v. HTC Corp.*,
754 F.3d 1364 (Fed. Cir. 2014) ...........................................................................15

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ......................................................................26, 27

*Holbrook v. Lykes Bros. S.S. Co.*,
80 F.3d 777 (3d Cir. 1996) ..................................................................................35

*HSM Portfolio LLC v. Elpida Memory Inc.*,
160 F. Supp. 3d 708 (D. Del. 2016).....................................................................23

*Intel Corp. v. Broadcom Corp.*,
No. 00-796-SLR, 2003 WL 360256 (D. Del. Feb. 13, 2003).............................25

*IPPV Enters., LLC v. Echostar Commc'ns Corp.*,
191 F. Supp. 2d 530 (D. Del. 2002).....................................................................34

*Lampi Corp. v. Am. Power Prods., Inc.*,
No. 93 C 1225, 2004 WL 1656547 (N.D. Ill. July 22, 2004).............................28

*Lear Siegler, Inc. v. Sealy Mattress Co.*,
873 F.2d 1422 (Fed. Cir. 1989) ...........................................................................17

*Lyda v. CBS*,
838 F.3d 1331 (Fed. Cir. 2016) .............................................................................7

*McMillan v. Weeks Marine, Inc.*,
478 F. Supp. 2d 651 (D Del. 2007).......................................................................32

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)................................................................................................8

*Mirror Worlds, LLC v. Apple Inc.*,
   692 F.3d 1351 (Fed. Cir. 2012) ..........................................................23

*Mycogen Plant Sci. v. Monsanto Co.*,
   243 F.3d 1316 (Fed. Cir. 2001) ..........................................................25

*Norian Corp. v. Stryker Corp.*,
   432 F.3d 1356 (Fed. Cir. 2005) ..........................................................21

*North River Ins. Co. v. CIGNA Reinsurance Co.*,
   52 F.3d 1194 (3d Cir. 1995) ................................................................7

*Novo Indus., L.P. v. Micro Molds Corp.*,
   239 F. Supp. 2d 1282 (S.D. Fla. 2002) ..............................................29

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996) .....................................................26, 27

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978) ............................................................29

*Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*,
   323 F. Supp. 3d 566 (D. Del. 2018)......................................................8

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
   No. C.A. 02-148, 2004 WL 2127192 (D. Del. Sept. 15, 2004).........33

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
   875 F.3d 1369 (Fed. Cir. 2017) .............................................26, 28, 29

*Research Plastics, Inc. v. Federal Packaging Corp.*,
   421 F.3d 1290 (Fed. Cir. 2005) ..........................................................22

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
   285 F.3d 1046 (Fed. Cir. 2002) ..........................................................22

*Shockley v. Arcan, Inc.*,
   248 F.3d 1349 (Fed. Cir. 2001) ..........................................................26

*Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*,
   C.A. No. 16-284-LPS, 2019 WL 3240521 (D. Del. July 18, 2019)...................5

*Smith v. Katz*,
   696 F. App'x 582 (3d Cir. 2017) ....................................................................34

*Smithkline Diagnostics Inc. v. Helena Labs. Corp.*,
   No. Civ.A B-83-10-CA, 1989 WL 418791 (E.D. Tex. Jun. 30,
   1989) ............................................................................................................29

*Southwall Techs., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) .......................................................................12

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989) .....................................................................27

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) .................................................................15, 17

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*,
   633 F. Supp. 1047 (D. Del. 1986)...................................................................31

*Travel Sentry Inc. v. Tropp*,
   877 F.3d 1370 (Fed. Cir. 2017) ........................................................................5

*TruePosition Inc. v. Andrew Corp.*,
   568 F. Supp. 2d 500 (D. Del. 2008).................................................................26

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)....................................................................................20, 23

*Zarow-Smth v. N.J. Transit Rail Operations*,
   953 F. Supp. 581 (D.N.J. 1997) ........................................................................5

## STATUTES, RULES & REGULATIONS

35 U.S.C. § 102(b) .............................................................................................35

35 U.S.C. § 271(a) ...........................................................................................5, 8

Fed. R. Civ. P. 50(a).............................................................................................4

Fed. R. Civ. P. 50(b) ............................................................................................4

Fed. R. Civ. P. 59 .................................................................................................4

Fed. R. Civ. P. 59(a)............................................................................................4

Fed. R. Civ. P. 59(e)...................................................................................................7

Fed. R. Civ. P. 61 ......................................................................................................5

Fed. R. Evid. 702 .................................................................................................32, 33

**EXHIBIT LIST**[1]

| Exhibit No. | Description |
|---|---|
| 1 | Trial Transcript (excerpts) |
| 2 | PTX-39 |
| 3 | PTX-552 |
| 4 | PTX-553 |
| 5 | PTX-554 |
| 6 | DTX366 |
| 7 | DTX176 |
| 8 | JTX-4 |
| 9 | PTX-473 |
| 10 | PTX-355 |
| 11 | JTX-2 |
| 12 | Hearing Transcript (excerpts) dated April 11, 2019 |
| 13 | DTX388 |
| 14 | PTX-566 |
| 15 | DTX177 |

---

[1] All exhibits cited herein are to the Declaration of Francis DiGiovanni, filed contemporaneously herewith.

Defendants Hamilton Beach Brands, Inc. ("Hamilton Beach") and Hershey Creamery Company ("Hershey") (collectively, "Defendants") renew their motions for judgment as a matter of law ("JMOL") or, in the alternative, move for a new trial.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs f'real Foods, LLC ("f'real") and Rich Products Corporation ("Rich") (collectively, "Plaintiffs") asserted that Defendants infringed U.S. Patent Nos. 5,803,377 ("'377 patent"), 7,144,150 ("'150 patent"), 7,520,658 ("'658 patent), and 7,520,662 ("'662 patent").[2]   Judge Sleet construed certain claim terms.[3]   D.I. 83.   The Court decided *Daubert* motions, motions for summary judgment, and motions *in limine*.   *See* D.I. 240-250.

A four-day jury trial was held.   Following the close of Plaintiffs' case, Defendants moved for JMOL on various issues, including noninfringement of the asserted claims of the '658 patent and claim 22 of the '150 patent (Ex. 1 949:2-951:3), noninfringement of claim 21 of the '662 patent based on use by Defendants, consumers, and/or retailers (*id.* 951:4-957:13, 989:4-1004:3, 1045:1-14), and no lost

---

[2] At trial, Plaintiffs asserted claims 1 and 11 of the '377 patent; claims 15, 20, and 22 of the '150 patent; claims 1, 5-6, and 10-11 of the '658 patent; and claim 21 of the '662 patent.

[3] Judge Sleet rejected most of Defendants' proposed constructions, including of the terms "rinse chamber" and "while isolating the vessel from the rinsing fluid."   D.I. 83 ¶¶ 1, 4.

profits (*id.* 957:21-958:15).   The Court denied those motions, but granted Defendants' motion for JMOL on induced infringement.  *Id.* 1003:20-1004:5.

