## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

F'REAL FOODS, LLC and RICH
PRODUCTS CORPORATION,

            Plaintiffs,

      v.

HAMILTON BEACH BRANDS, INC. and
HERSHEY CREAMERY COMPANY,

           Defendants.

C.A. No. 16-41-CFC
CONSOLIDATED

███████████

### DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF F'REAL FOODS, LLC'S MOTION FOR A PERMANENT INJUNCTION AND RECALL (D.I. 287)

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Of Counsel:*

William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800
william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

Dated:  October 15, 2019

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ....................................3

II.  SUMMARY OF THE ARGUMENT ...........................................3

III. STATEMENT OF FACTS ..................................................3

IV.  ARGUMENT .........................................................4

    A.   Legal Standard................................................4

    B.   f'real Has Not Demonstrated That an Injunction Should Issue ...........5

        1.   f'real Will Not Be Irreparably Harmed Absent an
            Injunction ...........................................6

        2.   Remedies at Law Can Compensate f'real................15

        3.   Balance of the Hardships Favors Defendants...........16

        4.   Public Interest Would Be Disserved by a Permanent
            Injunction ...........................................17

    C.   Defendants Should Not Be Ordered To Recall Infringing
        Blenders.....................................................17

        1.   BIC3000-DQ.........................................17

        2.   SSE MIC2000 ......................................19

V.   CONCLUSION.........................................................20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
579 F. Supp. 2d 554 (D. Del. 2008)................................................................5, 11

*Amstar Corp. v. Envirotech Corp.*,
823 F.2d 1538 (Fed. Cir. 1987) ............................................................................5

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013) ...............................................................6, 13, 14

*Asetek Danmark A/S v. CMI USA Inc.*,
852 F.3d 1352 (Fed. Cir. 2017) ..........................................................................18

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
802 F. Supp. 2d 555 (D. Del. 2011)...........................................................5, 6, 10

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
No. 05-737-JJF, 2010 WL 3083023 (D. Del. July 30, 2010) .............................16

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006)......................................................................................4, 11

*Ecolab, Inc. v. Gardner Mfg. Co.*,
No. Civ. 98-2294-MJDGJL, 2003 WL 1856434 (D. Minn. Apr. 9,
2003) .........................................................................................................5, 18, 19

*Edwards Lifesciences AG v. CoreValve, Inc.*,
C.A. No. 08-91-GMS, 2011 WL 446203 (D. Del. Feb. 7, 2011)................11, 12

*EMC Corp. v. Zerto, Inc.*,
C.A. No. 12-956-GMS, 2016 WL 1291757 (D. Del. Mar. 31, 2016)......5, 16, 17

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ............................................................................11

*IGT v. Bally Gaming Int'l Inc.*,
675 F. Supp. 2d 487 (D. Del. 2009)................................................................5, 10

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ..................................................................................4

*Judkins v. HT Window Fashions Corp.*,
   704 F. Supp. 2d 470 (W.D. Pa. 2010)......................................................5, 18, 19

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
   798 F. Supp. 2d 541 (D. Del. 2011).............................................................5, 10

*Monsanto Co. v. Geerston Seed Farms*,
   561 U.S. 139 (2010)........................................................................................4

*Nichia Corp. v. Everlight Americas, Inc.*,
   855 F.3d 1328 (Fed. Cir. 2017) ...................................................................10, 12

*Power Integrations, Inc. v. Fairchild Semiconductor Corp.*,
   C.A. No. 12-540-LPS, 2019 WL 3290986 (D. Del. July 22, 2019)....................4

*Praxair, Inc. v. ATMI, Inc.*,
   479 F. Supp. 2d 440 (D. Del. 2007).............................................................6, 15

*Presido Components, Inc. v. Am. Tech. Ceramics Corp.*,
   875 F.3d 1369 (Fed. Cir. 2017) .........................................................................11

*Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*,
   No. 11-484-RGA, 2014 WL 4695765 (D. Del. Sept. 12, 2014) ................*passim*

*S.O.I.TEC Silicon On Insulator Techs., S.A. v. MEMC Elec.*
*Materials, Inc.*,
   Civ. No. 08-292-SLR, 2011 WL 2748725 (D. Del. July 15, 2011) ....................5

