## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

F'REAL FOODS, LLC and RICH
PRODUCTS CORPORATION,

              Plaintiffs,

      v.

HAMILTON BEACH BRANDS, INC. and
HERSHEY CREAMERY COMPANY,

              Defendants.

C.A. No. 16-41-CFC
CONSOLIDATED

████████████████

### DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DECLARE THIS CASE EXCEPTIONAL AND AWARD ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285 (D.I. 300)

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

*Of Counsel:*

William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800
william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

Dated:  October 21, 2019

# **TABLE OF CONTENTS**

I.      NATURE AND STAGE OF THE PROCEEDINGS .....................................1

II.     SUMMARY OF THE ARGUMENT ......................................................1

III.    STATEMENT OF FACTS ...................................................................1

IV.     ARGUMENT ....................................................................................2

     A.    Legal Standard.........................................................................2

     B.    Plaintiffs' Motion Is Deficient Under Rule 54(d)(2)(B).....................3

     C.    This Is Not an Exceptional Case .................................................5

        1.    Defendants' Counterclaims Were Supported by the Evidence .........................................................................5

        2.    Defendants' Sufficiently Narrowed Issues Throughout the Litigation ..................................................................8

        3.    Defendants Complied With Discovery Requests in a Reasonable Manner.............................................................11

        4.    Defendants Did Not Improperly Refuse to Accept Decisions .................................................................16

V.      CONCLUSION...............................................................................18

## TABLE OF AUTHORITIES

CASES                                                                 Page(s)

*Altair Logix LLC v. Caterpillar, Inc.*,
    C.A. No. 18-2057 (MN), 2019 WL 3219485 (D. Del. July 17,
    2019) ........................................................................................2, 3, 4

*Bayer Healthcare LLC v. Baxalta, Inc.*,
    No. 16-1122-RGA, 2019 WL 4016253 (D. Del. Aug. 26, 2019)..............4, 7, 10

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989) ..........................................2, 3, 14, 15

*Broadsoft, Inc. v. Callwave Commc'ns, LLC*,
    No. 13-711-RGA, 2019 WL 3750817 (D. Del. Aug. 8, 2019)......................2, 16

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
    40 F.3d 1223 (Fed. Cir. 1994) .................................................6

*Checkpoint Systems, Inc. v. All–Tag Security S.A.*,
    858 F.3d 1371 (2017)..........................................................5

*Chrimar Holding Co. v. ALE USA Inc.*,
    732 F. App'x 876 (Fed. Cir. 2018) .............................................8

*Cosmo Techs. Ltd. v. Actavis Labs. Fl, Inc.*,
    No. 15-164-LPS, 2019 WL 141759 (D. Del. Mar. 28, 2019) ...................10

*Edwards Lifesciences AG v. CoreValue, Inc.*,
    No. 08-91-GMS, 2011 WL 446203 (D. Del. Feb. 7, 2011) ...................17

*Elbit Sys. Land & C4I Ltd. v Hughes Network Sys., LLC*,
    927 F.3d 1292 (Fed. Cir. 2019) ...............................................4

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
    790 F.3d 1369 (Fed. Cir. 2015) ..............................................14

*Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*,
   300 F. Supp. 3d 610 (D. Del. 2018), *aff'd*, 773 F. App'x 619 (Fed.
   Cir. 2019) ...........................................................................................................18

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)........................................................................................3

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) .....................................................................2, 4

*Laitram Corp. v. Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991) ........................................................................15

*Medtronic Navigation, Inc. v. BrainLAB Medizinisch
   Computersysteme GmbH*,
   603 F.3d 943 (Fed. Cir. 2010) ...........................................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)............................................................................................2

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ...........................................................................5

*Special Devices, Inc. v. OEA, Inc.*,
   269 F.3d (Fed. Cir. 2001) ...............................................................................3, 4

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   254 F. Supp. 3d 680 (D. Del. 2017)..............................................................9, 10

*Stickel v. Heublein, Inc.*,
   716 F.2d 1550 (Fed. Cir. 1983) .........................................................................8

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
   892 F.3d 1175 (Fed. Cir. 2018) ..............................................................6, 7, 13

