# EXHIBIT B

H. Geppert

## EMPLOYEE CONFIDENTIAL INFORMATION
## AND INVENTIONS AGREEMENT

The undersigned acknowledges that f'Real! Foods, LLC ("f'Real!") operates in a competitive environment and that f'Real! enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement.  This Agreement is designed to confirm and make clear that the undersigned has an obligation to maintain the confidentiality of f'Real!'s trade secrets, the undersigned will use those trade secrets for the exclusive benefit of f'Real!, relevant inventions that the undersigned has created or will create in connection with services provided to f'Real! will be owned by f'Real!, the undersigned's prior and continuing activities separate from f'Real! will not conflict with f'Real!'s development of its proprietary rights, and when and if the undersigned's employment with f'Real! terminates, the undersigned will not use the undersigned's prior position with f'Real! to the detriment of f'Real!.  For good and valuable consideration, including amounts to be paid to the undersigned as an employee of f'Real!, the undersigned agrees that:

1.       Provisions Related to Trade Secrets.

a.       The undersigned acknowledges that f'Real! possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that the undersigned may develop or discover as a result of the undersigned's engagement as an employee of f'Real!.  The value of that Proprietary Information depends on it remaining confidential.  f'Real! depends on the undersigned to maintain that confidentiality, and the undersigned accepts that position of trust.

b.       As used in this Agreement, "Proprietary Information" means any information (including any formula, algorithm, computer program, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information of f'Real!, its customers, suppliers, joint venturers, licensors, licensees, distributors and other persons and entities with whom f'Real! does business or affiliated with f'Real!.  Proprietary Information includes, without limitation, proprietary methods and know-how, product formulae, equipment designs and specifications, computer software, financial information, business plans and methods, customer lists and information, supplier lists and information, information about employees, proprietary algorithms, cost and pricing information and information about f'Real! contracts and cooperative relationships.

c.       The undersigned will not disclose or use at any time, either during or after termination of the undersigned's employment with f'Real!, any Proprietary Information except for the exclusive benefit of f'Real! as required by the undersigned's duties and obligations to f'Real!, or as f'Real! expressly may consent to in writing.  The undersigned will cooperate with f'Real! and use its best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.  The undersigned will not use for or on behalf of f'Real! any confidential

W03 108970002/1361971/v2EE

Defendant's Trial
Exhibit
1:16-cv-00041-CFC
**DTX059**

Highly Confidential - Attorneys Eyes Only

or trade secret information of a prior employer or received by the undersigned from a third party other than with permission to use such information for or on behalf of f'Real!.

        d.      Upon termination of the undersigned's employment with f'Real! for any reason, the undersigned immediately will deliver to f'Real! all tangible, written, graphical, machine readable and other materials (including all copies) in the undersigned's possession or under the undersigned's control containing or disclosing Proprietary Information. Following such termination, it is acknowledged that f'Real! has the absolute right to notify companies with whom the undersigned may work in the future as to the undersigned's obligations hereunder.

        2.      Ownership of Inventions.

        a.      The undersigned agrees to communicate to f'Real! as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by the undersigned (alone or jointly with others) at any time during and related to or arising out of the undersigned's engagement as an employee by f'Real!. The undersigned hereby assigns to f'Real! and/or its nominees all of its right, title and interest in such Inventions, and all of its right, title and interest in any patents, copyrights, patent applications, or copyright applications based thereon. Further, copyrightable materials created by the undersigned in connection with the undersigned's employment will be "works made for hire" and therefore will be owned by f'Real!. The undersigned will assist f'Real! and/or its nominees (without charge but at no expense to the undersigned) at any time and in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

        b.      As used in this Agreement, the term "Inventions" includes, but is not limited to, all works of authorship, including but not limited to copyrightable materials, illustrations, graphic works, photographs, writings, animations, discoveries, improvements, processes, developments, designs, know-how, data, computer programs and formulae, whether patentable or unpatentable.

        c.  The undersigned hereby irrevocably designates and appoints f'Real! and each of its duly authorized officers and agents as the undersigned's agent and attorney-in-fact to act for and in the undersigned's behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by the undersigned.

        d.  Any provision in this Agreement requiring the undersigned to assign rights in any Invention does not apply to an Invention which qualifies under the provisions of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without

Highly Confidential - Attorneys Eyes Only                       FREAL_186802

using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." The undersigned understands that the undersigned bears the burden of proving that an Invention qualifies under Section 2870.

    e.  Notwithstanding the foregoing, the undersigned also assigns to f'Real! (or to any of its nominees) all rights which the undersigned may have or acquire in any Invention, full title to which is required to be in the United States by a contract between f'Real! and the United States or any of its agencies.

    f.  I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company, which belong to me, which relate to the Company's proposed business and products, and which are not assigned to the Company; or, if no such list is attached, I represent that there are no such inventions.

    3.  <u>Miscellaneous</u>.

    a.  While employed by f'Real! and for a period of one year after termination of employment with f'Real!, the undersigned will not, directly or indirectly, solicit, for the purposes of hiring them or causing them to terminate their employment with f'Real!, any then employee of f'Real!.

    b.  The undersigned's obligations under this Agreement may not be modified or terminated, in whole or in part, except in a writing signed by an authorized officer of f'Real! or a designee thereof. Any waiver by f'Real! of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

    c.  Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

    d.  The undersigned's obligations under this Agreement will survive the termination of the undersigned's employment by f'Real!, regardless of the manner of such termination. Subject to the restrictions contained herein, this Agreement will inure to the benefit of and be binding upon the successors and assigns of f'Real! and the undersigned.

Highly Confidential - Attorneys Eyes Only    FREAL_186803

e.      The undersigned understands that the provisions of this Agreement are a material condition to the undersigned's employment by f'Real!.  The undersigned also understands that this Agreement is not a contract for employment, and nothing in this Agreement creates any right to the undersigned's continuous employment with f'Real!, nor to the undersigned's employment for any particular term.

f.      Any breach of this Agreement likely will cause irreparable harm to f'Real! for which money damages could not reasonably or adequately compensate f'Real!. Accordingly, the undersigned agrees that f'Real! will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

g.      This Agreement will be governed by and interpreted in accordance with the substantive laws of the State of California governing a contract made and wholly performed within California.

h.      This Agreement contains the complete agreement between f'Real! and the undersigned concerning the subject matter hereof and supersedes all other agreements and understandings concerning such subject matter.  This Agreement may be executed in counterparts.

W03 108970002/1361971/v2EE                4

Highly Confidential - Attorneys Eyes Only                FREAL_186804

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE UNDERSIGNED'S RIGHTS TO INVENTIONS THE UNDERSIGNED MAKES DURING THE UNDERSIGNED'S EMPLOYMENT WITH FREAL!.

EMPLOYEE:

Name: _Andrew B Gepport_

Signature: _____

Date: _4-16-08_

AGREED AND ACKNOWLEDGED:

f'Real! Foods, LLC

Name: _Keith Milne_

Signature: _____

Title: _Vice President - Finance_

Date: _6/11/08_

W03 108970002 1361971 v2EE                        5

Highly Confidential - Attorneys Eyes Only                    FREAL_186805

# EXHIBIT A

# LIST OF PRIOR INVENTIONS
# AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
| FRLB2 /-S | 2002 – 2006 | Various aspects of FRLB2/-S Blenders. |

**Name of Employee:**

WED 108970002 1361071 v2LE                                6

Highly Confidential - Attorneys Eyes Only                    FREAL_186806

DTX059-0006