# EXHIBIT F

```
                                                          1
     1             IN THE UNITED STATES DISTRICT COURT
     2             IN AND FOR THE DISTRICT OF DELAWARE
     3                            - - -
     4    F'REAL FOODS, LLC,            )   Civil Action
                                        )
     5             Plaintiff,           )
                                        )
     6        v.                        )
                                        )
     7    HAMILTON BEACH BRANDS, INC.,  )
          HERSHEY CREAMERY COMPANY and  )
     8    PAUL MILLS d/b/a MILLS        )
          BROTHERS MARKETS,             )
     9                                  )
                  Defendants.           )   14-1270(GMS)(MPT)
    10
    11                           - - -
                         Wilmington, Delaware
    12              Tuesday, December 29, 2015
                           10:00 a.m.
    13                  Telephone Conference
    14                          - - -
    15    BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
    16    APPEARANCES:
    17           RODGER D. SMITH, II, ESQ., and
                 ETHAN H. TOWNSEND, ESQ.
    18           Morris, Nichols, Arsht & Tunnell LLP
                       -and-
    19           GUY W. CHAMBERS, ESQ.
                 Sideman & Bancroft LLP
    20           (San Francisco, CA)
    21                          Counsel for Plaintiff
    22
    23
    24
    25
```

```
                                                          2
     1  APPEARANCES CONTINUED:
     2       BINDU A. PALAPURA, ESQ.
             Potter Anderson & Corroon LLP
     3             -and-
             WILLIAM S. FOSTER, JR., ESQ., and
     4       MARK S. ZHAI, ESQ.
             Baker Botts L.L.P
     5       (Washington, D.C.)
     6              Counsel for Defendant Hamilton
                    Beach Brands, Inc.
     7
             KEVIN M. GOLD, ESQ.
     8       Rhoads & Sinon LLP
             (Harrisburg, PA)
     9              Counsel for Defendant
                    Hershey Creamery Company
    10
                            - - -
    11
09:59:41  12        THE COURT:  Counsel, good morning.
09:59:44  13        (Counsel respond "Good morning.")
09:59:45  14        THE COURT:  Who on the line, please, for the
09:59:47  15  plaintiff?
09:59:48  16        MR. TOWNSEND:  For the plaintiff, Your Honor,
09:59:49  17  this is Ethan Townsend and Rodger Smith from Morris Nichols
09:59:53  18  Arsht & Tunnell.  With us is our co-counsel, Guy Chambers,
10:00:00  19  from Sideman & Bancroft in California.
10:00:01  20        THE COURT:  Good morning.
10:00:03  21        For Hamilton Beach?
10:00:05  22        MS. PALAPURA:  Good morning, Your Honor.  This
10:00:07  23  is Bindu Palapura from Potter Anderson.  With me on behalf
10:00:11  24  of Hamilton Beach is Bill Foster and Mark Zhai from Baker
10:00:16  25  Botts.
```

```
                                                          3
10:00:16   1        Also with me on behalf of Hershey Creamery is
10:00:30   2  Kevin Gold from Rhoads & Sinon.
10:00:33   3        THE COURT:  Good morning, all.
10:00:36   4        Let's talk about the first issue raised, the one
10:00:40   5  that is raised by plaintiff.  Who is going to handle that?
10:00:43   6  Mr. Chambers?
10:00:43   7        MR. CHAMBERS:  Yes, I am, Your Honor.  Thank
10:00:43   8  you.
10:00:48   9        This has to do with the Hamilton Beach corporate
10:00:51  10  deposition we took.  The issue is that while we received
10:01:00  11  during discovery a lot of drawings of various parts of the
10:01:03  12  infringing Hamilton Beach MIC 2000 blender, we were not
10:01:08  13  seeing typical documents we expected showing why critical
10:01:12  14  parts of the MIC 2000 were designed the way they were and
10:01:16  15  describing their functionality.
10:01:19  16        These missing functionality documents are the
10:01:23  17  most probative on the infringement issues.
10:01:27  18        So to find the missing functionality documents,
10:01:31  19  f'real sent to Hamilton Beach a corporate deposition notice
10:01:34  20  asking for testimony about the existence and location of
10:01:38  21  very specific documents relating to, among other things, the
10:01:42  22  mixing blade design, the cup sensor capabilities, the splash
10:01:48  23  shield design, and consideration of f'real's blenders in
10:01:52  24  designing the MIC 2000.
10:01:55  25        At the deposition, Hamilton Beach's attorney
```

```
                                                          4
10:01:58   1  blocked us from obtaining this information by first
10:02:04   2  presenting a witness who had not worked with the MIC 2000,
10:02:07   3  and then not adequately preparing that witness to testify
10:02:11   4  about Hamilton Beach's corporate knowledge on the specific
10:02:15   5  topics.  The witness would repeatedly say that he didn't
10:02:19   6  know about the existence of particular specific requested
10:02:23   7  documents, and pointed to one of three other people at
10:02:27   8  Hamilton Beach, Ben Branson, Brian Williams and Brian
10:02:31   9  O'Flynn, who actually worked on the MIC 2000 as being more
10:02:35  10  knowledgeable.
10:02:39  11        But when I asked the witness if he would contact
10:02:41  12  those people during the break to collect the requested
10:02:44  13  information, he was blocked by his attorney from doing so.
10:02:50  14        Then the witness was also instructed not to
10:02:54  15  answer questions about whether testing was done to determine
10:02:59  16  if the MIC 2000 mixing blade aerates.
10:03:04  17        At one point in the deposition, the witness
10:03:07  18  testified generally that these requested functionality
10:03:11  19  documents should be kept in certain directories and
10:03:15  20  subdirectories in the project folder on the M drive on the
10:03:19  21  Hamilton Beach server, but he didn't know what those
10:03:23  22  directories and subdirectories were.  But he said he could
10:03:27  23  go down the hall and make a printout of them, which I asked
10:03:30  24  him to do during a break.  Again, he was blocked by his
10:03:35  25  counsel from going down the hall during the break and making
```

