# EXHIBIT G

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4
     F'REAL FOODS, LLC and RICH      :   CIVIL ACTION
 5   PRODUCTS CORPORATION,           :
                                     :
 6               Plaintiffs,         :
                                     :
 7        vs.                        :
                                     :
 8   HAMILTON BEACH BRANDS,          :
     INC., HERSHEY CREAMERY          :
 9   COMPANY and PAUL MILLS          :
     d/b/a MILLS BROTHERS            :
10   MARKETS,                        :
                                     :   NO. 16-41 (CFC)
11               Defendants.         :   CONSOLIDATED

12
                                 - - -
13
                                  Wilmington, Delaware
14                                Thursday, November 8, 2018
                                  2:05 o'clock, p.m.
15
                                 - - -
16
     BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.
17
                                 - - -
18
     APPEARANCES:
19
              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
20            BY:  RODGER D. SMITH, ESQ. and
                   MICHAEL J. FLYNN, ESQ.
21

22                        -and-

23

24                                  Valerie J. Gunning
                                    Official Court Reporter
25
```

```
15:11:52   1    corresponding structure for these functions, one must turn
15:11:54   2    to column 7, lines, or at least lines 43 through 47 of the
15:12:00   3    specification.  Section 112(f) of title 35, provides in
15:12:06   4    relevant part that an element in a claim for a combination
15:12:09   5    may be expressed as a means or step for performing a
15:12:13   6    specified function without the recital of structure.  Such
15:12:17   7    claim shall be construed to cover the corresponding
15:12:20   8    structure described in the specification.
15:12:24   9              In this case, all parties agree, and Judge
15:12:26   10   Sleet held, that the corresponding structure is found in
15:12:28   11   column 7.  Where I might part ways with Judge Sleet,
15:12:35   12   however, is in limiting the description of the structure to
15:12:38   13   lines 43 through 47.  I am concerned that the description of
15:12:45   14   the structure begins at line 36 and extends through line 47.
15:12:51   15   I note that both parties in their claim construction
15:12:53   16   briefing directed the Court's attention to lines 36 through
15:12:59   17   47 to identifying the corresponding structure.  I am
15:13:04   18   inclined to conclude that all of those lines describe the
15:13:10   19   corresponding structure, and that structure would appear to
15:13:13   20   be consistent with what was proposed by defendants.
15:13:17   21             So what I am going to do is, I'm going to grant
15:13:26   22   in part the motion for reconsideration insofar as it
15:13:32   23   concerns this last corresponding structure that I've just
15:13:36   24   described, and I am going to ask the parties to brief to me
15:13:42   25   in no more than three pages by the end of next week the
```

```
15:13:48   1    issue of whether I should look to lines 36 through 47 in
15:13:55   2    their entirety to determine the corresponding structure or
15:14:03   3    more limited lines in the disclosure or elsewhere to
15:14:07   4    determine what, in fact, is the corresponding structure to
15:14:11   5    the aeration means and aeration elements terms.  Otherwise,
15:14:17   6    I will deny the motion for reconsideration.
15:14:24   7                Now, let me just ask the parties, is it clear
15:14:28   8    what I'm looking for with respect to this latter term?
15:14:33   9                MR. SMITH:  Your Honor, would you prefer
15:14:35  10    three-page letters?
15:14:36  11                THE COURT:  Yes.
15:14:37  12                MR. SMITH:  Thank you.
15:14:38  13                THE COURT:  And three-page letters.  Actually,
15:14:41  14    I'm going to change that.  I'm going to need one letter,
15:14:44  15    750 words, 14-point font.  This should be very short.
15:14:53  16                MR. SMITH:  Just to be clear, one letter from
15:14:55  17    each side?
15:14:55  18                THE COURT:  One letter from each side.  I
15:14:57  19    normally don't like simultaneous briefing, but frankly, I
15:15:01  20    was inclined -- I mean, here's where I am.  I'm hesitant to
15:15:09  21    say Judge Sleet clearly erred in holding as he did, and, in
15:15:13  22    fact, as I think -- well, I will get to it in a second.  On
15:15:18  23    the other hand, I'm mindful that this is all going to be
15:15:22  24    reviewed de novo by the Federal Circuit and I've got to try
15:15:26  25    the case and I've got to make sure that if we're instructing
```

```
 1    APPEARANCES (Continued):

 2
              SIDEMAN & BANCROFT LLP
 3            BY:   GUY W. CHAMBERS, ESQ.
                    (San Francisco, California)
 4

 5                  Counsel for Plaintiffs
                    f'real Foods, LLC and Rich Products
 6                  Corporation

 7

 8            DRINKER BIDDLE & REATH LLP
              BY:   FRANCIS DiGIOVANNI, ESQ.
 9

10                     -and-

11
              DRINKER BIDDLE & REATH LLP
12            BY:   WILLIAM S. FOSTER, JR., ESQ.
                    (Washington, D.C.)
13

