# EXHIBIT S

# BAKER BOTTS LLP

THE WARNER
1299 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20004-2400

TEL +1 202.639.7700
FAX +1 202.639.7890
BakerBotts.com

AUSTIN          LONDON
BEIJING         MOSCOW
BRUSSELS        NEW YORK
DALLAS          PALO ALTO
DUBAI           RIO DE JANEIRO
HONG KONG       RIYADH
HOUSTON         WASHINGTON

June 17, 2015

VIA EMAIL

David M. Schlitz
TEL +1 202.639.7802
FAX +1 202.585.1020
david.schlitz@bakerbotts.com

Mr. Guy W. Chambers
Sideman & Bancroft LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111

Mr. Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

    Re:   *f'real Foods, LLC v. Hamilton Beach Brands, Inc., et al.*
            Civil Action No. 1:14-cv-1270-GMS

Dear Messrs. Chambers and Smith:

    While I have not previously had the opportunity to litigate with Mr. Chambers, I have had the pleasure to work with Rodger, for whom I have high regard. I trust that you will not continue to pursue claims of infringement if clearly there is no infringement. I am providing the below non-infringement information, in order for your client and you to be able to consider this information in advance of the mediation on June 26, 2015. Hopefully, this will facilitate a substantive conversation during the mediation that leads to an amicable resolution of the case.

**U.S. Patent No. 5,803,377**

    All of the asserted independent claims require either (1) an "aeration means" for causing air to be incorporated in a mixture of ground, frozen substance and liquid or (2) a blade assembly with "aeration elements." As f'real presumably knew before filing suit, the Hershey milkshake is made of ice cream, and thus, there is no need to add air to obtain the desired volume, texture and flavor delivery. In the specification of the '377 patent, it is explained that the frozen substance described preferably comprises all of the ingredients required to make a milkshake with the exception of the milk and the air. Col 3, lines 49-52. "It should be pointed out that this differs from placing ice cream in the cup, because ice cream, by definition, contains air which is incorporated during freezing." Col 3, lines 56-59 (emphasis added).

    In fact, the MIC2000 does not aerate the contents in the Hershey milkshake cup. To the contrary, as determined by Dr. Slocum, a professor of engineering at the Massachusetts Institute of Technology, with whom Mr. Jens Voges may be familiar, the MIC2000 actually de-aerates the contents. After mixing, the volume is reduced by an average of 11%. Additionally, with regard to the "means for aeration," the mixing blade does not have the corresponding

Defendant's Trial Exhibit
1:16-cv-00041-CFC
DTX434

**BAKER BOTTS** LLP

Messrs. Chambers and Smith   - 2 -   June 17, 2015

structure disclosed in the specification. Specifically, it does not have waves for whipping the fluid.

All of the above was known by f'real prior to filing suit or could have easily been determined by a visual inspection and simple measurement as part of a required pre-filing investigation. In view of these facts, please consider whether you can continue to assert the '337 patent.

**U.S. Patent No. 7,144,150**

The asserted claims include "the rinse chamber having an entrance and a door" and "at least one nozzle . . . and oriented to direct rinse fluid onto the splash shield within the rinse chamber." As described in the specification and shown in Figures 6 and 7 of the '150 patent, the splash shield separates from the vessel after the frozen drink is mixed, the cup holder descends down, the hinged doors are closed, shielding the rinsing chamber from the cup access area and then the splash shield is rinsed in the rinsing chamber.

As you know from your inspection, the MIC2000 has a very different structure and operates differently. In the MIC2000, the cup guard assembly, which includes among other parts a circular plastic wall, descends down onto the access location and forms the so-called "rinsing chamber." All of the rinsing of the splash shield occurs in the confines of this enclosure. The rinse nozzle is covered by and is within this enclosure. Critically, this enclosure does not have an entrance or a door. In f'real's infringement contentions, you point to the "chamber having a front opening serving as an entrance for the Hershey cup," referring to the area defined by the outer housing of the MIC2000, which has an opening and door for the placement of a cup in and out of the machine. But this door cannot be used to access the interior of the enclosure wherein the rinsing of the splash shield occurs. This is all clearly visible upon inspection of the operation of the MIC2000 and its corresponding structure, as well as videos on the Internet cited in f'real's infringement contentions. Thus, again, these claims should have never been asserted. And again, we request that you consider whether you can continue to assert the '150 patent.

