# EXHIBIT T

**DrinkerBiddle&Reath**
LLP

William S. Foster, Jr.
202-230-5650 Direct
202-842-8465 Fax
William.Foster@dbr.com

Law Offices
1500 K Street N. W.
Suite 1100
Washington, D.C.
20005-1209

(202) 842-8800
(202) 842-8465 fax
www.drinkerbiddle.com

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON D.C.

January 30, 2017

**VIA E-MAIL ONLY**
(*gchambers@sideman.com*)

Guy Chambers, Esq.
Sideman & Bancroft LLP
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111

Re:   *f'real Foods LLC et al. v Hamilton Beach Brands, Inc. et al.*
       **Civ. No. 16-41-GMS (consolidated)**

Dear Guy:

Given recent developments at the U.S. Patent and Trademark Office ("PTO") related to the above-referenced litigation, and in view of the counterclaims, your client f'real Foods LLC risks adverse action and potential sanctions including attorney's fees if it continues its infringement action against Hamilton Beach.

At this stage of the case, recent PTO decisions have greatly impacted f'real's ability to assert three of the patents-in-suit. In addition, Hamilton Beach found invalidating prior art for the fourth patent-in-suit and has filed two additional Petitions for *Inter Partes* Review ("IPR"). *See, e.g.*, IPR2017-00756, IPR2017-00765. Each of these issues with f'real's case is discussed in detail below. Hamilton is providing f'real notice that continued assertion of the patent counts in view of these developments will not only make the case exceptional under 35 U.S.C. § 285 but will also unnecessarily multiply the proceedings to justify sanctions under 28 U.S.C. § 1927.[1] Rather than heading down this path where both sides spend millions on wasteful litigation, Hamilton Beach urges that your client consider dismissing this action.[2]

---

[1] f'real's track record here is not good as its trade dress and unfair competition counts did not even survive the pleadings stage. Also, f'real's trademark allegations are dubious at best as discovery has shown that f'real acknowledges it has no evidence of alleged confusion whatsoever, and thereby raises issues whether it has met its obligations under Rule 11 to assert the trademark counts.

[2] f'real has already had one false start when it failed to conduct an adequate pre-filing investigation and failed to inform you that it did not even own the asserted patents. Fortunately, we discovered this oversight before the Court made any substantive rulings in the case.

Established 1849

87299433.1

Defendant's Trial Exhibit
1:16-cv-00041-CFC
**DTX439**

**DrinkerBiddle&Reath**
LLP

Guy Chambers, Esq.
January 30, 2017
Page 2

1. <u>U.S. Patent No. 5,803,377</u>

As we previously informed you, the PTO ordered *ex parte* reexamination of the '377 Patent. Because the '377 Patent is expired, there will be no opportunity to amend the claims. It is well-established in the prosecution history of the '377 patent that the claims were allowed because the prior art supposedly lacked "a rotatable blade including both shaving elements and aeration elements ... [, or] a rotatable blade having shaving elements and aeration elements formed thereon." Decision on Request for Reexamination at 5, Reexamination Control No. 90/013,850 (December 9, 2016). But U.S. Patent No. 3,147,958 to Stiffler clearly discloses such an arrangement and notes that each of Stiffler's knife 10 and wheel 40 provides aeration of fluid. Since f'real now knows the only grounds for patentability is disclosed by the prior art cited in the *ex parte* reexamination, f'real no longer has a credible basis for asserting this patent.

2. <u>U.S. Patent No. 7,520,658</u>

f'real's press release describing how the Patent Trial and Appeals Board ("PTAB") affirmed its rights in the '658 Patent by denying institution of IPR left out the important detail how the PTAB rejected f'real's claim construction of "unrestrained" as even too broad under the Broadest Reasonable Interpretation ("BRI") standard used at the PTAB. Instead, the PTAB construed the term as "without any other mechanical means of restraining the upward sliding movement of the splash shield on the shaft, *apart from the mass or weight of the splash shield itself*." IPR2016-01105, Paper No. 10 at 23 (emphasis added). Even under the broadest reasonable construction of "unrestrained" based on f'real's disclaimer of subject matter during prosecution, Hamilton Beach cannot infringe the '658 Patent.



As shown on the right, Hamilton Beach's accused MIC2000 product includes a number of structures that "restrain" the splash shield that covers the opening of the cup. Specifically, Hamilton Beach provides a separate weight that restrains the splash shield and is "apart from the mass or weight of the splash shield itself." Similarly, Hamilton Beach includes a pair of support arms that stabilize the splash shield like support element 26 of Nielson, and thus, the "rigid structure" of the MIC2000 "would restrain against upward movement of the lid after it is lowered into engagement with the receptacle" along with the added weight. IPR2016-01105, Paper No. 10 at 23. Having possessed an MIC2000 for more than one and a half years,

DrinkerBiddle&Reath LLP

Guy Chambers, Esq.
January 30, 2017
Page 3

f'real knows full well that it lacks an "unrestrained" splash shield as construed by the PTAB under the BRI standard. Moreover, f'real cannot broaden the claim construction of "unrestrained" to read on the MIC2000 in the district court action after seeking a narrower construction to avoid the art cited in the IPR petition.



