IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| F'REAL FOODS, LLC and | ) | |
| RICH PRODUCTS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-41 (CFC) |
| | ) | CONSOLIDATED |
| HAMILTON BEACH BRANDS, | ) | |
| INC., HERSHEY CREAMERY | ) | |
| COMPANY and PAUL MILLS d/b/a | ) | |
| MILLS BROTHERS MARKETS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF F'REAL'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR A
PERMANENT INJUNCTION AND RECALL**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Taylor Haga (#6549)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
thaga@mnat.com

OF COUNSEL:

Guy W. Chambers
Peter M. Colosi
Nicholas A. Shen
SIDEMAN & BANCROFT LLP
One Embarcadero Center
22nd Floor
San Francisco, CA  94111
(415) 392-1960

*Attorneys for Plaintiffs f'real Foods, LLC
and Rich Products Corporation*

October 29, 2019

# TABLE OF CONTENTS

**Page**

I.      The Equities Cry Out For An Injunction ........................................................1

II.     As The Jury Found, The MIC2000 Uses F'real's Patented Technology
        And Threatens F'real's Business ................................................................2

III.    The BIC3000-DQ Irreparably Damages F'real By Using F'real's Own
        Patented Technology To Block F'real From Growing Its Business ...............6

IV.     CONCLUSION .........................................................................................9

## TABLE OF AUTHORITIES

**Page**

Cases

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    809 F.3d 633 (Fed. Cir. 2015) ......................................................................7

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
    2008 WL 1976624 (D. Del. 2008).................................................................6

*Luminara Worldwide, LLC v. Liown Electronics Co., Ltd.*,
    2015 WL 1967250 (D. Minn. 2015)..............................................................6

*Novozymes A/S v. Genencor Int'l, Inc.*,
    474 F. Supp. 2d 592 (D. Del. 2007)...............................................................5

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) .....................................................................5

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .....................................................................8

*TruePosition Inc. v. Andrew Corp.*,
    568 F. Supp. 2d 500 (D. Del. 2008)...............................................................5

*Versata Software Inc. v. SAP America, Inc.*,
    2011 WL 4017944 (E.D. Tex. 2011)..............................................................6

**Rules and Statutes**

35 U.S.C. § 154(a)(1)............................................................................................1

## I.      The Equities Cry Out For An Injunction

Jim Farrell created f'real to achieve his twin dreams of building a company based upon his own inventions and developing a newly imagined market for frozen, pre-prepared milkshakes blended in a self-serve blender (Ex. 1, 190:25-191:4, 201:18-203:3).  Before coming up with his breakthrough self-cleaning blender inventions, Mr. Farrell struggled through years of adversity where he did not receive any paychecks to support his family and needed to re-finance his house twice to keep his dreams alive (Ex. 1, 207:20-211:4).  After he had his epiphany, Mr. Farrell followed the rules by disclosing his inventions to the Patent Office in multiple patent applications in order to secure for his fledgling company the "right to exclude" authorized by the Constitution and codified by federal statute.  *See* 35 U.S.C. § 154(a)(1).  To this day, 100% of f'real's business is dedicated to selling frozen drinks and blenders to prepare them (Voges Decl., ¶ 4; D.I. 289, ¶¶ 2, 10).

Defendant Hamilton Beach was unable to develop self-cleaning blenders of its own until it learned of Mr. Farrell's patented inventions (D.I. 290, Ex. 7).  Hamilton Beach persuaded Mr. Farrell to grant a limited license to his patented self-cleaning blender technology, but only on the strict condition that Hamilton Beach not sell blenders in competition with f'real in f'real's core self-serve convenience store market (Ex. 1, 258:19-259:6; Ex. 3, 684:22-685:3).  Only a few months later, Hamilton Beach broke its promise by secretly teaming up with

Hershey to use Mr. Farrell's patented self-cleaning blender technology in direct competition with f'real in f'real's core self-serve convenience store market (D.I. 290, Exs. 8, 9; Ex. 1, 262:8-24).

