IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| F'REAL FOODS, LLC and | ) | |
| RICH PRODUCTS CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-41 (CFC) |
| | ) | CONSOLIDATED |
| HAMILTON BEACH BRANDS, | ) | |
| INC., HERSHEY CREAMERY | ) | REDACTED -- PUBLIC VERSION |
| COMPANY and PAUL MILLS d/b/a | ) | |
| MILLS BROTHERS MARKETS, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR A STAY OF A PERMANENT INJUNCTION AND RECALL

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Taylor Haga (#6549)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
thaga@mnat.com

OF COUNSEL:

Guy W. Chambers
Peter M. Colosi
Nicholas A. Shen
SIDEMAN & BANCROFT LLP
One Embarcadero Center
22nd Floor
San Francisco, CA  94111
(415) 392-1960

*Attorneys for Plaintiffs f'real Foods, LLC and Rich Products Corporation*

Original Filing Date:  October 29, 2019
Redacted Filing Date:  November 6, 2019

# TABLE OF CONTENTS

**Page**

I.    Nature and Stage of Proceedings ........................................................ 1

II.   Summary of the Argument .............................................................. 1

III.  Statement of Facts ....................................................................... 1

IV.   Argument .................................................................................... 2

    A.    Legal Standard ..................................................................... 2

    B.    Defendants Do Not Have a "High Likelihood" of Success on Appeal. 2

        1.    Defendants Could Not Meet Their Burden on Sato .................... 2

        2.    Defendants Do Not Have a "Strong Likelihood" of Success on Claim Constructions ............................................................ 5

    C.    Harm to Defendants Does Not Outweigh Harm to f'real .................... 7

        1.    BIC3000-DQ ....................................................................... 8

        2.    MIC2000 ............................................................................ 9

        3.    BIC2000, BIC2100YL, and IMI2000 ....................................... 9

        4.    Harm to f'real Cannot Be Compensated .................................... 9

    D.    Public Interest Favors an Immediate Injunction ................................ 10

V.    Conclusion .................................................................................. 12

# TABLE OF AUTHORIES

**Page**

**Cases**

*Altiris, Inc. v. Symantec Corp.*,
  318 F.3d 1363 (Fed. Cir. 2003) .............................................................5

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  315 F. Supp. 2d 615 (D. Del. 2004)......................................................5

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  659 F. Supp. 92 (D. Del. 1987)..............................................................7

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
  279 F. Supp. 2d 526 (D. Del. 2003)...............................................7, 11

*Hamilton Beach Brands, Inc. v. f'real Foods, LLC*,
  2017 WL 4277682 (Patent Tr. & App. Bd. Sept. 25, 2017)................5

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*,
  540 F.3d 1337 (Fed. Cir. 2008) .............................................................6

*Hybritech, Inc. v. Abbott Labs.*,
  849 F.2d 1446 (Fed. Cir. 1988) .............................................................9

*Illinois Bell Telephone Co. v. Haines and Co., Inc.*,
  1989 WL 76012 (N.D. Ill. 1989) .........................................................10

*In re Hayes*,
  766 F. Supp. 818 (N.D. Cal. 1991).......................................................10

*Jazz Pharmaceuticals, Inc. v. Amneal Pharmaceuticals LLC*,
  895 F.3d. 1347 (Fed. Cir. 2018) ......................................................3, 5

*Judkins v. HT Window Fashions Corp.*,
  704 F. Supp. 2d 470 (W.D. Pa. 2010)...................................................9

*Kearns v. Chrysler Corp.*,
  32 F.3d 1541 (Fed. Cir. 1994) ...............................................................4

*Martek Biosciences Corp. v. Nutrinova Inc.*,
  520 F. Supp. 2d 537 (D. Del. 2007)..............................................10, 11

*Oakley, Inc. v. Sunglass Hut Intern.*,
   316 F.3d 1331 (Fed. Cir. 2003) ............................................................................6

*Sciele Pharma Inc. v. Lupin Ltd.*,
   2012 WL 113004 (D. Del. Jan. 12, 2012) ..........................................................7

