IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| F'REAL FOODS, LLC and RICH PRODUCTS CORPORATION,<br><br>               Plaintiff,<br><br>        v.<br><br>HAMILTON BEACH BRANDS, INC. and HERSHEY CREAMERY COMPANY,<br><br>               Defendant. | Civil Action No. 16-41-CFC |

---

Rodger D. Smith II, Michael J. Flynn, and Taylor Haga, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Guy W. Chambers and Peter Colosi, SIDEMAN & BANCROFT LLP, San Francisco, California

    *Counsel for Plaintiff*

Francis DiGiovanni and Thatcher A. Rahmeier, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, Delaware; William S. Foster Jr., Kenneth M. Vorrasi, and Brianna L. Silverstein, FAEGRE DRINKER BIDDLE & REATH LLP, Washington, D.C.

    *Counsel for Defendant*

### **MEMORANDUM OPINION**

May 1, 2020
Wilmington, Delaware

_Colm F. Connolly_

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

The Court held a four-day jury trial in this patent infringement case filed by

Plaintiffs F'Real Foods LLC and Rich Products Corporation (collectively

Plaintiffs) against Defendants Hamilton Beach Brands, Inc. (Hamilton Beach) and

Hershey Creamery Company (Hershey).  The jury found both Defendants liable

for, among other things, direct infringement of claim 21 of U.S. Patent No.

7,520,662 (the #662 patent).  Pending before me is Defendants' Renewed Motion

for Judgment as a Matter of Law of Noninfringement, or Alternatively Motions for

a New Trial or to Amend the Judgment to Strike the Findings of Infringement, by

Defendants, Consumers, and Retailers of Claim 21 of the '662 Patent (D.I. 294).

## I.    BACKGROUND

The four products that lie at the heart of this case are high-performance

blenders made by Hamilton Beach: the IMI2000, BIC2000, BIC3000-DQ, and

MIC2000.  Hershey, a dairy company, has nothing to do with the IMI2000,

BIC2000, and BIC3000-DQ blenders.  Those three machines are operated "behind

the counter" by employees of retailers who buy the blenders from Hamilton Beach.

The MIC2000, however, is used by Hershey in Shake Shop Express kiosks that

Hershey leases to retailers.  Customers of those retailers operate the MIC2000 to

make their own milkshakes. Other than manufacturing the MIC2000s that Hershey buys, Hamilton Beach has nothing to do with the Shake Shop Express program.

Plaintiffs initiated this lawsuit in January 2016. The case was assigned to the now-retired Honorable Gregory M. Sleet. Plaintiffs alleged among other things in their Complaint direct and induced infringement of claim 21 of the #662 patent. *See* D.I. 1 ¶¶ 53–59. Plaintiffs alleged direct infringement as follows:

> Through use of the MIC2000 blender and the Hershey Creamery frozen milkshakes, Hamilton Beach . . . [and] Hershey Creamery . . . have each directly infringed claim 21 of the '662 patent by practicing the patented invention with MIC2000 blending machines, including using the type of MIC2000 blending machine . . . in the "Shake Shop Express" kiosk shown in attached Exhibit 5. Hamilton Beach also directly infringes claim 21 of the '662 patent by using BIC2000 blending machines to practice the patented invention.

D.I. 1 ¶ 55. Plaintiffs alleged that "Hamilton Beach and Hershey Creamery have induced the infringement of claim 21 of the '662 patent by providing operating instructions to . . . retailers for use of unlicensed Hamilton Beach MIC2000 blending machines . . ." D.I. 1 at ¶ 56.

The #662 patent is for a Rinseable Splash Shield and Method of Use. Claim 21 of the patent teaches

> [a] method for rinsing a splash shield on a mixing machine, the method comprising the steps of:

> providing a vessel containing material to be mixed, the vessel including an opening;
>
> further *providing a mixing machine* having a holder for receiving the vessel, a rotatable mixing element extendable into the vessel for mixing the material, a splash shield positionable to shield the opening of the vessel, and a nozzle oriented towards the splash shield;
>
> after mixing the material in the vessel using the mixing element and with the splash shield shielding the vessel opening, unshielding the vessel opening and directing rinsing fluid onto the splash shield using the nozzle while isolating the vessel from the rinsing fluid.

