IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

F'REAL FOODS, LLC and RICH
PRODUCTS CORPORATION,

                          Plaintiff,

              v.                          Civil Action No. 16-41-CFC

HAMILTON BEACH BRANDS,
INC. and HERSHEY CREAMERY
COMPANY,

                          Defendant.

---

Rodger D. Smith II, Michael J. Flynn, and Taylor Haga, MORRIS, NICHOLS,
ARSHT & TUNNELL LLP, Wilmington, Delaware; Guy W. Chambers and Peter
Colosi, SIDEMAN & BANCROFT LLP, San Francisco, California

         *Counsel for Plaintiff*

Francis DiGiovanni and Thatcher A. Rahmeier, FAEGRE DRINKER BIDDLE &
REATH LLP, Wilmington, Delaware; William S. Foster Jr., Kenneth M. Vorrasi,
and Brianna L. Silverstein, DRINKER BIDDLE & REATH LLP, Washington,
D.C.

         *Counsel for Defendant*

## MEMORANDUM OPINION

July 16, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiffs f'real Foods, LLC and Rich Products Corporation sued Defendants Hamilton Beach Brands, Inc. and Hershey Creamery Company for infringement of U.S. Patent No. 5,803,377 (the #377 Patent), U.S. Patent No. 7,144,150 (the #150 Patent), U.S. Patent No. 7,520,658 (the #658 Patent), and U.S. Patent No. 7,520,662 (the #662 Patent). Plaintiffs alleged that four products infringed the asserted patents: the IMI2000, the BIC2000, the BIC3000-DQ, and the MIC2000. The four accused products are high performance blenders manufactured by Hamilton Beach.

The Court held a four-day jury trial. The jury found that all four accused products infringe claim 21 of the #662 Patent; that the MIC2000, BIC2000, and BIC3000-DQ literally infringe claim 20 of the #150 Patent; that the MIC2000, BIC2000, and BIC3000-DQ infringe claim 22 of the #150 Patent under the doctrine of equivalents; that all four accused products infringe claims 1 and 5 of the #658 Patent under the doctrine of equivalents; that the MIC2000, BIC2000, BIC3000-DQ, or the IMI2000 literally infringes claims 6, 10, and 11 of the #658 Patent; that none of the accused products infringe the #377 Patent; and that none of the asserted patents are invalid. *See* D.I. 264.

Posttrial I granted Defendants' motion for Judgment as a Matter of Law of noninfringement of claim 21 of the #662 Patent by Defendants. *See* D.I. 355.

Pending before me is Plaintiffs' Motion for a Permanent Injunction and Recall (D.I. 287). By their motion, Plaintiffs seek an order that (1) enjoins Defendants from infringing the #150 and the #658 patents by the commercial manufacture, use, sale, or offer to sell within the United States, or importation into the United States, the MIC2000, BIC2000, BIC3000-DQ or IMI2000 blenders, or any substantially similar products prior to the expiration of the #150 and the #658 patents and (2) requires Hamilton Beach and Hershey to recall all MIC2000 and BIC3000-DQ blenders. *See* D.I. 287.

## I.  LEGAL STANDARD FOR PERMANENT INJUNCTION

The Patent Act grants a patent holder "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States . . . ." 35 U.S.C. § 154(a)(1). The right to exclude "has its roots in the U.S. Constitution's Intellectual Property Clause, which refers to inventors' 'exclusive Right to their respective . . . Discoveries.'" *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 638 (Fed. Cir. 2015) (hereinafter *Apple IV*) (quoting U.S. Const. art. I, § 8, cl. 8.). "In furtherance of this right to exclude, district courts 'may grant injunctions in accordance with

2

the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.'" *Id.* (quoting 35 U.S.C. § 283).

A Plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citation omitted). To satisfy the irreparable injury factor, a patentee must establish (1) that absent an injunction it will suffer irreparable injury and (2) that a sufficiently strong causal nexus relates the injury to the infringement. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013) (hereinafter *Apple III*). The Supreme Court has cautioned lower courts that "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). Rather, when "a less drastic remedy . . . [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* at 165–66 (citations omitted).