The jury found that Defendants did not infringe the asserted claims of the '377 patent.  D.I. 264.  The jury found that Defendants literally infringed claim 21 of the '662 patent for use of the accused products by a combination of Defendants and consumers and/or retailers; literally infringed claim 20 and infringed claim 22 under the doctrine of equivalents ("DOE") of the '150 patent; and infringed claims 1 and 5 under DOE and literally infringed claims 6 and 10-11 of the '658 patent.  *Id.*  The jury found that Defendants' infringement was not willful.  *Id.*  The jury found that the asserted claims of the '150 patent and the '377 patent are not invalid as obvious.  *Id.*  The jury awarded Plaintiffs $2,988,869 in lost profits and $245,000 in reasonable royalty damages.  *Id.*

## II.   SUMMARY OF ARGUMENT

1.    JMOL of no infringement of claim 21 of the '662 patent based on third party use of the MIC2000 is warranted because there is insufficient evidence that Hamilton Beach, Hershey, retailers, and consumers jointly infringed.  Plaintiffs relied on mere instructions and introduced no evidence that the actions of the four accused actors were attributable to a single Defendant.  Likewise, there is insufficient evidence to support a finding of infringement of claim 21 of the '662

patent based on third party use of the BIC2000, BIC3000-DQ, or IMI2000 in a way that is attributable to a single Defendant.  Alternatively, new trial is appropriate.

2.  JMOL of no literal infringement of claims 6 and 10-11 of the '658 patent is warranted because Plaintiffs introduced no evidence for a reasonable jury to find that the accused splash shield (the *lid*, by itself) literally met the "sufficient mass" or "unrestrained" limitations.  Also, Plaintiffs failed to provide the necessary evidence and linking testimony for a reasonable jury to find infringement of claims 1 and 5 of the '658 patent and claim 22 of the '150 under DOE; and, Plaintiffs are precluded as a matter of law from asserting DOE with regard to the "sufficient mass" and "unrestrained" limitations.  Alternatively, new trial is appropriate.

3.  JMOL of no lost profits is warranted because Plaintiffs relied upon a single, unreliable, and incomplete email as proof of market share and assumed that in the "but-for" world customers would have paid a price that either no customer had ever paid or that Plaintiffs had never offered in the real world.  Alternatively, Defendants are either entitled to a new trial on lost profits because Plaintiffs' expert's opinion was not based upon reliable facts or methodology, or to remittitur.

4.  New trial on invalidity for the Sato reference is warranted because it was improperly excluded before trial.

## III.   STATEMENT OF FACTS

The relevant facts pertaining to the specific requests for relief are set forth in the Argument section, *infra*.

## IV.   ARGUMENT

### A.   Legal Standards

#### 1.   Judgment as a Matter of Law

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).  A Rule 50(b) motion should be granted if "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  *Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir. 1998) (citations and internal quotations omitted).

#### 2.   New Trial

Under Rule 59(a), a court may "on motion" grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "New trials are commonly granted where 'the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice,' where 'newly-discovered evidence exists that would likely alter the outcome of the trial,' where 'improper conduct by an attorney or the court unfairly

influenced the verdict,' or where the jury's verdict was 'facially inconsistent.'" *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2019 WL 3240521, at *2 (D. Del. July 18, 2019) (quoting *Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584-85 (D.N.J. 1997)). "The court may also order a new trial if a party has been prejudiced by the improper exclusion of evidence." *Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, No. CIV.A. 03-1095-KAJ, 2005 WL 3454283, at *2 (D. Del. Dec. 16, 2005). Courts apply the harmless error standard of Rule 61 where a new trial is sought based on the improper admission or exclusion of evidence. *Becker v. Arco Chem. Co.*, 207 F.3d 176, 180 (3d Cir. 2000).

**B.  JMOL of, or Alternatively a New Trial on, Noninfringement for Use by Defendants, Consumers, and/or Retailers of Claim 21 of the '662 Patent Is Appropriate**

Direct infringement of a method claim occurs when all of the steps are performed by, or can be attributed to, a single entity. *Travel Sentry Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*en banc*)). An entity will be held "responsible for others' performance of method steps [under § 271(a)] in two sets of circumstances: (1) where that entity directs or controls others' performance; and (2) where the actors form a joint enterprise." *Id.* (quoting *Akamai,* 797 F.3d at 1022).

Plaintiffs do not allege "joint enterprise," but instead assert that Hamilton Beach and Hershey directed or controlled the performance of method claim 21 of the '662 patent by providing instructions to retailers and consumers. Ex. 1 990:7-13, 992:11-1004:5. Specifically, Plaintiffs stated their theory of direct infringement for the MIC2000 blender as "the retailer is providing [the mixing machine] and the customer is performing the rest of the steps, but the controlling entity is *Hershey and Hamilton Beach* are providing the instructions," and those instructions must be followed or else the benefit of getting a milkshake is not conferred. *Id.* 995:13-21 (emphasis added); *see also id.* 992:18-22. Plaintiffs subsequently confirmed in open court that their theory of direct infringement of the '662 patent regarding the Hershey Shake Shop Express ("SSE") program, which utilized the MIC2000 blender, involved ***four*** entities: Hamilton Beach, Hershey, retailers, and customers. *Id.* 1036:12-1037:10. Plaintiffs made a similar representation of their theory of direct infringement for the other accused products (*i.e.,* non-SSE/MIC2000 machines), but stated that infringement did not involve consumers, thus the actors were Defendants and retailers. *Id.* 1037:12-1038:25.[4]

---

[4] Plaintiffs' in-court statements of their joint/divided infringement theory are not only binding because they were made directly to the Court and relied upon by Defendants, but because Plaintiffs' theory is not stated elsewhere. No acts of joint/divided infringement by Defendants were alleged in the pleadings or discovery responses. Defendants objected to the submission of a divided infringement theory to the jury (Ex. 1 996:17-997:3) and maintain the Judgment should be amended to strike the direct infringement verdicts of the method claims pursuant to Federal Rule

Plaintiffs failed to establish a *single entity* to whom performance of *all* the method steps is attributed.  Plaintiffs introduced no evidence of *Hamilton Beach* directing or controlling use of its machines by any of the other three parties as required under their infringement theory.  Similarly, Plaintiffs introduced no evidence of *Hershey* directing or controlling Hamilton Beach (in addition to retailers and consumers) as required under their infringement theory.  Finally, Plaintiffs introduced no evidence of Hershey, retailers, or any third party using the BIC2000, BIC3000-DQ, and IMI-2000 to perform method claim 21, as required under Plaintiffs' infringement theory for those machines.