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*,
   821 F. Supp. 2d 681 (D.N.J. 2011)..............................................................5, 19

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
   No. 6:16-cv-0033, 2016 WL 9131960 (E.D. Tex. Nov. 21, 2016) ....................17

## STATUTES, RULES & REGULATIONS

Rule 65(d)...............................................................................................................18

# EXHIBIT LIST[1]

| Exhibit | Description |
|---------|-------------|
| A | DTX391 |
| B | DTX393 |
| C | PTX 376 |
| D | DTX376 |
| E | Plaintiff f'real Foods LLC's Supplemental Responses to Defendant Hamilton Beach Brands, Inc.'s First Set of Interrogatories to Plaintiff (Nos. 1, 6), dated July 13, 2018 |
| F | Plaintiff f'real Foods, LLC's Supplemental Response to Second Set of Interrogatories Propounded by Defendant Hamilton Beach Brands, Inc. (Nos. 14 and 20), dated July 13, 2018 |
| G | Plaintiff f'real Foods LLC's *Amended* Responses to Defendant Hamilton Beach Brands, Inc.'s First Set of Interrogatories to Plaintiff (Nos. 1-11), dated December 23, 2015 |
| H | Plaintiff f'real Food LLC's Responses to Defendant Hamilton Beach Brands, Inc.'s First Request for Production of Documents and Things, dated February 27, 2015 |
| I | Opening Expert Report of Dr. Michael P. Akemann |
| J | Plaintiff f'real Foods LLC's Responses to Defendant Hamilton Beach Brands, Inc.'s Fourth Request for Production of Documents and Things (Nos. 61-72), dated September 27, 2019 |
| K | Plaintiff Rich Products Corporation's Response to Defendant Hamilton Beach Brands, Inc.'s Second Set of Request for Production of Documents and Things (No. 54), dated September 27, 2019 |
| L | FREAL_PT_000001-33 |
| M | FREAL_096806-14; FREAL_097942 |
| N | HBBF0014434-47; HBBF001449-55 |
| O | HBBF0013240-50 |
| P | HBBF0014972-75 |
| Q | U.S. Patent No. 9,474,417 |
| R | JTX 15 |
| S | DTX177 |

---

[1] Exhibits A-D are attached to the Declaration of Brian Paul Williams, filed contemporaneously herewith.  Exhibits E-AA are attached to the Declaration of Thatcher Rahmeier, filed contemporaneously herewit.

| Exhibit | Description |
|---------|-------------|
| T | PTX 561 |
| U | DTX366 |
| V | Deposition of Expert Michael P. Akemann, Ph.D. Vol. I, dated Oct. 16, 2018 (excerpts) |
| W | DTX189 |
| X | DTX210 |
| Y | PTX 559 |
| Z | About DQ – History, Community & Information about Dairy Queen (https://www.dairyqueen.com/us-en/Company/About-US) |
| AA | Trial Transcript (excerpts) |

Defendants Hamilton Beach Brands, Inc. ("Hamilton Beach") and Hershey Creamery Company ("Hershey") respectfully request Plaintiff f'real Foods, LLC's ("f'real") Motion for a Permanent Injunction and Recall ("Motion") (D.I. 287) be denied.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Defendants refer to the Nature and Stage of Proceedings from their Opening Brief in Support of Their Renewed Motions for Judgment as a Matter of Law or, In the Alternative, Motions for a New Trial or Amended Judgment.  D.I. 298 at 1-2.

## II.   SUMMARY OF THE ARGUMENT

1.  f'real failed to meet its burden that a permanent injunction is warranted. f'real has not shown that it suffered any irreparable harm.  Any prospective harm is compensable by money damages through the judgment or a compulsory license.  The balance of hardships favors Defendants given the novel questions of law on appeal, and the public would be disserved by any injunction.

2.  f'real failed to show that the rare remedy of recall is warranted.  f'real has been compensated for BIC3000-DQ infringement and f'real will not benefit from a recall of those machines.  Recall of the MIC2000 used by Hershey's customers is unnecessary.