## STATUTES, RULES & REGULATIONS

28 U.S.C. § 284....................................................................................................4

35 U.S.C. § 285...........................................................................................*passim*

35 U.S.C. § 314(d) ..............................................................................................17

Fed. R. App. P. 4(a)(4).........................................................................................4

Fed. R. App. P. 39 ................................................................................................17

Fed. R. Civ. P. 54 ...............................................................................................1, 4

Fed. R. App. P. 54(d)(2)(B) ............................................................................2, 3, 4

# EXHIBIT LIST[1]

| Exhibit | Description |
|---|---|
| A | DTX058 |
| B | DTX059 |
| C | Plaintiffs f'real Foods LLC's and Rich Products Corporation's Initial Disclosures (dated May 19, 2016) |
| D | Plaintiff f'real Foods, LLC's Motion for Voluntary Dismissal, C.A. No. 14-1270 (GMS), D.I. 106 (Jan. 26, 2016) |
| E | Email from R. Thakrar, dated April 29, 2019 plus attachment |
| F | Excerpts from Transcript of Telephone Conference on December 29, 2015 |
| G | Excerpts from Transcript of Hearing on November 8, 2018 |
| H | Excerpts from Transcript of Telephone Conference on November 27, 2018 |
| I | Email from B. Silverstein, dated December 6, 2017 |
| J | HBBF0013236-38 |
| K | HBBF0013240-50 |
| L | Excerpts from deposition of Brian P. Williams, dated December 17, 2017 |
| M | Excerpts from Exhibit 4 to deposition of Michael Sanford |
| N | Defendant Hamilton Beach Brands, Inc.'s Response to Plaintiffs' Second Set of Interrogatories, dated March 30, 2018 |
| O | Excerpt from HBBF172883 |
| P | Email from W. Foster, dated September 20, 2019 |
| Q | Email from T. Rahmeier, dated June 21, 2018 |
| R | Exhibit 1 to deposition of Greg Trepp |
| S | DTX434 |
| T | DTX439 |
| U | Excerpts from the deposition of Brian O'Flynn, dated March 22, 2018 |
| V | Excerpts from the deposition of Henry R. Wood, dated march 21, 2018 |
| W | Excerpts from Trial Transcript |

---

[1] The exhibits are attached to the Declaration of Francis DiGiovanni, filed contemporaneously herewith.

Defendants Hamilton Beach Brands, Inc. ("Hamilton Beach") and Hershey Creamery Company ("Hershey") respectfully request the Court deny Plaintiffs' Motion to Declare This Case Exceptional and Award Attorneys' Fees Pursuant to 35 U.S.C. § 285 (D.I. 300) ("Motion").

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Defendants refer to the Nature and Stage of Proceedings from their Opening Brief in Support of Their Renewed Motions for Judgment as a Matter of Law or, In the Alternative, Motions for a New Trial or Amended Judgment.  D.I. 298 at 1-2.

## II.   SUMMARY OF THE ARGUMENT

1.    The Motion should be denied as deficient pursuant to Rule 54 as it does not provide an estimate of the attorneys' fees sought.

2.    The Motion should be denied as this is not an exceptional case. Defendants were found not to be willful infringers.  Defendants zealously defended themselves, and Plaintiffs have not shown that this case stands out from others or that Defendants engaged in bad faith litigation tactics.

## III.  STATEMENT OF FACTS

The relevant facts are set forth in the Argument section, *infra*.

## IV.     ARGUMENT

### A.     Legal Standard

A motion for attorney fees under § 285 must comply with Federal Rule of Civil Procedure 54(d)(2)(B).  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1386 (Fed. Cir. 2005).  The motion must specify an estimate of the amount of fees sought.  *Altair Logix LLC v. Caterpillar, Inc.*, C.A. No. 18-2057 (MN), 2019 WL 3219485, at *2 (D. Del. July 17, 2019).