9

```
10:08:59  1            THE COURT:  This is sort of classically, in my
10:09:03  2   view, Mr. Chambers, raising form over substance.
10:09:07  3            It seems to me clear from both sides, parties'
10:09:10  4   statements, both lawyers' statements at this point, that you
10:09:13  5   can get to where you need to be, and there is no resistance,
10:09:17  6   at least, at bottom, to the notion that you are entitled to
10:09:21  7   these functionality documents and the other things that you
10:09:24  8   have mentioned.  And you have just heard confirmation of
10:09:26  9   that from Mr. Foster.  I don't see why counsel, when you get
10:09:29 10   off the phone with me, can't, without me micromanaging the
10:09:33 11   discovery process, which I don't have time to do or the
10:09:36 12   ability to do from afar, I am not going to practice law for
10:09:40 13   you gentlemen -- why can't you work this out?
10:09:43 14            MR. CHAMBERS:  Your Honor, we are certainly,
10:09:49 15   with your Court's guidance now, willing to go back and try
10:09:53 16   again.  For instance, that printout is of the directories
10:09:56 17   and subdirectories --
10:09:58 18            THE COURT:  Counsel, let me ask you to do this.
10:10:00 19   I am going to sit here like the proverbial potted plant, and
10:10:04 20   you two talk to each other right now.  I will take us off
10:10:08 21   the record, so there is no need to fear that something is
10:10:11 22   going to come back and bite you.  Talk to one another right
10:10:15 23   now.  If you need my assistance, I will jump in.  Then we
10:10:18 24   will go to the next issue.
10:10:20 25            (Discussion off the record.)
```

10

```
10:14:57  1            THE COURT:  Appreciate that, counsel, very much.
10:15:00  2   We are back on the record.
10:15:04  3            Let me say for the record that counsel have, in
10:15:06  4   the Court's view, worked cooperatively during the
10:15:09  5   off-the-record conversation back and forth to come to
10:15:12  6   essential agreement on the issues that were raised in
10:15:18  7   plaintiff's first bullet and only bullet in the letter dated
10:15:23  8   December 23.
10:15:25  9            Hamilton Beach's issue.
10:15:30 10            MR. FOSTER:  Thank you, Your Honor.
10:15:31 11            What we were raising was, with respect to one of
10:15:34 12   the patents, the plaintiff has asserted 24 of the 27 claims.
10:15:40 13   This is causing an undue burden on Hamilton Beach, partially
10:15:46 14   because by doing so, it has raised, I believe, nine
10:15:52 15   means-plus-function elements in the case.  As you know, the
10:15:55 16   Court issued an order that we are limited to 15 terms for
10:15:59 17   purposes of Markman.
10:16:02 18            Right now, the plaintiff is arguing all the
10:16:05 19   control means with a single claim construction.  We have
10:16:09 20   responded to those.  If you notice in our answering brief,
10:16:13 21   we were able to also argue all the control means together.
10:16:17 22            THE COURT:  I haven't looked at your briefs,
10:16:18 23   counsel.  For the record, I have not looked at your briefs,
10:16:22 24   obviously, at this point.
10:16:24 25            MR. FOSTER:  Okay, Your Honor.
```