14                  Counsel for Defendant

15
                       -  -  -
16

17

18

19

20

21

22

23

24

25
```

```
15:21:58   1   inclined to come out and here tell the defendants that
15:22:01   2   directly and prohibit them from filing any more motions to
15:22:04   3   reconsider, because they basically reargued or reformatted,
15:22:09   4   changed their arguments.  ==Because I dived into the third
15:22:12   5   argument and I had concerns, which are very narrow, and you
15:22:16   6   may educate me and make me very comfortable that you're
15:22:19   7   right, I thought I would go ahead and rule, again mindful of
15:22:23   8   the de novo appellate review standard that exists.==
15:22:26   9             Let me be really clear.  I'm not going to
15:22:29  10   entertain any other claim construction rearguments.  It's
15:22:33  11   not going to happen.
15:22:34  12             Now, my understanding also from what you are
15:22:37  13   saying is that probably the experts' testimony is really
15:22:42  14   going to indefiniteness and maybe I'm wrong on that.  I will
15:22:47  15   find out.  But I'm not going to entertain any more claim
15:22:49  16   construction arguments.  All right?
15:22:53  17             MR. CHAMBERS:  Your Honor, that's exactly what I
15:22:55  18   was -- was hoping the Court would say.
15:22:57  19             THE COURT:  Good.  And both parties, but
15:23:03  20   especially the defendants, ought to be mindful on any issue
15:23:06  21   about bringing a motion for reconsideration.  Anyway, you
15:23:09  22   got lucky, but I do think that if you are going to bring
15:23:13  23   motions along the lines of the first two arguments, it's
15:23:15  24   just not going to help you or your clients going forward.
15:23:18  25   We've got too much work to have you just relitigate issues
```

```
15:53:24   1    claims.  I want to hear from the other side.  Plaintiffs had
15:53:29   2    welcomed it.
15:53:30   3              Do you want to discuss that?
15:53:34   4              MR. FOSTER:  Your Honor, we asked in the status
15:53:37   5    report for a reduction to 12 claims.  Early in this case we
15:53:40   6    asked for a reduction of claims before a Markman.  Judge
15:53:43   7    Sleet put on the calendar the parties' meet and confer to
15:53:45   8    reduce the number of claims.  Plaintiffs did not reduce the
15:53:47   9    number of claims before a Markman.
15:53:50  10              If you look at most of the form orders that are
15:53:53  11    out there that other judges have done in this court.  The
15:53:57  12    Federal Circuit rules --
15:53:59  13              THE COURT:  I'm familiar with all of that.  I'm
15:54:01  14    looking at specifics.  Do I have to go back to the status
15:54:03  15    report?  That's where you still are?
15:54:04  16              MR. FOSTER:  Your Honor, twelve claims, no more
15:54:07  17    than five per patent.
15:54:08  18              THE COURT:  What do you guys think?
15:54:09  19              MR. CHAMBERS:  Your Honor, first of all, that
15:54:11  20    was a false statement.  We did reduce the claims by seven in
15:54:18  21    the final claim construction, excuse me, the final
15:54:21  22    infringement contentions.  We dropped claims 5, 7 and 10,
15:54:25  23    17, 23, 24 and 26 of the '377 patent.
15:54:30  24              THE COURT:  Okay.
15:54:30  25              MR. CHAMBERS:  So that's just false.
```

```
15:54:31   1                    THE COURT:  Hold up.  I generally don't like
15:54:33   2   this, but can you respond directly to that?  Did they, in
15:54:37   3   fact, drop all of those claims in the infringement
15:54:38   4   contentions?
15:54:39   5                    MR. FOSTER:  The final -- they did, they did
15:54:41   6   drop --
15:54:42   7                    THE COURT:  Was that infringement contention
15:54:45   8   served on you prior to the Markman hearing?
15:54:47   9                    MR. FOSTER:  The final ones, Your Honor?
15:54:49  10                    THE COURT:  Where the claims --
15:54:50  11                    MR. FOSTER:  We're after Markman.
15:54:51  12                    THE COURT:  Okay.
15:54:52  13                    MR. FOSTER:  The fine.
15:54:53  14                    THE COURT:  So now, what's your name again,
15:54:55  15   sir?
15:54:55  16                    MR. CHAMBERS:  Chambers, Guy Chambers.
15:54:56  17                    THE COURT:  When did you serve the final
15:54:58  18   infringement contentions on them when you dropped the
15:55:01  19   claims?
15:55:03  20                    MR. CHAMBERS:  Well, that was actually -- here.
15:55:06  21   I will get the date for Your Honor, but that could have been
15:55:08  22   after Markman.
15:55:09  23                    THE COURT:  All right.  Well, look.  You know
15:55:11  24   what, before you start calling somebody for making false
15:55:14  25   statements, I think you'd want to know those facts.
```