**U.S. Patent No. 7,520,658**

The MIC2000 does not include "a splash shield . . . being unrestrained against sliding movement on the shaft in a direction away from the opening [and] having sufficient mass to retain the vessel within the holder during relative axial movement." The specification explains what it means for the splash shield to have sufficient weight to retain the vessel within the holder during relative axial movement, where it states, "the weight of the shield [be] sufficient to . . . cause the cup to remain seated in the cup holder without any other mechanical means of retaining it in the cup holder, such as clamping or gripping mechanisms."

As determined by Dr. Slocum, the splash shield in the MIC2000 does not have "sufficient weight to retain the vessel within the holder." In fact, there are two mechanical means that retain the vessel in the cup holder. The first is mechanical "fingers" on the cup holder that clamp and grip the cup, which is an arrangement expressly disclaimed in the

Active 19593576.1

**BAKER BOTTS** LLP

Messrs. Chambers and Smith            - 3 -            June 17, 2015

specification of the '658 patent. The second is a weight that is connected to guideposts above the shield, but not a part of the shield itself. Tests by Dr. Slocum show that, when the MIC2000 is operated using a cup holder without the mechanical fingers and without the weight atop the guide posts, the Hershey cup is lifted out of the cup holder. These mechanical fingers are easily visible and could have been seen upon a simple visual inspection of the MIC2000 in a store as part of a required pre-filing investigation. But giving f'real the benefit of the doubt with regard to its pre-filing investigation with regard to the '658 patent, it is now aware of the above facts and can confirm them based on the visual inspection of the MIC2000 in its possession. Thus, please consider whether you can continue to assert the '658 patent with knowledge of these facts.

**U.S. Patent No. 7,520,662**

f'real's infringement contentions regarding the '662 patent raise an issue of claim construction, namely what is meant by "isolating" in the context of the '662 patent. The term "isolating" is not used in the specification of the patent. But, as explained in the Examiner's double patenting rejection, "isolation/shielding" necessarily implicates placing a physical barrier (*e.g.*, a door) between the rinsing fluid and the object being isolated from it. As f'real is aware, the MIC2000 does not place a physical barrier between the cup and the rinsing fluid in the rinsing chamber as the access location of the MIC2000 is disposed with the so-called rinsing chamber.

Under f'real's interpretation, even if one of the Defendants performs all the other steps of the asserted claim, someone else (presumably a customer of the convenience store) performs the step of "isolating the vessel from the rinsing fluid." Thus, because "performance of all the claimed steps cannot be attributed to a single person," Defendants cannot infringe this claim as a matter of law. *See Limelight Networks, Inc*, 134 S. Ct. at 2116.

In view of the clear fact that the MIC2000 does not infringe any of the asserted claims, there is no need to discuss the Defendants' invalidity arguments. But if the parties cannot amicably resolve this matter at mediation, then Hamilton Beach is likely to seek *inter partes* review ("IPR") with regard to one or more of the patents. During IPR, the PTAB will use the broadest reasonable claim construction. Accordingly, Hamilton Beach will use f'real's infringement contention with regard to Claim 21 of the '662 patent to argue that removing the cup from the machine is within the broadest reasonable interpretation. This farfetched construction was never considered by the PTO during the original prosecution. It is simply a matter of common sense that a person would remove the cup before spraying the rinsing fluid into the area in which the cup was located. There seems little doubt the claim would be invalidated under this overbroad claim construction.

Active 19593576.1

**BAKER BOTTS** LLP

Messrs. Chambers and Smith	- 4 -	June 17, 2015

I sincerely hope that the parties can amicably resolve this case at the mediation.

Best regards,

*[signature]*

David M. Schlitz

DMS/lw

Active 19593576.1