FIG. 12

Furthermore, the PTAB confirmed that Hamilton Beach may seek IPR of the asserted patents up to January 29, 2017, when f'real accepted service of the instant action. Thus, Hamilton Beach filed another IPR Petition (IPR2017-00765) based on recently discovered prior art directed to an "unrestrained" splash shield in view of the PTAB's narrowing claim construction. Specifically, U.S. Patent No. 6,164,575 to Karkos discloses a weighted cover 30 that ensures it is seated on blender cup 25 when ice is provided through ice chute 24 or the blender is activated to blend the ingredients in cup 25. Karkos, Col. 4, Lines 46-67. As shown on the left, cover 30 of Karkos is unrestrained from moving along ice chute 24 save the weight of the cover itself. Karkos, **Figs. 11-14.**

In addition, Hamilton Beach also relied upon JP H04-136787 U to Sato *et al.* Sato discloses a cup cover 5 that slides unrestrained along a shaft 21 carrying stirring member 1. The movement of a motor support frame 22 against cover support 53 moves cover 5 in a vertical direction. When cover 5 is lowered to engage cup 6, motor support frame 22 separates from cover support 53, such that support 53 and cover 5 are unrestrained in an upward direction along respective shafts 31, 21.



Each of the Karkos and Sato references provides a new ground of obviousness based on prior art not previously available to Hamilton Beach and not presented to the PTAB or PTO, and thus, the IPR will most likely go forward. In any event, these references ensure that Hamilton Beach will be certain to invalidate the asserted claims of the '658 Patent in the district court action, even under the PTAB's narrow claim construction of "unrestrained."

DrinkerBiddle&Reath LLP

Guy Chambers, Esq.
January 30, 2017
Page 4

3. U.S. Patent No. 7,520,662

Also missing from your press release[3] is that the PTAB instituted IPR with respect to the '662 Patent. *See* IPR2016-01107, Paper No. 10. Based on the broad meaning of "isolating" proposed by f'real for claim 21, it would cover any product where the mixed beverage is removed by the user from the machine, which is then subsequently rinsed. Under this broad construction, the '662 Patent is certainly invalid in light of the prior art cited in the IPR of the '662 Patent as it was well-known to rinse the mixing area a blender after making a milk shake before the purported invention of the '662 Patent. On those grounds alone, claim 21 will not survive IPR, and thus, f'real cannot expect to prevail on its claims directed to the '662 Patent.

4. U.S. Patent No. 7,144,150

Previously, Hamilton Beach did not challenge the '150 Patent at the PTO because there is no "door" on the rinse chamber of the MIC2000 and it cannot infringe. This is shown by the photo above where the clear plastic wall proximate the accused splash shield in the MIC2000 defines an enclosed rinse chamber (*i.e.*, having no door) during a rinse cycle after a beverage is mixed and removed from the cup location. The BIC2000 has the same structure as the MIC2000 for the accused rinse chamber but it merely lacks the outer housing having the accused "door" for accessing the cup before and after mixing. As it is clear that f'real will continue this litigation in an all-out attempt to reduce competition, Hamilton Beach filed an IPR Petition for the '150 Patent (IPR2017-00756) now that the PTAB has confirmed Hamilton Beach's right to do so under § 315(b).

In preparing the Request for *Ex Parte* Reexamination of the '377 Patent, Hamilton Beach discovered U.S. Patent No. 2,995,158 to Oberg. As you can see from the figure on the right, Oberg discloses that "mixing chamber 252 is provided with suitable splash guards 254 and a vertically movable glass door 256. The door can be opened by the customer or attendant for purposes of removing the completed milk shake or for cleaning of the mixing chamber 252." Combined with prior art showing a nozzle for automatic rinsing of an area for mixing ice cream for sanitation purposes,

---

[3] Hamilton Beach will be sure to use f'real's misleading press release as proof of f'real's anti-competitive behavior that shows an intent to discourage competition even though f'real knew that IPR for the '662 Patent was instituted and the PTAB's claim construction of "unrestrained" is fatal to its infringement allegations.

DrinkerBiddle&Reath
LLP

Guy Chambers, Esq.
January 30, 2017
Page 5

Hamilton Beach's IPR petition clearly demonstrates a "reasonable likelihood that the petitioner would prevail" with respect to the asserted claims of the '150 Patent.

\* \* \*

As you know, Hamilton Beach will vigorously defend itself against unwarranted allegations of patent infringement. In addition to the challenges to all four patents-in-suit, Hamilton Beach has brought credible antitrust claims based on ample evidence of inequitable conduct that the Court considers plausible and supported by allegations of specific facts. We respectfully submit that it is your client's best interest to dismiss the case now and focus on competing in the marketplace. Otherwise, f'real will not only be wasting substantial resources in litigation, but will also be risking its patent portfolio and exposing itself to potential sanctions, such as attorney's fees, for making the case exceptional and for multiplying the proceedings.

Respectfully,

William S. Foster, Jr.

WSF/

cc:  Rodger D. Smith II, Esq.
     Francis DiGiovanni, Esq.

87299433.1