Defendants gambled that f'real was too small and weak to enforce its patents.  When f'real surprised Defendants by standing up for its rights, Defendants dragged f'real through over four years of tortuous litigation asserting every imaginable patent defense, initiating four *inter partes* review proceedings at the Patent Office (including two for the '658 patent) and falsely accusing Mr. Farrell of committing "fraud on the Patent Office."  Every step of the way, Defendants brushed aside adverse rulings from the Patent Office, the Federal Circuit, this Court and, ultimately, the jury.  Even though infringing blender sales were only a small portion of their businesses, Defendants made a calculated decision to ignore any and all adverse rulings in order to monetize their infringing blenders at f'real's expense (D.I. 290, Ex.1-2, 4, 17).

It is hard to imagine a case where enforcement of the statutory "right to exclude" is more justified.


## II.   As The Jury Found, The MIC2000 Uses F'real's Patented Technology And Threatens F'real's Business

As the evidence abundantly established and the jury correctly found, the goal of Defendants' MIC2000 blender and "Shake Shop Express" program was to

use f'real's patented technology and steal f'real's customers (D.I. 290, Ex. 7, 11-14).  Defendants chose to replicate the exact business model f'real pioneered – supplying pre-prepared frozen milkshakes to convenience stores for use in self-serve, self-cleaning blenders (*see* Ex. 2, 504:1-25, Ex. 4). The intent was, and continues to be, to compete against f'real through the use of f'real's own patented technology.  In launching the "Shake Shop Express" program, Hamilton Beach bluntly told Hershey's sales staff to target "[a]ny place that has f'real" (D.I. 290, Ex.11).

Amazingly, Defendants argue in their Answering Brief that they are not causing irreparable injury to f'real because Defendants' "Shake Shop Express" program does not directly compete with f'real (D.I. 310, p. 10).  As support, Defendants rely upon snippets of Mr. Farrell's trial testimony taken out of context. *Id.*  Defendants also point to the fact that f'real was able to add customers despite Defendants' infringement (D.I. 310, p. 11).  Re-arguing snippets of evidence cannot overcome the considered determinations made by the jury based upon *all the evidence*.  One of those determinations was that the competition between f'real and Defendants was so direct and damaging to f'real that it justified nearly $3 million in lost profit damages (D.I. 264, p.8).

Defendants also advance a novel argument, contradicted by trial testimony, that the f'real/Hamilton Beach license agreement allowed Hamilton Beach to

directly compete against f'real in the self-serve convenience store market (D.I. 310, p.12).  This new argument is directly contradicted by the trial testimony of Hamilton Beach's own VP of Global Commercial Business, Hank Wood, who testified that the license precluded convenience stores.  Ex. 3, 684:24-685:2 ("Q: And were there any sales channels limits in the license? A: Yes. Basically, we wouldn't operate in the convenience store channel."); 698:13-15 ("we knew ourselves that if we were using the patent, we couldn't go into the convenience store channel"); 702:9-19.  Mr. Farrell also testified that it was a strict condition for f'real entering into the license agreement that Hamilton Beach *not* compete with f'real in the self-serve convenience store market (Ex. 1, 257:2-6, "I spent all of these years developing this business in this particular area with patents and the money on them and I wasn't interested in having someone compete with us directly in our convenience store segment"; Ex. 1, 258:22-259:14, 263:4-22).

Defendants also argue that f'real's citation to numerous statements in Defendants' own documents and videos fails to show a nexus between the patented technology and demand for the infringing products.  D.I. 310, pp.13-15.   There can be no serious dispute that the use of the infringing self-cleaning blender technology, and the attendant labor-savings, was a driving factor in demand for the infringing products.  It is exactly what distinguished those infringing products from Hamilton Beach's other blenders and made them attractive to customers, as

demonstrated by the evidence.  Ex. 3, 734:24-735:3, 740:1-10; D.I. 290, Exs. 6-7.

As Hamilton Beach well knew, consumer demand for f'real's patented self-

cleaning blender technology was responsible for f'real's explosive growth,

including an increase in f'real's cup sales of over 4000% in the first year that

f'real's patented self-cleaning blenders were introduced (Ex. 1, 239:6-240:15).

Moreover, in awarding lost profits, the jury necessarily determined that f'real had

shown a connection between the infringing features and f'real's lost sales.