*Standard Heavens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990) ............................................................................2

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed. Cir. 1986) ............................................................................7

**Rules and Statutes**

35 U.S.C. § 315(e)(2).............................................................................................3

**Table of Exhibits**

| A | Hamilton Beach August 19, 2019 Supplemental Sales (HBBF0172884) |
|---|---|
| B | Excerpts from the April 11, 2019 Summary Judgment Hearing & Pretrial Conference Transcript |
| C | Excerpts from the November 8, 2018 Status Conference Transcript |
| D | DTX 366 |
| E | PTX 561 |

Defendants have not demonstrated that a balancing of the factors that courts consider on a Rule 62(d) motion weigh in favor of staying a permanent injunction, and Defendants' motion should be denied.

## I.     Nature and Stage of Proceedings

Plaintiffs incorporate the Nature and Stage of Proceedings from their Opening Brief in Support of their Motion for Permanent Injunction (D.I. 288).

## II.    Summary of the Argument

1.     Defendants have not "made a strong showing" that they will succeed on appeal.

2.     Any harm to Defendants from immediate entry of a permanent injunction is small relative to Defendants' revenues, their status as adjudicated infringers, and the irreparable harm to f'real from having to compete against its own patented technology.

3.     The public interest in upholding patent rights far outweighs any speculative threat to competition.

## III.   Statement of Facts

Relevant facts are incorporated into the Argument section.

## IV.   Argument

### A.   Legal Standard

The factors a court considers on a motion to stay an injunction pending appeal are those set forth in *Standard Heavens Prods., Inc. v. Gencor Indus., Inc.*, namely:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and,
>
> (4) where the public interest lies.

897 F.2d 511, 512 (Fed. Cir. 1990).

### B.   Defendants Do Not Have a "High Likelihood" of Success on Appeal

Defendants suggest they "have a high likelihood" of success on appeal that warrants a stay of the permanent injunction because the issues are "novel, complex, and hotly disputed."  D.I. 314 at 3.  The two issues they raise – the Court's exclusion of a prior art reference and the Court's construction of two claim terms – are none of those things.

#### 1.   Defendants Could Not Meet Their Burden on Sato

Defendants take issue with Court's decision to exclude the use of the Sato reference as prior art at trial.  The Court's decision was based on the failure of Defendants to meet their burden of demonstrating by clear and convincing

2

evidence that Sato qualified as "printed publication" under § 102(b).  Ex. B, 26:12-27:3.  At oral argument, Defendants' counsel agreed with the Court that: (1) the standard articulated in *Jazz Pharmaceuticals, Inc. v. Amneal Pharmaceuticals LLC*, 895 F.3d. 1347 (Fed. Cir. 2018), governs whether a document is "publicly accessible"; and (2) that the critical question for the Court is "could a person interested in the . . . subject matter or art exercising reasonable diligence have located Sato."  Ex. B, 24:9-25:5.  The Court then properly ruled that Defendants had not shown that Sato was publicly accessible prior to the critical date of the patents-in-suit.  The evidence before the Court strongly supported that determination.

Defendants attempt to make the issue sound novel by saying it "is a case of first impression in view of developing case law regarding the scope of estoppel under 35 U.S.C. § 315(e)(2)."  D.I. 314 at 3.  But the Court's ruling had nothing to do with § 315; it was based solely on § 102.  Ex. B, 26:12-16 (ruling Sato "fails to meet the printed publication requirement, Section 102").  There is nothing "novel" about a court's determination that a party could not meet its burden of establishing that a proposed reference qualified as prior art under § 102, as numerous courts have found.  That's particularly true here, where *Defendants* explicitly told the Court – when it benefitted them to do so – that "the unrebutted evidence shows that a skilled searcher conducting a diligent search . . . could not

3

reasonably be expected to find the untranslated Japanese Sato utility model reference." D.I. 194 at 2.