#662 Patent 6:64–8:3 (emphasis added).

From the outset of the case, the parties disputed the meaning of the limitation "providing a mixing machine." Plaintiffs initially argued that the limitation should be construed as "having a mixing machine which is available for use." D.I. 64 at 8. Defendants argued that it should be construed as "making a mixing machine available for use[.]" D.I. 76, Ex. B at 2–3.

Plaintiffs described the crux of the parties' disagreement in their claim construction briefing in this way: "The dispute here is about whether liability for infringement can be avoided on a theory of divided infringement. Although all steps of the asserted method claims are being performed at *Defendants'* 'Shake Shop Express' kiosks, Defendants want to argue that there is no direct infringement because the store 'provides' the mixing machine and the consumer performs the remaining steps." D.I. 64 at 8 (emphasis added).

The first part of this statement proved to be prescient, as the pending motion turns on whether the jury verdict can be upheld under a lawful "divided infringement" theory that allows for liability where multiple actors perform all the steps in a patented method and no single actor performs every step.  Direct infringement of a method claim can only "occur[ ] where all steps of [the] claimed method are performed by or [are] attributable to a single entity."  *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc) (*per curiam*) (citation omitted).  Thus, infringing actions that are "divided" among multiple actors can result in liability only where those actions are "attributable" to a single defendant.  *Id.*

The second sentence of Plaintiffs' statement is also noteworthy because it illustrates a pattern of conflating actors that Plaintiffs engaged in throughout the case.  In this particular instance, Plaintiffs attributed the ownership of the Shake Shop Express kiosks to both Defendants when in fact the Shake Shop Express program was exclusively run by Hershey.  As will be seen, Plaintiffs' conflation of actors—be it the Defendants, retailers, and/or customers—infected the entire case.

During the claim construction hearing presided over by Judge Sleet, Plaintiffs' counsel, Mr. Chambers, again raised the issue of divided infringement.  And, in typical fashion for Mr. Chambers in this case, he could not help but take a shot at opposing counsel in discussing the issue:

> So the specification discusses this from the perspective of
> the user having a mixing machine available for use. You
> put the cup with frozen ingredients in the cup holder, and
> you press the start button at the exterior of the machine.
> What they are doing is trying to create a divided
> infringement argument, because they are saying that the
> consumer uses the blending machine but the blending
> machine is provided by the retail stores, real trickster stuff
> here.

D.I. 78 at 39:18–40:1. What Mr. Chambers did not say—and what to this day he

has never made clear—is who provides the blending machine under Plaintiffs'

theory of liability.

To their credit, Defense counsel ignored Mr. Chambers's "real trickster

stuff" comment and instead focused on the merits of the parties' claim construction

positions. Judge Sleet adopted Defendants' position and construed "providing a

mixing machine" to mean "making a mixing machine available for use." D.I. 83 at

3. As Judge Sleet explained in his ruling, "Plaintiffs' construction . . . would

essentially alter the 'providing a mixing machine step' by making it a passive step"

but "[a] method step is something that must be 'performed.'" *Id.* at 3 n.4 (citation

omitted).

The issue of divided infringement next arose in the context of summary

judgment and in limine motions filed in the spring of 2019. By that time, the case

had been reassigned to me. Both parties moved for partial summary judgment with

respect to claim 21 of the #662 patent. I granted Plaintiffs' motion for partial

summary judgment of direct infringement by Hamilton Beach based on Hamilton Beach's own use and demonstrations of the IMI2000, the BIC2000, the BIC3000-DQ, and the MIC2000 blenders.  D.I. 241 at 4.  I similarly granted Plaintiffs' motion for partial summary judgment of direct infringement by Hershey based on Hershey's own use and demonstrations of the MIC2000 blenders.  *See id.*

Defendants moved for partial summary judgment of noninfringement of claim 21 of the #662 Patent "when consumers use the MIC2000."  D.I. 177 at 1.  In support of their motion, Defendants made the exact divided infringement argument Plaintiffs predicted they would make—namely, that the retailer makes the blender available to the consumer, who uses the blender to make the milkshake, and therefore "no single entity is performing every step of the asserted method claims."  D.I. 178 at 18.