3

## II.   ANALYSIS

### A.   The IMI2000 Blenders

Plaintiffs have failed to show that they would suffer irreparable harm from the continued sales of the IMI2000.  Plaintiffs mention the IMI2000 only twice in their opening brief.  On page 6, Plaintiffs state that the IMI2000 competes with f'real's blender sales.  *See* D.I. 288 at 6.  Plaintiffs offer neither citation nor argument in support of this conclusory statement.  On page 11 of their opening brief, Plaintiffs explain that they are not seeking a recall of the IMI2000 "because of the relatively small number sold since 2015."  D.I. 288 at 11 n. 5.  Plaintiffs' reply brief is silent on the IMI2000.  *See* D.I. 331.  Accordingly, I will deny their motion insofar as it concerns the IMI2000.

### B.   The BIC2000 Blenders

Plaintiffs argue that the "BIC2000 . . . compete[s] directly with f'real's own blenders sales" and that "f'real's LT blender is priced competitively to the infringing BIC3000-DQ or BIC2000, with the same blending capabilities."  D.I. 288 at 6–7.  Plaintiffs appear to be arguing that their irreparable injury is lost sales of the LT blender.  Plaintiffs, however, adduced no evidence of lost sales of the LT blender.  Moreover, Defendants argue, and Plaintiffs do not rebut, that the LT blender does not have the same blending capabilities as the BIC2000 because the BIC2000 is "designed to mix ice and liquid drink mix" while f'real's blenders are

"designed to grind a frozen substance. D.I. 310 at 13 (citing Williams Decl., D.I. 311 ¶¶ 4–5).

Because Plaintiffs have not put forward evidence of lost sales or any other injury caused by sales of the BIC2000 and Defendants have put forward unrebutted evidence that f'real's blenders do not compete with the BIC2000, Plaintiffs have not established that they have suffered an irreparable injury related to the BIC2000 blenders. Accordingly, I will deny Plaintiffs' motion insofar as it concerns the BIC2000.

### C.     The BIC3000-DQ Blenders

First, Plaintiffs argue that the BIC3000-DQ "compete[s] directly with f'real's own blenders sales" and that "f'real's LT blender is priced competitively to the infringing BIC3000-DQ or BIC 2000, with the same blending capabilities." D.I. 288 at 6–7.

Defendants cast doubt on the assertion that the LT blender has the same blending capabilities as the BIC3000-DQ. Defendants point out that the BIC3000-DQ is designed to blend Dairy Queen's soft serve ice cream and mix-ins while f'real's blenders are designed to shave through frozen blocks. *See* D.I. 310 at 8 (citing Trial Tr. at 212:17–23; 271:10–18; and 495:19–21; D.I. 311 ¶ 7).

In reply, Plaintiffs argue that the LT blender can blend soft serve ice cream and cite the Declaration of Jens Voges for that proposition. *See* D.I. 331 at 7

(citing D.I. 332 ¶ 6).  But the Voges Declaration does not say that the LT blender would work on soft serve ice cream.  Rather, Voges stated: "In response to Mr. Williams' argument about whether a f'real blender could work with Dairy Queen's soft-serve ice cream, f'real has already developed a solution incorporated in all of its blenders that solves the issue Mr. Williams states as being '[t]he biggest hurdle to developing the BIC3000-DQ.'"  D.I. 332 ¶ 6 (quoting D.I. 311 ¶ 7).  Williams, however, did not say that blending soft-serve ice cream as opposed to frozen blocks was the biggest hurdle to developing that BIC3000-DQ.  What he said was:

> The biggest hurdle to developing the BIC3000-DQ was being able to incorporate the mix-ins used by Dairy Queen throughout the entire height of a cup for each of the different types of beverages blended by Dairy Queen in different sizes of cups in a way that met Dairy Queen's quality and performance standards. In order to overcome this hurdle, we invented a new cup holder that could both tilt and rotate the cup during the blending process to mimic the actions of a human operator blending Dairy Queen's beverages using a Hamilton Beach spindle mixer. The tilting and rotation of the cup allowed the agitator to cover more of the volume within the cup (including the cup edge along the entire cup height) as accomplished during the manual mixing process. This invention is described in the claims of U.S. Patent No. 9,474,417, and is illustrated in Figs. 16, 16A, 16B, and 17 and at Col. 12:46-14:59 of the specification