### 1. Providing Instructions By Itself Is Not Sufficient for Establishing Control or Direction For Attribution

The only allegation of direction or control made against Hamilton Beach or Hershey was providing "instructions" for the accused products.  Plaintiffs sought to prove this point through Dr. Daniel Maynes, who testified about directions allegedly provided to consumers by Hamilton Beach and Hershey.  Ex. 1 518:3-16 (discussing Exs. 2-5), 996:1-9.  As a matter of law, however, merely providing instructions does not constitute the requisite direction or control for attribution to a single entity for

---

of Civil Procedure 59(e).  *See Lyda v. CBS*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (dismissing complaint that "fail[ed] to plausibly plead sufficient facts to ground a joint infringement claim under this court's *Akamai* decision and does not satisfy the *Iqbal/Twombly* pleading standard"); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (grounds for amending judgment include correcting legal error).

proving direct infringement under § 271(a).  *Id.* 1039:20-1041:21, 1167:24-1168:1 (final jury instructions); *see also Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 584 (D. Del. 2018) (conduct must go beyond merely "guiding or instructing" to show control); *Akamai*, 797 F.3d at 1025 (no direction or control when customers "merely take [the alleged infringer's] guidance and act independently on their own").  Accordingly, no reasonable jury could find Defendants directly infringed claim 21 of the '662 patent when third parties operated the accused products.

### 2.    No Evidence of "Direction or Control" by Hamilton Beach

Plaintiffs offered no evidence that Hamilton Beach performed *any* step of claim 21 after the accused products are sold to and used by others.  Yet, Plaintiffs argued that the acts of retailers and consumers should be attributed to Hamilton Beach.  Ex. 1 995:3-23.  Under *Akamai*, courts must consider general principles of vicarious liability when attributing the performance of methods steps to a single entity, including whether "an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of [the] patented method and establishes the manner or timing of that performance," and whether "that actor has the right and ability to stop or limit the infringement."  *Akamai,* 797 F.3d at 1023  (citing and quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005)).  Here, Plaintiffs introduced no evidence that Hamilton Beach sold cups or

otherwise profited when others operated the accused products to allegedly infringe method claim 21.  Similarly, Hamilton Beach could not have stopped any of the infringing activities at issue because it sold the accused machines.  Ex. 1 426:5-10, 682:9-14, 713:13-17; Ex. 6 at 5-6.  And Plaintiffs introduced no evidence that Hamilton Beach established the manner or timing of performance by retailers and consumers.  Hamilton Beach simply sold machines.  Therefore, no reasonable jury could find "direction or control" for purposes of establishing Hamilton Beach's direct infringement of method claim 21 when any other party operates the accused products.

Furthermore, for the SSE program, there is no evidence that retailers or consumers ever saw or followed any "instructions" from *Hamilton Beach*.  Maynes only noted that ***Hershey's*** instructions were provided at the machine.  Ex. 1 511:16-512:14, 514:8-515:8; Exs. 3-5, 7.  Accordingly, there is no evidence upon which a reasonable jury could find Hamilton Beach a direct infringer of method claim 21 with respect to the SSE program because there is no evidence sufficient to attribute method steps performed by Hershey, consumers, and retailers to Hamilton Beach.

### 3.   No Evidence That Hershey "Directs or Controls" Hamilton Beach

Plaintiffs failed to present any evidence that Hershey directed or controlled Hamilton Beach.   On that point, Plaintiffs neither questioned Hershey's representative at trial nor designated Hershey personnel's deposition testimony.

9

Therefore, there is no evidence upon which a reasonable jury could find Hershey to be the single entity to whom infringement of method claim 21 can be attributed with respect to the SSE program, because no reasonable jury could conclude that Hershey directed or controlled Hamilton Beach.

### 4. No Evidence to Support Jury's Infringement Verdict of Method Claim 21 of the BIC2000, BIC3000-DQ, and IMI-2000

It is well established that selling a product merely *capable* of performing a claimed method does not constitute direct infringement. *See, e.g., Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) ("[N]one of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method, and we decline to do so here."). The *Ericsson* case makes clear that proof a machine is capable of performing the claimed method is insufficient to prove direct infringement of the method by sale of the machine. *See id*. at 1221-22 (noting that the customer controlled when and if the product was used, not the accused infringer, therefore the accused infringer was not performing the method steps).

Plaintiffs failed to provide any evidence that the BIC2000, BIC3000-DQ, or IMI-2000 were used by any retailer to perform method claim 21. Because there is no evidence on which a reasonable jury could find that any retailer used any one of

the BIC2000, BIC3000-DQ, or IMI-2000, JMOL of no infringement of claim 21 is warranted.

Even if there had been evidence of retailers using the BIC2000, BIC3000-DQ, and IMI-2000, JMOL is still warranted because there is no evidence that their actions should be attributed to Hamilton Beach as a direct infringer.  Plaintiffs did not pursue an inducement theory at trial.  If a retailer performed all the steps of the method for the machine that it owned, there can only be a single direct infringer—the retailer itself.  Accordingly, as multiple parties could not have performed the method, the direction or control test of *Akamai* is irrelevant.  Thus, Hamilton Beach could not have directly infringed the '662 patent through independent use of its machines by retailers.

Because Hamilton Beach merely sold these accused machines (and Hershey had no involvement), JMOL of no infringement of claim 21 by Defendants for retailers' use of the BIC2000, BIC3000-DQ, and IMI-2000 is warranted.  In the alternative, a new trial is warranted for all of the accused products because the verdicts are against the weight of the evidence.

**C.  JMOL of or, in the Alternative, to a New Trial on, Infringement, of Claims 1, 5-6, and 10-11 of the '658 Patent and Claim 22 of the '150 Patent Is Appropriate**

**1.  JMOL of No Literal Infringement of Claims 6, and 10-11 of the '658 Patent**

For literal infringement, Plaintiffs must show that "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Method claims 6, and 10-11 of the '658 patent recite the structural limitations of: (1) "*the shield* when contacting the vessel being unrestrained against upward movement away from the opening"; and (2) "the mass of *the splash shield* preventing separation of the holder and the vessel during translation." Ex. 8 (emphasis added). The parties stipulated that "splash shield"/"shield" means "lid for the cup opening." D.I. 76, Ex. A; Ex. 1 137:16-19, 559:5-15. Plaintiffs presented no evidence that: (a) *the lid* was unrestrained; or (b) the mass of *the lid* performed the function of preventing separation of the holder and vessel. Accordingly, Defendants are entitled to JMOL of noninfringement because no reasonable jury could find that all of the limitations of claims 6, and 10-11 are found in the accused products, exactly.

Maynes provided no testimony that the accused products literally infringed any claim of the '658 patent. He admitted that the accused "lid" was a "separate part" from the various other parts (including a weight and guide rods). Ex. 1 560:14-

12

561:23; *see also* Ex. 9.[5]  He conceded that the weight and guide rods have a "very important role" in accomplishing the claimed function and that the accused products only had a "similar" structure.  Ex. 1 589:23-590:20.  Maynes conceded that he "did not consider the lid itself."  *Id.* 562:1-21.  Thus, Maynes offered ***no testimony*** of literal infringement with regard to the "unrestrained" or "sufficient mass" limitations being met by the "lid" itself.