## III.   STATEMENT OF FACTS

The relevant facts are set forth in the Argument section, *infra*.

## IV.    ARGUMENT

### A.    Legal Standard

To obtain a permanent injunction, a plaintiff must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).   "The grant of an injunction is not a matter of right following a finding of infringement, but is instead 'an act of equitable discretion by the district court.'"   *Power Integrations, Inc. v. Fairchild Semiconductor Corp.*, C.A. No. 12-540-LPS, 2019 WL 3290986, at *4 (D. Del. July 22, 2019) (quoting *eBay*, 547 U.S. at 391).   The Supreme Court has cautioned that "[a]n injunction is a ***drastic and extraordinary*** remedy, which should not be granted as a matter of course."   *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 165 (2010) (emphasis added).   "Indeed, if the plaintiff's injury can be adequately redressed with a less severe remedy, 'recourse to the additional and extraordinary relief of an injunction' is not warranted."   *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. 11-484-RGA, 2014 WL 4695765, at *3 (D. Del. Sept. 12, 2014) (quoting *Monsanto Co.*, 561 U.S. at 166).

While the scope of injunctive relief, including recall, is within the court's discretion, the injunction cannot be punitive.   *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d

770, 772-73 (Fed. Cir. 1993). A court should review whether the benefit of recall to plaintiff outweighs the burden to the defendant or public. *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, 821 F. Supp. 2d 681, 697 (D.N.J. 2011). Additionally, recall is unnecessary where plaintiff has been compensated for infringement through a judgment; the recall would produce a double recovery. *Judkins v. HT Window Fashions Corp.*, 704 F. Supp. 2d 470, 496-97 (W.D. Pa. 2010) (citing *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1549 (Fed. Cir. 1987)); *Ecolab, Inc. v. Gardner Mfg. Co.*, No. Civ. 98-2294-MJDGJL, 2003 WL 1856434, at *2 (D. Minn. Apr. 9, 2003).

### B.     f'real Has Not Demonstrated That an Injunction Should Issue

f'real has not met its burden of showing an injunction is appropriate. Injunctive relief should be denied in a patent case, when when the parties are competitors, where plaintiff fails to meet its burden. *See, e.g., EMC Corp. v. Zerto, Inc.*, C.A. No. 12-956-GMS, 2016 WL 1291757, at *13-14 (D. Del. Mar. 31, 2016); *Riverbed Tech.*, 2014 WL 4695765, at *10-14; *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 575-79 (D. Del. 2011); *S.O.I.TEC Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, Civ. No. 08-292-SLR, 2011 WL 2748725, at *22 (D. Del. July 15, 2011); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 562-64 (D. Del. 2011); *IGT v. Bally Gaming Int'l Inc.*, 675 F. Supp. 2d 487, 489-93 (D. Del. 2009); *Advanced Cardiovascular Sys., Inc. v.*

*Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 558-62 (D. Del. 2008); *Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440, 442-44 (D. Del. 2007).

### 1.     f'real Will Not Be Irreparably Harmed Absent an Injunction

To prove irreparable harm, f'real must show:  (1) "absent an injunction, it will suffer irreparable harm"; *and* (2) "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."  *Apple Inc. v. Samsung Elecs. Co.,* 735 F.3d 1352, 1359-60 (Fed. Cir. 2013) (internal quotation omitted).   Direct competition is insufficient to prove irreparable harm, especially when other competitors exist.  *Belden Techs.*, 802 F. Supp. 2d at 576.  Unsupported allegations of lost sales, lost business opportunities, and price erosion are insufficient to meet plaintiff's burden.  *Id.*  Instead, plaintiff must provide "specific sales or market data" and identify "precisely what market share, revenues, and customers" plaintiff has lost to defendant.  *Praxair*, 479 F. Supp. 2d at 444.

Although f'real's proposed injunction applies to all accused machines, D.I. 287-1 at 2, considerations regarding irreparable harm differ by machine.  When reviewed individually, f'real fails to show irreparable harm.

### a.     BIC3000-DQ

f'real's allegation of irreparable harm from Hamilton Beach's sales of the crew-serve BIC3000-DQ to Dairy Queen ("DQ"), D.I. 288 at 7, comprises a two-sentence argument that f'real lost an opportunity to sell its LT blender to DQ.  D.I.