An exceptional case finding is not intended to be an "ordinary thing in patent cases," but instead is limited to circumstances necessary to prevent "gross injustice" or bad faith litigation.  *Broadsoft, Inc. v. Callwave Commc'ns, LLC*, No. 13-711-RGA, 2019 WL 3750817, at *6 (D. Del. Aug. 8, 2019) (internal citations omitted). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Fee awards should not be used as a "penalty for failure to win a patent infringement suit."  *Id.* at 548 (internal citations omitted).

The purpose of § 285 when applied to accused infringers is:  (1) discouraging infringement by penalizing willful infringement; and (2) preventing "gross injustice" when the infringer has committed litigation misconduct.  *Beckman Instruments, Inc.*

2

*v. LKB Produkter AB*, 892 F.2d 1547, 1552-53 (Fed. Cir. 1989).  A finding of no willfulness by a jury is a determination that an infringer did not act with subjective bad faith in defending against the patent lawsuit.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016).  Thus, when there is no willful infringement, attorneys' fees are not warranted to discourage infringement.  *Beckman*, 892 F.2d at 1553.

When alleging litigation misconduct, the fee award "must bear some relation to the extent of the misconduct."  *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d, 1340 1344 (Fed. Cir. 2001) (internal quotation omitted).  A fee award compensates a party for the "*extra* legal effort to counteract the [ ] misconduct."  *Beckman,* 892 F.2d at 1553.  The quantum of fees "awarded to the 'prevailing party' should bear some relation to the extent to which that party actually prevailed."  *Id.* at 1554.

### B.    Plaintiffs' Motion Is Deficient Under Rule 54(d)(2)(B)

Plaintiffs' Motion is deficient because it fails to "state the amount sought or provide a fair estimate of it" as Rule 54(d)(2)(B)(iii) requires.  A prevailing party's failure to do so warrants denial of a motion for attorneys' fees under § 285.  *Altair Logix*, 2019 WL 3219485, at *2.  There is no basis for deciding exceptionality outside the context of granting attorneys' fees because exceptionality "is a prerequisite to a potential award of attorneys' fees," and a two-step procedure would be "particularly inefficient" given the courts' discretion to decline fees in even

exceptional cases.  *Id*. at *3.   A two-step approach is also inconsistent with the Federal Circuit's requirement that § 285 fee motions comply with Rule 54(d)(2)(B). *Id.* at *3 n.3 (citing *IPXL*, 430 F.3d at 1386).

The post-trial briefing order expressly identifies the deadline for the filing the exceptional case *and attorneys' fees* motions was 28 days after entry of judgment following the indefiniteness briefing.  D.I. 270 ¶ 4.  Now that the deadline has passed for making the attorneys' fees motion, Plaintiffs cannot remedy their failure to comply with Rule 54.  *See Altair Logix*, 2019 WL 3219485, at *2-3.

Rather than quantify or estimate the fee amount, Plaintiffs cite a case where the Court ruled that the deadline for filing an accounting of fees runs from the final judgment date.  D.I. 301 at 2 n.1.[2]  However, the Federal Circuit has repeatedly held that the accounting statute does not provide for an accounting of attorneys' fees.  *See Elbit Sys. Land & C4I Ltd. v Hughes Network Sys., LLC*, 927 F.3d 1292, 1304 (Fed. Cir. 2019) (the "accounting" provision applies only to the issues of actual and enhanced damages under 28 U.S.C. § 284); *see also Special Devices,* 269 F.3d at

---

[2] *Bayer* asserts that only the final judgment is appealable and triggers the deadline. *Bayer Healthcare LLC v. Baxalta, Inc.*, No. 16-1122-RGA, 2019 WL 4016253, at *2, n.2 (D. Del. Aug. 26, 2019).  But consistent with *Altair Logix* and Rule 54, the judgment entered in this case on August 26, 2019 (D.I. 286) confers prevailing party status upon Plaintiffs as it is an "order from which an appeal lies," and the period for appeal is only delayed by post-trial briefing, such as a motion for fees under Rule 54.  Fed. R. App. P. 4(a)(4).

4

1343 n.2 ("Determination of attorney fees is not an 'accounting.'").   Because
Plaintiffs failed to state the amount of fees sought, their Motion is procedurally
deficient and should be denied.