11

```
10:16:26  1            MR. CHAMBERS:  I didn't hear that.
10:16:27  2            THE COURT:  I said I haven't looked at your
10:16:29  3   briefs.
10:16:29  4            MR. CHAMBERS:  Thank you.
10:16:30  5            THE COURT:  The only reason, if memory serves,
10:16:33  6   and it doesn't really too well all the time, I limited the
10:16:36  7   number of claim terms is because, counsel, the number that
10:16:38  8   you suggested the Court construe was in my view
10:16:43  9   unreasonable.  Therefore, you put me in a position of having
10:16:46 10   to make an arbitrary decision.  And I arbitrarily lopped it
10:16:51 11   off from 30 or 29, whatever it was, about in half.
10:16:56 12            You only get so much, you are entitled to only
10:17:01 13   so much of this very limited resource.  Okay, counsel?
10:17:05 14            By the way, you are going to be limited in terms
10:17:09 15   of hours at the Markman and in terms of hours at the trial.
10:17:15 16   So one would think, I think reasonably should think, that
10:17:19 17   you are going to pare your cases in accordance with the
10:17:24 18   number of hours you are given or the amount of time you are
10:17:28 19   given to prosecute and defend your claims.
10:17:31 20            I will add this limitation, this caveat:  that
10:17:35 21   my limitations are not intended to artificially or
10:17:40 22   arbitrarily cut a party off from asserting valid evidence,
10:17:48 23   adducing evidence and making argument and the like that one
10:17:51 24   needs to make out the elements of a claim or, on the other
10:17:56 25   side, to successfully prosecute a defense.
```

12

```
10:18:00  1            With that said, I will let you continue.
10:18:05  2            MR. CHAMBERS:  Understood, Your Honor.  We have
10:18:08  3   worked to drop a number of terms.  For example, after the
10:18:15  4   Court's order, Hamilton Beach has voluntarily dropped a
10:18:18  5   number of terms, at least four of the terms.
10:18:20  6            The question becomes, Your Honor, whether or not
10:18:23  7   the control means, if it's six different control means or
10:18:28  8   they are all argued together.  Right now, if they are all
10:18:32  9   considered separate terms, there is likely 16 total terms.
10:18:37 10   But if you look at the pleading, really, the control means
10:18:42 11   kind of are slightly different variations of one another and
10:18:45 12   are all recited in the dependent claims.
10:18:48 13            There is also a number of means-plus-function
10:18:50 14   claims in the independent claims of the '377 patent as well.
10:18:54 15   So there is nine total terms.
10:18:57 16            Again, means plus function, the statute requires
10:19:00 17   that the structure be identified that performs the claimed
10:19:05 18   function.  While we think we have got it down to a number or
10:19:10 19   size where, for example, the argument will be very limited,
10:19:14 20   just talk about the plaintiff has just such a processor for
10:19:17 21   performing the function, we are arguing it's part of an
10:19:20 22   algorithm that is disclosed in the spec.  We are hoping to
10:19:24 23   get guidance.
10:19:25 24            ==Like I said, we dropped a number of terms.  The==
10:19:28 25   ==plaintiff is still asserting 24 out of 27 claims, including==
```

13

```
10:19:32  1   all these dependent claims with the means plus function.  If
10:19:38  2   the Court believes that all control means are separate
10:19:39  3   elements, we are burdened, and we would like some reduction
10:19:42  4   in the number of claims asserted in the patent.
10:19:44  5              Like you said, Your Honor, they are not going to
10:19:46  6   try 24 claims at the trial on this patent.  Under the In Re
10:19:54  7   Katz case, these claims are overlapping, many of them.  One
10:19:57  8   says, performing the processing according to a
10:20:00  9   characteristic of the cup.  Some say, performing the
10:20:02 10   processing according to the size of the cup.
10:20:05 11              Again, we think, if the Court does believe the
10:20:10 12   case is still too big and we are not in compliance, we would
10:20:13 13   ask for a reduction in the number of claims.
10:20:15 14              THE COURT:  You cite Katz for what proposition?
10:20:18 15   You are going to have to refresh my recollection regarding
10:20:20 16   Katz.
10:20:23 17              MR. FOSTER:  Your Honor, we cite Katz for the
10:20:25 18   position that the plaintiff wouldn't be prejudiced by not
10:20:29 19   asserting duplicative claims.
10:20:32 20              THE COURT:  Is that from my brethren at the
10:20:37 21   Federal Circuit saying that?
10:20:40 22              MR. FOSTER:  Yes, Your Honor.
10:20:40 23              THE COURT:  I appreciate their guidance very
10:20:42 24   much on how I manage my docket.  I needed that.
10:20:58 25              Plaintiff, what about it?  Your opposition, your
```