```
15:55:19   1              MR. CHAMBERS:  All right.  Well, we did drop a
15:55:21   2   number of claims.  We did drop a number of claims.
15:55:23   3              THE COURT:  Okay.
15:55:23   4              MR. CHAMBERS:  That was the false statement.
15:55:25   5              THE COURT:  Just a suggestion to you.
15:55:26   6              MR. CHAMBERS:  Okay.
15:55:26   7              THE COURT:  All right.  You don't do yourself
15:55:27   8   any good by alleging serious allegations against the other
15:55:33   9   side.
15:55:33  10              Okay.  I would take, and I did take as a lawyer
15:55:36  11   very seriously being accused of making a false statement to
15:55:40  12   the Court and you just leveled that and now it turns out you
15:55:43  13   don't know the facts.
15:55:44  14              MR. CHAMBERS:  Your Honor, I will apologize for
15:55:46  15   the part about after the claim construction.  The part that
15:55:50  16   I heard was we didn't drop the number of claims, which we
15:55:54  17   did drop the number of claims.  And that's what that was,
15:55:58  18   the part I was addressing.
15:55:59  19              THE COURT:  If you are going to accuse somebody
15:56:01  20   of making a false statement, listen carefully to what they
15:56:04  21   say.  All right?
15:56:05  22              MR. CHAMBERS:  All right.  I apologize for that
15:56:07  23   part of my statement.
15:56:07  24              THE COURT:  All right.  So you dropped a number
15:56:10  25   of claims somewhat.  You didn't drop it going into the
```

```
15:56:12   1    Markman hearing.  And that comment applies to everybody.  I
15:56:18   2    mean, I don't have to apply it to the gentlemen from
15:56:19   3    Delaware here, but to both of you, please be careful.  All
15:56:22   4    right.
15:56:22   5                   So let's try to solve the problem.  All right.
15:56:28   6    Do you have a proposal about reducing claims?
15:56:30   7                   MR. CHAMBERS:  Yes.  We had proposed during the
15:56:31   8    meet and confer that we currently have 29 claims asserted.
15:56:36   9    They have 18 references and 83 combinations asserted.
15:56:41  10                   THE COURT:  All right.
15:56:42  11                   MR. CHAMBERS:  That's current.  So what we had
15:56:45  12    proposed during the meet and confer, I believe it was on
15:56:47  13    Tuesday, is after the reconsideration decision, we drop down
15:56:52  14    to 24 claims and they drop to 15 references, 50
15:56:57  15    combinations.  And then after the summary judgment motion,
15:57:01  16    we drop to 16 claims and they dropped to 12 references and
15:57:06  17    30 combinations.
15:57:06  18                   THE COURT:  Okay.  So it seems to me you have to
15:57:09  19    drop before we get to summary judgment if we're really going
15:57:12  20    to have our handle on this case.
15:57:13  21                   So do you want me to give you guys one more
15:57:16  22    opportunity to see if you can come up with a solution to
15:57:19  23    reduce the claims in a cooperative way or do you want me to
15:57:25  24    just pick a number?
15:57:27  25                   MR. CHAMBERS:  We'll be glad to meet and confer
```

```
15:57:31   1    with them about it.
15:57:33   2                Now --
15:57:34   3                THE COURT:  Do you have Delaware counsel
15:57:35   4    involved in meet and confers?
15:57:36   5                MR. CHAMBERS:  Definitely.
15:57:37   6                THE COURT:  All right.  I would really encourage
15:57:38   7    that, and not just in the final discussion.  I would
15:57:42   8    encourage it at the early stages of the discussion.
15:57:45   9                MR. DiGIOVANNI:  Your Honor, we can include the
15:57:47   10   meet and confer in next Friday's letter.
15:57:49   11               THE COURT:  Don't include it.  If you come up
15:57:52   12   with a solution, file it separately.  That would be a nice
15:57:56   13   one-page letter jointly filed.
15:57:57   14               Why don't I hold off on that, and here's what
15:58:03   15   I'm going to do.  I'm going to wait until I get those
15:58:07   16   submissions next Friday before I issue the final scheduling
15:58:12   17   order.  So I'm also going to incorporate in the scheduling
15:58:16   18   order a procedure for summary judgment so just kind have
15:58:22   19   been ready for that.  And I need a Word version if you have
15:58:25   20   not submitted it already of the proposed scheduling order
15:58:27   21   from the plaintiffs.  Please take care of it, Mr. Flynn.
15:58:30   22               Basically though what I'm going to do is, in
15:58:33   23   addition to the Word limitations, I'm going to require a
15:58:37   24   concise statement of facts be submitted with each summary
15:58:40   25   judgment motion, and you'll see it from the procedures, you
```