The so-called "competitor" cases Defendants rely upon are all readily

distinguishable (D.I. 310, pp.5-6).  In none of these cases was the competition so

direct that the jury awarded lost profits.  *See Presidio Components, Inc. v.*

*American Technical Ceramics Corp.*, 702 F.3d 1351, 1363-64 (Fed. Cir. 2012)

(award of lost profit damages "squarely supports a finding of irreparable harm");

*TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 532 (D. Del. 2008);

*Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 613 (D. Del. 2007)

("These are head-to-head competitors, and Novozymes has a right, granted by

Congress, not to assist its rival with the use of proprietary technology.").

All of Defendants' cited cases are readily distinguishable from the facts

here.  For example, in the cited *EMC*, *Belden Technologies*, *Praxair*, *LG*, and *IGT*

cases the patented technology was not the plaintiff's primary business, or there

were many competitors in the market.  In *S.O.I.TEC Silicon*, *Advanced*

*Cardiovascular*, and *IGT* the plaintiffs were unable to show a competitive loss.  In

*EMC* and *Advanced Cardiovascular*, the court also considered the plaintiff's

extensive licensing history.  None of those facts are present here.

Finally, contrary to Defendants' suggestion, there are numerous post-eBay

cases where courts have granted a recall (D.I. 310, p.17).  *See, e.g., Luminara*

*Worldwide, LLC v. Liown Electronics Co., Ltd.*, 2015 WL 1967250, *25 (D. Minn.

2015); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 2008 WL 1976624, *3 (D. Del. 2008);

*Versata Software Inc. v. SAP America, Inc.,* 2011 WL 4017944, *5 (E.D. Tex.

2011).

**III.   The BIC3000-DQ Irreparably Damages F'real By Using F'real's Own Patented Technology To Block F'real From Growing Its Business**

If Hamilton Beach had not unlawfully deprived f'real of its exclusive

statutory right to practice f'real's patented self-cleaning blender technology, f'real

would have been the logical partner for Dairy Queen to choose when it sought to

expedite preparation of Blizzards and reduce labor costs (D.I. 289, ¶¶ 8-9; Voges

Decl., ¶¶ 5-6).  First, Dairy Queen had for many years been an important

commercial partner of f'real's parent company, Rich Products (D.I. 289, ¶ 10).

Moreover, since 2002, f'real has been successfully manufacturing self-cleaning

blenders to produce frozen ice cream/milkshake products (Voges Decl., ¶ 6).

Defendants argue that f'real would have been incapable of manufacturing a self-

cleaning blender to blend Dairy Queen Blizzards because f'real's blender

6

technology cannot work with Dairy Queen's soft-serve ice cream and cannot handle cups of multiple sizes (D.I. 310, pp.6-10). Yet, as shown by f'real's U.S. Patent No. 6,527,207, f'real has already developed and patented a conformal slider for f'real's blending disc that can blend soft-serve ice cream (Voges Decl., ¶ 6, Exs. A, B). Similarly, f'real was issued U.S. Patent No. 9,833,109 for a method of detecting cups of various sizes (*id.* ¶ 6, Ex. C). f'real is currently adding a new cup size for use with its existing blenders (*id.*, ¶ 6). Defendants' argument that f'real could not have developed a self-cleaning blender to meet Dairy Queen's needs is wrong (*id.*, ¶¶ 5-6).

Because Hamilton Beach incorrectly told Dairy Queen that it had the legal right to sell infringing BIC3000-DQ blenders to Dairy Queen franchisees, f'real never had the opportunity to work with Dairy Queen on self-cleaning Blizzard blenders. f'real has the exclusive right to use its patented technology to develop commercial relationships, such as with Dairy Queen, but Hamilton Beach's infringement has blocked that opportunity.

Defendants go so far as to argue that an injunction for the BIC3000-DQ is not warranted because, if enjoined, Dairy Queen could just go back to using a non-infringing blender. That is exactly the point. The law appropriately recognizes that forcing f'real to compete against its own patented self-cleaning blender inventions places a substantial and unfair hardship on f'real. *Apple Inc. v.*

7

*Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 646 (Fed. Cir. 2015); *Robert Bosch, LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1156 (Fed. Cir. 2011). The only way to rectify this injustice is to enjoin further infringing sales so that f'real has the opportunity to use its patented technology to address Dairy Queen's Blizzard needs on fair terms.