Defendants filed sworn declarations from "highly skilled" experts in prior art searching who stated "it is not reasonable to expect a skilled searcher to find such a Japanese language Utility Model reference even through the most diligent search" (D.I. 194-3, ¶ 15) using "the same search tools used by PTO Examiners" (*id.* ¶ 13) and "the best international patent databases" (D.I. 194-2, ¶ 5). One expert declared that "[e]ven having the exact reference number for Sato, it cannot be found in any PTO internal prior art database" (D.I. 194-3, ¶ 16), even though such databases contain "[a]ll foreign patents, published applications, and any other published derivative material containing portions or summaries of the contents of published or unpublished patents (e.g., abstracts) which have been disseminated to the public" (MPEP § 901.05).

On appeal, a court's decision to exclude evidence is reviewed under the abuse of discretion standard. *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed. Cir. 1994). Whether Sato qualifies as prior art under § 102 is a legal conclusion based on the underlying factual determinations. *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350 (Fed. Cir. 2008). On appeal, the Federal Circuit reviews the "legal conclusion without deference while according substantial evidence deference to the factual components of the determination." *Id.* "A

finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding." *Jazz Pharma*, 895 F.3d at 1355. The Court's factual determinations here, based on Defendants' own sworn declarations and evidence, strongly supports the Court's conclusion that Sato did not qualify as § 102 prior art.

Moreover, it is worth noting that the PTAB considered and rejected Defendants' weak invalidity arguments based on Sato. *Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 2017 WL 4277682 (Pat. Tr. & App. Bd. Sept. 25, 2017).

Defendants have not shown a "strong likelihood" of success on appeal for this issue.

### 2. Defendants Do Not Have a "Strong Likelihood" of Success on Claim Construction

Defendants next argue that they have a "strong likelihood of succeeding on appeal regarding certain claim constructions," and claim that "the Court has been at least skeptical" of those rulings. D.I. 314 at 5. Although the Court invited briefing on whether it could alter claim constructions during trial, neither the Court nor Defendants ever suggested any alterations to those constructions at trial. Now, Defendants simply rehash old, rejected claim construction arguments that certain claims should be limited to the preferred embodiments, which is legally incorrect. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003). In any event, courts in this district have made

clear that the "possibility of appellate *de novo* review of [] claim construction does not constitute an extraordinary circumstance to merit a stay" of an injunction. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 315 F. Supp. 2d 615, 620 (D. Del. 2004) (multiple citations omitted).

First, Defendants suggest that the inventor's testimony at trial regarding the "rinse chamber" term "is consistent with" the construction Defendants' proposed and Judge Sleet rejected.  D.I. 314 at 6.  That means nothing.  Judge Sleet found Defendants' proposal was contradicted by the specification, the figures showing the preferred embodiment, and the prosecution history, or would exclude the preferred embodiment.  D.I. 83, ¶ 1, n.2.

Next, Defendants cite testimony by Mr. Farrell in rehashing their "while isolating" arguments, which have been repeatedly rejected.  Judge Sleet adopted plain and ordinary meaning, and rejected Defendants' proposed construction because it improperly incorporated a negative limitation.  *Id.*, ¶ 4 n.5.  Defendants sought reconsideration (D.I. 86), which this Court denied.  D.I. 161; Ex. C, 3:16-5:12.  On summary judgment, the Court again rejected Defendants' interpretation because it was "unreasonably narrow and [] inconsistent with the plain meaning," and granted summary judgment for Plaintiffs.  D.I. 241 at 3.

Defendants offer no explanation of how Mr. Farrell's testimony is inconsistent with the Court's constructions, nor why his testimony is relevant to the

proper construction of the terms. *See Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008) ("The testimony of an inventor 'cannot be relied on to change the meaning of the claims.'") (citations omitted); *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1342 n.2 (Fed. Cir. 2003).

Defendants have not demonstrated any likelihood that appealing the Court's claim constructions would be successful.