While Defendants' motion was pending, Plaintiffs filed a motion in limine "to preclude Defendants from introducing evidence at trial in support of Defendants' new, untimely invalidity and non-infringement defenses raised for the first time on summary judgment and/or in rebuttal export reports, including . . . Defendants' new 'divided infringement' argument[.]"  D.I. 233, Ex. 15 at 1.  During oral argument on the motion in limine, Mr. Chambers's co-counsel stated:

> Your Honor, from the beginning of the case, we've had inducement arguments, *which makes it clear that there's a third party doing the infringement.* . . . *[W]e've always said that the consumers and the retailers have to commit*

> *direct infringement for an inducement claim.* That's not
> surprising to them. *The issue is whether there's true
> divided infringement where they are providing a piece of
> equipment and somebody else is completing the steps*[.]

D.I. 284 at 59:7–15 (emphasis added). Thus, on one hand, counsel insisted that third

parties—i.e., "the consumers and retailers"—were the direct infringers and thus, by

implication, that it is the retailer who provides the consumer with the blending

machine. On the other hand, counsel argued that "they" (i.e., the Defendants plural)

"are providing" the blenders and thus that Defendants themselves perform at least

one of the asserted claim's steps and are liable as direct infringers.

Defendants' counsel responded to Plaintiffs' counsel's statement as follows:

> Your Honor, we had discussions about what the claim
> construction should be, and during those discussions we
> had a whole discussion about the claim construction of
> providing a mixing machine. We had a meet and confer.
> We had to talk about those things. They knew full well
> that we were going to bring up this trickster stuff type of
> argument. They knew we were going to raise a divided
> infringement argument. And they've said inducement has
> always been part of this case. That's a different issue. And
> remember, the divided infringement argument isn't
> directed to all the machines. It's only directed to specific
> machines that are operated in Hershey Express Shake
> Shop Express program.

D.I. 284 at 61:17–62:4. Because Plaintiffs had expressly discussed Defendants'

divided infringement defense in their claim construction briefing and at the claim

construction hearing, the defense was not "new," and I denied Plaintiff's motion in

limine. D.I. 284 at 67–68.

I subsequently denied Defendants' motion for partial summary judgment.  I

explained my reasoning in paragraphs 3 and 4 of my April 18, 2019 Order:

> 3.    The single entity test prescribed by [*Akamai
> Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020
> (Fed. Cir. 2015) (en banc)] . . . is not limited to whether
> a single entity *performs* every patented step.  Rather,
> the test is whether the steps "are performed *or
> attributable to* a single entity."   797 F.3d at 1022
> (emphasis added).   And, as the court explained in
> *Akamai,* "[w]here more than one actor is involved in
> practicing the steps, a court must determine whether the
> acts of one are attributable to the other *such that a single
> entity is responsible* for the infringement." *Id.* An entity
> is "responsible for others' performance of method steps ...
> where  that  entity  directs  or  controls  others'
> performance[.]" *Id.* Such direction and control "can [ ] be
> found when an alleged infringer conditions participation
> in an activity or receipt of a benefit upon performance of
> a step or steps of a patented method and establishes the
> manner or timing of that performance." *Id.* at 1023.
>
> 4.    "Whether a single actor directed or controlled the
> acts of one or more third parties is a question of fact[.]" *Id.*
> As the parties dispute whether consumers' performance
> of some of the patented method steps was directed or
> controlled by retailers who provided the consumers with
> MIC2000 blenders, I will deny Defendants' motion for
> summary judgment.

D.I. 248 at 2–3 (ellipses and first alteration added).

At trial, Plaintiffs offered the testimony of their expert, Dr. Maynes, three

documents, and two videos to support their divided infringement theory.  The three

documents were (1) Hamilton Beach's service manual for the BIC2000 and MIC

2000, JTX 16; (2) the instruction manual Hamilton Beach provides to purchasers

8

of their self-serve blenders, PTX 39;[1] and (3) the instructions Hershey places on its

Shake Shop Express kiosks, PTX 552, PTX 553, and PTX 554.  The first video,

PTX-97, was a short promotional video that Hershey distributed to retailers.  The

second video, PTX-517, was a service video that Hamilton Beach distributed to

retailers to show them how to operate the BIC3000DQ blender.