D.I. 311 ¶ 7.  Voges answered whether f'real's blenders could handle Dairy Queen's mix-ins.  Voges did not answer whether f'real's blenders could blend Dairy Queen's soft-serve ice cream.  Plaintiffs have, therefore, supplied no

evidence that the LT blender is capable of blending soft-serve ice cream. Nor have they provided evidence that another of their blenders is capable of blending soft-serve ice cream and would be a suitable replacement for the BIC3000-DQ. Without a blender that can perform the core function of the BIC3000-DQ, that is, blending soft-serve ice cream, Plaintiffs cannot show that they have been harmed by losing the opportunity to sell their blenders to Dairy Queen in the place of the BIC3000-DQ.

Even if Plaintiffs could show that they have been harmed by losing the opportunity to sell their blenders to Dairy Queen in the place of the BIC3000-DQ, they have failed to show that there is a causal nexus between the patented features and the demand for the BIC3000-DQ. "[P]roving a causal nexus requires the patentee to show 'some connection' between the patented features and the demand for the infringing products." *Apple IV*, 809 F.3d at 641 (quoting *Apple III*, 735 F.3d at 1364). Plaintiffs do not allege, much less provide evidence supporting, a connection between the patented features of the BIC3000-DQ and Dairy Queen's demand for the BIC3000-DQ. *See* D.I. 288; D.I. 331. Accordingly, Plaintiffs have not shown that lost sales of the LT blender to Dairy Queen are an irreparable injury that supports a permanent injunction with respect to the BIC3000-DQ.

Second, Plaintiffs argue that they have been irreparably injured by losing sales of f'real smoothies and milkshakes to competition with Dairy Queen. But

7

Plaintiffs have not alleged, or provided evidence supporting, a connection between the patented features of the BIC3000-DQ and those lost sales. "The causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason" such as "'irreparable harm caused by otherwise lawful competition.'" *Apple IV*, 809 F.3d at 640 (quoting *Apple III*, 735 F.3d at 1361). Here, without evidence of a connection between the patented feature of the BIC3000-DQ and Plaintiffs' lost sales, there is no way of knowing what sales were lost due to Defendants' wrongful conduct and what sales were lost due to lawful competition with Dairy Queen. Because Plaintiffs have not provided evidence of a causal connection, they have not shown that lost sales of smoothies and milkshakes to Dairy Queen are an irreparable injury that supports a permanent injunction with respect to the BIC3000-DQ.

### D.   The MIC2000 Blenders

All four *eBay* factors favor granting Plaintiffs' motion for a permanent injunction and recall with respect to the MIC2000 blenders used in Hershey's Shake Shop Express program.

First, Plaintiffs have demonstrated that they have been and will continue to be irreparably injured due to being forced to compete with the MIC2000 blenders in the Shake Shop Express Program. At trial, Plaintiffs' damages expert limited

his lost profits analysis to the MIC2000, *see* Trial Tr. 599:8–16, and the jury found the Defendants liable for lost profits due to the MIC2000 blenders used in the Shake Shop Express program.  D.I. 264, Question 7(b).[1]

   When a patentee is "forced to compete against products that incorporate and infringe its own patented inventions[,]" the patentee suffers a harm that is often irreparable.  *Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (finding an irreparable injury).  And when a jury awards a patentee lost profits, the jury necessarily finds both this kind of competition and that the defendant's action caused the patentee to lose sales.  Thus, an award of lost profits "squarely supports a finding of irreparable harm."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012).  It may seem odd that a monetary award supports a finding of irreparable injury.  But a finding of lost profits demonstrates that a plaintiff was deprived of market share and business opportunities in addition to lost profits.  A lost profits award does not compensate a plaintiff for those first two harms; and money damages alone cannot fully compensate a plaintiff for those harms.  *See Robert Bosch LLC v. Pylon Mfg.*

---

[1] Posttrial, Defendants moved for judgment as a matter of law of no lost profits, or, in the alternative motion for a new trial on or remittitur of lost profits.  D.I. 296.  I denied that motion conditioned upon Plaintiffs' acceptance of the Court's remittitur of Plaintiffs' lost profits award to $2,091,841.00.  D.I. 367.  Plaintiffs have accepted the Court's remittitur.  D.I. 368.

*Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) ("[Plaintiff] argues that it will continue to suffer irreparable harm due to lost market share, lost business opportunities, and price erosion unless [Defendant] is permanently enjoined. According to [Plaintiff], money damages alone cannot fully compensate [Defendant] for these harms. We agree."). Thus, I infer from the jury's award of lost profits that Plaintiffs have suffered an irreparable injury due to the MIC2000 blenders Hershey used in the Shake Shop Express program.[2]

Plaintiffs have also shown that there is a causal nexus between Defendants' infringement and Plaintiffs' lost profits, lost market share, and lost business opportunities. Plaintiffs' patents are for self-cleaning blenders. The MIC2000 is a self-serve, self-cleaning blender. Because the MIC2000, using technology covered by Plaintiffs' patents, cleans itself, the retailers who kept the MIC2000 in their stores as part of the Shake Shop Express program did not have to spend money on labor to clean the machine between each use. Similarly, customers who used MIC2000 blenders to blend milkshakes would not have been inclined to do so had the MIC2000 blenders been dirty because the machines couldn't clean themselves. Thus, there is a clear connection between the infringement and Plaintiffs' injury.

---

[2] This finding does not extend to MIC2000 blenders not used in the Shake Shop Express program. Plaintiffs adduced no evidence of lost profits that do not stem from the Shake Shop Express program.

Second, monetary damages are inadequate to compensate Plaintiffs' injuries.
The Federal Circuit has held that "loss of market share" and other injuries like
Plaintiffs' are "particularly difficult to quantify." *i4i Ltd. P'ship v. Microsoft
Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd,* 564 U.S. 91 (2011).  "Difficulty
in estimating monetary damages is evidence that remedies at law are inadequate."
*Id.* (citation omitted).  Although Defendants claim that "[a]ny harm to f'real is
quantifiable[,]" Defendants do not even attempt to monetize f'real's lost market
share or lost business opportunities.  D.I. 310 at 15.

Third, the balance of the hardships between Plaintiffs and Defendants favors
a remedy in equity.  It follows from a finding of lost profits that as long as
Defendants are permitted to continue infringing Plaintiffs' patents, Plaintiffs will
continue to lose profits, lose business opportunities, and be deprived of market
share.  In this case, Defendants have made it clear that unless they are enjoined
they will continue to infringe Plaintiffs' patents until they have finished selling
their stock of ice cream cups used in the Shake Shop Express program.  *See* D.I.
357, Ex. C ¶¶ 5–7.  Thus, even if monetary relief were adequate to compensate
Plaintiffs for their injuries, Plaintiffs would have to file another lawsuit to obtain
that relief.  The danger of a "multiplicity of suits" and the hardship that entails for
a plaintiff have traditionally justified an equitable remedy, such as an injunction,
that would afford a plaintiff complete relief in a single proceeding.  *See, e.g.,*

11

*Graves v. Texas Co.*, 298 U.S. 393, 403 (1936) ("Resort may be had to equity in order to avoid the multiplicity of suits . . . ."), *overruled on other grounds by Alabama v. King & Boozer*, 314 U.S. 1 (1941).

Fourth, I am not persuaded that the public interest would be disserved by a permanent injunction. Indeed, Defendants do not even argue that the public interest would be disserved if an injunction issued with respect to the MIC2000. *See* D.I. 310 at 17.

## III.   CONCLUSION

For the foregoing reasons, I will grant in part and deny in part Plaintiffs' Motion for a Permanent Injunction and Recall (D.I. 287). I will grant the motion insofar as its seeks to prohibit Defendants from infringing the #150 and #658 patents by the commercial manufacture, use, sale, or offer to sell within the United States, or importation into the United States, of the MIC2000 blenders prior to the expiration of those patents. I will also grant the motion insofar as it seeks an order to compel Defendants to recall the MIC2000 blenders used in connection with Hershey's Shake Shop Express program. I will otherwise deny the motion.

The Court will issue an order consistent with this Memorandum Opinion.