Instead, Maynes merely testified that the "sufficient mass" limitation was satisfied by the "splash shield assembly."  *Id.* 520:2-522:15.  Rather than having a ***lid*** of sufficient mass, Maynes testified the accused products instead use a splash shield ***assembly*** having "a cast iron weight . . . but it ***functions*** the same way."  *Id.* 521:13-17 (emphasis added).  Maynes admitted that the accused assembly did not include the exact structure as claimed, but rather testified that the function is met because "the weight in this case is mounted up above the splash shield."  *Id.* 521:17-22.  Maynes conceded that his opinion on the sufficient mass limitation was not based on the splash shield itself, but on the splash shield assembly.  *Id.* 586:21-25.

Similarly, for the "unrestrained" limitation of claims 6, and 10-11, Plaintiffs presented no evidence of literal infringement.  The stipulated construction of unrestrained is "without any other mechanical means of restraining the upward sliding

---

[5]This is consistent with other testimony.  *See* Ex. 1 787:9-13 (identifying DTX-435 as the lid), 770:1-2 (same), 826:12-19 (same).

movement of ***the splash shield*** on the shaft apart from the mass or weight of the splash shield itself." D.I. 76 at Ex. A (emphasis added). Yet, Maynes conducted his analysis by examining the ***splash shield assembly***, not the ***splash shield***. Ex. 1 563:8-25. Maynes never opined that the accused lid, by itself, met the "unrestrained" limitation. *Id.* 535:24-536:10. Further, Maynes admitted that there was some mechanical restraint of the splash shield assembly at the four guide rod bushings and the spindle seal. *Id.* 564:3-567:8. Specifically, Maynes admitted that his testing detected "mechanical resistance against upward sliding movement." *Id.* 566:18-21. Maynes also admitted that the additional weight is a "mechanical" force. *Id.* 573:8-574:10.

While Maynes never considered whether the splash shield itself met the claim limitations, Defendants' expert, Dr. Alex Slocum, *did* consider and opine on whether the accused splash shield *by itself* met the "sufficient mass" and "unrestrained" limitations, and concluded that it did not. *Id.* 826:12-834:12, 837:5-838:16, 840:2-842:2.

In sum, no evidence permits a reasonable jury to find the splash shield by itself, *i.e.* the "lid for the cup opening," meets the "unrestrained" and "sufficient mass" limitations to support the literal infringement verdict of claims 6 and 10-11 of the '658 patent. Indeed, the only evidence presented at trial showed that the lid ***did not*** meet these limitations. Accordingly, JMOL of no literal infringement should be granted.

##### 2.   JMOL of Noninfringement Under the DOE for Claims 1 and 5 of the '658 Patent and Claim 22 of the '150 Patent

To prevail under a theory of DOE, Plaintiffs must prove that an accused product "performs substantially the same function in substantially the same way with substantially the same result as claimed in the patent." *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1373 (Fed. Cir. 2014) (internal quotations omitted). "A plaintiff must provide 'particularized testimony and linking argument to show the equivalents' are insubstantially different." *Id.* at 1374 (*quoting AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007)). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1566-67 (Fed. Cir. 1996). These requirements "assure that the fact-finder does not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Id.* (citation and internal quotations omitted). Here, Plaintiffs failed to provide such particularized evidence and linking testimony regarding the key "sufficient mass," "unrestrained," or "approximately 5 lbs." limitations that would permit a reasonable jury to find the accused products infringe the '658 and '150 patents under the DOE. Plaintiffs apparently argued that the splash shield "assembly" was the equivalent of the claimed "splash shield" for these limitations, but Plaintiffs failed their burden of proof.

15

### a.    Insufficient Evidence of Infringement Under the DOE for the Sufficient Mass Limitations

The sufficient mass limitations of claims 1 and 5 of the '658 patent and claim 22 of the '150 patent require that "the splash shield is heavy enough to create sufficient downward force on the vessel so as to retain the vessel within the holder . . . ." D.I. 83 at 2.[6]  As the Court noted, "Judge Sleet's construction recognized that including some additional means for keeping the cup in the cupholder does not preclude having a splash shield that is heavy enough, *by its own weight*, to keep the cup in place." D.I. 282 at 6 (emphasis added).  Plaintiffs did not present sufficient evidence that the accused splash shield assembly is heavy enough by its own weight to keep the cup in place.

Maynes relied on a promotional video showing the standard operation of the accused MIC2000, where the cup remained in the holder during mixing.  *See* PTX-97.  Maynes testified, "every time the machine is used, the cup is held firm.  It doesn't rotate." Ex. 1 521:2-5.  However, Maynes did not provide any evidence that *the weight of the splash shield assembly* retained the cup in the holder.  Indeed, the record shows that a friction fit was added *to the accused cup holder* to ensure that

---

[6] The Court's claim construction referred to the '658 patent, but similar language is used in the '150 patent, and Maynes applied the construction to both patents.  *See, e.g.,* Ex. 1 519:20-520:19.  Moreover, even without a construction, the term in the '150 patent mirrors the construction, requiring that "the splash shield is of sufficient mass to retain the vessel within the holder . . . ." Ex. 11.

the cup was retained during mixing because the mass of the splash shield assembly was insufficient. *Id.* 749:13-750:17, 838:4-839:8, 841:10-842:2, 938:4-939:3.

Moreover, and fatally, Maynes never provided the requisite particularized evidence and linking testimony that the accused splash shield assembly was equivalent. Maynes generally averred that the splash shield assembly performs the same function and that the accused products merely "displaced the weight" (*Id.* 521:11-23) ***without any linking testimony or particularized evidence that displacing the weight is an insubstantial difference with respect to every element of the "function, way, result" analysis***. Maynes's testimony is thus insufficient as a matter of law. *Texas Instruments Inc.*, 90 F.3d at 1566-67 (Fed. Cir. 1996); *see also Lear Siegler, Inc. v. Sealy Mattress Co.,* 873 F.2d 1422, 1426 (Fed. Cir. 1989) ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement."). Maynes merely referred to DOE in a conclusory manner by opining that the accused products "performs substantially the same function substantially the same way to produce substantially the same result." Ex. 1 535:34-536:5.[7]  By contrast, Slocum opined in detail regarding DOE and the "sufficient mass" limitation, and concluded that it was not

---

[7] Maynes was precluded from providing particularized "function, way, result" testimony at trial because he failed to provide such disclosure in his expert report. Ex. 1 484:19-486:5; D.I. 233-1 at 789, 799-800, 804.

satisfied. *Id.* 838:17-839:5.  Thus, the Court should grant JMOL of noninfringement because no reasonable jury would find infringement under DOE based on this generalized testimony.