288 at 6-7; D.I. 289 ¶¶ 8-10.[2]  This argument fails due to lack of factual support, f'real's failure to disclose its LT blender during litigation, and irrefutable evidence that the LT is not an acceptable substitute for the BIC3000-DQ.

f'real never disclosed the LT blender as a substitute for the BIC3000-DQ or the supposed lost DQ business opportunity in the litigation despite Defendants' multiple on-point interrogatories and requests for production ("RFPs") requesting such information.  *See, e.g.*, Ex. E Nos. 1-2; Ex. F No. 1; Ex. G Nos. 1-2, 6-7; Ex. H Nos. 1-6, 12-14, 23, 30-31, 35, 37, 40-41; *see also* Ex. 1 (no lost business due to BIC3000-DQ in f'real's damages report).

Upon learning of f'real's new allegations, Defendants propounded targeted RFPs to Plaintiffs.  Exs. J-L.  The additional discovery responses, combined with the existing record, show f'real cannot prove any lost business opportunity attributable to BIC3000-DQ sales.

First, while Guzdar implies that Rich's relationship with DQ supports the lost opportunity allegations, D.I. 289 ¶ 10, f'real presents no evidence that it discussed with DQ buying f'real's blenders, notwithstanding Defendants' targeted discovery request.   Ex. J No. 71.  Moreover, Plaintiffs' documents characterize DQ as a

---

[2] Guzdar's declaration mentions the B7 blender, D.I. 289 ¶¶ 8-9, but it is not discussed in f'real's Brief and thus is not a basis for its Motion.  The B7 lacks self-rinsing capabilities and thus cannot be a BIC3000-DQ substitute.  Finally, the B7 and LT share the same blending deficiencies.  Williams Decl. ¶ 9.

*competitor*—not as a ***potential customer***—in the milkshake market.  Ex. M; *see also*

Ex. AA 398:11-16.  This contradicts f'real's notion that it would or could sell DQ

its blender.

Second, the evidence flatly refutes f'real's bald assertion that the LT has "the

same blending capabilities" as the BIC3000-DQ, D.I. 288 at 7:

- DQ's recipes require ***DQ's soft-serve ice cream*** in combination with various

  mix-ins.  Ex. N.  Yet, f'real sells blenders and ***f'real's pre-packaged frozen***

  ***substances*** in a razor/razor blade model where sale of frozen "milkshakes"

  generates most of f'real's revenue.  D.I. 289 ¶ 5.  f'real produces no evidence

  showing that the LT—which uses f'real's disk blade designed to shave

  through solid blocks of frozen substance, Ex. AA 212:17-23, 271:10-18,

  495:19-21, 1093:5-11—can work with soft-serve ice cream, as DQ requires.

  Ex. N.  f'real's documents show the LT is designed for and used with f'real's

  pre-packaged cups of frozen solid product.[3]  Yet, the BIC3000-DQ blends

  soft-serve ice cream as well as DQ's mix-ins.  Williams Decl. ¶ 7; Ex. N.

- DQ requires that its blenders make beverages of multiple sizes.  Ex. N (noting

  Mini, Small, Medium, Large); Ex. O at HBBF013241; Williams Decl. ¶ 7.

---

[3] Guzdar disingenuously states that the LT "can be used . . . with a foodservice operator's own milkshake or smoothie ingredients."  D.I. 289 at ¶ 8.  Yet, the LT uses f'real's solid block cups, not the operator's ice cream.  Ex. L at FREAL_PT_000001-7.  The only "ingredients" that can be supplied by an operator are the add-ins, such as stroopwafel crumbs.  *Id.* at FREAL_PT_000007.