### C.      This Is Not an Exceptional Case

#### 1.      Defendants' Counterclaims Were Supported by the Evidence

Plaintiffs wrongly accuse Defendants of pursuing frivolous counterclaims and
defenses.   The inequitable conduct counterclaim[3] and inventorship defense were
pursued in good faith and supported by evidence sufficient to survive summary
judgment.  *See Checkpoint Systems, Inc. v. All–Tag Security S.A.*, 858 F.3d 1371,
1376 (2017) (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir.
2010) ("[T]he district court's denial of summary judgment of noninfringement
reflects the belief that it was reasonable for ResQNet to have retained that patent for
suit.")).   Indeed, the evidence showed that Jim Farrell acknowledged Andy
Geppert's substantial contributions to the development of the FRLB2 embodying the
patents-in-suit and asked Geppert to assign the "IP" Geppert developed to f'real.
Exs. A-B; D.I. 195 at 22-24.   Considering Geppert only needed to "make a
contribution to the claimed invention that is not insignificant in quality" to be
considered a joint inventor, assertion of the counterclaim and defense was

---

[3] Defendants' antitrust counterclaim was based in part on the allegations of
inequitable conduct.  D.I. 10 at 30-35.

objectively reasonable.  *See Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  There was sufficient evidence to create a genuine issue of fact permitting Defendants to present inventorship to the jury and maintain its inequitable conduct counterclaim.  *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) ("[A] strong or even correct litigating position is not the standard by which we assess exceptionality.").  Merely losing an argument on JMOL under the "clear and convincing" evidentiary standard does not make such a defense frivolous.

Similarly, Defendants' prior-sale defense was reasonably based on sufficient evidence.  In denying Plaintiffs' motion to dismiss, the Court noted that the "pleadings are plausible, and not conclusory or speculative."  D.I. 36 at 2.  As discovery proceeded, and additional documents were produced, Defendants no longer based the prior-sale on a disclosure at the 2002 NACS show, focusing instead on f'real's admission it began negotiations with QuikTrip "in the 2001 time frame."  D.I. 195 at 28-29.  Those negotiations ultimately led to a mock-up of f'real's blender in 2002 and commercial sales in 2003.  *Id.* at 30.  Evidence also showed Farrell created a video simulating a mixing cycle with the new FRLB2, which embodied the patents-in-suit, to show potential customers more than one-year before the filing date.  *Id.*  There was also evidence that the invention was complete more than one year before the filing date because f'real consistently maintained an April 2002

conception date.  *Id.* at 30-31.   Based on this evidence, it was not objectively

unreasonable to assert that f'real made an invalidating offer for sale of the FRLB2.

As there was evidentiary foundation for the on-sale defense, it does not "stand out"

from others.  *Bayer Healthcare*, 2019 WL 4016235, at *4 (presenting a weak

argument does not make it frivolous).

　　　　Plaintiffs also fail to identify any "extra" unreasonable legal effort resulting

from litigating these counterclaims.  Plaintiffs never sought the Rule 11 sanctions

they threatened.  D.I. 301 Ex. 2.   Defendants proceeded in the ordinary course of

discovery to depose Kramer, Geppert, and Farrell, who Plaintiffs identified in Initial

Disclosures as having roles in conception or the reduction of practice of the asserted

inventions. Ex. C.  The discovery directed to the prior-sale and inventorship defenses

overlapped greatly with f'real's development story.   Farrell's trial testimony

recounted his discussions at a 2001 trade show with QuikTrip, f'real's first customer

for the FRLB2, which led him to develop a self-rinsing machine.  Ex. W 215:18-

217:20.  Once the Court granted JMOL on the inventorship defense, Defendants

stipulated to judgment on the underlying counterclaims, thereby avoiding any

needless litigation expense.   D.I. 285 at 3.   Considering the totality of the

circumstances, Defendants reasonably litigated their counterclaims without

imposing any extra legal effort that would justify an award of attorneys' fees.