14

```
10:21:03  1   opponent is saying you are unduly burdening them with the
10:21:07  2   number, the sheer number of claims that you are asserting
10:21:11  3   and seemingly not needing to assert the number, 24.
10:21:16  4              MR. CHAMBERS:  Your Honor, on the other patents,
10:21:21  5   for instance, the '662 patent, we have only asserted one
10:21:25  6   claim.  We have only asserted three claims for the '150
10:21:28  7   patent.
10:21:29  8              THE COURT:  Without going chapter and verse
10:21:31  9   through this, what can you do to assure me at this juncture
10:21:41 10   that you are going to pare this down to a manageable number?
10:21:45 11   24 claims, we can't try that.
10:21:46 12              MR. CHAMBERS:  Your Honor, you make a good
10:21:48 13   point.  So what we have offered during the meet-and-confer
10:21:52 14   is after this Court issues its claim construction rulings,
10:21:58 15   we will huddle with our client --
10:22:02 16              THE COURT:  I think you need to begin the
10:22:03 17   huddling process, counsel, you are well positioned to huddle
10:22:08 18   without me advising you through, as it were, an advisory
10:22:13 19   opinion on how to prosecute your case through a Markman
10:22:16 20   order.  You need to go ahead and fish or cut bait.  And if
10:22:20 21   you don't, in short order, I am going to do it for you.
10:22:24 22              MR. CHAMBERS:  Okay.  We will do this after the
10:22:28 23   Court issues its claim construction, so that may --
10:22:35 24              THE COURT:  Mr. Foster, what is your reaction to
10:22:37 25   that?
```

15

```
10:22:39  1              MR. FOSTER:  Again, Your Honor, at this stage,
10:22:45  2   most of the terms are going to be means-plus-function terms.
10:22:49  3   I think all the control means terms can be argued together
10:22:52  4   as a single claim term.
10:22:54  5              THE COURT:  And that is fine with me.  And in
10:23:00  6   that way, if what you are suggesting is, counsel, I should
10:23:07  7   grant some relief from just the number 14, in reality, we
10:23:12  8   would still be at that number, and that we could talk about
10:23:15  9   however many -- I forget which claims you are talking about
10:23:19 10   or which terms -- but they are essentially the same thing.
10:23:24 11   If we can efficiently operate in that environment, I am
10:23:29 12   willing to do that.  Let me get a reaction from both of you
10:23:35 13   to that.
10:23:38 14              MR. CHAMBERS:  Your Honor, I would essentially
10:23:42 15   agree with my opposing counsel that the control means can be
10:23:47 16   handled largely as a group.  By my count, we were down to 17
10:23:53 17   terms.  Your arbitrary limit was 15.  But six of those are
10:23:59 18   the control means.  The issue is actually fairly simple from
10:24:03 19   our perspective.  They have shoveled in, in the structure,
10:24:09 20   everything imaginable --
10:24:12 21              THE COURT:  We are not going to do Markman right
10:24:13 22   now.
10:24:16 23              Mr. Foster, what is your reaction to what you
10:24:18 24   have just heard?
10:24:19 25              MR. FOSTER:  Your Honor, we think that's the
```

16

```
10:24:21  1   case.  There is just an argument, not the algorithms.  While
10:24:25  2   the functions are slightly different, the specification is
10:24:28  3   all common material.  So it would be all closely related in
10:24:33  4   an oral argument and could be disposed of fairly quickly.
10:24:38  5   There are slight variations in the actual claim
10:24:39  6   constructions because the functions, there are slight
10:24:42  7   variations from one another.
10:24:44  8              THE COURT:  What I am hearing is I think both of
10:24:47  9   you can live within the constraints of my order?
10:24:53 10              MR. CHAMBERS:  If we treat the six control means
10:24:56 11   as a single claim limitation, then we are easily within your
10:25:01 12   order.  But that's up to the Court as to whether it wants to
10:25:04 13   do that.
10:25:04 14              THE COURT:  Counsel, you know a lot more about
10:25:07 15   your case than I do.  If you feel that that is going to be
10:25:11 16   adequate to your needs from the standpoint of my obligation
10:25:14 17   as the purveyor of the meaning of disputed terms, I am
10:25:20 18   comfortable with that, if both sides believe that you can do
10:25:25 19   your jobs.
10:25:25 20              (Pause.)
10:25:33 21              THE COURT:  It's mighty quiet out there.
10:25:37 22              MR. FOSTER:  Your Honor, I think we can.  Again,
10:25:38 23   there are slight variations.  One is we are accused of not
10:25:46 24   complying with the Court's order and meanwhile we are having
10:25:49 25   to respond to these means-plus-function elements.  We didn't
```