Defendants' argument that "BIC3000-DQ infringement has already been compensated by the judgment" illustrates another compelling reason why future sales should be enjoined (D.I. 310, pp. 17-18). As an initial matter, f'real has *not received any compensation* to date and, if Defendants continue litigating to the bitter end, f'real may not receive any compensation for years to come. Moreover, the BIC3000-DQ royalty damages awarded by the jury are inadequate to make f'real whole. What Defendants effectively propose is a compulsory license premised on the 2010 license agreement that Hamilton Beach unilaterally terminated, which was expressly negotiated to prevent competition with f'real, and which f'real would never offer to any competitor now. Ex. 2, 402:4-403:7; D.I. 289, ¶ 11.

f'real's primary business model is analogous to the proverbial "razor/razor blade" model. f'real sells blenders to its retail customers and provides them with frozen milkshakes for use with the blenders. Most of f'real's revenue comes from the sale of frozen milkshakes and smoothies. D.I. 289, ¶ 5; Ex. 2, 394:2-7.

8

Providing f'real with a modest royalty only when the infringing BIC3000-DQ is

sold and then allowing f'real's patented method claims (e.g., claim 21 of the '662

patent) to be infringed thousands of times every day without compensation is not a

licensing arrangement f'real would voluntarily accept, particularly where

infringing Blizzard sales come at the expense of f'real's sales (D.I. 289, ¶¶ 10-11).

The high expense of litigation and the importance of Rich's commercial

relationship with Dairy Queen make it unworkable (and unthinkable) for f'real to

try to collect royalties on Blizzard sales from every Dairy Queen franchisee that

has a BIC3000-DQ.  Because f'real cannot be made whole by remedies at law for

all BIC3000-DQ infringements, future sales of the BIC3000-DQ should be

enjoined.

## IV.   CONCLUSION

For the foregoing reasons, Defendants should be enjoined from making,

using, or selling any infringing blender and a recall should be ordered of the

infringing MIC2000 and BIC3000-DQ blenders from the marketplace.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Taylor M. Haga*

_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Taylor M. Haga (#6549)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
thaga@mnat.com

OF COUNSEL:

Guy W. Chambers
Peter M. Colosi
Nicholas A. Shen
SIDEMAN & BANCROFT LLP
One Embarcadero Center
22nd Floor
San Francisco, CA  94111
(415) 392-1960

*Attorneys for Plaintiffs f'real Foods, LLC
and Rich Products Corporation*

October 29, 2019

## CERTIFICATION

This brief complies with the type and word limitation set forth in the Order on Post-Trial Briefing (D.I. 270) because it contains 2,010 words as determined by the Word Count feature of Microsoft Word.

/s/ Taylor Haga

_____

Taylor Haga (#6549)

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 29, 2019, upon the following in the manner indicated:

| | |
|---|---|
| Francis DiGiovanni, Esquire<br>Thatcher A. Rahmeier, Esquire<br>DRINKER BIDDLE & REATH LLP<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE  19801<br>*Attorneys for Defendant Hamilton Beach Brands, Inc. and Hershey Creamery Company* | *VIA ELECTRONIC MAIL* |
| William S. Foster, Jr., Esquire<br>Kenneth M. Vorrasi, Esquire<br>Brianna L. Silverstein, Esquire<br>Lee Roach, IV, Esquire<br>Katlyn M. Moseley, Esquire<br>DRINKER BIDDLE & REATH LLP<br>1500 K Street, N.W.<br>Washington, DC  20005-1209<br>*Attorneys for Defendant Hamilton Beach Brands, Inc. and Hershey Creamery Company* | *VIA ELECTRONIC MAIL* |

Reeya Thakrar, Esquire                                 *VIA ELECTRONIC MAIL*
Carrie A. Beyer, Esquire
DRINKER BIDDLE & REATH LLP
191 N. Wacker Dr., Ste. 3700
Chicago, IL 60606-1698
*Attorneys for Defendant Hamilton*
*Beach Brands, Inc. and Hershey*
*Creamery Company*


                                                       */s/ Taylor Haga*

                                                       _____
                                                       Taylor Haga (#6549)

2