## C.  Harm to Defendants Does Not Outweigh Harm to f'real

Because Defendants cannot demonstrate a strong likelihood of success on appeal, they need to make a stronger showing of irreparable harm to warrant a stay. *See Sciele Pharma Inc. v. Lupin Ltd.*, 2012 WL 113004, at *3 (D. Del. Jan. 12, 2012).

Defendants' argument that lost sales of infringing products and loss of goodwill demonstrate irreparable harm rings hollow and is "insufficient to warrant a stay of an otherwise appropriate injunction." *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 529 (D. Del. 2003). The only infringing product Defendants address is the BIC3000-DQ sold to Dairy Queen, arguing an injunction will cause lost sales and goodwill, but "the loss of customers or business built upon the sale and use of infringing products does not amount, in the context of a patent infringement suit, to irreparable harm from which [Defendants] should be

7

shielded." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92, 94 (D. Del. 1987); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

When each infringing product is considered separately, it is clear that any harm to Defendants is minor, especially relative to the irreparable harm to f'real in having to compete against its own technology.  In total, Hamilton Beach has sold approximately ███████ worth of infringing blenders in the twelve months ending July 31, 2019, which represents just ████████ of its 2018 annual revenues.  For the MIC2000, BIC2000, BIC2100YL, and IMI2000, the combined sales for that period are just ████.  Ex. A.

### 1.     BIC3000-DQ

As discussed in f'real's briefing on the permanent injunction, the infringing BIC3000-DQ is taking a market opportunity away from f'real.  In this market, it is Hamilton Beach – not f'real – that is the market leader.  f'real has just begun its entry into this market.  *See* D.I. 289, ¶ 8.

Hamilton Beach acknowledges its BIC3000-DQ was designed to mimic the operation of its non-infringing spindle blender (D.I. 311, ¶ 7), and Dairy Queen has successfully sold Blizzards for decades without it (D.I. 310 at 18).

Moreover, the BIC3000-DQ has not been successful, with just ███ sold since 2017

to Dairy Queen's 4,400 U.S. locations.  Ex. D at DTX366-0005; Ex. A.

### 2.     MIC2000

Hershey and f'real are direct competitors, competing for the same

customers with nearly identical product offerings.  In its lost profits verdict, the

jury necessarily determined that Hershey's sales take away f'real sales.

Hershey's MIC2000 placements and sales have been in rapid decline,

and Hershey has lost money since the inception of its competing program.

Hershey had ███ locations in August 2016 (Ex. D at DTX366-091), but just ███

now (D.I. 305, Ex. A-3).  Hershey's cup sales have declined ███ since 2016 (Ex.

E, PTX-561).  And Hamilton Beach has sold ███ MIC2000 since October 2018.

Ex. A.

### 3.     BIC2000, BIC2100YL, and IMI2000

Despite its continued advertising of the infringing BIC2000 blender,

Hamilton Beach has sold just ███ since September 2018 (*id.*), and just ███ since

2013.  It has sold just ███ BIC2100YL since September 2018 (*id.*), and has made

███ sales of the IMI2000 since 2014.

The lost-sales harm to either Defendant is minimal at best.

### 4.     Harm to f'real Cannot Be Compensated

The continuing harm to f'real cannot be remedied by monetary

damages because the jury did not award an ongoing royalty.  *See Judkins v. HT*

*Window Fashions Corp.*, 704 F. Supp. 2d 470, 495 (W.D. Pa. 2010) (denying stay of injunction pending appeal because there was "no royalty rate to apply to future sales of the infringing product"); *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988) ("It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole.").

\* \* \* \*

Because Defendants' only harm is lost sales of infringing products, which are a tiny percentage of their overall revenue, this factor weighs strongly in favor of denying a stay of an injunction.

### D.    Public Interest Favors an Immediate Injunction

Defendants have not shown that the public interest in upholding patent rights is outweighed by the public interest in continuing to sell and use infringing equipment.   Defendants rely on *In re Hayes*, but there the court stayed the injunction because: (1) it would force defendants out of business immediately; (2) the court had already imposed "substantial penalties" for the infringement; and (3) plaintiff had licensed its technology to "at least 18 other companies."  766 F. Supp. 818, 823 (N.D. Cal. 1991).  None of those issues are present here.