Plaintiffs' expert, Dr. Maynes testified without objection during his direct

examination as follows:

> Q.   . . . So getting back to the original question, you
> said that infringement had already been determined for
> demonstrations by Hershey and Hamilton Beach, *so my
> question for you is whether you believe there's
> infringement if the convenience store or convenience store
> customers were using the four Hamilton Beach blenders,
> the MIC2000, BIC2000, IMI2000 and BIC3000-DQ?*
>
> A.   Every time all of the claim steps are followed, then
> infringement is occurring, and so here we've seen the
> video that shows that this happened.  The video provides
> instructions for a user.  Hamilton Beach also provides
> instructions for a user in their owner's manual.
> Hershey also provides instructions that are placed
> next to the machines, next to their machines.
>
> Q.   So defendants have made an issue about providing
> a mixing machine step, so how do you factor that into
> usual opinion about who is providing the mixing machine?

---

[1] Dr. Maynes identified PTX 39 as "the MIC2000 manual," Trial Tr. at 513:15,
but the exhibit actually appears to be a generic manual for Hamilton Beach's self-
serve blenders.  The manual does not mention the MIC2000 or any other product
by name.

A.    I understand there's some question about who is providing the mixing machine. *I don't offer an opinion on who is providing the machine. All I can say is that a machine is provided and one exists and then all of the claim elements are followed when someone uses the machine as instructed by the instructions.*

Q.    Now, as the Court mentioned, . . . there is a claim of induced infringement for claim 21 of the '662 patent, so have you done any analysis of whether Hamilton Beach and Hershey are providing instructions to their retailers and customers of how to use it in a method which would infringe claim 21 of the '662 patent?

\* \* \* \*

A.    So Hamilton Beach provides instructions in the operation manual *for the MIC2000. Those instructions tell the user* exactly what to do to produce a milkshake. *Hershey also provides instructions which tell the user exactly what to do to produce a milkshake.*

Q.    So continuing with claim 21 of the '662 patent, *do Hamilton Beach and Hershey direct or control the actions of retailers and consumers* using their accused blenders in a way that leads to infringement of claim 21 of the '662 patent?

A.    Yes.

Q.    How so?

A.    Well, if *the consumer* doesn't follow the directions provided, then they don't end up with their desired milkshake.

Q.    And the directions provided are the ones you've just described in PTX-39 and PTX-556 -- 554 through 556?

> A.    Correct. Those are the operating instructions *for the MIC2000* machine.
>
> Q.    *Do Hamilton Beach and Hershey condition receipt of a benefit on following their instructions?*
>
> A.    *Yes. The condition is the user won't get a milkshake that they desired if they don't follow those instructions.*

Trial Tr. at 511:17–518:20 (emphasis added).

After the parties rested their cases-in-chief except for willfulness, I

entertained motions for judgment as a matter of law (JMOL) pursuant to Federal

Rule of Civil Procedure 50(a).  Defendants moved for JMOL on Plaintiffs' direct

and induced infringement claims with respect to the #662 patent.[2]  We had an

extended and frankly confusing conversation about induced infringement, direct

infringement, divided infringement, and what exactly Plaintiffs' theory of

infringement of the #662 patent was.  *See* Trial Tr. at 951–957; 987–1004.  When

the conversation started, I was under the impression that Plaintiffs' theory of

divided direct infringement for the MIC2000 had ended up involving two parties:

---

[2]  Plaintiffs argue in their post-trial opposition brief that Defendants "sought JMOL for '662 claim 21 for use by retailers/customers of the MIC2000 only, not for the BIC2000, IMI2000 or BIC3000-DQ."  D.I. 324 at 7 n.2.  To the extent Defendants could have been clearer in making their Rule 50(a) motion, it is fair to say they were disadvantaged by Plaintiffs' conflation of parties and Plaintiffs' conflation of their inducement and divided direct infringement claims.  In any event, Defendants clarified for the record without objection from Plaintiffs that their motion applied to all the accused machines.  Trial Tr. at 1045:1–4.