### b.    Insufficient Evidence of Infringement Under the DOE of the "Unrestrained" Limitation

The trial evidence conclusively established that the splash shield was ***restrained***.   *Id.*  564:3-567:8,  566:18-21,  573:8-574:10,  769:6-14,  786:15-24, 827:20-828:11,  829:1-833:14.    Moreover,  similar  to  the  "sufficient  mass" limitations, Maynes referred to DOE in a conclusory manner by rotely stating that the accused products meet the "function-way-result" test. *Id.* 536:6-10.  Once again, Plaintiffs introduced no particularized evidence or linking testimony explaining why a splash shield *assembly*, which is admittedly *restrained* against upward sliding movement, performs substantially the same function, in substantially the same way, achieving substantially the same result as the claimed *unrestrained* splash shield. By contrast, Slocum again opined in detail and concluded that the "unrestrained" limitation was not met under the DOE.  *Id.*  834:13-837:4.  The foregoing lack of support in the record regarding equivalence to the "unrestrained" limitation warrants JMOL of noninfringement for claims 1 and 5 of the '658 patent.

### c.    Insufficient Evidence of Mass of Approximately 5 Lbs.

The jury found that claim 5 of the '658 patent was infringed under the DOE. D.I. 264 at 4.  This is erroneous as a matter of law because claim 5 requires "a mass

18

of approximately 5 lbs.," and there was insufficient evidence to find this limitation met either literally or under the DOE.  Maynes merely testified that claim 5 was met when considering the *entire shield assembly*, and agreed that "the splash shield itself is not approximately five pounds . . . in terms of the lid."  Ex. 1 570:8-17.  Slocum agreed.  *Id.* 839:9-840:1.  Thus, the "wherein the splash shield has a mass of approximately 5 lbs." limitation is indisputably not literally met.  As for DOE, Maynes provided *no testimony* regarding the "function, way, result" test to show that a splash shield *assembly* of 4.5 lbs is insubstantially different from a *splash shield (lid)* having a mass of approximately 5 lbs.  *See id.* 530:12-531:5 (failing to address the issue).  Accordingly, because there is no basis in the record for a reasonable jury to find that the "approximately 5 lbs." limitation was met by the accused products, JMOL of no infringement of claim 5 should be entered.

### d. The "Unrestrained" and "Sufficient Mass" Limitations Are Not Met, and Cannot Be Met, Under the DOE

JMOL of noninfringement under the DOE for claims 1 and 5 of the '658 patent and claim 22 of the '150 patent is further warranted because those limitations are not met as a matter of law under the DOE.  The doctrines of prosecution history estoppel, claim vitiation, and the disclosure-dedication doctrine bar—as a matter of law— preclude a finding of infringement under DOE for claims containing the "unrestrained" and "sufficient mass" limitations based on the evidence presented.

Defendants previously briefed these issues.  *See* D.I. 178 at 12-16; D.I. 233, Ex. 17.
While the Court did not preclude Plaintiffs from asserting DOE on these bases, the
evidence and case law now compels JMOL for these limitations.

### i.  Prosecution History Estoppel Precludes Reliance on DOE

DOE is limited by prosecution history estoppel, which arises when an
applicant narrows a claim "to avoid the prior art, or otherwise to address a specific
concern . . . that arguably would have rendered the claimed subject matter
unpatentable."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 30-
31 (1997).  Prosecution history estoppel is presumed to apply when a patentee has
filed a narrowing amendment, and "the reason for that amendment was a substantial
one relating to patentability."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki
Co.,* 344 F.3d 1359, 1366 (Fed. Cir. 2003) (*en banc*) (*Festo III*).  To rebut this
presumption, the patentee bears the burden by establishing one of three exceptions
by a preponderance of the evidence:  (1) the equivalent was unforeseeable at the time
of the application; (2) the rationale underlying the amendment bears no more than a
tangential relation to the equivalent in question; or (3) there is some other reason
suggesting that the patentee could not reasonably be expected to have described the
equivalent.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722,
740-41 (2002) (*Festo II*).  If the patentee does not rebut the presumption, it has

surrendered all equivalents between the scope of the original claim and the amended claim. *See id.* at 740.

It is undisputed that the "unrestrained" limitations of the asserted claims of the '658 patent were added during prosecution to narrow the claims and distinguish the prior art, and thus, the presumption applies. D.I. 181, Ex. S at 2, 6; *see also* D.I. 244, ¶ 5. Plaintiffs, however, have failed to rebut the presumption. Plaintiffs argued at the pretrial hearing that any disclaimer was limited because the "unrestrained" amendment was added to get around the Harr reference, where "you had the spring there, which was pushing [splash shield] down and restraining it." Ex. 12 115:1-3. However, estoppel is not limited to the specific art that the amendment was made to avoid. *Energy Transp. Grp., Inc. v. William Demant Holding A/S,* 697 F.3d 1342, 1359 (Fed. Cir. 2012) ("Prosecution history estoppel bars application of the doctrine of equivalents even where the applicant surrendered more claim scope than was necessary to overcome a rejection.").

Instead of claiming around Harr's spring, Plaintiffs broadly claimed around *all* restraint (*i.e.,* "***un***restrained). Because the claims were amended to add "unrestrained," and not "unrestrained *by a spring*" or "unrestrained *by weight,*" the public is entitled to rely on the unambiguous claim language. *Norian Corp. v. Stryker Corp.,* 432 F.3d 1356, 1361 (Fed. Cir. 2005) ("Although Norian might have claimed the solution more broadly, it did not, and we are not now free to interpret

21

the claim in a way that is at odds with the claim language."); *Research Plastics, Inc. v. Federal Packaging Corp.,* 421 F.3d 1290, 1298-99 (Fed. Cir. 2005) (stating "[r]esearch could have claimed ribs placed in the region between the nozzle end and the rear end of the tube," but did not; therefore, plaintiffs are estopped from asserting the DOE to recapture the alleged equivalent.).  Similarly, Plaintiffs made narrowing amendments to the "sufficient mass" limitations of the '658 patent.  D.I. 181, Ex. T at 3, 5.  But Plaintiffs made no effort to show that the exception should apply to these limitations.  Because Plaintiffs have failed to rebut the *Festo* presumption based on any criteria, prosecution history estoppel applies to the sufficient mass and unrestrained limitations of the '658 and '150 patents, and DOE is unavailable as a matter of law.  Thus, JMOL of noninfringement of claims 1 and 5 of the '658 patent and claim 22 of the '150 patent is warranted.

### ii.  The Disclosure-Dedication Doctrine Also Bars Application of DOE

The disclosure-dedication doctrine prevents Plaintiffs from asserting DOE for disclosed yet unclaimed equivalents.  *See Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.,* 285 F.3d 1046, 1054 (Fed.  Cir. 2002) (*en banc*).  Claims 1 and 6 of the '658 patent and claim 22 of the '150 patent include one or both of the "sufficient mass" and "unrestrained" limitations.  The provisional application, from which the '150 and '658 patents claimed priority, disclosed "use [of] a heavy weight to hold the shield and cup in place" that was apart from the shield.   D.I. 233 Ex. 17, Ex. B.