The BIC3000-DQ accomplishes this difficult task, while the LT cannot. Williams Decl. ¶¶ 7, 9. Accommodating multiple cup sizes challenged Hamilton Beach because its prior machines were built for one size cup. Ex. O at HBBF013241 ("A huge challenge was accommodating the large range of cup sizes . . . ."); Williams Decl. ¶ 7. To develop a machine capable of blending various desserts as DQ requires, Hamilton Beach invented a cupholder that tilts and rotates the cup during mixing to replicate manual blending. Ex. O at HBBF013241; Williams Decl. ¶ 7; Ex. P; Ex. AA 765:14-22. This development took over three years, resulting in U.S. Patent No. 9,474,417. Williams Decl. ¶ 7; Ex. Q. The BIC3000-DQ includes this patented cupholder. Williams Decl. ¶ 7. f'real fails to show that the LT is capable of producing beverages of acceptable quality in various size cups, as DQ requires. The LT's cupholder[4] can neither accommodate multiple cup sizes nor tilt and rotate for proper blending. Williams Decl. ¶ 9. f'real cannot use Hamilton Beach's patented solution to retrofit an LT for DQ. *Id.* ¶ 7. Even if they would work together, it would take f'real years to design a substitute blender and the patents-in-suit expire by November 2023.

---

[4] f'real denied Defendants request for a sample LT. Ex. J No. 67.

- Hamilton Beach redesigned its lid to fit multiple cup sizes and accommodate the tilted cup.  Williams Decl. ¶ 8.  f'real has provided no evidence that the its blenders' lids can meet these requirements.

Finally, f'real's willingness to license Hamilton Beach to use its blenders in "ice cream stores," such as DQ, Ex. R at 1-2, underscores the inappropriateness of an injunction.  *See Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1343 (Fed. Cir. 2017).

### b.   MIC2000 Used in Hershey Shake Shop Express

f'real does not sufficiently demonstrate irreparable harm based on the MIC2000 machines used in Hershey's Shake Shop Express ("SSE") program.

First, f'real fails to provide sufficient market evidence.  f'real admitted that the relevant market is ***not*** a two-person market, but includes many competitors.  Ex. AA 372:15-373:3, 373:15-22 (discussing Ex. S), 602:6-24.  "Therefore, a sale to defendants is not necessarily the loss of a sale to plaintiffs." *Belden Techs.*, 802 F. Supp. 2d at 576.  Thus, f'real cannot rely solely upon the parties' status as direct competitors to show irreparable harm, and instead must show that it lost market share to Defendants or identify specific customers it has lost or stands to lose as a result of Defendants' infringement.  *See LG Elecs.*, 798 F. Supp. 2d at 563; *IGT*, 675 F. Supp. 2d at 490.  f'real fails to show either.

f'real presents no evidence regarding the market, including evidence showing Hershey gained market share at f'real's expense. f'real's damages expert testified f'real's market share likely increased since Hershey launched the SSE program. Ex. AA 602:25-603:24. This undermines a finding of irreparable harm. *See Advanced Cardiovascular*, 579 F. Supp. 2d at 560. f'real provides no evidence of actual customers lost to Hershey, relying solely on market share to show lost profits.[5] Ex. AA 653:17-22.

Second, f'real's irreparable harm analysis fails because it focuses on past harm. "While the *eBay* standard makes clear that past harm is relevant to the irreparable harm analysis, an injunction is by definition a prospective remedy." *Edwards Lifesciences AG v. CoreValve, Inc.*, C.A. No. 08-91-GMS, 2011 WL 446203, at *14 (D. Del. Feb. 7, 2011) (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861-62 (Fed. Cir. 2010)). f'real's failure to identify any prospective lost customers is significant when f'real admits gaining approximately 6,000 locations since filing the lawsuit versus SSE losing locations. Ex. AA 651:5-19; Ex. T at 2. f'real now offers discounted equipment to current MIC2000 customers. D.I. 289 ¶

---

[5] Defendants moved for JMOL of no lost profits. D.I. 296. If the Court grants that motion, then the jury's award of lost profits should not be considered in the irreparable harm analysis. *Presido Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1384 (Fed. Cir. 2017).

7. To the extent customers switch to f'real, it will generate revenue from cup sales without any injunction. *See id.* ¶ 5. Thus, it is unclear how f'real would substantially benefit from an injunction at this stage. *See Edwards*, 2011 WL 446203, at *14.