### 2. Defendants' Sufficiently Narrowed Issues Throughout the Litigation

Plaintiffs' allegations that Defendants' failure to narrow issues supports an exceptional case finding are belied by the law and the facts. Plaintiffs note various affirmative defenses in Defendants' answers that were not pursued at trial, alleging, without any support, that such defenses should have been dropped after discovery was complete. D.I. 301 at 13-14. Defendants commonly disclose a "litany of defenses" in answers, and "something more in the way of vexatious tactics is necessary to establish that defenses are asserted in bad faith." *Stickel v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983). Plaintiffs must show the dropped defenses were meritless to support a finding of exceptional case, and not "focus on the contention that [Defendants] never truly intended to try them." *See Chrimar Holding Co. v. ALE USA Inc.*, 732 F. App'x 876, 891 (Fed. Cir. 2018). Plaintiffs make no such showing,[4] instead improperly relying (without support) on Defendants' alleged intention not to try the defenses. D.I. 301 at 13. Plaintiffs fail to show how Defendants' failure to drop these defenses caused any additional cost to Plaintiffs. Significantly, Plaintiffs fail to mention that none of these defenses was included in the Joint Pretrial Order, or any drafts thereof. *See* D.I. 233. Plaintiffs knew well before trial what defenses Defendants intended to pursue.

---

[4] f'real can hardly argue that Defendants' standing defense was meritless since the 2014 action was dismissed because of standing issues. *See* Ex. D.

8

Plaintiffs' allegation regarding Defendants' failure to assert all prior art combinations at trial lacks merit. Defendants cannot be penalized for choosing to present their strongest invalidity combinations to the jury in view of the 10.5-hour limit and the Court's determination just before trial that Defendants could not present their best prior art (Sato). *See Medtronic Navigation, Inc. v. BrainLAB Medizinisch Computersysteme GmbH*, 603 F.3d 943, 959 (Fed. Cir. 2010) ("A decision by a party to narrow its case for presentation to a jury does not generally suggest manipulation of the litigation process, . . . ."). Furthermore, per the parties' agreement, Defendants served Dr. Slocum's invalidity slides two days before his testimony, which showed Dr. Slocum would only testify as to the '377 and '150 patents. Ex. E. Plaintiffs fail to show any extra costs due to Defendants' decision to focus on invalidity of only two patents.

Plaintiffs cite inapposite cases. The facts of the district court case in *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680 (D. Del. 2017), differ from those here. To support its exceptional case finding, the court relied upon a finding of willfulness and defendant's litigation conduct (*e.g.*, contradicting the court's claim constructions at trial, pursuing defenses contrary to its internal documents, improperly seeking sanctions, and designating nearly 48,000 lines of testimony but presenting only 22 lines at trial). *Id.* at 722-23. The court noted, "[t]here can be no doubt from even a cursory review of the record that [defendant] pursued litigation about as aggressively

9

as the court has seen in its judicial experience," and that defendant "crossed the line in several regards." *Id.* at 723. Here, the jury rejected willfulness and Plaintiffs fail to show that Defendants' litigation conduct is equivalent to Cisco's. *See Bayer Healthcare*, 2019 WL 4016235, at *6 (acknowledging defendant "did not approach engaging in the level of pervasive misconduct seen in *SRI*"). Significantly, Plaintiffs fail to acknowledge that in July, the Federal Circuit vacated and remanded *SRI*'s finding of exceptional case based on the Court's decision to vacate the willfulness finding. 930 F.3d 1295, 1311 (Fed. Cir. 2019). Given the jury found no willfulness in this case, *SRI* is irrelevant. *See also Cosmo Techs. Ltd. v. Actavis Labs. Fl, Inc.*, No. 15-164-LPS, 2019 WL 141759, at *3 (D. Del. Mar. 28, 2019) (where plaintiffs dropped all but two claims before trial after the court required plaintiffs to reduce the number of asserted claims well before trial and warned plaintiffs against further reducing the claims without providing advance notice to defendants).[5]

The record shows Defendants narrowed the case in a reasonable manner and there is no "misconduct" demonstrating bad faith litigation tactics that would justify finding an exceptional case.