Defendants' monopoly argument fairs no better, because the very purpose of a patent is to grant the exclusive right to use that technology and to

exclude others from doing so.[1]  *Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F.

Supp. 2d 537, 559 (D. Del. 2007) ("[Defendant] is [Plaintiff's] only competitor in

the . . .  market, and [Plaintiff] has a right to exclude its rival from using its

proprietary technology.").

   The public interest in enforcing patents outweighs any public interest

in allowing infringing milkshake and smoothie blenders into the market.  There are

no medically necessary products here and Defendants' infringing products have

not been successful in the market.  *See Martek Biosciences*, 520 F. Supp. 2d at 559

("as this court has previously explained, 'it is almost redundant to note the

substantial interest in enforcing valid United States patents, while the court

perceives no countervailing harm to the public [— such as that the infringing

products are medically necessary or that their removal from the stream of

commerce would harm the public —] in granting the requested injunctive relief.'")

(quoting *Fisher-Price*, 279 F. Supp. 2d at 528) (alterations in original).

   f'real's whole business is built around blenders incorporating its

patented technology.  Defendants have other products to sell (and have been doing

so for more than 100 years) and customers can turn to f'real or other non-

---

[1] Defendants' only cited support is *Illinois Bell Telephone Co. v. Haines and Co., Inc.*, 1989 WL 76012 (N.D. Ill. 1989), which is easily distinguished.  There, the court stayed the injunction because the plaintiff did not compete with the defendant in the relevant market, and an injunction would result in a monopoly by a *third-party*, not the plaintiff.  *Id.* at *4.

infringing alternatives to meet their needs – as Dairy Queen did for decades before the BIC3000-DQ was launched.

The public interest factor weighs in favor of an immediate injunction.

## V.     Conclusion

Defendants have failed to demonstrate that any of the *Standard Heavens* factors weigh in their favor, let alone that a balancing of those factors warrants a stay.  Accordingly, Defendants' motion should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Taylor Haga*

_____

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Taylor Haga (#6549)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
thaga@mnat.com

*Attorneys for Plaintiffs f'real Foods, LLC and Rich Products Corporation*

OF COUNSEL:

Guy W. Chambers
Peter M. Colosi
Nicholas A. Shen
SIDEMAN & BANCROFT LLP
One Embarcadero Center
22nd Floor
San Francisco, CA  94111
(415) 392-1960

October 29, 2019

12

# **CERTIFICATION**

This brief complies with the type and word limitation set forth in the Order on Post-Trial Briefing (D.I. 270) because it contains 2,500 words as determined by the Word Count feature of Microsoft Word.

*/s/ Taylor Haga*
_____

Taylor Haga (#6549)

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 29, 2019,, upon the following in the manner indicated:

Francis DiGiovanni, Esquire                          *VIA ELECTRONIC MAIL*
Thatcher A. Rahmeier, Esquire
DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
*Attorneys for Defendant Hamilton*
*Beach Brands, Inc. and Hershey*
*Creamery Company*

William S. Foster, Jr., Esquire                       *VIA ELECTRONIC MAIL*
Kenneth M. Vorrasi, Esquire
Brianna L. Silverstein, Esquire
Lee Roach, IV, Esquire
Katlyn M. Moseley, Esquire
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC  20005-1209
*Attorneys for Defendant Hamilton*
*Beach Brands, Inc. and Hershey*
*Creamery Company*

Reeya Thakrar, Esquire                                    *VIA ELECTRONIC MAIL*
Carrie A. Beyer, Esquire
DRINKER BIDDLE & REATH LLP
191 N. Wacker Dr., Ste. 3700
Chicago, IL 60606-1698
*Attorneys for Defendant Hamilton*
*Beach Brands, Inc. and Hershey*
*Creamery Company*


                                          */s/ Taylor Haga*
                                          _____
                                          Taylor Haga (#6549)