11

the retailers and the customers.  Trial Tr. at 991:15–18.  It appears from the

transcript that this was Defendants' understanding as well.  *See* Trial Tr. at 956:23–

957:1 ("We're not performing any of the steps.  So looking at the direct control,

it's the relationship between the customers and the retailers that are at issue . . . .").

But Mr. Chambers denied that this was Plaintiffs' liability theory, and

insisted that *both* Defendants were liable under a direct infringement liability

theory because they directed and controlled the use of the accused machines by the

retailers and the retailers' customers:

> THE COURT: All right.  Now, let me stop you there.  So
> are the multiple entities that commit direct infringement
> under your theory, are they in one column the retailer and
> the customer?
>
> MR. CHAMBERS:  Yes.
>
> THE COURT:  Okay.  Or are they column B, Hershey,
> Hamilton Beach, the retailer, and the customer?  There are
> two different groups here.  Right?  Let's start with column
> A.
>
> MR. CHAMBERS:  Let's start with column A.  Let's say
> the retailer is providing and the customer is performing the
> rest of the steps, but *the controlling entity* is Hershey and
> Hamilton Beach [who] are providing the instructions.
>
> THE COURT:  Your theory is really column B.  You're
> saying that the direct infringement necessarily involved
> Hershey and Hamilton Beach.
>
> MR. CHAMBERS:  Because *they're providing the control*
> *and direction and they're conditioning the benefit.*

THE COURT: Okay. That's your theory. All right.

Trial Tr. at 995:3–23 (emphasis added). The one thing that Mr. Chambers made

absolutely clear was that Plaintiffs' theory of divided infringement was not based

on an allegation that the Defendants were part of a joint enterprise:

> THE COURT:     All right. So, Mr. Chambers, how do
> we have a single entity here? And can I ask you first? So
> are you proceeding – you're not proceeding on a joint
> enterprise theory. Right?
>
> Mr. Chambers:     Correct.
>
> THE COURT:     Just direct control theory?
>
> Mr. Chambers:     Yes.

Trial Tr. at 990:7–13

Despite all the talk of divided infringement and a single entity directing or

controlling the actions of other parties, Mr. Chambers never made it clear who

Plaintiffs thought the single entity that exercised direction or control over the other

actors was. Indeed, he insisted throughout trial and during argument on referring

to Defendants collectively when it came to direct infringement.[3] I nonetheless

---

[3] Plaintiffs employ this same usage in their post-trial briefing. They state, for
example, that:

> Defendants are liable under the "receipt of benefit" test
> when their customers or retailers follow Defendants'
> directions to perform each of the claim 21 method steps
> during ordinary use of the accused products. As
> Plaintiff[]s['] expert Dr. Maynes testified, the benefit

denied Defendants' JMOL motion; but I said that Plaintiffs needed to "make it clear in the jury instructions[] [and] spell out what your theory is, because . . . I thought it might be[] that the direct infringement was the two entities . . . the retailer and the customer." Trial Tr. at 997:13–16.

Once we had apparently resolved what Plaintiffs' theory was, Defendants argued that judgment as a matter of law for induced infringement of claim 21 was warranted. As Defendants noted, if the actions of the Defendants were necessary for Plaintiffs' direct infringement theory, then there could not be induced infringement because Defendants cannot induce themselves. Trial Tr. at 999–1000. Plaintiffs conceded this point. Trial Tr. at 1000:12–13 ("Actually, they have somewhat of a point, Your Honor, as much as I hate to admit it."). Accordingly, I granted judgment as a matter of law of noninfringement for the induced infringement claim.

During closing arguments, Mr. Chambers explained Plaintiffs' theory of infringement under claim 21 as follows:

> conferred to Defendants' customers and retailers by performing the method is receipt of the blended beverage (Ex. 1, 518:3–210). Defendants condition receipt of the benefit on following their instructions to use the blenders because, if customers do not follow them, they do not get a blended beverage (Ex. 1, 518:17–20).

D.I. 324 at 5–6.