The '150 and '658 patents did not claim this approach and therefore dedicated it to the public.  Yet, the trial evidence showed that this approach—use of a weight (among other things) to hold the shield and cup in place—was implemented by the accused products.  *See* Ex. 1 561:5-15.  Thus, the accused products cannot infringe as a matter of law.

### iii.    The Rule Against Claim Vitiation Compels JMOL of No DOE Infringement

Allowing an equivalent that encompasses ***restraint*** against movement away from the cup opening vitiates the express language of the claims, which requires that the lid be "***un***restrained" against such movement.  Likewise, a lid of "insufficient" mass cannot meet the "sufficient" mass limitations.  The Supreme Court has called for "special vigilance against allowing the concept of equivalence to eliminate completely any such [individual] elements."  *Warner-Jenkinson,* 520 U.S. at 40.  Here, any finding that a *restrained* lid or a lid of *insufficient* mass satisfies the DOE runs afoul of the Supreme Court's mandate and "improperly vitiates claim language by allowing the exact opposite of what is required."  *Mirror Worlds, LLC v. Apple Inc.,* 692 F.3d 1351, 1358 (Fed. Cir. 2012); *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 718-19 (D. Del. 2016) (no infringement under DOE based on vitiation).  Yet, the evidence showed that the splash shield (i.e., the *lid itself*) was restrained (Ex. 1 769:6-14, 786:15-24, 825:16-834:12) and that it was of insufficient mass (*Id.* 749:13-750:17, 837:5-839:8, 841:10-842:2, 938:4-939:3).  Accordingly,

no jury could have reasonably found that the accused restrained splash shield of insufficient mass could have met the unrestrained and sufficient mass limitations of the '150 and '658 patents.

### 3.   Alternatively, a New Trial on Infringement

The jury's verdict was internally inconsistent.   The inconsistency is exemplified as follows:  The jury found that dependent claim 22 of the '150 patent was infringed under the DOE, while the claim from which it depends (claim 20) was literally infringed.   Thus, the jury implicitly found that the additional limitation of claim 22 ("wherein the splash shield is of sufficient mass to maintain the vessel in the holder . . .") was *met only under the DOE*.   This same limitation[8] is present in claim 6 of the '658 patent.   Yet, the jury found that claim 6 of the '658 patent was *literally* infringed, meaning that the jury found that the sufficient mass limitation was *met literally*.   This is an irreconcilable inconsistency.

A similar inconsistency exists as between the jury's findings regarding claims 1 and 6 of the '658 patent:  Claim 1, which has the unrestrained and sufficient mass limitations, was found to infringe under DOE (not literally).   The DOE finding must have been directed to the unrestrained and/or sufficient mass limitations, because those were the only DOE arguments made by Plaintiffs.   Yet, claim 6 (which also

---

[8] No evidence was presented that the mass limitation of claim 6 of the '658 patent requires anything different than the other sufficient mass limitations. *Compare* Ex. 1 532:12-23 *with* 525:4-22; *see also id.* 1104:3-13, 1107:9-17.

has the unrestrained and sufficient mass limitations) was found to be literally infringed, meaning that the jury found that the unrestrained and sufficient mass limitations were ***met literally***.  Again, an irreconcilable inconsistency.

Defendants raised the inconsistency of the jury verdict immediately.  Ex. 1 1204:5-1205:24.  Where a jury renders inherently contradictory verdicts, a new trial is warranted.  *See Intel Corp. v. Broadcom Corp.*, No. 00-796-SLR, 2003 WL 360256, at \*25 (D. Del. Feb. 13, 2003).  Accordingly, a new trial on infringement of the '658 and '150 patents is warranted unless the inconsistency is rectified by JMOL.  *See Mycogen Plant Sci. v. Monsanto Co.,* 243 F.3d 1316, 1326 (Fed. Cir. 2001).

Alternatively, because Dr. Maynes's rote DOE testimony regarding the sufficient mass, unrestrained, and 5 lbs. limitations did not meet the minimum requirements for DOE testimony, it should have been excluded (see D.I. 233-1 at 732) and its admission harmed Defendants, thus a new trial is appropriate.

Moreover, a new trial is appropriate because the verdicts of infringement for the '150 and '658 patents are against the weight of the evidence.

### D. JMOL of No Lost Profits, or, in the Alternative, a New Trial on Lost Profits Is Appropriate

#### 1. No Reasonable Jury Could Have Found that Plaintiffs Met Their Burden of Proving Lost Profits

Lost profits requires a "but-for" analysis, or "a reconstruction of the market, as it would have developed absent the infringing product, to determine what the

patentee would have made." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) (citation and internal quotations omitted). "To prevent the hypothetical from lapsing into pure speculation, [the Federal Circuit] requires sound economic proof of the nature of the market and likely outcomes with infringement out of the picture." *Id.* Thus, "'[s]ound economic models and evidence' are required, 'not pure guesswork.'" *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 525 (D. Del. 2008) (quoting *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001)); *see also* Ex. 1 1179:14-19 (jury instructions). Courts routinely reverse lost profits awards when plaintiffs provide insufficient evidence to prove lost profits with reasonable certainty. *See, e.g., Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 875 F.3d 1369, 1381-82 (Fed. Cir. 2017); *Calico Brand, Inc. v. Ameritek Imports, Inc.*, 527 F.App'x 987, 997 (Fed. Cir. 2013); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-30 (Fed. Cir. 1996); *TruePosition Inc*, 568 F. Supp. 2d at 526; *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 455-56 (D.N.J. 2003).

Plaintiffs have provided insufficient evidence to support their award of lost profits in two distinct aspects. First, Plaintiffs failed to provide sufficient evidence of requisite market share. Second, Plaintiffs failed to provide sufficient evidence of the price in their expert's but-for world used to calculate the alleged lost profits. Either failure is enough to reverse the jury's finding of lost profits. Together, they

prove that Plaintiffs' damages calculation "[a]t every step . . . is fraught with speculation" and Plaintiffs' "invite[d] the jury to engage in rapt speculation." *Oiness*, 88 F.3d at 1029-30.

> ### a. Plaintiffs Did Not Provide Sufficient Evidence of Market Share to Enable a Reasonable Jury to Award Lost Profits

To prove lost profits in a market with more than two competitors, such as the one here (Ex. 1 602:6-24), a plaintiff must account for acceptable noninfringing alternatives by providing a reliable market share analysis. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989); *see also* Ex. 1 1182:24-1183:6 (jury instructions).  The Federal Circuit requires "sound economic proof" in the reconstruction of the market to ensure that the market share calculation is sufficiently reliable.  *Grain Processing*, 185 F.3d at 1350.  Plaintiffs did not meet that burden, instead basing their market reconstruction solely upon an email by f'real's former COO (Ex. 13), Mr. Jens Voges, which he admitted was unreliable.  No reasonable jury could have found that this admittedly unreliable email was sufficient evidence to sustain a market share calculation.