Finally, f'real licensed certain self-serve locations, which allowed Hamilton Beach (and by extension Hershey) to sell to customers in "quick serve, limited serve and full service restaurants," "branded quick serve, branded limited serve and branded full service restaurants," "ice cream stores," and "coffee shops." Ex. R at 1-2. At least a portion of the SSE business would have been authorized under the license agreement. Ex. U at 69-85. To the extent an injunction issues against the SSE program, it should capture only locations outside the "Licensed Field," which f'real acknowledges as self-serve convenience stores. D.I. 288 at 6.[6] *See Nichia Corp.*, 855 F.3d at 1343.

### c.    BIC2000, IMI2000, and Remaining MIC2000

f'real fails to show irreparable harm from sales of the remaining Hamilton Beach machines—BIC2000, IMI2000 and MIC2000 machines sold to customers other than Hershey.

---

[6] f'real references price erosion later in its Brief. D.I. 288 at 8. The only support is Guzdar's conclusory statement that f'real modified its business strategy in view of Hershey. D.I. 289 ¶ 6. This is inconsistent with Guzdar's trial testimony that f'real offered alternative pricing models based on demand from customers who could not afford or did not want to own a blender, Ex. AA 387:5-18, 391:7-19. Moreover, f'real's damages expert did not opine on price erosion. Ex. V 246:19-22.

f'real makes *no* showing regarding lost sales attributable to Hamilton Beach's sales of the IMI2000 and MIC2000 machines sold to customers other than Hershey, so no injunction should issue with regard to those machines.

As to the BIC2000, f'real states, without any support,[7] that the LT has the "same blending capabilities." D.I. 288 at 7. The BIC2000 is designed to mix ice and liquid drink mix. Ex. AA 503:1-4; Williams Decl. ¶ 4. By contrast, f'real's blenders are designed to grind a frozen substance. D.I. 289 ¶ 5. The blade in the f'real blenders are incapable of effectively blending ice and a liquid drink mix. Williams Decl. ¶ 5. Further, f'real provides no evidence of lost customers attributable to BIC2000 sales. As the LT is not an acceptable substitute and f'real has not shown loss of customers or market share due to the BIC2000, there can be no irreparable harm.

### d.    f'real Has Not Shown a Causal Nexus

To meet the causal nexus requirement, plaintiff must show "some demonstrable connection between the patented features and consumer demand for the infringing products." *Riverbed Tech.*, 2014 WL 4695765, at *10 (citing *Apple*,

---

[7] f'real cites Guzdar's declaration, but Guzdar does not mention the BIC2000 or its blending capabilities.

735 F.3d at 1364). f'real asserts a nexus between the rinsing feature[8] of the accused products and customer demand, citing internal Hamilton Beach documents and advertisements showing its products have rinsing ***and many other capabilities***.  D.I. 288 at 7-8 (citing Ex. 1 (discusses ability to blend in disposable cups, easy operation, labor saving, no waste, space saving design, no dispensing), Ex. 6 (discusses ability to mix), Ex. 7 (discusses zero product waste and superior blending), Ex. 10 (discusses sanitization (not rinsing) in a product that was never developed), Ex. 15 (discusses consistent end product and labor saving)).

f'real's evidence mirrors *Riverbed Technology*, where plaintiff offered defendant's internal documents and advertisements discussing the patented functionality and plaintiff.  2014 WL 4695765, at *12.  The court noted, "Federal Circuit law is clear, however, that evidence of copying or mimicking is not sufficient to establish the required nexus."  *Id.* (citing *Apple*, 735 F.3d at 1367).  Furthermore, while such documents "may be promoting infringing features copied or derived from [plaintiff], they do nothing to prove that customer demand is driven by the patented functionality of the [patents-in-suit] as opposed to [defendant's] global support structure, greater company stability, existing customer base, etc."  *Id.*  The court

---

[8] The B7 referenced in Guzdar's declaration lacks the patented rinsing capability. Ex. AA 372:4-7.  To the extent customers demand self-rinsing, f'real cannot show consumers would have chosen the B7 instead of the SSE program.

denied the motion for injunction based on lack of nexus stating, "Federal Circuit case law requires a more concrete link between the infringing feature and consumer demand." *Id.* at *13. The same applies here. f'real's evidence does not sufficiently link the rinsing feature to customer demand. In fact, there is evidence showing Hershey did not require self-rinsing. Ex. AA 740:7-10. Thus, f'real is not entitled to an injunction.