---

[5] This case is clearly inapposite given that here it was Defendants that pushed Plaintiffs to narrow the case to no avail. *See, e.g.*, Ex. F 12:24-13:22; D.I. 54 21:15-22:16; Ex. G 39:4-43:8; Ex. H 29:10-34:19.

10

### 3. Defendants Complied With Discovery Requests in a Reasonable Manner

Throughout discovery, Defendants provided Plaintiffs with requested information in a timely manner and supplemented discovery on a regular basis. Discovery disputes were few; at no time during the discovery phase did Plaintiffs raise their so-called "abuses," and Defendants were never sanctioned. Plaintiffs fail to show how these so-called abuses "complicated" the case; they never undertook any extra legal action because Defendants produced information on their own accord and otherwise provided the requested information in writing.

Contrary to Plaintiffs' erroneous assertion that "it is not clear that [the BIC3000-DQ] would have ever been disclosed" absent the deposition of Brian Williams, D.I. 301 at 15, Defendants timely disclosed the existence of the BIC3000-DQ *one week prior* to that deposition through a document production related to the BIC3000-DQ. Ex. I. The first document in the production is a DQ publication discussing the BIC3000-DQ. Ex. J. The third document is the BIC3000-DQ business case. Ex. K. Plaintiffs' trial exhibit list includes several DQ documents from that initial production. D.I. 233 Ex. 10 (PTX82, PTX83, PTX87, PTX399, PTX517, PTX518). As noted in Williams' deposition, the BIC3000-DQ was still being developed and the projected launch date was 2018. Ex. L 30:13-32:12. The first six machines were not even shipped to a customer until April 2018. Ex. M at 202 (Col. AO, Row 7). Plaintiffs acknowledge that Hamilton Beach supplemented

11

its interrogatory response shortly after Williams' deposition to identify the BIC3000-DQ.  D.I. 301 at 15.

Defendants did not withhold information regarding the BIC2100YL, either. Hamilton Beach employees testified at depositions that Yogurtland was a potential customer for the <u>BIC2000</u> as part of developing a new mix-in concept.  Ex. U 200:23-201:24; Ex. V 126:6-16.   Yogurtland was identified as a customer who received a demonstration of a Blend-in-Cup machine in 2017.  Ex. N No. 14.  Before trial, Defendants produced updated sales records for the accused products showing Hamilton Beach first used model number BIC2100YL for Yogurtland after the close of fact discovery in December 2018 and sold three machines.  Ex. O.  Hamilton Beach acknowledged these products were subject to Plaintiffs' claims and never contested non-infringement separately from the MIC2000.  Ex. P.   Plaintiffs performed no extra work and they never raised this "impropriety" before this Motion; they cannot possibly show any prejudice.

Plaintiffs also complain for the first time about the alleged improper redaction of a <u>single</u> document that was later produced unredacted.  D.I. 301 at 16-17.  It is disingenuous for Plaintiffs to raise this issue now as they made no effort to challenge

the redaction during the litigation.[6]  *See Stone Basket Innovations*, 829 F.3d at 1181

("[A] party cannot simply hide under a rock, quietly documenting all the ways it's

been wronged, so that it can march out its 'parade of horribles' after all is said and

done.") (internal citation omitted).  Plaintiffs never asked for a privilege log.  Later,

when voluntarily supplementing discovery in a targeted production of nine

documents to ensure Plaintiffs had relevant business cases and sales records[7] prior

to a 30(b)(6) deposition, Hamilton Beach produced the unredacted version of the

same document on its own accord without any action by Plaintiffs.  Ex. Q.  Hamilton

Beach *sua sponte* produced the unredacted version upon learning the redaction was

not based on legal advice.  Ex. W 776:1-20.  Plaintiffs point to no case showing that

independently withdrawing a privilege claim for a single document rises to the level

of litigation misconduct justifying an exceptional case finding.

The unredacted document was available for the depositions of Hamilton

Beach's 30(b)(6) designee, IP Counsel Alex Raring, and engineer Ben Branson.