So the first task you will need to do is determine whether claim 21 of the '662 patent, which is a method claim, it's the steps that you do is infringed not only for the demonstration, that has already been determined, but when retailers and consumers are using the Hamilton Beach blenders, and if so, whether Hamilton Beach and Hershey should be responsible for what they encourage consumers to do.

Now, as the Court will instruct you, infringement is determined by first comparing the claims, you look at the claims of f'real's patents with the structures and processes used by Hamilton Beach's blenders.  In the case of a method claim such as claim 21 of the '662 patent, *you will be asked to determine whether retailers and customers are following the instructions provided to them by Hamilton Beach/Hershey in order to get a benefit, and the benefit, the benefit is a blended milkshake.*

*So that's what you are going to be asked to determine.*

Trial Tr. at 1101:23–1102:16 (emphasis added).  Mr. Chambers consistently referred to the Defendants collectively throughout his closing argument.  *See* Plaintiff's Closing Argument, Trial Tr. at 1102–1103 (referring to "Hamilton Beach and Hershey" or "they"); *see also* Plaintiff's Rebuttal, Trial Tr. at 1141:11–14 ("Well, there's more than just instruction here, and that is what allows you in using your common sense to find that those additional infringements are attributable to Hamilton Beach and Hershey . . .").

After closing arguments, I instructed the jury.  On the issue of divided infringement, I gave this instruction, which the parties had jointly proposed:

Infringement of a method claim occurs where all steps of the claimed method are performed by or attributable to a

15

single party. Where more than one actor is involved in performing the claimed steps, you must determine whether the acts of those actors are attributable to a single party, such that a single party is responsible for the infringement.

In this case, defendants are liable for infringement of the asserted method claims of the . . . '662 patent[ ] if all of the claimed steps in the asserted method claim[] are performed by consumers and retailers and if the performance of those steps by customers or consumers, I should say, and retailers is attributable to defendants.

For infringement through combined acts of multiple parties to be proved, plaintiffs must prove by a preponderance of the evidence, one, that all the steps of the claimed process were performed in the United States, and, two, that the acts of consumers and retailers are both attributable to defendants because defendants directed or controlled the acts of the consumers and retailers.

To prove that defendants directed or controlled the acts of the consumers and the acts of the retailers, plaintiffs must prove that defendants conditioned participation of the consumers and the participation of the retailers in an activity or receipt of a benefit upon performance of a step or steps of a patented method and established the manner or timing of that performance. Merely guiding or instructing the consumers and retailers how to use an accused product does not rise to the requisite level of direction or control.

Trial Tr. at 1166:22–1168:1.

The next day the jury returned its verdict. It found, among other things, that both Defendants were liable for direct infringement of claim 21 of the #662 patent. Defendants thereafter filed the pending motion.

## II.   LEGAL STANDARDS

### A.   Judgment as a Matter of Law

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).  Upon a Rule 50(b) motion, a jury verdict should be overturned "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir. 1998) (internal quotation marks and citation omitted).

### B.   New Trial

Rule 59(a) permits a district court judge, "on motion," to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).  A district court therefore has the discretion to order a new trial when the verdict is contrary to the evidence, a miscarriage of justice would result if the jury's verdict were left to stand, or the court believes the verdict resulted from confusion. *Cf. Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("Where a new trial has been granted on the basis that the jury's verdict was tainted by confusion or that a new trial is required to

17

prevent injustice, [the Court of Appeals] reviews [the district court's ruling] for abuse of discretion").

### C.   Divided Infringement of Patented Method Claim

Direct infringement of a patented method claim can only "occur[ ] where all steps of [the] claimed method are performed by or [are] attributable to a single entity." *Akamai*, 797 F.3d at 1022. "Where more than one actor is involved in practicing the steps [of a method claim], a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.* An entity is "responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.*

When determining whether a single entity directs or controls the acts of another, the Federal Circuit has directed courts to "consider general principles of vicarious liability." *Id.* The Federal Circuit has also held that direction or control can be found "when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1023 (citation omitted).

## III.   ANALYSIS

### A.   Direct Infringement Based on Customers' Use of the MIC2000

I granted summary judgment of direct infringement of claim 21 of the #662 patent against both Defendants based on their own demonstrations and use of the MIC2000.  Therefore, at trial, the only alleged direct infringement of claim 21 at issue was based on customers' use of the MIC2000 through Hershey's Shake Shop Express Program.