Plaintiffs presented their damages case through their expert, Dr. Michael Akemann, who limited his lost profits analysis to infringement via the SSE program.  Ex. 1 599:8-16.  Akemann testified that f'real had 80% market share in 2013-2014.  *Id.* 602:6-603:2; Ex. 14.  Akemann's 80% calculation was based on the alleged

number of locations of three market participants—f'real, Archibald, and Cold Cow—that were identified in the email written by Voges. Ex. 1 654:6-655:21; Ex. 14 (citing FREAL_134246-251). Voges's email is an amalgamation of emails from third parties containing unverified information regarding competitors. Ex. 15. Voges testified that his email does not contain an exhaustive list of all of f'real competitors and does not provide information that could be used to make a reliable calculation of f'real's market share. Ex. 1 373:19-374:2. Voges further testified that, based on his email or otherwise, he did not know f'real's market share percentage. *Id.* 374:3-6. Despite Voges's testimony, his email is the only evidence that Akemann cited to support his 80% market share calculation. *Id.* 656:2-657:21.

Voges's testimony as to the incompleteness and unreliability of his own email demonstrates that Akemann's market share calculations were not based on the requisite sound economic proof necessary to meet the non-infringing substitute prong of *Panduit*. *See Lampi Corp. v. Am. Power Prods., Inc.*, No. 93 C 1225, 2004 WL 1656547, at *3 (N.D. Ill. July 22, 2004) (finding that market share calculations that do not recreate sales from the entire marketplace are not based on sound economic evidence). Thus, Plaintiffs did not provide sufficient evidence of f'real's market share to prove their lost profits claim, and no reasonable jury would have awarded Plaintiffs lost profits damages. *See, e.g., Presidio Components*, 875 F.3d at 1381 (setting aside jury's lost profits award where plaintiff failed to meet the non-

28

infringing substitute prong of *Panduit*); *Calico Brand*, 527 F. App'x at 997 (setting aside jury's lost profits award where plaintiff did not prove its but-for sales through a sufficient market share analysis); *Novo Indus., L.P. v. Micro Molds Corp.*, 239 F. Supp. 2d 1282, 1287 (S.D. Fla. 2002) (same), *rev'd on other grounds*, 350 F.3d 1348 (Fed. Cir. 2003); *see also Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 162-63 (D. Mass. 2000).

> **b.    Plaintiffs Did Not Provide Sufficient Evidence of But-For Pricing to Enable a Reasonable Jury to Award Lost Profits**

Plaintiffs must also be able to show "the amount of profit that would have been made" in the but-for world without infringement.  *Presidio Components*, 875 F.3d at 1380 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)); *see also* Ex. 1 1181:17-18 (jury instructions).  As part of that calculus, a plaintiff must determine the price that it would have offered and that customers would have accepted in the but-for world.  *Formax, Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-298, 2014 WL 3057116, at *3 (E.D. Wisc. July 7, 2014); *see also Smithkline Diagnostics Inc. v. Helena Labs. Corp.*, No. Civ. A B-83-10-CA, 1989 WL 418791, at *4 (E.D. Tex. Jun. 30, 1989) (plaintiff could not recover lost profits because it failed to demonstrate the selling price in the but-for market).  Plaintiffs in this case have not met their burden of showing the but-for

price, and instead presented the jury with speculative evidence of prices that f'real never offered and that customers have never accepted.

Akemann admitted that he was not able to base his lost profits analysis on f'real's primary model of selling machines outright to customers given the absence of proof that "Hershey's actual customers could have stomached that fee." Ex. 1 606:24-607:7. Instead, he created a model in which customers paid an upcharge or rental fee. *Id.* 607:8-16. However, Akemann's model was just that—a model; a fictional construct. The pricing Akemann used in his model was never offered by f'real or accepted by any actual customers. Akemann admitted that f'real never actually used a 70-cent per cup upcharge model; nonetheless he used that as his lost profits model. *Id.* 608:11-20, 666:15-25. He acknowledged f'real has only used an upcharge model for certain customers having "higher [cup] sales per day than average" and their actual upcharge fee was 50 cents per cup. *Id.* 607:1-25. Akemann did not use the 50-cent upcharge for his analysis and instead used a 70-cent upcharge figure that he found in a proposal to a large chain because the but-for world includes "non-high volume" locations. *Id.* 608:5-18. However, Akemann admitted that customers in his but-for world would sell on average at least five fewer cups per day than the assumed cups per day for the large chain, and that according to f'real's own calculations, the estimated payback would exceed the 4-year payback period acceptable to f'real. *Id.* 659:6-9, 661:4-662:4, 662:24-663:17 (discussing Ex. 7).

30

Akemann also admitted f'real never adopted the 70-cent model and there is no documentary evidence that any f'real customer ever paid such an upcharge. *Id.* 666:15-25; *see also id.* 404:3-5.  Thus, there is no evidence that f'real would have ever offered the 70-cent upcharge that Akemann assumed for his lost profits calculation.

There is also no evidence that any of Hershey's actual customers would have accepted the 70-cent upcharge.  Akemann admitted that the price of the f'real cups under the upcharge model in his but-for world is 10-12% higher than the price actually paid by Hershey's customers. *Id.* 674:16-24.  Plaintiffs provided no evidence that Hershey's customers would have paid an increased price for cups.  On the contrary, Hershey's director of strategic growth and innovation testified that Hershey set its upcharge amount as the "absolute maximum that [it] could really charge to allow that price point to stay at a reasonable level." *Id.* 738:5-16. Therefore, the only evidence presented to the jury shows that the Hershey customers would not have been willing or able to pay Akemann's proposed 70-cent upcharge proposed.  This is fatal to Plaintiffs' lost profits claim. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 633 F. Supp. 1047, 1053 (D. Del. 1986) (finding  lost profits award is too speculative where evidence showed that the but-for customers could not afford to pay plaintiff's but-for price).

Akemann's rental charge analysis is similarly flawed.  While Akemann used the $150 monthly fee that *Hershey* actually charged its customers in his but-for model, the evidence shows f'real never offered and never would have offered its customers a $150 monthly fee.  Akemann confirmed that f'real never actually offered and none of its customers actually accepted the $150 monthly rental fee that Hershey's actual customers paid.  Ex. 1 666:10-14.  Instead, f'real charged a $500 down payment and $350 per month in its rental program.  *Id.* 665:18-23 (discussing Ex. 10).  Further, f'real's own documents show that f'real believed that it would charge more than Hershey's $150 rental fee, *Id.* 664:13-665:1 (discussing Ex. 7), which is confirmed by the $350 monthly fee that it actually charged.  Thus, there is no evidence to support Akemann's $150 monthly rental fee in his but-for world.