### 2. Remedies at Law Can Compensate f'real

f'real "had a burden to iterate specific reasons why [Defendants'] infringement can not be compensated for with a money award." *Praxair*, 479 F. Supp. 2d at 444. f'real never does so, focusing on its punitive desire to eliminate Defendants from the market, D.I. 288 at 8-9, as shown at trial. *See* Ex. W (Guzdar stating he wanted to "smack[] [Defendants] until they stop coming up for air"); Ex. X (Guzdar referring to Defendants as "a virus in the beginning stages of development" that needs to be "stamp[ed] out before they gather any strength"). f'real's "desire to become a monopoly supplier in its product's market is hardly unique, and is not conclusive evidence of any factor." *Praxair*, 479 F. Supp. 2d at 444.

Any harm to f'real is quantifiable. For the BIC2000, IMI2000, BIC3000-DQ, and MIC2000 machines used in the "Licensed Field," the Court could enforce a running royalty akin to that in the f'real-Hamilton Beach license agreement and

utilized by f'real's damages expert.  For MIC2000 sales outside of the "Licensed Field," the Court can craft an enhanced per-unit royalty.  f'real never shows such damages are inadequate compensation, and this omission weighs against an injunction.  *See EMC*, 2016 WL 1291757, at *13.

### 3.    Balance of the Hardships Favors Defendants

As discussed in Defendants' motion to stay any injunction or recall, filed herewith, significant issues exist for appeal.  These include the novel question whether Sato is prior art and Judge Sleet's claim constructions.  In such situations, courts find the balance of hardships favors defendants because they confront significant losses if an injunction is entered and then their appeal succeeds.  *See, e.g., Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, No. 05-737-JJF, 2010 WL 3083023, at *1 (D. Del. July 30, 2010).   This factor weighs against an injunction.

The balance of hardships especially favors Hamilton Beach for the BIC3000-DQ.  An injunction would devastate Hamilton Beach's relationship with DQ and provide no benefit to f'real as it offers no substitute.  The denial of an injunction (and implementation of a running royalty) creates no hardship on f'real.  A running royalty provides f'real with income generated from a market that it does not and cannot serve.

### 4. Public Interest Would Be Disserved by a Permanent Injunction

Here, the public's interest in promoting patent rights "would also be served through a compulsory license." *EMC*, 2016 WL 1291757, at *14. Contrary to f'real's claims, it cannot "immediately meet the demand" for customers who would like to purchase the BIC2000 and BIC3000-DQ[9] because f'real does not have a comparable blender. D.I. 288 at 11; Williams Decl. ¶¶ 5, 9. Those customers are necessarily harmed by an injunction.

### C. Defendants Should Not Be Ordered To Recall Infringing Blenders

Recalls are a very rare remedy for patent infringement. f'real has failed to cite any case post-*eBay* that awarded plaintiff in a patent infringement action a product recall. D.I. 288 at 11-12.[10] f'real has failed to show such a rare remedy is necessary to protect it from any continuing harm.

### 1. BIC3000-DQ

f'real's request for recall of BIC3000-DQ machines sold to DQ is unsupported by law. First, f'real only requested a per unit royalty payment from Hamilton Beach for sale of the BIC3000-DQ. Ex. Y at 2. BIC3000-DQ infringement has already

---

[9] f'real does not assert that it has a comparable blender for the IMI2000.

[10] The only post-*eBay* case cited by f'real is not a recall case. In *Tinnus Enterprises, LLC v. Telebrands Corp.*, the court enjoined the retailer defendants from continuing the sale of their current inventory. No. 6:16-cv-0033, 2016 WL 9131960, at *1 (E.D. Tex. Nov. 21, 2016). The court does not order the recall of any products already sold to customers.

been compensated by the judgment and supplemental damages that have been or will be awarded. Recall would result in an impermissible double recovery, and therefore, f'real is not entitled to recall of the BIC3000-DQ. *See Judkins*, 704 F. Supp. 2d at 496; *Ecolab, Inc.*, 2003 WL 1856434, at *2.