Plaintiffs used the unredacted document as Exhibit 1 for Hamilton Beach's CEO's

---

[6] The only reason the Court was aware of the redaction is that Plaintiffs' counsel
ignored the parties' agreement to use unredacted PTX8 during cross-examination.
Ex. W 773:3-774:13.  One of many such instances at trial where Plaintiffs ignored
such agreements.  *See, e.g., id.* 198:12-199:14, 242:21-243:18.

[7]  Plaintiffs clearly reviewed this production as they used some of these documents
as exhibits in the deposition of Hamilton Beach's 30(b)(6) designee a week later.
*See, e.g.,* Ex. M.

deposition. Ex. R. Plaintiffs suffered no prejudice as they used the unredacted document in a blown-up demonstrative in front of the jury, and, despite this alleged "smoking gun," still failed to prevail on their willfulness claim.[8] Ex. W 775:10-19.

While the Court criticized Hamilton Beach for failing to supplement a response to one interrogatory, the Court simultaneously acknowledged that Hamilton Beach had complied with the Rules (Ex. W 9:22-10:12) and discovery issues were present on "both sides" (D.I. 284 145:305). *See Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (the totality of the circumstances, including the conduct of the prevailing party seeking fees, should be considered when determining exceptionality). This litigation is unusual as f'real dismissed its initial complaint after Defendants discovered via a third-party subpoena that f'real assigned the patents-in-suit to Rich. Ex. D. Prior to that dismissal, Hamilton Beach provided a detailed, written explanation of its non-infringement positions, including the information sought by f'real's Interrogatories. Ex. S. When Plaintiffs re-filed this action, the parties agreed to use discovery from the dismissed action, D.I. 52 ¶ 8, and Hamilton Beach again provided its non-infringement positions. Ex. T. Plaintiffs never sought additional information or

---

[8] Defendants' knowledge of the patents is only relevant to the willfulness claim. Because Plaintiffs did not prevail on that claim, they should be precluded from recovering attorneys' fees related to their willfulness allegations. *See Beckman*, 892 F.2d at 1554.

objected to the interrogatory response during discovery; Hamilton Beach believed the matter was settled until Plaintiffs raised the issue during motions *in limine*.  D.I. 233 Ex. 15.  f'real was fully aware of Hamilton Beach's non-infringement positions when litigating the case.  D.I. 78 39:22-41:5 (Plaintiffs' counsel discussed divided infringement argument at *Markman* hearing in 2017); D.I. 284 66:19-37:4.  While the information may have not been provided in an interrogatory response, Hamilton Beach fully disclosed its non-infringement positions, concealing nothing.

Compounding their failure to raise the interrogatory issue until after discovery, Plaintiffs cannot demonstrate any harm.  The Court permitted Plaintiffs to freely supplement the record with additional testing regarding the sufficient mass/unrestrained limitations of the '658 patent and the aeration and grinding limitations of the '377 patent.  Ex. W 10:13-22.  This cannot constitute "extra" legal work because such testing was necessary to prove infringement by showing that the accused products met each and every claim limitation.  *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Furthermore, effort related to "aerating" or "grinding" is also irrelevant because Plaintiffs did not prevail with respect to the '377 patent.[9]  *Beckman*, 892 F.2d at 1554.

---

[9] If Defendants prevail on their JMOL related to the "sufficient mass" claims (D.I. 295), effort related to those claims becomes irrelevant to this Motion.

Defendants complied with their obligations under the Rules in a reasonable way such that Plaintiffs were never surprised and never took "extra" legal action to obtain information during discovery. Thus, nothing in discovery "stands out" in a highly contested patent action among competitors that justifies awarding fees.

### 4.    Defendants Did Not Improperly Refuse to Accept Decisions

Plaintiffs' "Refusal to Accept Decisions" argument, D.I. 301 at 18-20, is based on the faulty premise that merely exercising a right to appeal or move for reconsideration constitutes litigation misconduct rising to the level of a finding of exceptionality. Plaintiffs fail to cite a single case that supports this novel proposition, which runs contrary to the admonition that an award of fees under § 285 is not intended to be "an ordinary thing in patent cases." *Broadsoft, Inc.*, 2019 WL 3750818, at *6 (internal citations omitted). Defendants have merely vigorously defended themselves.