Plaintiffs adduced at trial no evidence that Hamilton Beach participated in, let alone directed or controlled, the Shake Shop Express Program or that Hamilton Beach directed or controlled any party's participation in that program.  Dr. Mayne offered an opinion at trial that "Hamilton Beach provides instructions in the operation manual for the MIC2000" and that "those instructions tell the user exactly what to do to produce a milkshake," but there was no factual basis for this opinion.  The undisputed record evidence showed that Hamilton Beach sold Hershey the MIC2000s and provided Hershey instruction manuals with those blenders.  There was no evidence that the instruction manuals were shared with retailers or customers and no evidence that Hamilton Beach exercised any control over retailers who provided or customers who used MIC2000s.  Accordingly, I will grant judgment as a matter of law in Hamilton Beach's favor with respect to MIC2000s used in connection with the Shake Shop Express Program.

19

I will also grant judgment as a matter of law in Hershey's favor with respect to MIC2000s used in connection with the Shake Shop Express Program.  Leaving aside the question of whether instructions Hershey placed on the MIC2000s to guide customers could constitute "direction or control" of those customers for divided infringement purposes, Plaintiffs adduced no evidence at trial that Hershey exercised direction or control over the retailers who made the MIC2000s available to those customers.

## B.     Direct Infringement Based on Retailers' Use of the IMI2000, the BIC2000, and the BIC3000-DQ

I granted summary judgment of direct infringement of claim 21 against Hamilton Beach based on its own demonstrations and use of the IMI2000, the BIC2000, and the BIC3000-DQ.  Therefore, at trial, the only alleged direct infringement of claim 21 at issue concerning these blenders emanated from alleged "behind the counter" use of the blenders by employees of retailers.

Plaintiffs adduced at trial no evidence that Hershey bought or used these blenders; nor did it offer evidence that Hershey had a relationship with any retailer who bought or used them.  Accordingly, I will grant judgment as a matter of law in Hershey's favor with respect to these blenders.

I will also grant judgment as a matter of law in Hamilton Beach's favor insofar as Plaintiffs' direct infringement claim is based on the use of the blenders by a party other than Hamilton Beach.  Plaintiffs argue that Defendants are liable

under *Akamai* because "by providing infringing blenders to customers and retailers with instructions to use them in a specific manner to perform the method steps, Defendants conditioned receipt of a benefit (the blended beverage) upon performance of those method steps and established the manner and timing of that performance." D.I. 324 at 7.  But this argument fails for at least two reasons. First, providing instructions to a retailer in no way establishes the timing of the retailer's use of the blender.  The retailer is free to use the machine whenever the retailer chooses; indeed, it is free not to use the machine.  Second, instructions by themselves do not satisfy *Akamai*'s "conditioning receipt of a benefit" standard. *See Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 584 (D. Del. 2018) (Bryson, J.) ("As long as the conduct goes beyond merely 'guiding or instructing,' the conditioning requirement is satisfied."), *aff'd sub nom. Persion Pharm. LLC v. Alvogen Malta Operations Ltd.*, 945 F.3d 1184 (Fed. Cir. 2019).

## C.    Conditional Ruling on Motion for a New Trial

Under Rule 50(c), "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c).  Here, a new trial would be warranted if my JMOL ruling were vacated or reversed because, as explained above, the jury's

verdict with respect to claim 21 of the #662 patent is contrary to the evidence.  A new trial would also be warranted because the verdict results from the confusion caused by Mr. Chambers's and Dr. Maynes's conflation of the parties, theories of liability, and accused machines.

## IV.   CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for judgment as a matter of law in Defendants' favor with respect to Plaintiffs' claim for infringement of claim 21 of the #662 patent insofar as that claim was based in any way on the use of the MIC2000, IMI2000, BIC2000, and BIC3000-DQ machines by any party other than Defendants.

The Court will issue an Order consistent with this Memorandum Opinion. The Court will direct the parties to submit letters that address how the Court's granting of Defendants' motion affects Defendants' remaining pending motions, the jury's damages award, and the final judgment to be imposed by the Court.