Given that Plaintiffs failed to provide sufficient evidence of the but-for prices in their lost profits models, no reasonable jury could have found that Plaintiffs met their burden of showing lost profits.  Thus, the Court should grant JMOL of no lost profits.

### 2. A New Trial on Lost Profits Is Appropriate Because the Court Erred in Admitting Akemann's Lost Profits Testimony

A party is entitled to a new trial if the court erred in admitting testimony that should have been excluded pursuant to the Federal Rules, including Federal Rule of Evidence 702.  *See McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 658-60

(D Del. 2007) (defendants were entitled to a new trial on damages following holding that plaintiff's damages expert's testimony should have been excluded); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, No. C.A. 02-148, 2004 WL 2127192, at *10-11 (D. Del. Sept. 15, 2004) (defendants were entitled to a new trial on infringement following holding that plaintiff's infringement expert's testimony should have been excluded), *aff'd in part,* 491 F.3d 1342, 1354 (Fed. Cir. 2007). The court must find both that there was an error and that the "error was so prejudicial that denial of a new trial would be inconsistent with substantial justice." *Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 666 (D. Del. 2004), *rev'd on other grounds*, 406 F.3d 1365 (Fed. Cir. 2005) (internal quotations omitted). "A new trial must be granted unless it is highly probable that the erroneous ruling did not affect the objecting party's substantial rights." *Id.* at 667 (internal quotations omitted).

As discussed at length in the briefing on Defendants' motion to exclude Akemann's testimony (D.I. 174), Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), mandate exclusion of Akemann's lost profits opinions. D.I. 175 at 8-22; D.I. 214 at 2-8. The testimony elicited at trial supports this conclusion. As discussed above, Voges confirmed at trial that his email, which was the sole basis of Akemann's market share analysis, does not

provide information that could be used to make a reliable calculation of f'real's market share.  Ex. 1 373:19-374:2, 656:2-657:21.

The erroneous admission of Akemann's testimony affected Defendants' rights given that the jury awarded lost profits and Akemann was the only witness to support lost profits damages.  Thus, to the extent the Court does not grant JMOL of no lost profits, the Court should grant Defendants a new trial on lost profits damages excluding Akemann's lost profits testimony.

### 3.      Remittitur of Lost Profits

Alternatively, remittitur of lost profits is appropriate.  Trial judges are permitted to use remittitur to decrease a damages award when they find "that a decision of the jury is clearly unsupported and/or excessive."  *Smith v. Katz*, 696 F. App'x 582, 591 (3d Cir. 2017) (citation and internal quotations omitted); *IPPV Enters., LLC v. Echostar Commc'ns Corp.*, 191 F. Supp. 2d 530, 572 (D. Del. 2002). In addition to the reasons discussed above, Plaintiffs' lost profits award is also unsupported because Akemann speculated, without performing any detailed analysis, that f'real would have sold three million or 218% more cups than Hershey sold in the actual world.  Ex. 1 903:14-22.  Defendants' damages expert, Mark Peterson, testified at trial that if one substitutes both the actual cups sold and the actual amount for which Hershey sold those cups into Akemann's lost profits model,

then-lost profits are $479,754.  *Id.* 904:21-905:23; Ex. 6 at 41.  Defendants alternatively request that the lost profits award be reduced to $479,753.

### E.    New Trial Should Be Granted On Invalidity

At the pretrial conference, the Court excluded a critical published reference that Defendants asserted as prior art to the '150, '662, and '658 patents, namely Japanese Utility Model No. H04-136787 U ("Sato").  *See* Ex. 12 16:9-18:17, 26:12-27:3; *see also* D.I. 261 (Defendants' Offer of Proof).  The Court erred in excluding Sato, which is a "printed publication" under 35 U.S.C. § 102(b).  *See* D.I. 233-1 at 324-26; D.I. 261 at 1.  The '150, '662, and '658 patents would have been proven to be invalid in view of Sato.  *See* D.I. 261 at 2-4.  If the jury were presented with evidence showing how Sato invalidated the claims, "it [would have been] more likely that the jury would have reached a different decision."  *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 787 (3d Cir. 1996); *see also* D.I. 261 at 2-4.  The exclusion was not harmless; it significantly prejudiced Defendants in their ability to invalidate the patents.  *See* D.I. 261 at 4.  Thus, the Court should grant a new trial on invalidity of the '150, '662, and '658 patents.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motions as follows:    (1) enter JMOL of noninfringement, or alternatively order a new trial, for claims 1, 5, 6, 10, and 11 of the '658 patent and

claim 22 of the '150 patent; (2) enter JMOL of noninfringement by (a) Defendants, retailers, and consumers and (b) Defendants and retailers of claim 21 of the '662 patent; (3) enter JMOL of no lost profits, or alternatively order a new trial, or reduce lost profits to $479,754; and/or (4) order a new trial on invalidity of the '150, '662, and '658 patents due to the exclusion of Sato.


Dated: September 23, 2019          */s/ Francis DiGiovanni*_____
                                   Francis DiGiovanni (#3189)
                                   Thatcher A. Rahmeier (#5222)
                                   DRINKER BIDDLE & REATH LLP
                                   222 Delaware Avenue, Suite 1410
                                   Wilmington, DE 19801
                                   (302) 467-4200
                                   francis.digiovanni@dbr.com
                                   thatcher.rahmeier@dbr.com

                                   OF COUNSEL:
                                   William S. Foster, Jr.
                                   Kenneth M. Vorrasi
                                   Brianna L. Silverstein
                                   DRINKER BIDDLE & REATH LLP
                                   1500 K Street, N.W.
                                   Washington, DC 20005-1209
                                   (202) 842-8800
                                   william.foster@dbr.com
                                   kenneth.vorrasi@dbr.com
                                   brianna.silverstein@dbr.com

                                   *Counsel for Defendants*

## <u>CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION</u>

The undersigned hereby certifies that this brief complies with the type-volume limitation of the Court's Order on Post-Trial Briefing (D.I. 270).  The brief contains 8,492 words, excluding the Cover Page, Table of Contents, Table of Authorities, Signature Block, Certification of Compliance with Word Limitation, and Certificate of Service.  The brief has been prepared in 14-point Times New roman or similar typeface.  As permitted by the Court's Supplemental and Amended Scheduling Order, the undersigned has relied upon the word count feature of the word processing system used to prepare the brief.

Dated:  September 23, 2019

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:  (302) 467-4200
Fax:  (302) 467-4201
francis.digiovanni@dbr.com

## CERTIFICATE OF SERVICE

I certify that on September 23, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF prior to 6:00 p.m. ET, which will send notification of such filing to all registered participants.  In addition, the foregoing will be served upon counsel of record via electronic mail.


Dated:  September 23, 2019

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:  (302) 467-4200
Fax:  (302) 467-4201
francis.digiovanni@dbr.com