f'real's benefit from recall does not outweigh Hamilton Beach's and DQ's burden. There will be no benefit to f'real. The only harm f'real asserts is DQ's usage of the BIC3000-DQ to make Blizzards and milkshakes competes with f'real and a lost profits calculation based on this infringement is impossible. D.I. 288 at 13. This argument is a red herring. f'real's own documents recognize DQ's milkshakes and blended beverages competed with f'real using non-infringing machines for years before the BIC3000-DQ was launched in 2018. Ex. M; Ex. Z (showing DQ introducing malts and shakes in 1949 and that more than 175 million Blizzards were sold before 1985). If there is a recall, DQ will continue using non-infringing equipment to compete with f'real.[11] By contrast, there would at least be a financial burden on Hamilton Beach to pay the costs of the recall. *See* D.I. 288 at

---

[11] The Court has no ability to order a mandatory recall of the BIC3000-DQ owned by DQ franchisees. D.I. 288 at 13; *see also Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1365-66 (Fed. Cir. 2017) (noting Rule 65(d) only permits an injunction that binds the parties and "persons who are in active concert or participation" with the parties) (internal quotation omitted).

13.  Hamilton Beach's burden outweighs the non-existent benefit of a recall making recall unwarranted.  *See Sanofi-Aventis*, 821 F. Supp. 2d at 697.

### 2.    SSE MIC2000[12]

If the jury's finding that Defendants directly infringe the method claims through the SSE customer's use of the MIC2000 is upheld and the Court enters the requested injunction, then recall would be unnecessary because the injunction would require Defendants to cease any "use" of the MIC2000, including attributed "use" via SSE customers, D.I. 287-1 at 2, and Defendants would have to take the necessary steps to prevent such use.

To the extent the Court grants Defendants' motions for JMOL regarding the method claims (D.I. 294, 295), then the only remaining infringement of the MIC2000 used in the SSE program would be the *past* sale to customers.  Therefore, just like the BIC3000-DQ, recall would be double recovery because f'real has already been compensated for damages related to MIC2000 sales, and recall is unwarranted.  *See Judkins*, 704 F. Supp. 2d at 496; *Ecolab, Inc.*, 2003 WL 1856434, at *2.

---

[12] f'real appears to only request recall of the MIC2000 used in the SSE program. D.I. 288 at 13.  To the extent that f'real is requesting recall of MIC2000 sold to other customers, a recall is unwarranted for the same reasons as discussed regarding the BIC3000-DQ (f'real has already been compensated for those machines by the per unit royalty and f'real has not shown any benefit to the recall, which would have to be voluntary because Hamilton Beach does not own the units).

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny

f'real's Motion (D.I. 287).


Dated: October 15, 2019                    */s/ Francis DiGiovanni*
 

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

OF COUNSEL:
William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800
william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

## <u>CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION</u>

The undersigned hereby certifies that this brief complies with the type-volume limitation of the Court's Order on Post-Trial Briefing (D.I. 270). The brief contains 4,019 words, excluding the Cover Page, Table of Contents, Table of Authorities, Signature Block, Certification of Compliance with Word Limitation, and Certificate of Service. The brief has been prepared in 14-point Times New roman or similar typeface. As permitted by the Court's Supplemental and Amended Scheduling Order, the undersigned has relied upon the word count feature of the word processing system used to prepare the brief.

Dated:  October 15, 2019

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:  (302) 467-4200
Fax:  (302) 467-4201
francis.digiovanni@dbr.com

## **CERTIFICATE OF SERVICE**

I certify that on October 15, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF prior to 6:00 p.m. ET, which will send notification of such filing to all registered participants.   In addition, the foregoing will be served upon counsel of record via electronic mail.


Dated:  October 15, 2019                    */s/ Francis DiGiovanni*
                                            Francis DiGiovanni (#3189)
                                            DRINKER BIDDLE & REATH LLP
                                            222 Delaware Avenue, Suite 1410
                                            Wilmington, DE 19801
                                            Tel:  (302) 467-4200
                                            Fax:  (302) 467-4201
                                            francis.digiovanni@dbr.com