Plaintiffs' falsely allege that Defendants improperly "refused to accept Judge Sleet's claim constructions." The Court acknowledged that Defendants' motion for reconsideration had merit, Ex. G 15:4-8, asked for additional briefing, *id.* 8:21-9:6, and did not sanction Defendants for filing the motion. The summary judgment and *in limine* orders Plaintiffs cite either do not discuss Defendants rearguing claim construction (D.I. 241, 242) or only discuss it as to one portion of the argument made in support of Defendants' motion (D.I. 251). Even if Defendants had reargued claim

16

construction—which they did not—that is not a basis for a finding of exceptional case. *Edwards Lifesciences AG v. CoreValue, Inc.*, No. 08-91-GMS, 2011 WL 446203, at \*13 (D. Del. Feb. 7, 2011) (declining to award attorneys' fees where a party improperly attempted to reargue claim construction).

Defendants' efforts at the PTAB and resulting Federal Circuit appeal were equally proper.  Defendants' only recourse from a denial of institution was to move for reconsideration.  *See* 35 U.S.C. § 314(d).   While the Federal Circuit upheld the PTAB's ruling in the instituted IPR, it did not award costs to f'real under Federal Rule of Appellate Procedure 39, showing that the Federal Circuit found the appeal to have merit.  *Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 908 F.3d 1328, 1343 (Fed. Cir. 2018).

Finally, Defendants' actions regarding IPR estoppel and Sato are far from misconduct.  The only art in dispute in the IPR estoppel motion was the Sato reference, which the Court found Defendants were not estopped from presenting at trial, D.I. 239 ¶ 8, and the invalidity ground that was raised but not instituted in the IPR.   While Defendants were ultimately precluded from presenting the non-instituted ground at trial, *id.* ¶ 9, Defendants presented Federal Circuit law supporting their position.  D.I. 194 at 3.  The novel nature of the Sato ruling is discussed in depth by Defendants' opening brief in support of their motion to stay,

D.I. 314 at 3-5, which shows Defendants have a strong likelihood of success on appeal.

Defendants' continued defense of themselves cannot support a finding of exceptional case. *See Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 631 (D. Del. 2018), *aff'd*, 773 F. App'x 619 (Fed. Cir. 2019) (recognizing "high-stakes" nature of "patent litigation between competitors" and no exceptional case merely because issues are "hotly contested").

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' Motion to Declare This Case Exceptional and Award Attorneys' Fees Pursuant to 35 U.S.C. § 285 (D.I. 300).

Dated: October 21, 2019

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@dbr.com
thatcher.rahmeier@dbr.com

OF COUNSEL:
William S. Foster, Jr.
Kenneth M. Vorrasi
Brianna L. Silverstein
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005-1209
(202) 842-8800

18

william.foster@dbr.com
kenneth.vorrasi@dbr.com
brianna.silverstein@dbr.com

*Counsel for Defendants*

## <u>CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION</u>

The undersigned hereby certifies that this brief complies with the type-volume limitation of the Court's Order on Post-Trial Briefing (D.I. 270). The brief contains 4,065 words, excluding the Cover Page, Table of Contents, Table of Authorities, Signature Block, Certification of Compliance with Word Limitation, and Certificate of Service. The brief has been prepared in 14-point Times New roman or similar typeface. As permitted by the Court's Supplemental and Amended Scheduling Order, the undersigned has relied upon the word count feature of the word processing system used to prepare the brief.

Dated:  October 21, 2019

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel:  (302) 467-4200
Fax:  (302) 467-4201
francis.digiovanni@dbr.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 21, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF prior to 6:00 p.m. ET, which will send notification of such filing to all registered participants.  In addition, the foregoing will be served upon counsel of record via electronic mail.


Dated:  October 21, 2019          <u>*/s/ Francis DiGiovanni*</u>
                                   Francis DiGiovanni (#3189)
                                   DRINKER BIDDLE & REATH LLP
                                   222 Delaware Avenue, Suite 1410
                                   Wilmington, DE 19801
                                   Tel:  (302) 467-4200
                                   Fax:  (302) 467-4201
                                   francis.digiovanni@dbr.com